DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

\* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                              )<br>            Plaintiff,        )<br>                              )<br>v.                            )<br>                              )<br>ALEXANDER SMIRNOV,            )<br>                              )<br>            Defendant,        )<br>_____) | CASE NO. 2:24-CR-00091-ODW |

**<u>DEFENDANT'S MOTION TO REOPEN DETENTION HEARING<br>AND TO IMPOSE CONDITIONS OF PRETRIAL RELEASE</u>**

COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby moves this Honorable Court to reopen the detention hearing of February 26, 2024 and the amended order of detention (ECF No. 57; Mar. 11, 2024) based on "information . . . that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release

1

that will reasonably assure the appearance of such person as required . . . ." 18 U.S.C. § 3142(f)(2).

Mr. Smirnov also requests that, having reopened the detention hearing, this Court release him under 18 U.S.C. § 3142(g), pursuant to: 1) the previously imposed conditions of release, 2) the previously volunteered conditions of release, 3) the new condition (24-hour monitoring of Mr. Smirnov), as discussed below, and 4) any additional conditions imposed by this Court.

Mr. Smirnov further requests that this matter be set for a hearing before this Court.

This Motion is made and based upon the attached Memorandum of Points and Authorities; the Letter of Dr. H. George Tanaka, M.D. (May 17, 2024) (attached as Exhibit 1); the Letter of Official Security, Inc. (May 16, 2024) (attached as Exhibit 2); the argument of counsel; and any other such evidence as may be presented.

Dated this 23rd day of May, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

　　/s/　　David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

# MEMORANDUM OF POINTS AND AUTHORITIES

**A. THIS COURT SHOULD REOPEN THE DETENTION HEARING BASED ON THE EMERGENCE OF NEW INFORMATION, UNDER 18 U.S.C. § 3142(f)(2).**

On February 26, 2024, this Court held a hearing on the government's application for review of the Magistrate Judge's order releasing Mr. Smirnov on conditions, under 18 U.S.C. § 3142. At the conclusion of the hearing, this Court entered an order that Mr. Smirnov would be detained (ECF No. 46) and, on March 11, 2024, this Court entered an amended order of detention, finding that "no condition or combination of conditions will reasonably assure . . . the appearance of the defendant as required." ECF No. 57 at 2.

Mr. Smirnov now seeks to reopen the detention hearing under 18 U.S.C. § 3142(f)(2).

A detention hearing may be reopened if the party requesting reopening presents "new information." 18 U.S.C. § 3142(f) (hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community"); *United States v. Flores*, 856 F. Supp. 1400, 1405–07 (E.D. Cal. 1994).

*United States v. Espinoza*, No. CRS08-0448 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009).

The statutorily mandated "new information" exists here. Specifically (and, as this Court is aware), Dr. H. George Tanaka advised on May 17, 2024 as to the *current* status of Mr. Smirnov's eye disease:

- "[M]y patient, Alexander Smirnov, . . . carries a diagnosis of severe open angle glaucoma in both eyes . . . . [C]ontinued ophthalmologic care is essential to maintain Mr. Smirnov's eyesight.

- "Glaucoma is a progressive and incurable disease that requires daily eyedrop medications to prevent irreversible and permanent blindness. Santa Ana City Jail officials have confiscated my patient's eye drops . . . because 'the eye drops are for pre-operative care.' This statement is completely erroneous and untrue. Glaucoma

        patients are required to take daily eye drop medications . . . to prevent irreversible blindness.

- "Withholding Mr. Smirnov's eye drops is tantamount to allowing [him] to go blind . . . . Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail officials."

- "In my professional opinion Mr. Smirnov's visual health would be best served by releasing him from custody so that I may immediately resume appropriate sight-saving therapy including all necessary glaucoma medications and promptly schedule and perform his long overdue glaucoma surgery."

Exhibit 1 (May 17, 2024) at 1 (full letter).

