DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:24-CR-00091-ODW |
| v. | ) | |
| | ) | |
| ALEXANDER SMIRNOV, | ) | |
| | ) | Honorable Otis D. Wright II |
| Defendant, | ) | August 26, 2024 at 10:00 a.m. |
| _____ | ) | |

## **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISQUALIFY THE SPECIAL COUNSEL AND DISMISS THE INDICTMENT IN THIS CASE**

PLEASE TAKE NOTICE that on August 26, 2024, at 10:00 am, or as soon

thereafter as counsel may be heard, Defendant, ALEXANDER SMIRNOV ("Mr.

Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and

RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF &

1

SCHONFELD, will ask this Honorable Court to grant his Motion to Disqualify David C. Weiss (Special Counsel), Leo J. Wise (Principal Senior Assistant Special Counsel), Derek E. Hines (Senior Assistant Special Counsel), and Sean F. Mulryne and Christopher M. Rigali (Assistant Special Counsels), and dismiss the Indictment (ECF No. 1, Feb. 14, 2024) in this case.

This Motion is made and based upon the attached Memorandum of Points and Authorities; the argument of counsel; and any other such evidence as may be presented. Counsel has conferred regarding the substance of this Motion and have been unable to resolve the issues.

Dated this 15th day of July, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

 /s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This prosecution is not legally authorized because 1) Mr. Weiss (and, by implication, his team, consisting of Messrs. Wise, Hines, Mulryne and Rigali) was unlawfully appointed as Special Counsel, and 2) Congress has not appropriated funds for either the investigation or prosecution of Mr. Smirnov.

Mr. Smirnov respectfully asserts that the appointment of Mr. Weiss as Special Counsel in this case violates both the Appointments Clause and the Appropriations Clause of the United States Constitution. First, as set forth in by the United States District Court for the Southern District of Florida in *United States v. Donald J. Trump, et al.*, Case 9:23-cr-80101-AMC (July 15, 2024) (Cannon, J.) ("Fla. Order"), the instant appointment violates the Appointments Clause and, as a remedy, compels dismissal of the Indictment. *See infra* at § II(A).

Second, and alternatively, Mr. Smirnov asserts that the instant appointment violates the Appropriations Clause of the Constitution. In two other cases that are comparable to Mr. Smirnov's (that is, cases where Robert Hunter Biden was a named defendant (*see* Case Nos. 2:23-cr-00599-MCS-1 (C.D. Cal.) and 1:23-cr-00061-MN (D. Del.)), Attorney General Garland explained: "Mr. Weiss will also continue to serve as U.S. Attorney for the District of Delaware," and Mr. Weiss

has done so.[1] Those appointments—like the one in Mr. Smirnov's case—is precluded by the Department of Justice's own regulations setting the "Qualifications of the Special Counsel," which provide: "The Special Counsel shall be selected from *outside* the United States Government." 28 C.F.R. § 600.3 (emphasis added).

In addition to not being qualified to serve as Special Counsel, the Special Counsel's funding for this investigation and prosecution was not approved by Congress, which violates the Appropriations Clause. *See* U.S. Const. art. I, § 9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequences of Appropriations made by Law.").

But this Special Counsel's Office was not funded by monies approved by Congress; rather, DOJ is funding the investigation from an unlimited account established in 1987 to pay for independent counsels. *See United States v. Biden*, No. 1:23-cr-00061- MN (D. Del.) (ECF No. 72 at 2). Mr. Weiss, however, is not an Independent Counsel, he is a Special Counsel, and that difference in authority makes a major difference in terms of his independence.

Compounding the problem, the Attorney General appointed one of his own subordinates to the Special Counsel position in violation of DOJ's own regulations requiring that the Special Counsel be selected from *outside* the government. The

---

[1]     *See* https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-statement (Aug. 11, 2023).

whole point of that regulation is to provide for the Special Counsel's independence from the federal government. Special Counsel Weiss, however, is not an independent counsel subject to any valid appropriation by Congress. Accordingly, the Indictment should be dismissed as Special Counsel Weiss was not authorized to obtain the Indictment or prosecute this case. *See, e.g., United States v. Pisarski*, 965 F.3d 738, 743 (9th Cir. 2020) (affirming injunction against further prosecution because the prosecution violated the Appropriations Clause); *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016) ("[I]f DOJ were . . . drawing funds from the Treasury without authorization by statute[, it would thus be] violating the Appropriations Clause.   That Clause constitutes a separation-of-powers limitation that Appellants can invoke to challenge their prosecutions.").

