DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6090
    E-mail:   LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:   SFM@usdoj.gov; christopher.rigali2@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER PURSUANT TO SECTION 3 OF THE CLASSIFIED INFORMATION PROCEDURES ACT<br><br>Hearing Date:  September 9, 2024<br>Hearing Time:  1:30 p.m.<br>Location:  Courtroom of the Hon.<br>    Otis D. Wright II |

The United States of America, by and through its counsel of record, hereby submits this reply brief in support of its Motion for a Protective Order Pursuant to Section 3 of the Classified Information Procedures Act, ECF No. 96.  To specifically address an issue raised in Defendant's opposition papers, the Government is also filing (on today's date) a classified supplement to this reply brief; the classified supplement will be filed electronically with the Classified Information Security Officer, W. Scooter Slade.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: August 26, 2024 | Respectfully submitted, |
| 3 | | |
| 4 | | DAVID C. WEISS<br>Special Counsel |
| 5 | | |
| 6 | | LEO J. WISE<br>Principal Senior Assistant Special Counsel |
| 7 | | |
| 8 | | DEREK E. HINES<br>Senior Assistant Special Counsel |
| 9 | | |
| 10 | | SEAN F. MULRYNE<br>Assistant Special Counsel |

/s/ Christopher M. Rigali

CHRISTOPHER M. RIGALI
Assistant Special Counsel
United States Department of Justice

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to the Court's order granting the Government's motion under Section 4 of the Classified Information Procedures Act ("CIPA") and Federal Rule of Criminal Procedure 16(d)(1), the Government is ready to produce a limited amount of classified discovery to Defendant's cleared counsel. The only thing holding up that production of classified information is Defendant's objection to the entry of a protective order that governs the handling, disclosure, and use of classified information.

After good faith negotiations over the terms of a protective order broke down, the Government moved for a protective order (the "Proposed Protective Order" or "PPO"). The Government moved for such an order pursuant to the general supervisory powers of the Court, Section 3 of CIPA, the Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information (reprinted after Section 9 of CIPA), and Rules 16 and 57 of the Federal Rules of Criminal Procedure. <u>The Proposed Protective Order contains a number of reasonable, circumscribed measures aimed at preventing the unauthorized disclosure or retention of classified information</u>. For example, the Proposed Protective Order (1) provides that any classified information produced by the Government to cleared defense counsel "shall be stored, maintained and used only in the Secure Area established by the CISO, unless otherwise authorized by the CISO," PPO ¶ 23(a); (2) prohibits defense counsel from disclosing classified information to "any person, except the Court, government personnel who hold appropriate security clearances and have been determined to have a need-to know that information, and those specifically authorized to access that information pursuant to this Order or any future Order of the Court," PPO ¶ 7; (3) prohibits defense counsel, who will be given access to classified discovery, "from making public or private statements where the statements would reveal personal knowledge from non-public sources regarding the classified status of the information," PPO ¶ 9; and (4) directs the parties to follow the procedures prescribed by CIPA

governing the use of classified information in a criminal litigation, PPO ¶ 22, including Section 5, which requires the defense to provide advanced notice "[i]f [he] reasonably expects to disclose or cause the disclosure of classified information in any manner in connection with any trial or pretrial proceedings involving the criminal prosecution of such defendant," 18 U.S.C. App. III, § 5.

Defendant challenges two provisions of the Proposed Protective Order, claiming that these provisions violate rights guaranteed by the First and Sixth Amendments to the Constitution. ECF No. 101, at 5–8. Before delving into the specifics of those challenges, it bears noting that Defendant's arguments disregard entirely the context surrounding the Government's disclosure of classified information in this case. That context includes:

1. Defendant does not have, nor has he ever had, a security clearance (meaning, among other things, that he has never been assessed for suitability to handle classified information);
2. Defendant <u>does not know all of the classified information that will be produced in classified discovery to defense counsel</u> (a representation Government counsel made to defense counsel in seeking to reach an agreement on the terms of a protective order);
3. By his own admission, Defendant has ties to a hostile foreign intelligence service, *see* ECF No. 11, at 10–17; and
4. Because Defendant is a flight risk, he is detained pending trial.

This context is critical to the Government's motion for a protective order, and it augurs in favor of entering the Proposed Protective Order as written.

