DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone: (771) 217-6090
    E-mail:   LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:   SFM@usdoj.gov; CMR@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:24-cr-00091-ODW |
| Plaintiff, | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR A SECOND CONTINUANCE |
| v. | |
| ALEXANDER SMIRNOV, | |
| Defendant. | |

The United States of America, by and through its counsel of record, hereby submits this response in opposition to the defendant Alexander Smirnov's ex parte application asking the Court to consider a motion for a second continuance. ECF No. 132 ("Def. Mot.").

This opposition is based upon the attached memorandum of points and authorities, the Declaration of Leo J. Wise, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: September 27, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/ _____

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

United States Department of Justice

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On September 26, 2024, after the deadline set by the Court for the filing of pretrial motions, defendant filed an ex parte application for the Court to consider a motion to continue the trial in this case. ECF No. 132. This is their second request for a continuance. *See* ECF 64. The defendant's motion should be denied for at least three reasons. First, the defendant fails to meet the requirements for ex parte relief. Second, the defendant's motion is untimely. Third, the defendant fails to meet the requirements for a continuance articulated by the Ninth Circuit.

## II. ARGUMENT

### A. Defendant has not met the standards for ex parte relief.

Ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an ex parte application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id*. at 492. As described in *Mission Power*:

> The purpose of the first part of the ex parte motion papers is to establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words, it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment… To show irreparable prejudice, it will usually be necessary to refer to the merits of the accompanying proposed motion, because if it is meritless, failure to hear it cannot be prejudicial. A sliding scale is used to measure the threat of prejudice. If the threatened prejudice would not be severe, then it must be apparent that the

      underlying motion has a high likelihood of success on the merits. If drastic harm is threatened, then it is sufficient to show that there are close issues that justify the court's review before the party suffers the harm

*Id*.

    Defendant does not meet the ex parte standard because he presents no evidence that his case will be irreparably prejudiced if his motion for a second continuance is not heard according to regularly noticed motion procedures.

    Defendant also does not meet the requirements to show excusable neglect. Courts consider four factors in the excusable neglect inquiry: (1) the danger of prejudice to the opposing parties; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking relief; and (4) whether that party acted in good faith. *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "To show that the moving party is without fault, or guilty only of excusable neglect, requires more than a showing that the other party is the sole wrongdoer. It is the creation of the crisis—the necessity for bypassing regular motion procedures—that requires explanation. *Mission Power*, 883 F. Supp. at 493.

    The reasons defendant gives for a delay are within his control and thus, he cannot establish "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id*. In fact, defendant admits as much when he writes, "[d]espite their diligence representing Mr. Smirnov, defense counsel … have only been able to review a fraction of the voluminous discovery that the government has produced to date." Def. Mot. at 5. The "crisis" that warrants ex parte treatment of defendant's motion for ex parte treatment, is thus entirely of the defendant's own making. For example, defense counsel claims they need more time to review text messages between defendant and a single recipient. Def. Mot. at 5.

1  But they have had those text messages since April 8, 2024, in other words, for more than
2  six months. *See* Declaration of Leo J. Wise. And the docket in this case has four
3  lawyers listed as representing defendant, Mark A. Byrne of Byrne and Nixon LLP,
4  Richard A. Schonfeld and David Z. Chesnoff of Chesnoff and Schonfeld and Naser J.
5  Khoury of the Naser J. Khoury Law Offices. Four lawyers can review any volume of
6  text messages in six months. And, in any event, this is a factor entirely within the
7  defendant's control.

8        Defendant points to "voluminous" discovery as the first reason for his ex parte
9  application but he has had this discovery since April 8, 2024. *See* Declaration of Leo J.
10 Wise. *Id*. In any event, defendant inaccurately describes the volume of data his counsel
11 has to review and how he has to review it. Defendant claims that "discovery in this case
12 … includes two separate 2-Terabite hard drives." Def. Mot. at 4. That is not true. The
13 hard drives themselves *can hold* up to 2-Terabites of data on them but there is not 2-
14 Terabites of discovery in this case.

15       When he was arrested on February 14, 2014, the FBI, pursuant to a warrant, seized
16 a phone from defendant and then, in the execution of a search warrant at defendant's
17 home, seized additional devices from defendant's residence. All the devices were imaged
18 and then processed by a forensic software tool called Axiom.

19       Following his arrest, in late February 2024, the FBI obtained an additional search
20 warrant for the defendant's iCloud account, which contains the majority of the discovery
21 in this case and is where many of the defendant's devices backed up their data.

22       On April 8, 2024, FBI provided two 2 [Terabyte] drives to defense. One contained
23 the raw image file of the iCloud account and the second one contained a copy of the
24 iCloud account processed into a readable format using the Axiom Tool (hereafter the
25 "Axiom Portable Case").

26       On June 25, 2024, FBI provided an additional external hard drive to defense. This
27 one contained both raw image files for the devices seized from the defendant on the day
28

of his arrest and the Axiom Portable Cases containing the processed data. The Axiom Portable cases are the same as what the FBI personnel are using to review data.

