DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:24-CR-00091-ODW |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S NOTICE OF** |
| | ) | **MOTION AND MOTION TO** |
| | ) | **COMPEL PRODUCTION OF** |
| v. | ) | **DISCOVERY** |
| | ) | |
| ALEXANDER SMIRNOV, | ) | **Honorable Otis D. Wright II** |
| | ) | **November 18, 2024, at 10:00 a.m.** |
| Defendant, | ) | |
| | ) | |

**PLEASE TAKE NOTICE** that on November 18, 2024, at 10:00 am, or as soon thereafter as counsel may be heard, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD, will ask this Honorable Court to enter an order granting his Motion to Compel Production of Discovery.

1

Specifically, Defendant, Mr. Smirnov hereby moves this Honorable Court to enter an Order granting the Defendant's Motion and compelling the government's complete response (within five (5) days) to the requests stated in that Motion.

This Motion is made and based upon the attached Memorandum of Points and Authorities; the Exhibits to that Motion; any argument of counsel; and any other such evidence as may be presented.

Counsel for the Defendant has communicated with Assistant United States Attorney, Mr. Leo Wise, in regard to the discovery dispute, and the specific requests for discovery. Counsel Wise has responded that "We have and will continue to comply with our discovery obligations pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. Section 3500 (the "Jencks Act"), Federal Rule of Criminal Procedure 5(f) (*see* ECF No. 43) and Brady, Giglio and related cases. In addition to making appropriate discovery requests, your letters ask for documents and other materials that are outside that body of law. As to that information and materials, we decline to produce it."

/ / /

Accordingly, the issues raised by this Motion to Compel Production of Discovery were not resolved.

Dated this 16th day of October 2024.

CHESNOFF & SCHONFELD

 /s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for ALEXANDER SMIRNOV

## MEMORANDUM OF POINTS AND AUTHORITITES

### I.    BACKGROUND

#### A. Indictment and Production of Discovery to Date

Mr. Smirnov is charged by a two-count Indictment with: 1) Making False Statements to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519. *See* Dkt. 1 (Feb. 14, 2024).

As noted in prior motions, Mr. Smirnov served as a confidential human source ("CHS") for the FBI for over 10 years. While the Government has produced voluminous discovery, Mr. Smirnov has made three separate written requests for discovery, with many discovery requests outstanding.

As a result, Mr. Smirnov brings this Motion.[1]

#### B. Mr. Smirnov's Discovery Requests

On September 27, 2024, in a letter to government counsel, the defense team stated as follows, in pertinent part:

> *[W]e have previously sent three letters (dated March 5, May 28, and August 28, 2024) requesting certain specific discovery in addition to (or, as part of) the government's discovery obligations under Rule 16, Jencks, Brady, and Giglio, among others. Our comparison between our letters and the discovery that the government has produced to date reveals that we have not received complete (or, any) discovery, as follows:*

---

[1]    As of time of this filing, Mr. Smirnov's *Ex Parte* Application to Continue Trial (ECF No. 131, Sept. 26, 2024) remains pending.

I.    *March 5 letter (no discovery in response to request, by paragraph)*

- *¶7    [No discovery.]*
- *¶10    [We assume your response only includes* ████████████, *in which case we have received nothing in response to subparagraphs (a) through (h). We are in receipt of a recorded interview, reports of interviews, grand jury testimony, grand jury subpoena, photographs of messages between him and AS, and photos of passport.]*
- *¶12    [We do not see this assessment.]*
- *¶23    [We do not see any communication from the FBI's Pitt.]*
- *¶37    [We see no response from Mr. Weiss' team.]*

*In addition to the foregoing, the government's response raises the following issues regarding our March 5 letter:*

- *¶19    [Some responsive discovery was provided in government production no. 1 (with* ████████ *travel summary), but we do not have any records of compensation, cooperation benefits, or equivalent items, pertaining to the government's witnesses.]*
- *¶¶24–27    [The only item that appears responsive regarding communications between AS and Associate 2 are some emails, texts, and travel records; none of these, however, appear to relate to interaction with Burisma officials.]*
- *¶38    [We received the CHS reporting document in government production no. 1, but there appears to be more communication on this topic that has not been produced.]*