Mr. Smirnov submits that Dr. Tanaka's May 17 assessment could not have been known back in February, when Mr. Smirnov first appeared before this Court. While Mr. Smirnov did, from his earliest filings, note that he suffered from eye disease (*see, e.g.*, ECF No. 33 (Feb. 23, 2024) at 5 ("Mr. Smirnov suffers from significant medical issues related to his eyes that require ongoing treatment. [He] has had seven surgeries in the last year; he must take prescription medication daily.")), his eye disease has—as Dr. Tanaka points out—grown far worse over the nearly three months that he has been in custody. *See*, *e.g.*, Ex. 1 at 1 (on May 17, Dr. Tanaka warns of potential blindness at least four times). For this reason, therefore, this Court should reopen the detention hearing under 18 U.S.C. § 3142(f)(2).[1]

---

[1] As an additional basis to reopen the detention hearing, undersigned counsel learned on May 23 that the United States Marshal, understandably concerned about Dr. Tanaka's urgent warnings about Mr. Smirnov's eyesight, just transferred him from the Santa Ana jail to the MDC in Los Angeles, where they decided to place Mr. Smirnov in the Secure (Special) Housing Unit ("SHU") of that facility.

Mr. Smirnov's internment in the SHU may complicate his medical treatment (namely, his receipt of his three types of eye drops and his long-overdue surgery) and impair his trial preparation. Specifically, placement in the SHU will make Mr. Smirnov very isolated and will deprive him of what he and his attorneys need to prepare his defense: we need to have access to a computer and to a laptop or tablet (which were available at Santa Ana), as well as a

1  **B.  REASONABLE CONDITIONS OF RELEASE—NAMELY, 1) THE CONDITIONS IMPOSED BY THE MAGISTRATE JUDGE, 2) THE ADDITIONAL CONDITIONS PROPOSED BY MR. SMIRNOV, *AND* 3) THE NEW, ADDITIONAL CONDITION OF 24-HOUR MONITORED SECURITY— SHOULD BE IMPOSED TO ENSURE MR. SMIRNOV'S APPEARANCE, UNDER 18 U.S.C. § 3142(g).**

It is unquestioned that the Bail Reform Act erects a presumption in favor of pretrial release in cases such as Mr. Smirnov's. *See* 18 U.S.C. § 3142(e)(2),(3).[2]

It is unquestioned that, when he was previously released on conditions in this case, Mr. Smirnov—far from trying to flee—maintained full compliance and was, in fact, rearrested in his attorney's office in Las Vegas while on a break from a defense preparation meeting with Mr. Schonfeld and the undersigned counsel. *See* ECF No. 33 at 10-12 (magistrate judge adds the following conditions of release on top of those recommended by pretrial services: requiring that "you . . . seek employment" but that "you're not going to be able to continue with your consulting business while this case is pending;" that, "I'm not going to allow foreign travel. In fact, I'm not going to allow *any* travel;" that "[y]ou're to surrender your U.S. passport and your

---

private interview room not separated by a partition (as exists in the SHU), but similar to the attorney rooms in the visiting area at MDC. In addition, Mr. Smirnov's telephone and e-mail access (which he has been using consistently to communicate with us) has been completely restricted in the SHU. Even today, he had to get special assistance from a guard just to call me to tell me he had been moved.

2   As argued previously, the Section 3142(g) factors preponderate in favor of presumptive release. *See, e.g.*, ECF No. 33 at 15-21 (applying factors and presumptive, as required under *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).

Moreover, Dr. Tanaka's recent prediction of Mr. Smirnov's worsening "physical . . . condition" and blindness further strengthens the presumption of release. *See* 18 U.S.C. § 3142(g)(3)(A) (among factors to consider is "physical . . . condition"); *see also, e.g., United States v. Montgomery*, 481 F. Supp. 3d 1179, 1183 (E.D. Wash. 2020) (ruling that wholesale release from incarceration is warranted where, among other factors, "Defendant's advanced age and *medical condition* have alleviated any risk Defendant previously posed to the community") (emphasis added).