## II.   <u>ARGUMENT</u>

### A.   *The Appointment of Special Counsel in this Case Violates the Appointments Clause, as Explained in the Florida Order and Justice Clarence Thomas's Concurring Opinion in Trump v. United States.*

Mr. Smirnov asserts that—as recently opined by Justice Thomas in *Trump v. United States*, 144 S. Ct. 2312 (2024) and, as even more recently *held* by the Honorable Aline M. Cannon, United States District Judge for the Southern District of Florida—the instant appointment violates Article II, Section 2, Clause 2 of the United States Constitution:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public

5

Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

Art. II, § 2, cl. 2 (quoted in Fla. Order at 3 and *Trump v. United States*, 144 S. Ct. 2312, 2348 (2024) (Thomas, J., concurring)).

As described in Judge Cannon's seminal ruling:

The Appointments Clause is a critical constitutional restriction stemming from the separation of powers, and it gives to Congress a considered role in determining the propriety of vesting appointment power for inferior officers. The Special Counsel's position effectively usurps that important legislative authority, transferring it to a Head of Department, and in the process threatening the structural liberty inherent in the separation of powers. If the political branches wish to grant the Attorney General power to appoint Special Counsel Smith to investigate and prosecute this action with the full powers of a United States Attorney, there is a valid means by which to do so. He can be appointed and confirmed through the default method prescribed in the Appointments Clause, as Congress has directed for United States Attorneys throughout American history, *see* 28 U.S.C. § 541, or Congress can authorize his appointment through enactment of positive statutory law consistent with the Appointments Clause.

Fla. Order at 3.

The Appointments Clause "prescribes the exclusive means of appointing 'Officers of the United States.'" Fla. Order at 12 (quoting *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 244 (2018)). An "Officer of the United States," . . . is any appointee [1] who exercises "significant authority pursuant to the laws of the United States," *Buckley v. Valeo*, 424 U.S. 1, 126 (1976), and [2] who occupies a

"'continuing' position *established by law*," *Lucia*, 585 U.S. at 245 (quoting *United States v. Germaine*, 99 U.S. 508, 511–12 (1878)); *Edmond v. United States*, 520 U.S. 651, 662 (1997) ("The exercise of 'significant authority pursuant to the laws of the United States marks not the line between principal and inferior officer for Appointments Clause purposes, but rather, as we said in *Buckley*, the line between officer and nonofficer." (quoting *Buckley*, 424 U.S. at 126)) (emphasis added) (quoting by Fla. Order at 12-13).

After explaining—with regard to the "established by law" admonishment set forth in *Lucia*, 585 U.S. at 245—the Florida Order reviewed the lengthy historical backdrop of the Appointments Clause:

> The Appointments Clause establishes "two classes" of Constitutional officers: "principal" officers and "inferior" officers. *Germaine*, 99 U.S. at 509–10. Principal officers must be appointed by the President, with the advice and consent of the Senate. Art. II, § 2, cl. 2; *Edmond* [*v. United States*], 520 U.S. [651,] 659 [(1997)]; *United States v. Arthrex, Inc.*, 594 U.S. 1, 12 (2021). That mechanism—Presidential nomination and Senatorial confirmation—is the "default manner of appointment" for principal and inferior officers. *Arthrex, Inc.*, 594 U.S. at 12. But the Appointments Clause provides another means to facilitate inferior-officer appointments, and it does so through the so called "Excepting Clause." *Edmond*, 520 U.S. at 660. That clause permits Congress—"by law," and as it "thinks proper"—to "vest" the appointment of such inferior officers in three places, and only three places: "in the president alone, in the Courts of Law, or in the Heads of Departments." Art. II, § 2, cl. 2. But "any decision to dispense with Presidential appointment and Senate confirmation *is Congress's to make*, not the President's." *Weiss v. United States*, 510 U.S. 163, 187 (1994) (Souter, J., concurring) (emphasis added) . . . .