Turning to the specifics of Defendant's challenges, he first challenges the provision of the protective order (PPO ¶ 6) which authorizes the Government to limit, in the first instance, which classified discovery can be shared with Defendant (as opposed to cleared defense counsel, who will receive in the first instance all of the classified discovery pursuant to the Court's CIPA Section 4 ruling). ECF No. 101, at 2–3. The Court should

2

reject this challenge because restrictions on a defendant's access to classified discovery are supported by case law and, in any event, Defendant's argument on this matter is premature. Under the express terms of the Proposed Protective Order, Defendant may seek relief from the Court if defense counsel subsequently determine that they need to discuss certain items of classified discovery with Defendant; it is incorrect that Defendant would have to disclose his defense strategy to the Government to obtain relief. Given this ability to seek court intervention at a later date, the Government submits that the prudent course is to facilitate the disclosure of classified discovery to defense counsel, who should review and assess that discovery before seeking a court order forcing the disclosure of classified discovery to Defendant, who has never had a security clearance and does not already know all of the information.

Defendant also challenges the provisions of the protective order that place limits on Defendant's ability to use information that he "knows or reasonably should know contains classified information," even if he came to know such information through means other than the Government's discovery, PPO ¶ 2(c)(iv) (defining "classified information" under the terms of the PPO), PPO Addendum – Memorandum of Understanding Regarding Receipt of Classified Information (hereinafter, "MOU"). *See* ECF No. 101, at 2–3, 8–9. Defendant claims a provision of the MOU effectively prohibits him from disclosing classified information and "does not provide any exception to classified information that is already in Defendant's possession or within his knowledge . . . ." *Id.* at 3. This argument depends on a selective quotation of the relevant MOU provision and a flawed understanding of the Proposed Protective Order. While the MOU provision is a general bar on the disclosure of any classified information, regardless of how Defendant came to know it, it permits such disclosures "as expressly authorized by" the Proposed Protective Order; and Paragraph 5 of the Proposed Protective Order, which Defendant does not even reference in his opposition, expressly authorizes Defendant to disclose to his attorneys any classified information relating to this case so long as the

3

disclosures are made in a "secure area" as designated by the Classified Information Security Officer. In other words, while Defendant's brief strongly suggests he is inhibited from making disclosures to his attorneys, that suggestion is misleading—the Proposed Protective Order merely limits how and where he can make such disclosures. Given that this prophylactic measure is narrowly tailored to further the government's interest in safeguarding classified information, Defendant's First Amendment challenge fails.

Because the terms of the Proposed Protective Order are reasonable and narrowly tailored to meet the context of this case, and also permit Defendant to later seek court intervention to address particular issues, the Court should enter the Proposed Protective Order as written.[1]

## II.  ARGUMENT

### a. CIPA and Other Restrictions on a Defendant's Ability to Disclose Classified Information

CIPA contains a number of provisions aimed at preventing unnecessary and unauthorized disclosures of classified information. Among other things, these provisions make clear that a federal criminal defendant does not have unfettered discretion, in the context of classified information, to say whatever he wants, wherever he wants.

Section 3 of CIPA provides statutory authority for a court to enter a protective order protecting against the disclosure of classified information in a criminal case. "[A] CIPA § 3 Protective Order is designed to protect against disclosure by the defense." *United States v. Foggo*, No. 1:08CR79 (JCC), 2008 WL 2388282, at *3 (E.D. Va. June 9, 2008). Section 3 provides: "Upon motion of the United States, the court shall issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." 18 U.S.C. App. III, § 3.

---

[1] The Government is filing with the Classified Information Security Officer (on August 26, 2024) a classified supplement to this reply brief. The classified supplement is necessary to address an issue raised in Defendant's opposition papers.

Recognizing that a criminal defendant who knows or possesses classified information—either through the government's discovery or some other means outside of the case—may seek to use such information in connection with his or her case, CIPA Sections 5 and 6 operate as guardrails against surprise disclosures of classified information by criminal defendants. Section 5, a notice provision, provides:

> If a defendant reasonably expects to disclose or to cause the disclosure of classified information in any manner in connection with any trial or pretrial proceeding involving the criminal prosecution of such defendant, the defendant shall, within the time specified by the court or, where no time is specified, within thirty days prior to trial, notify the attorney for the United States and the court in writing. Such notice shall include a brief description of the classified information. . . . No defendant shall disclose any information known or believed to be classified in connection with a trial or pretrial proceeding until notice has been given under this subsection and until the United States has been afforded a reasonable opportunity to seek a determination pursuant to [CIPA Section 6] . . . .

18 U.S.C. App. III, § 5(a). "If the defendant fails to comply with the requirements of subsection (a) [of Section 5] the court may preclude disclosure of any classified information not made the subject of notification. . . ." *Id.*

Under CIPA Section 6, the court "make[s] all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." *Id.* § 6(a). Sections 6 and 7 contain additional safeguards pertaining to the disclosure of classified information. Among other safeguards, if the court "authoriz[es] the disclosure of specific classified information" by the defense, Section 6 provides that the government "may move that, in lieu of disclosure of such specific classified information, the court order" the substitution of either "a summary of the specific classified information" or "a statement admitting relevant facts that the specific

classified information would tend to prove." *Id.* § 6(c)(1).