The Axiom Portable Case for the iCloud account is approximately 1.1 Terabytes, or half the size defendant claims, but it is important to note that much of this is the Axiom software and program code.

In his motion, defendant claim that the discovery contains "approximately 3,521,515 messages" and approximately "30 hours of audio and video," but he fails to inform the Court that much of this data is duplicates.  The iCloud data contain numerous backups from multiple devices which were registered to the iCloud account.  For instance, the agents conducting data review see multiple copies of each communication message. The number of copies varies from two to twenty or more. The audio and video files have a similar pattern of duplicates.  Similarly, the Axiom Portable Cases containing the data for the phone Mr. Smirnov was carrying when he was arrested contains a large amount of duplicate data since it was being backed up to the iCloud. The Axiom Portable Case is approximately 251 gigabytes, which is nowhere near 2 Terabites.

While defendant asserts that his counsel is "of course, constitutionally obligated to review *all* discovery," without citing any legal support for the idea that this is a "constitutional" requirement, and it is not, he fails to mention that the Axiom reader which the government produced with the discovery allows him to search it using key words and other tools.  Def. Mot. at 5.  Defense counsel is not constitutionally obligated to individually examine each message or image or page of discovery.  If that were so, no case that has any volume of discovery could ever go to trial.  Multiple tools exist to review electronic data, one of which, Axiom, the government even provided to defense. This technology allows defense counsel to review large volumes of data in a matter of seconds.  To the extent defense counsel is unable or unwilling to use such an approach, that is not a reason for delay.

Defense counsel also fails to inform the Court that nearly all the "30 hours of audio and video," and "1,018,359 pictures, audio, and video files," consist of music videos and other personal video and audio recordings, and personal pictures of the defendant on vacation, at his home and with various friends and relatives. *Id*. None of them are video or audio recordings of the two meetings and two phone calls that defendant claims to have had with Burisma officials where they admitted to him that they bribed Public Official 1.

Defendant also cites "Classified Information," that he received as a related reason for the ex parte application and motion to continue but fails to mention that this discovery, in total, numbers less than 20 pages. Def. Mot. at 5.

Similarly, defense counsel's claim that they are "diligently attempting to locate a percipient witness in Ukraine, who will bolster Mr. Smirnov's case preparation," is a contingency that has nothing to do with the government whatsoever. *Id*. at 6.

Defendant also claims that "Mr. Smirnov will be issuing *Touhy* requests to the United States Government," as a reason for ex parte treatment and delay. Def. Mot. Puzzlingly, defense counsel has not served any *Touhy* requests on the government as of the date of this filing. Thus, their theoretical possibility offers no basis for the extraordinary relief defendant seeks.

In sum, defendant presents no reason why the application itself could not be briefed and heard according to regular motion procedures. For those reasons, defendant's ex parte application should be denied.

**B.     Defendant's motion is untimely.**

Defendant's motion for a continuance is untimely and should be denied for that reason alone. Pursuant to the Court's Standing Order for jury trials, the last day to hear motions in this case was September 23, 2024. Defendant did not even file his ex parte application until *after* that date. Further, defendant stipulated that all pretrial motions would be filed in this case by August 19, 2024. *See* ECF 64 (stipulation) and 65 (Order

1  incorporating by reference stipulated deadlines).  Defendant did not choose to file his ex
2  parte application and motion until almost a month after that deadline.
3      Courts may set deadlines for pretrial motions and strike untimely filed motions.
4  *See* Fed. R. Crim. P. 12(c)(1), (3); *e.g.*, *United States v. Baker*, No. CR 22-102-
5  BLGDLC, 2024 U.S. Dist. LEXIS 13719, at *10–11 (D. Mont. Jan. 25, 2024) (declining
6  to consider untimely motion to dismiss); *United States v. Castro*, No. 2:19-cr-00295-
7  GMN-NJK, 2022 U.S. Dist. LEXIS 173930, *7–10 (D. Nev. Sept. 24, 2022) (affirming
8  magistrate judge's order striking untimely motion to suppress).  The Court has done so
9  here and none of the reasons defendant offers for his continuance establish that he could
10 not have filed his motion before the Court's clear deadline.
11     Further, there is no good cause under Rule 12(c)(3) to consider the untimely
12 motion.
13     **C.   Defendant's motion for a second continuance does not satisfy the Ninth**
14     **Circuit's requirements for a continuance.**
15     Defendant relies on the same claims for why he needs a continuance that he offered
16 for why his motion should be considered on an ex parte basis.  They are just as unavailing
17 as to the former as they were as to the latter.
18     The Court provides guidance on its website to parties that "[t]he Court has a strong
19 interest in keeping scheduled dates certain. Changes in dates are disfavored. Trial dates
20 set by the Court are firm and will rarely be changed."  The Court has "broad discretion"
21 in determining whether to grant or deny a motion for continuance. *Morris v. Slappy*, 461
22 U.S. 1, 11 (1983); *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). "A trial
23 court clearly abuses its discretion only if denial of the continuance was arbitrary or
24 unreasonable." *United States v. Wills*, 88 F.3d 704, 711 (9th Cir. 1996) (internal quotation
25 and citation omitted). In reviewing whether a district court has abused its discretion in
26 denying motions for continuance, the Ninth Circuit considers four factors: (1) the extent
27 of the defendant's diligence in readying his defense prior to the date set for trial; (2) the
28