II.    *May 28 Letter*

- ***[NOTHING FURTHER IS NEEDED.]***

### III. August 28 Letter

●    *We have not, since our specific August 28, 2024 request, received any discovery related to Hunter Biden's or Mr. Smirnov's work or interaction with Burisma. This request included but was not limited to State Department released information that was provided to the New York Times and a letter that was evidently sent by Hunter Biden to the Italian Embassy.*

*Second, we need to confirm that the government has provided us with all discovery documenting any contact or communication between Mr. Smirnov and his handler. In particular, we have not received any evidence from this category of discovery reflecting Smirnov-Handler communications dating from before 2016. We thus request discovery evidence any and all such contacts or communications, from any date.*

*Third, should the government possess, but decline to produce, any discoverable evidence of any sort (including, but not limited to pre-2016 communications), we request that you 1) state your position in writing, and 2) set forth the basis of the refusal to produce it.*

*Finally, the CIPA restrictions in this case 1) have limited defense counsel, to date, to only one authorized viewing (in the Secure Unit in Los Angeles) of that discovery, and 2) necessarily preclude any substantive discussion in this letter of any viewed CIPA-discovery. Should you believe that any restricted CIPA-discovery is responsive to any of the items identified in this letter, please notify me about that fact only (with nothing substantive), so that the parties and security officers can agree on a mutually acceptable way to further Mr. Smirnov's effective trial preparation without compromising any aspect of the statutory CIPA restrictions, the Protective Order, or the government's interest in confidentiality.*

Letter from Richard A. Schonfeld, Esq. to Leo J. Wise, DOJ Principal Special Assistant Senior Counsel (Sep. 27, 2024) (attached as Exhibit 1) (italics supplied).[2]

In addition to the September 27, 2024 letter, Mr. Smirnov notes the following:

- The government's responses to the May 28, 2024 letter are complete.

- To clarify the September 27 request regarding communications between Mr. Smirnov ("AS") and his handler: We do not have any such communications dating from *before* April 30, 2016, which is the date of the first "whatsapp" communication between the two. Additionally, we have no communications between AS or *anyone* before 2016. We reassert that the government must produce any and all communication to or from AS dating from before 2016, as such communications may be discoverable under *Brady*, *Giglio*, and/or Rule 16.

- The government has not provided complete photos of AS's full USA passport book: passport # ▮▮▮▮▮▮▮; issued: 2015; expires: 2025.

- The government must also produce all the electronic media (that is, photos and videos) created before 2016.

- As detailed in email communications between defense counsel and counsel for the government, Mr. Chesnoff requested (on September 26, 2024) that the government return Mr. Smirnov's cell phone: the defense requires that phone (which had been upon Mr. Smirnov's arrest) in order to be able to retrieve and review all the data stored on it. In response, government counsel (on September 30, 2024) declined, stating: "We can't

---

[2]    Mr. Smirnov's three prior letters to the government (dated March 5, May 28, and August 28, 2024) are attached as Exhibits 2, 3 and 4, respectively.

release the phone. It's a piece of evidence that needs to be maintained by the FBI until the conclusion of the case." Defense counsel replied (also on September 30) that "[w]e can easily stipulate to the chain of custody on that specific item," and that "review [of] the actual phone" would save the defense a "very measurable amount of time." Government counsel again refused, stating on October 1: "Stipulating to chain-of-custody doesn't address the issue. The FBI needs to keep the device in order to maintain the integrity of the data on it."

Mr. Smirnov reasserts that he requires the physical phone to provide dates, times and context for the videos and voice messages exchanged with his handler.

● Positive independent photographic identification of the FBI handler for Mr. Smirnov. Such photographic identification is needed (among other reasons) for Mr. Smirnov to be able to identify his handler in Mr. Smirnov's photos and to document the course of dealings, travel, and relationship between the two.