5

Israeli passport . . . immediately;" that "you shall not obtain a passport or *any other* international travel documents;" that "your travel is restricted to Clark County, Nevada . . . . [Y]ou are not allowed to go to that airport.") (quoting detention hearing before Honorable Magistrate Judge Daniel Albregts).[3]

To this host of conditions, Mr. Smirnov now proposes another one for this Court's consideration: round-the-clock monitored security, paid for by Mr. Smirnov. As set forth in the Letter of Daryl Cronfeld, CEO and Licensee of Official Security, Inc. ("OS") (May 16, 2024) (attached as Exhibit 2), Official Security is a licensed, experienced company that has, since 1978, provided trained protection teams to monitor every aspect of the movement and location of their subject (here, Mr. Smirnov). *See* Ex. 2 at 1-2 (describing OS's experience; noting that "[o]ur team will not deviate from any Court [approved] travel location unless it is cleared by the Attorney;" and emphasizing that OS's employees are prescreened for drug use, English-speaking or bilingual, and trained in self-defense protection).[4]

Having spoken at length with Mr. Cronfeld regarding monitoring mechanisms to ensure Mr. Smirnov's compliance (and, of course, non-flight), undersigned counsel understands that OS would monitor Mr. Smirnov round-the-clock from his Las Vegas apartment. His apartment

---

[3] Moreover, in addition to the foregoing, Mr. Smirnov personally proposed that still more conditions be imposed upon him while on pretrial release. *See* ECF No. 34 at 3-4 (proposing 1) posting of corporate surety bond, 2) appointment of third-party custodian, 3) imposition of house arrest (with sole exceptions for medical treatment and meetings with attorneys), 4) appointment of special master to oversee financial dealings, and 5) execution of a waiver of extradition; further noting that Counsel for Consular Affairs at the Israeli Consulate in Los Angeles assured undersigned counsel that, if requested by Judge Wright, the Israeli consulate and Embassy will *not* reissue a passport to Mr. Smirnov.

[4] Should this Court request it, undersigned counsel will have Mr. Cronfeld or a company representative attend any hearings (in-person or via Zoom) and answer any questions posed by this Court.

6

is served by a private elevator (this is, it opens on a floor that contains only his apartment), and, should this Court order it, OS personnel can be stationed inside Mr. Smirnov's apartment, 24-hours a day, to reduce even further the chance of escape.

OS would, if hired, immediately report both to this Court and to the pretrial services offices in Nevada, the Central District of California, or both. Undersigned counsel would get permission in advance from this Court and from the pretrial services office before any attorney meeting or doctor's appointment took place. And finally, this Court (or any member of this Court's staff) will be able to contact OS at any time to ensure that Mr. Smirnov was in just one of three places—his apartment, his lawyer's office, or his doctor's office—and nowhere else.[5]

It is difficult to imagine a half-blind man "fleeing" under such conditions. To do so, one must conjure a scenario in which Mr. Smirnov evades his 24-hour security team, gropes his way blindly to the airport (presumably in disguise), bluffs his way onto an international flight without a passport, and makes a new life for himself under a new name, in a country without an extradition treaty. This scenario—farcical enough on its face—approaches the realm of fantasy when we recall that Mr. Smirnov, far from facing the death penalty or a long custodial sentence if convicted, faces two simple charges carrying guideline ranges so modest that, even if convicted at his December 2024 trial, he will by then have served more than one-third of the low-end of the anticipated advisory range. *See* ECF No. 33 at 4, n.1 (under U.S.S.G. § 2J1.2.1 and with "every conceivable guideline enhancement," advisory sentencing range would still be just 30-37 months). The idea that "*no* condition or combination of conditions" of release can be

---

[5] As noted in Ex. 2, OS will arrange to transport (or, should this Court require it, personally transport) Mr. Smirnov to and from these authorized destinations in secure vehicles. *See id*. at 1. Should Mr. Smirnov somehow pull off a functionally impossible escape during an attorney visit or doctor's appointment, he will not get past OS personnel at the airport. *See id*. (OS "interface[s] with the local airports" so their personnel can "ingress and egress through certain areas" to better monitor the subjects).

7

fashioned to ensure Mr. Smirnov's future appearances under these circumstances (and, in the face of such modest punishment) is, therefore, not tenable.

C.  **CONCLUSION**

Mr. Smirnov would readily accept the imposition of all the foregoing conditions of release, together with any new conditions that this Court deems necessary.

For this reason, Mr. Smirnov respectfully requests that this Court reopen the detention hearing and order him released on appropriate conditions under the Bail Reform Act.

Mr. Smirnov further requests that set Court set a time and date for a hearing on this Motion.

DATED this 23rd day of May, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/      David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for ALEXANDER SMIRNOV

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of May, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

      /s/ Camie Linnell
Employee of Chesnoff & Schonfeld