Importantly, the Framers considered, and initially maintained, a proposal by which the President alone would have had the authority to "'appoint officers in all cases not otherwise provided for by this Constitution.'" *Morrison* [*v. Olson*], 487 U.S. [654,] 675 [(1988) (quoting 1 Records of the Federal Convention of 1787, pp. 183, 185 (M. Farrand ed. 1966)). That proposal, however, was replaced on September 15, 1787, when Gouverneur Morris moved to add the Excepting Clause to Article II, which was adopted shortly thereafter. That left Congress with an important—though circumscribed—role in vesting appointment authority for inferior officers. *Id*. The Framers' rejection of unilateral executive-appointment authority traces its roots to the American colonial experience with the English monarchy and to the Framers' desire to limit executive aggrandizement by requiring shared legislative and executive participation in the area of appointments. *See Edmond*, 520 U.S. at 559–660; *Freytag v. Comm'r*, 501 U.S. 868, 884 (1991) (examining historical sources on the subject of executive appointment-power abuses); *Weiss*, 510 U.S. at 184 (1994) (Souter, J., concurring) (discussing Framers' awareness of the English monarchy's pre-revolutionary "manipulation of official appointments" and corresponding recognition "that lodging the appointment power in the President alone would pose much the same risk as lodging it exclusively in Congress: the risk of an incautious or corrupt nomination." (internal quotation marks and brackets omitted)); *Trump v. United States*, 144 S. Ct. 2312, 2349 (2024) (Thomas, J., concurring).

For these and other reasons, and as the Supreme Court has emphasized, the Appointments Clause is "more than a matter of 'etiquette or protocol;' it is among the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. at 659 (quoting *Buckley*, 424 U.S. at 124 (emphasis added)); *see Buckley*, 424 U.S. at 132 (referring to the Appointments Clause as setting forth "well-established constitutional restrictions stemming from the separation of powers"). Indeed, it is rooted in the separation of powers fundamental to our system of government and to the limitations built into that structure—all of which aim to prevent one branch from aggrandizing itself at the expense of another. *Freytag*, 501 U.S. at 878 ("The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political. Our separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch."). The

Appointments Clause also preserves "the Constitution's structural integrity by preventing the diffusion of the appointment power" and thus enhancing democratic accountability. *Id*. at 878; id. at 884–86 (explaining that the Appointments Clause protects democratic accountability by limiting "the distribution of the appointment power" to "ensure that those who wielded it were accountable to political force and the will of the people"); *Ryder v. United States*, 515 U.S. 177, 182 (1995).

Turning to the Excepting Clause more specifically, the Appointments Clause requires that any Congressional decision to vest inferior-officer appointment power must be made by "Law"—meaning statutory law, as all parties rightly agree . . . . Art. II, § 2 cl. 2. This "Law," it bears noting, is a means by which Congress, in the words of the Clause, can express its determination of whether it is "proper" to vest such appointment power in one of the three circumscribed repositories. *Id*. (providing that "Congress may *by Law vest* the Appointment of such inferior Officers, *as they think proper*, in the President alone, in the Courts of Law, or in the Heads of Departments") (emphasis added).

Fla. Order at 13-15; *see also id*. at 67-80 (discussing the principles governing "inferior officers" versus "principal officers").

Applying these and other principles (including those under the Appropriations Clause) to the appointments issue raised in *United States v. Trump, et al.*, the District Court concluded that the appointment of the Special Counsel in that case—functionally indistinguishable from the appointment made in Mr. Smirnov's case—was unconstitutional. *See* Fla. Order at 71-81 (explaining why there is an absence of "law" for the Special Counsel's appointment); 83 (remedy is dismissal, because the Special Counsel in that case—like Special Counsel David C. Weiss in Mr. Smirnov's case—has been exercising "power that [he] did not

lawfully possess." *Collins* [*v. Yellen*,] 594 U.S. 220, 258 [(2021)]; 83-84 ("All actions that flowed from his defective appointment—including his seeking of the Superseding Indictment on which this proceeding currently hinges—were unlawful exercises of executive power."); 86-87 (under Appropriations Clause, "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. Art. I, § 9, cl. 7); 87-89 (ruling that the "other law" cited to justify the "indefinite appropriation" in *United States v. Trump, et al.* was deficient because: 1) there was no statutory authority for the appointment (as discussed in Fla. Order at 22-52); and 2) the application regulations cannot "serve as other law for purposes of Indefinite Appropriations"); 89-91 (suggesting that remedy for Appropriations Clause violation IS dismissal, but adding that "the disposition of this Order on Appointments Clause grounds" alone resolves the issue).