In short, these provisions of CIPA make clear that, in the context of a federal criminal prosecution, a defendant does not have free rein to disclose classified information, including information that he came to know through means other than the government's discovery. It bears noting that the Federal Rules of Evidence and federal criminal law also serve as constraints on a defendant's ability to disclose classified information: A defendant testifying in his own defense is constrained by the Rules of Evidence; and all individuals can be subjected to prosecution for willfully disclosing national defense information, *see* 18 U.S.C. § 793(d).

### b. Defendant's Challenges Largely Rest on Flawed Interpretations of the PPO

Defendant's opposition implicates several provisions of the Proposed Protective Order, which are reproduced below for convenience. Notably, several of these provisions were not even referenced in Defendant's opposition papers.

- Paragraph 1: Provides, among other things, that "[t]hese procedures [established by the Proposed Protective Order] will apply to all pretrial, trial, post-trial, and appellate matters concerning classified information and **may be modified from time to time by further Order of the Court** acting under its inherent supervisory authority to ensure a fair and expeditious trial. **Either party may move for a modification of this Order at any time for good cause shown**." (Emphasis added).

- Paragraph 5: "The government, facilitated by the CISO, may disclose classified information to cleared defense counsel in an appropriate secure area. **If the Defendant is aware of classified information relating to this case, the Defendant may also disclose such classified information to cleared defense counsel in an appropriate secure area as necessary for the preparation of his defense**. The defense may not disclose or cause to be disclosed in connection with this case any

6

information known or reasonably believed to be classified information except as otherwise provided herein. Any classified information provided to cleared defense counsel by the government or the Defendant is to be used solely by the defense and solely for the purpose of preparing the defense in this case." (Emphasis added).

- Paragraph 6: "The defense may not disclose classified information to the Defendant unless the government has approved its display to the Defendant and marked it 'For Display to ALEXANDER SMIRNOV, in *United States v. Smirnov*, 2:24-cr-0091.' Classified information that the government discloses to cleared defense counsel shall not be shared with the Defendant unless it is marked 'For Display to ALEXANDER SMIRNOV, in *United States v. Smirnov*, 2:24-cr-0091.' Cleared defense counsel may not confirm or deny to the Defendant assertions made by the Defendant based on knowledge cleared defense counsel obtained from classified information *unless the government has authorized that classified information to be displayed to the Defendant pursuant to this Order*. **Any classified information cleared defense counsel displays to or discusses with the Defendant in any way shall be handled in accordance with this Order, or any future Order, and the attached Memorandum of Understanding, including such requirements as confining all such discussions, documents, and materials to a Secure Area**."

- Addendum – Memorandum of Understanding Regarding Receipt of Classified Information: "(1) I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States Government; **or as expressly authorized by the Court pursuant to the Classified Information Procedures Act and the Protective Order entered in *United States v. Smirnov,* 2:24-cr-00091, in the United States District Court for the Central District of California**." (Emphasis added).

Defendant's first issue is that, pursuant to Paragraph 6, the Government may limit, in the first instance, which classified discovery can be shared with Defendant.

In this case, the Government intends to produce, *in the first instance*, the Court-approved classified summaries to defense counsel alone. Defendant (through counsel) argues that "for the Defendant to be potentially granted access to classified information discovery that the government has not unilaterally deemed him fit to view, Defendant's counsel must communicate a basis upon which the Defendant should be permitted to have expanded access to the restricted discovery," which, they say, "necessitate[s] a divulging of work product," ECF No. 101, at 7, and "its defense strategy," *id.* at 3. This argument fails for several reasons.

As noted in the introduction, Defendant's insistence that all classified discovery be made immediately available not only to his cleared attorneys but also to him personally—even though he has no security clearance, does not know all of the information in the discovery, and resides in a detention facility—ignores the context of the Government's disclosure of classified information. This critical context supports limiting—at least in the first instance—the disclosure of classified discovery to cleared defense counsel.