likelihood that the continuance would serve a useful purpose; (3) the extent to which a continuance would inconvenience the district court, the parties, or witnesses; and (4) the extent of prejudice, if any, that the defendant would suffer from denying a continuance. *Flynt*, 756 F.2d at 1359; *United States v. Mejia*, 69 F.3d 309, 314-16 (9th Cir. 1995). The "most critical question" is the final factor—whether a defendant will be prejudiced from a continuance denial. *Mejia*, 69 F.3d at 316. In fact, a defendant cannot prevail on any appeal of the denial of a continuance if he fails to show prejudice as a result. *Flynt*, 756 F.2d at 1359; *United States v. Mitchell*, 744 F.2d 701, 704 (9th Cir. 1984) ("To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense").

        1.     <u>The "Diligence" Factor Does Not Weigh in Favor of a Continuance</u>

Defendant claims multiple times in his motion that he has been "diligent" in preparing for trial but for the reasons articulated above that is not the case. As described above, defense counsel has had discovery in this case for more than six months. Rather than focus on reviewing this discovery, they have instead chosen to file numerous frivolous detention-related motions, ECF Nos. 25, 34, 52, 60, 61, 67, 70, 71, 75, 76, 79, 83, including two appeals to the Ninth Circuit, ECF Nos. 41, 91, both of which were denied, ECF Nos. 66, 78, and 121. Further, defendant has also chosen to litigate uncontroversial aspects of the CIPA related procedures in this case, including seeking access to an in camera filing, which was clearly authorized by the CIPA statute itself, ECF No. 98, and a routine protective order, ECF No. 101. Time spent on this duplicative and meritless litigation would have been better spent preparing for trial.

        2.     <u>The Defendant Has Not Shown that a Continuance Would be "Useful"</u>

Trial in this case was originally set for April 23, 2024. Defendant asked the government to agree to a stipulation to continue the trial for seven months to December 2, 2024 so that it could review discovery. ECF 64. The government agreed. Defendant

7

1  now asks for an additional five months again citing the need to review discovery. If
2  seven months was not sufficient to review discovery, there is no reason to believe that
3  additional time will be useful to do so.
4        Defense counsel also claims that they are attempting to locate a witness in Ukraine
5  but that "[c]learly, in light of the ongoing warfare in and around that country, the defense
6  attorneys have not, to date, been able to make contact with that necessary and important
7  defense witness." Def. Mot. at 6. Russia launched its invasion of Ukraine on February
8  24, 2022. The war is thus in its 31st month. Peace is not at hand. The fact that defense
9  counsel concedes they have not even been able to make contact with that witness
10 demonstrates that additional time will not be useful.
11       Nor has defense counsel demonstrated that additional time to file *Touhy* requests
12 would be useful. *Id.* Defense counsel do not explain why despite the fact that they have
13 determined they intend to make such requests they have failed to do so. That reflects a
14 choice, not circumstances beyond their control that additional time will ameliorate.
15       3.   <u>The Government, Witnesses and the Court Will be Inconvenienced
16           by a Continuance</u>
17       The trial schedule in this case was set in April of this year. Relying on that
18 schedule, the government has made scheduling decisions in other cases based on that
19 date. In fact, the government recently moved the United States District Court for the
20 District of Delaware to reschedule Hunter Biden's sentencing on his convictions for
21 firearms related offenses precisely because this case was set for trial on December 3,
22 2024. *See* Exhibit 1. Furthermore, trial subpoenas have been issued for the December 3,
23 2024 date and witnesses have arranged their schedules in order to be present for trial at
24 that time. The Government and those witnesses will be inconvenienced by a
25 continuance.
26       As quoted above, the Court provides guidance on its website to parties that "[t]he
27 Court has a strong interest in keeping scheduled dates certain. Changes in dates are
28

disfavored. Trial dates set by the Court are firm and will rarely be changed." The government infers that that guidance reflects the fact that the Court is also inconvenienced by continuances.

                4.      <u>The Defendant Has Not Shown That He Will be Prejudiced by Any Denial of a Continuance</u>

The defendant has not created a record from which this Court could find that he will be prejudiced by the current trial schedule. He has failed to show how any continuance will actually be useful to him. His diligence with respect to readying his defense is far from clear. Given defense counsel's statements, the record provides no basis for the Court to find that the defendant will be better able to pursue a defense strategy, interview witnesses, or review discovery or anything else if the Court continues trial for another five months, as opposed to proceeding on the current schedule.

III. **CONCLUSION**

For the reasons set forth above, the Court should deny the defendant's ex parte application and second motion to continue the trial in this case.