● During the course of his work on behalf of the FBI, Mr. Smirnov met with Associate 1, who introduced certain third parties to Mr. Smirnov. Mr. Smirnov, in turn, reported those persons to his FBI handler, which then (on information and belief) opened official investigations into those third parties. Mr. Smirnov demands full and complete information regarding those third parties identified by Associate 1, including their full names, contact information, aliases (if any), and the complete contents of any official files or investigations (by the FBI or any other government entity) concerning such third parties.

**C.     The Government Refuses Even to Countenance Mr. Smirnov's Requests**

In its response, the government stated in pertinent part:

*We have and will continue to comply with our discovery obligations pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C.*

> *Section 3500 (the "Jencks Act"), Federal Rule of Criminal Procedure 5(f) (see ECF No. 43) and Brady, Giglio and related cases.*
>
> *In addition to making appropriate discovery requests, your letters ask for documents and other materials that are outside that body of law. As to that information and materials, we decline to produce it.*

Email from Leo J. Wise, DOJ Principal Special Assistant Senior Counsel to Richard A. Schonfeld, Esq. (Oct. 2, 2024) (attached as Exhibit 5) (italics supplied).

The government's "response" to Mr. Smirnov can be succinctly summarized as a refusal to produce the documents. After a cursory, non-substantive "assurance" of compliance, the government flatly refuses: 1) to address, in any way, *any* of the specific defects associated with the March 5 letter; 2) to even *address* the request for critical information regarding all communications between Mr. Smirnov and his handler, much less "set forth the *basis*" for the government's refusal to do so; and 3) to even *address* Mr. Smirnov's CIPA-based concerns. As shown below, the government's posture necessitates judicial intervention (something Mr. Smirnov had hoped to avoid, through informal letters and emails) and, more importantly, violates Mr. Smirnov's constitutional and procedural rights.

## II.    <u>DISCUSSION</u>

### The Government's Discovery Noncompliance—Manifesting in its Refusal to Even Address Mr. Smirnov's Concerns—Violates the Due Process Clause and Compels Immediate Judicial Intervention

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of

law." U.S. Const. Amend. V. The government has a constitutional duty to disclose, upon Mr. Smirnov request, all evidence favorable to him that is material to guilt or to punishment.

In criminal prosecutions, the government must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation also includes evidence that can be used to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). A prosecutor is presumed to know all information gathered by his office in connection with an investigation of the case. *Id*. Further, a prosecutor "has a *duty to learn of any favorable evidence* known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added).

Under *Brady*, the government must disclose favorable evidence that is "material" to the outcome of criminal proceeding. *Brady*, 373 U.S. at 87. "Material evidence" is that which leads to reasonable probability of producing a differing result or outcome. *Kyles*, 514 U.S. at 434.

The Due Process Clause is violated when the prosecution fails to reveal any evidence that 1) it actually or constructively possesses, and 2) is favorable to the defendants and material to the issue of guilt or punishment or in any way discredits the government's case. *Brady*, 373 U.S. at 87; *see also Miller v. Pate*, 386 U.S. 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

(1967); *Giles v. Maryland*, 386 U.S. 66 (1967). The prosecution must disclose material exculpatory evidence whether the defendant makes a specific request, a general request, or none at all. *See United States v. Agurs*, 427 U.S. 97 (1976).

Due process necessitates that all *Brady/Giglio* material evidence be provided to Mr. Smirnov as soon as possible, and certainly as soon as it comes into the government's possession. *United States v. Mitchell*, 373 F. Supp. 1239, 1247 (S.D.N.Y. 1973) ("We perceive the due process implications of *Brady* as obligating the government to disclose exculpatory information as soon as the character of such information is recognized. The obligation has no chronological boundaries, but applies equally to the pretrial, trial and posttrial stages of the proceeding.").

In this regard, the Supreme Court has stated: "Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor received a specific and relevant request, the failure to make any response is seldom, if ever, excusable."