### B. Alternatively, Pursuant to Applicable Regulations, Mr. Weiss Was Unlawfully Appointed Special Counsel

#### (i) Mr. Weiss Is Ineligible To Be Appointed Special Counsel

DOJ's regulations setting the qualifications for a Special Counsel are explicit, and they have been violated here. The regulation is not ambiguous: "The Special Counsel *shall* be selected from *outside* the United States Government." 28 C.F.R. § 600.3 (emphasis added). That plainly has not been met. *See supra* n.1.

Attorney General Garland's appointment of Special Counsel Weiss highlights the irregularity. The Attorney General's appointment explicitly stated:

"Sections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel." DOJ Order 5730-2023 (Aug. 11, 2023). These are the provisions of the Special Counsel regulations governing the scope of the authority and responsibilities of a Special Counsel. Notably, Attorney General Garland recognizes the applicability of these parts of the regulations that apply to the Special Counsel's actions, but not the very preceding section of the same regulations that restricts the Attorney General's authority to select who may be a Special Counsel. In this regard, the Attorney General had no lawful basis to pick and choose what parts of an integrated regulation to apply. The prosecution of Mr. Smirnov thus assumes not only that the Executive Branch is endowed with a power that is non-existent, but also that the separation-of-powers mandate that undergirds our Constitutional system can be ignored whenever the Executive wishes.

The regulatory requirement specifying that the Special Counsel be someone chosen from outside the United States government is another important provision, one imposed after careful deliberation. After the Independent Counsel Reauthorization Act of 1994 expired in 1999, then-Attorney General Janet Reno replaced the procedures for appointing Independent Counsel with these new regulations for selecting a Special Counsel.

In crafting the role of both the Independent Counsel and Special Counsel, the central struggle was to strike the right balance between independence and accountability. Where there is a conflict of interest within DOJ or a concern with political pressure within the government,  independence is important, on the one hand. On the other hand, there was a concern that too much independence could lead to a lack of supervision and accountability.

To begin with, this case presents a conflict-of-interest so evident that it cannot be reasonably denied. *This* case alone involves the Attorney General of the United States (Mr. Garland, who was selected by the current President) selecting another member of the Executive Branch (Mr. Weiss) to prosecute Mr. Smirnov for allegedly lying about the very man (that is, the President) who: 1) sits at the head of the Executive Branch *and* 2) appointed Mr. Smirnov's Executive Branch prosecutors in the first place. Mr. Smirnov respectfully suggests that the facts underlying his prosecution are even more egregious than those underlying President Trump's Florida prosecution, in that now-dismissed case.

Congress and DOJ abandoned the Independent Counsel regime precisely because it afforded Independent Counsel too much independence.

Then-Deputy Attorney General Eric Holder testified before Congress that "nearly every living former attorney general" opposed reauthorizing the Independent Counsel statute, and he explained:

> [The Act] vests this immense prosecutorial power in an inferior officer who is not subject to the ordinary controls of any branch of government; and this officer is someone who has not been confirmed by the Senate and who, as former Attorney General Barr stated, is not subject to the same sort of oversight or budgetary constraints that the publicly accountable Department of Justice faces day in and day out. . . . Independent counsel are largely insulated from any meaningful budget process, competing public duties, time limits, accountability to superiors and identification with the traditional long-term interests of the Department of Justice. This insulation contributes greatly to the independence of these prosecutors, but it also eliminates the incentive to show restraint in the exercise of prosecutorial power. [These factors] provide an impetus to investigate the most trivial matter to an unwarranted extreme . . . . An independent counsel who does not indict faces criticism for wasting both his time and the taxpayers' good money. As the old adage, adapted from Mark Twain, goes: "To a man with a hammer, a lot of things look like nails that need pounding."[2]