Defendant acknowledges that "a defendant's rights may need to be satisfied by something less than complete disclosure of classified discovery . . . ." ECF No. 101, at 5. Indeed, many courts, including the Ninth Circuit, have upheld—upon balancing the defendant's rights with the government's national security interests—the practice of limiting what classified discovery is provided to the defendant himself. *See United States v. Alahmedalabdaloklah*, 94 F.4th 782, 811 (9th Cir. 2024) ("Oklah recognizes that our precedent forecloses the argument that his constitutional rights were violated because he and his counsel were not present at several CIPA hearings, and because his counsel was prohibited from sharing or discussing certain 'Secret'-level documents with him, . . . but he questions whether the Government complied with CIPA in other respects." (internal citation omitted)); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d

93, 116–122 (2d Cir. 2008) ("By conditioning access to classified information on a security clearance requirement that El–Hage could not meet, the protective order entered by the District Court . . . effectively barred El–Hage from personally reviewing the classified material produced by the government. El–Hage claims that these limitations deprived him of access to discoverable information to which he was entitled." Affirming district court's decision to restrict classified discovery to only those who could obtain a security clearance.); *United States v. Abu Ali*, 528 F.3d 210, 245 (4th Cir. 2008) ("A defendant's right to see the evidence that is tendered against him *during* trial, however, does not necessarily equate to a right to have classified information disclosed to him *prior* to trial."); *United States v. Bin Laden*, No. S(7) 98 Cr. 1023 LBS, 2001 WL 66393, at *8 (S.D.N.Y. 2001) ("In addition, given the fact that the Defendant's attorneys have seen the classified information at issue, it is not clear why El-Hage will actually suffer any such detriment."), *aff'd sub nom. In re Terrorist Bombings*, 552 F.3d 93; *United States v. Rezaq*, 156 F.R.D. 514, 524–25 (D.D.C. 1994) ("The protective order, which generally limits disclosure to Mr. Rezaq's counsel, avoids that harm without prejudicing his defense. Even without Mr. Rezaq's personal knowledge of national secrets at issue, defendant's counsel can construct most of his defense perfectly well. The sensitive information is generally more useful to his counsel than to him, since it is being sought more to support his legal defenses than to rebut any facts . . . .").

As several of these courts have recognized, there is an even more fundamental flaw in Defendant's challenge to the provision of the Proposed Protective Order limiting classified discovery to cleared defense counsel in the first instance: **It is effectively premature; defense counsel, upon reviewing the classified discovery, may seek relief from the Court if they feel that their ability to prepare a defense is somehow inhibited by the terms of the protective order**. Indeed, Paragraph 1 of the Proposed Protective Order provides that "**[e]ither party may move for a modification of this Order at any**

9

**time for good cause shown**."[2] In *Rezaq*, the United States District Court for the District of Columbia cited such a provision in support of its decision to enter a similar protective order. 156 F.R.D. at 524 & n.18 ("Under [the terms of the protective order], defendant's counsel may seek the court's permission to disclose certain evidence to defendant, and the United States may oppose such disclosure."). In short, Defendant is simply wrong in asserting that "in order for the Defendant's counsel to have their client review additional classified material (that is, classified material that the government has not already unilaterally determined the Defendant can view), the Defendant must reveal its defense strategy to the government"; as contemplated by the Proposed Protective Order, defense counsel *could* seek authorization from the Government to display or discuss certain classified information with their client, but they also retain the ability to seek relief from the Court "for good cause shown."[3]

This same analysis applies to Defendant's other challenge to Paragraph 6, which prohibits his lawyers from "confirm[ing] or deny[ing] to the Defendant assertions made by the Defendant based on knowledge cleared defense counsel obtained from classified information unless the government has authorized that classified information to be displayed to the Defendant pursuant to this Order." *See Bin Laden*, 2001 WL 66393, at *4 (rejecting defendant's "claims that the nondisclosure provisions of the Protective Order prevent him from consulting with his attorneys" in violation of the Sixth Amendment). This argument is really no different than Defendant's first argument; if defense counsel were able to confirm the existence and classified status of specific information provided to them by Defendant, they are, for all intents and purposes, disclosing classified

---

[2] Although Defendant may seek relief from the Court on this front, it bears repeating that the decision whether to disclose classified information to anyone is committed to the Executive Branch alone. *Dep't of the Navy v. Egan*, 484 U.S. 518, 528–29 (1988). Thus, although district courts have the power to order, after conducting an appropriate analysis under CIPA, disclosure of certain information, district courts are not authorized to disclose unilaterally any classified information to a defendant.

[3] Should defense counsel decide to seek authorization from the Government to display or discuss certain information, the prosecution team would then consult with the relevant equity holder who controls the information. It is not the prosecution team that unilaterally decides what classified information may be disclosed.