*Agurs*, 427 U.S. at 107, *holding modified by United States v. Bagley*, 473 U.S. 667 (1985).

These principles require the government not only to *look* at Mr. Smirnov's discovery requests, but to *comply* with them in good faith and then *provide* any responsive discovery. *But see* Ex. 5 (government asserts, without citation, that defendant's letters seek discovery that falls "outside" what needs to be produced). Denial and suppression of any discovery that material to Mr. Smirnov's defense (including any FBI reports) violates Mr. Smirnov's constitutional right to a fair trial and due process. "If evidence highly probative of innocence is in [the government's] files, [it] should be presumed to recognize its significance even if [it] has actually overlooked it." *Giglio*, 405 U.S. at 154. Thus, precedent reaching back nearly a century emphasizes that Mr. Wise—as a prosecutor for the Department of Justice—is also a "servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Mr. Smirnov needs any and all nondisclosed evidence that is exculpatory, impeaching, or both. Thus, setting to one side the fact that Mr. Smirnov cannot possibly know *which* government reports remain undisclosed, reports reflecting Mr. Smirnov's FBI handler's accuracy and thoroughness (such as noting in a report what Mr. Smirnov actually told his handler, or where Mr. Smirnov said he was on a certain date) bears squarely on that handler's credibility. The government's refusal to produce the FBI reports authored by the government's testifying

witnesses (including the handler) thus negates Mr. Smirnov's effective cross-examination and deprives the jury of the chance to make a "discriminating appraisal" of the witness's accuracy. *See, e.g.*, *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) ("Cross-examination is *not* improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility;" affirming conviction where district court did allow "extensive cross-examination" of testifying detective); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.") (internal quotation omitted); *cf. United States v. Buske*, No. 09-CR-65, 2011 WL 2912707, at *5 (E.D. Wis. July 18, 2011) ("Under *Brady* and *Giglio*, agent interview notes that materially vary from the reports will also be disclosed.").

Other items specifically listed in the September 27, 2024 letter are likewise critical to Mr. Smirnov's defense. Regarding the specific request for all communications between Mr. Smirnov ("AS") and his handler, such communications fall within *Brady* and/or *Giglio* because Mr. Smirnov's course of

dealings between 2015 and 2016 are in question bear upon his claims regarding his alleged interactions with Ukrainian business officials during that time.

Regarding the incomplete contents of Mr. Smirnov's United States passport, any such items implicate *Brady* and/or *Giglio* because Mr. Smirnov's locations during 2015 and 2016 are crucial to his defense. Mr. Smirnov is a dual citizen of both Israel and the United States. He used both passports for his travels during the relevant time frame of this case. The defense discovered Mr. Smirnov's United States passport because Mr. Smirnov sent a photo of it to his handler on January 10, 2018. The government provided Mr. Smirnov's full Israeli passport with stamps but failed to produce Mr. Smirnov's full United States passport with stamps.

And, regarding the specific request for all media from before December 2016, such media falls within *Brady* and/or *Giglio* because Mr. Smirnov's course of dealings between 2015 and 2016 are in question and because they pertain to Mr. Smirnov's claims and travels regarding his interactions with Ukrainian business officials during that time frame.

Finally, with regard to the information requested in our August 28 letter, complete disclosure of any evidence of contact between Burisma and Mr. Smirnov can be used for impeachment purposes: Mr. Smirnov must, among other things,

determine whether the government's allegations as to the timing of his first dealings with Burisma comport with his own recollection.

For the foregoing reasons, Mr. Smirnov requests the Court enter an order granting the Motion to Compel Production of Discovery.

DATED this 16th day of October, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

  /s/   David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for ALEXANDER SMIRNOV

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of October 2024, I caused the forgoing document to be served via the Court's e-filing/e-service system a true and correct copy of the foregoing to all parties listed on the Court's Service List.

<u>/s/ Camie Linnell</u>
Employee of Chesnoff & Schonfeld