DOJ explained its regulations for the newly created Special Counsel position would strip the former Independent Counsel role of its independence where it mattered. Despite providing limited discretion, DOJ explained: "Nevertheless, it is intended that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General . . . . ; thus, the regulations explicitly

---

[2]    The Independent Counsel Act, Hearing Before the Subcomm. on Commercial and Administrative Law, on the Judiciary, 106th Cong. (Mar. 2, 1999) (Holder remarks), https://www.justice.gov/archive/dag/testimony/ictestimonydag.htm.

acknowledge the possibility of review of specific decisions reached by the Special

Counsel." 64 FR 37038-01 (July 9, 1999).

In creating a less independent role for the Special Counsel, DOJ's

regulations still preserved the Independent Counsel Act's exclusion for those U.S.

government employees. *Compare* 28 U.S.C. § 593(b)(2) ("[T]he court may not

appoint as an independent counsel any person who holds any office of profit or

trust under the United States."), *with* 28 C.F.R. § 600.3 ("The Special Counsel

shall be selected from outside the United States Government."). It defies all

notions of independence from the government to appoint someone to either

position who is not independent of the government, but a part of it.

(ii)    <u>DOJ Is Bound By Its Own Regulations</u>

Although the Attorney General has broad statutory authority to appoint a

Special Counsel, the Attorney General is bound by DOJ's own regulations as to

who is qualified to be a Special Counsel. An "agency must follow its own

regulations; 'it is a well-settled rule that an agency's failure to follow its own

regulations is fatal to the deviant act.'" *Mine Reclamation Corp. v. FERC*, 30 F.3d

1519, 1524 (D.C. Cir. 1994) (citation omitted). Even where the Attorney General's

statutory authority is "relatively unconstrained," the government concedes when

regulations have "constrained the Attorney General's exercise of discretion" due to

the "'well-known maxim that agencies must comply with their own regulations.'"

*Andriasian v. INS*, 180 F.3d 1033, 1046 & n.22 (9th Cir. 1999) (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)).

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court found the Attorney General bound by his own regulations concerning his appointment of the Special Prosecutor in the Watergate case. President Nixon claimed the power (as head of the Executive Branch) to derail the investigation into him, or to order his Attorney General to do so; but the Court disagreed and stated that the authority to represent the United States had been conferred upon the Attorney General, who had delegated that authority to the Special Prosecutor, consistent with DOJ's then-current regulations. Thus, "it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it." *Id*. at 696.[3]

This outcome was practically dictated by *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), a habeas case, where the petitioner challenged the Attorney General's violation of his rights under DOJ regulations to seek a

---

[3]    Mr. Smirnov notes that Judge Cannon's ruling does not address the "regulations" proposition discussed in the text, cited by *Nixon* at page 696. *Compare* Fla. Order at 53-67 (instead discussing proposition cited by *Nixon* Court *at pp. 694-95*, noting that the Appointments Clause "has also vested in [the Attorney General] the power to appoint subordinate officers to assist him in the discharge of his duties. 28 U.S.C. §§ 509, 510, 515, 533.").

suspension of his deportation. There, the Attorney General had—by regulation—delegated his authority on such matters to the Board of Immigration Appeals to decide, but the Attorney General subsequently expressed his view that petitioner's application be denied. The *Accardi* Court reversed the application's denial because "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner." *Id*. at 267; *see also Nixon*, 418 U.S. at 696 ("The Court held [in *Accardi*] that so long as the Attorney General's regulations remained operative, he denied himself the authority to exercise the discretion delegated to the Board even though the original authority was his and he could reassert it by amending the regulations.").[4]

The bottom line here is that DOJ's regulations flatly precluded Attorney General Garland from appointing Mr. Weiss as Special Counsel. If the Attorney General no longer wishes to be bound by those regulations, he should look into having them changed. Until then, however, the regulations remain binding and should be enforced.  Because the Indictment in this case was filed by an unauthorized Special Counsel, it must be dismissed.

---

[4]  In addition to *Accardi*, *Nixon* also cited *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (holding that Secretary of the Interior cannot discharge employee without following own procedural regulations), and *Service v. Dulles*, 354 U.S. 363 (1957) (same for Secretary of State).