10

information to him. In the national security context, there is a difference between information "being out there" without confirmation and the same information <u>being confirmed</u> by someone who holds a security clearance. As discussed both above and below, the Proposed Protective Order *as written* (1) contemplates cleared defense counsel receiving classified discovery; <u>and</u> (2) permits Defendant to make full, uninhibited disclosures to his attorneys of any information in his head. If, after reviewing and assessing the classified discovery, and potentially litigating its admissibility at trial, defense counsel feel that their ability to prepare a defense is impaired by the terms of the protective order, they can seek a modification under Paragraph 1.[4]

Defendant also takes issue with the reasonable guardrails the Proposed Protective Order places on the flow of classified information between Defendant and his attorneys. ECF No. 101, at 5, 8–9. In particular, Defendant challenges the requirement that he sign a Memorandum of Understanding which states, in part, that he "agree[s] that [he] shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless" (1) specifically authorized in writing to do so by the government or (2) "as expressly authorized by the Court" pursuant to the terms of the Proposed Protective Order. ECF No. 101, at 3; MOU ¶ 1. According to Defendant, "[t]his provision does not provide any exception to classified information that is already in Defendant's possession or within his knowledge, in an unrestricted capacity . . . ." ECF No. 101, at 3. He contends that "[he] and his counsel are unaware of the Defendant having ever been asked to sign any type of confidentiality agreement,"[5] and that "[t]he

---

[4] Of course, the Government reserves the right to oppose such a modification. In the event Defendant does seek a modification, *Rezaq* and *Bin Laden* both inherently recognize that there is some burden on the defense to demonstrate why limiting the disclosure of classified information to Defendant is prejudicial. *Rezaq*, 156 F.R.D. at 524–25; *Bin Laden*, 2001 WL 66393, at *4. "The harm to the defendant" must be more than "speculative at best." *Bin Laden*, 2001 WL 66393, at *4.

[5] In the event Defendant has signed such an agreement, the existence of such an agreement would likely defeat his First Amendment claim. *See, e.g.*, *United States v. Marchetti*, 466 F.2d 1309, 1315–19 (4th Cir. 1972) (rejecting First Amendment "prior restraint" challenge by former CIA employee where the former employee had signed a confidentiality agreement; noting "the Government's need for secrecy in this area lends justification to a system of prior restraint against disclosure by employees and former employees of classified information").

11

government is now attempting to restrain and restrict the Defendant related to information that he already possesses." *Id.* at 3–4. According to Defendant, "[t]his restriction is a prior restraint that is prohibited under the First Amendment." *Id.* at 4.

To address the merits of this argument, it is important to discuss what the Proposed Protective Order does and does not do. Paragraph 5 of the Proposed Protective Order—which Defendant neither discusses nor cites—**expressly permits Defendant to share information with cleared defense counsel even if he (a) obtained that information outside of the context of this prosecution and (b) reasonably knows that information is classified**. Paragraph 5 provides: "If the Defendant is aware of classified information relating to this case, the Defendant may also disclose such classified information to cleared defense counsel in an appropriate secure area as necessary for the preparation of his defense." PPO ¶ 5. This express authorization is critical because, when read together with the challenged provision of the MOU, it is clear that Defendant may "divulge, publish, or reveal" classified information to his cleared attorneys so long as (a) the conversations take place in a "secure area" as designed by the CISO and (b) the sharing of such information is "necessary for the preparation of his defense." PPO ¶ 5. So long as those conditions are met, such sharing is "expressly authorized by the Court pursuant to" the Proposed Protective Order, MOU ¶ 1. What the Proposed Protective Order does, then, is require that the sharing of information Defendant reasonably knows is classified be conducted in a secure area that is designated by the CISO. What the Proposed Protective Order does not do is prohibit Defendant from sharing any information he sees fit from his attorneys.

In light of the extremely limited and reasonable way Defendant is constrained in his communications, the Government submits that the Proposed Protective Order passes constitutional muster. The constraints in the Proposed Protective Order are narrowly tailored to further a compelling government interest. *Cf. In re National Security Letter*, 33 F.4th 1058, 1072 (9th Cir. 2022) ("[K]eeping sensitive information confidential in order to protect national security is a compelling government interest." (citing *Dep't of the*

*Navy*, 484 U.S. at 527)).[6]

## III.  CONCLUSION

For the reasons stated above, the Court should enter the Proposed Protective Order as written, *see* ECF No. 96.

---

[6] As the Government understands it, Defendant primarily is concerned with restrictions on his communications with counsel. To the extent his argument is broader than that, *e.g.*, that he is constrained from disclosing information he knows to third parties not involved in this litigation, the Government again notes that any contractual obligation Defendant might have to maintain confidentiality would carry the day. But again, the Government does not understand Defendant to be making such a broad argument.