**B.      *DOJ Violates the Appropriations Clause by Funding This Special Counsel's Investigation and Prosecutions***

Like the funds spent on the Hunter Biden prosecutions, the funds spent on Special Counsel Weiss's investigation and prosecution of Mr. Smirnov have not been appropriated by Congress, as required by the Appropriations Clause. Instead, DOJ is funding Special Counsel Weiss's prosecution through an appropriation established in a Note to 28 U.S.C. § 591: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 *et seq*. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987 (emphasis added). Section 591 and other Independent Counsel regulations expired in 1999. 28 U.S.C. § 599. Attorney General Garland's appointment of Special Counsel Weiss relies on other law, 28 U.S.C. §§ 509, 510, 515 and 533, none of which authorize the appointment of an independent counsel for purposes of the Section 591 independent counsel fund. Attorney General Garland, Order 5730-2023 (Aug. 11, 2023).

By design, Special Counsel Weiss is not an "independent" counsel. And again, the word "independent" is used to create a structural prohibition by insisting that the person not be a member of the federal government. This appropriation for "independent counsel" was created in 1987, when "independent" was understood to refer to the circumstances that then-existed concerning the role of an

17

Independent Counsel and the reference to "other law" would mean a role close to it in terms of independence. As noted, the Special Counsel regulations adopted in 1999 were designed to eliminate that sort of independence by creating the new role of Special Counsel, which would not be independent. *See, e.g.*, Daniel Huff, Robert Mueller Has A Money Problem, Wall St. J. (Mar. 24, 2019), https://www.wsj.com/articles/robert-mueller-has-a-money-problem-11553468712 (limited independence of Special Counsel not subject to the appropriation for independent counsel).

Not only did the Attorney General disregard the regulation requiring appointment of a Special Counsel from outside of the government; the Attorney General did not even select a Special Counsel from outside his own agency. Thus, Special Counsel Weiss has less independence than even the Special Counsel regulations were meant to confer. By choosing a subordinate from within DOJ, there is not even a veneer of independence. Mr. Weiss cannot be both "independent" of DOJ and a part of DOJ.

The Appropriations Clause is strictly enforced. *See, e.g., U.S. Dept. of Navy v. Fed. Labor Relations Auth.*, 665 F.3d 1339, 1342 (D.C. Cir. 2012) (Kavanaugh, J.,) ("Decisions of the Supreme Court and this Court have strictly enforced the constitutional requirement, implemented by federal statutes, that uses of appropriated funds be authorized by Congress."). The Clause conveys a

"straightforward and explicit command": No money "can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (citations omitted). An appropriation must be expressly stated; it cannot be inferred or implied. *Accord* 31 U.S.C. § 1301(d) ("A law may be construed to make an appropriation out of the Treasury . . . only if the law specifically states that an appropriation is made.").

And a prosecution brought in violation of the Appropriations Clause must be dismissed. *See, e.g., Pisarski*, 965 F.3d at 741; *McIntosh*, 833 F.3d at 1174; *see also Collins v. Yellin*, 141 S. Ct. 1761, 1781 (2021) ("As we have explained on many prior occasions, the separation of powers is designed to   preserve the liberty of all the people . . . . So whenever a separation-of-powers violation  occurs, any aggrieved party with standing may file a constitutional challenge"); *Sheila Law LLC v. Consumer Fin. Protec. Bureau*, 140 S. Ct. 2183, 2196 (2020) (defendant could challenge enforcement action where agency lacked authority under the Appointments Clause); *Bond v. United States*, 564 U.S. 211, 220 (2011) (defendant could challenge indictment on federalism grounds).

As the victim of an unauthorized and improperly funded prosecution, therefore, Mr. Smirnov has standing to challenge this *ultra vires* Indictment.

### III.   **<u>CONCLUSION</u>**

This present Indictment (ECF No. 1, Feb. 14, 2024) was brought by an unauthorized Special Counsel with funds that were not appropriated by Congress. The Court should thus dismiss the Indictment.

DATED this 15th day of July, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell____
Employee of Chesnoff & Schonfeld