**EXHIBIT 2**

LAW OFFICES

*Chesnoff & Schonfeld*

AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

DAVID Z. CHESNOFF, CHARTERED
RICHARD A. SCHONFELD, CHARTERED

ROBERT Z. DeMARCO

520 SOUTH FOURTH STREET
LAS VEGAS, NEVADA 89101-6593

TELEPHONE
(702) 384-5563

FAX
(702) 598-1425

March 5, 2024

Via Email

Leo J. Wise
Principal Senior Assistant Special Counsel
Derek E. Hines
Senior Assistant Special Counsel
Sean F. Mulryne
Christopher M. Rigali
Assistant Special Counsels
950 Pennsylvania Avenue NW, Room B-200
Washington, D.C. 20530

Re: United States v. Smirnov
Case No. 2:24-cr-00091-ODW

Dear Counsel:

Through this letter, we are making a written request for discovery pursuant Federal Rule of Criminal Procedure 16 ("Rule 16"), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). We are requesting all discovery covered by Rule 16, including but not limited to the specific requests below:

1. Initially, we request early disclosure of any *Jencks* material, so that we will not need to ask for appropriate recesses and continuances during trial.

2. Pursuant to Rule 16(a)(1)(A) and (B) of the Federal Rules of Criminal Procedure, we request the following discovery regarding statements made by Mr. Smirnov:

   a. All relevant written or recorded statements;

   b. All written records containing the substance of any relevant oral statement made by Mr. Smirnov in response to interrogation by a person he knew to be a government agent, including but not limited to (i) all law enforcement agency reports and (ii) all notes of law enforcement officers, whether or not used to prepare reports; and

LAW OFFICES
Chesnoff & Schonfeld.
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 2-

        c.        The substance of any other relevant oral statement made by Mr. Smirnov in response to interrogation by a person he knew to be a government agent if the government intends to use that statement at trial.

    3.      We also request all arrest reports, notes, and communications that relate to the circumstances surrounding the arrests or any questioning of Mr. Smirnov. This request includes but is not limited to any rough notes, records, reports, transcripts, or other documents in which statements of Mr. Smirnov or any other discoverable material is contained. This is all discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963).

    4.      Pursuant to Rule 16(a)(1)(D), we request a complete copy of Mr. Smirnov's prior criminal record (if any).

    5.      Pursuant to Rule 16(a)(1)(E), we request copies of all books, papers, documents, and photographs that the government intends to use as evidence in its case in chief at trial, which are material to the preparation of the defense, and/or which were obtained from or belong to Mr. Smirnov.

    6.      We request copies of any search warrants and affidavits resulting in the seizure of evidence intended for use by the government at trial, or which was taken from, or belongs to Mr. Smirnov. We further request notice of whether Mr. Smirnov has been the subject of any electronic eavesdropping, wiretaps, or any other interception of wire or oral communications.

    7.      Pursuant to Rule 16(a)(1)(F), we request copies of all results or reports of any physical or mental examination and/or scientific tests or experiments which the government intends to use in its case in chief, or which are material to preparation of the defense. If you intend to call any expert witness, we would request reports already prepared by the witness, and, as provided for in Rule 16(a)(1)(G), a summary of the witness's testimony that describes his or her opinions, the bases and reasons for his or her opinions, and his or her qualifications.

    8.      Pursuant to Rule 404(b) of the Federal Rules of Evidence, we request reasonable notice of any evidence of other bad acts which the government intends to introduce at trial. It is my position that reasonable notice means notice no later than the deadline for filing motions in this case.

LAW OFFICES
*Chesnoff & Schonfeld*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 3 -

9. We request all information and material subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

10. We request the following information as to each government witness, on the ground that it is discoverable under *Giglio*:

   a. Any prior criminal convictions and/or arrests and any evidence that the witness has committed or is suspected of committing a criminal act which did not result in an arrest or conviction.

   b. Any payments made to the witness and the dates of such payments, whether in connection with this case or any other case, state or federal.

   c. Any implicit or explicit promises of benefit which have been made by any government agent or agency, state or federal, regarding (i) non-prosecution for any offense, (ii) recommendations of leniency, or (iii) information to be provided at sentencing for any offense.

   d. Any implicit or explicit promises of benefit which have been made to the informant, by any government agent or agency, in any other area, including but not limited to immigration status.

   e. All known occasions on which the witness has made false statements to any person, including but not limited to law enforcement officers or any law enforcement agency or court, and specifically including but not limited to any aliases that the witness may have used.

   f. Any false identification document that has ever been in the possession of and/or used by the witness, and each and every occasion on which the witness is known to have used said document.

   g. Any evidence that any prospective government witness is biased or prejudiced against Mr. Smirnov, or has a motive to falsify or distort his testimony.

LAW OFFICES
*Chesnoff & Schonfeld*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 4 -

    h.    Any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

    i.    Any other information which adversely reflects on the credibility of the witness.

11.    We request the name, address, and location of any informant or other person who was a percipient witness to a material event in the case, who was a substantial participant in the investigation of the case, or who may have information relevant and helpful to the defense.

12.    We request the name of any witness who made an arguably favorable statement concerning Mr. Smirnov. We also request disclosure of any statement that may be "relevant to any possible defense or contention" that Mr. Smirnov might assert. This includes in particular any statements by percipient witnesses.

13.    We request disclosure of any exculpatory witness statement, including negative exculpatory statements, i.e., statements by informed witnesses that fail to mention Mr. Smirnov.

14.    We request that you review the personnel records of all law enforcement witnesses and disclose any *Brady* or *Giglio* material contained in those records, pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

15.    We request all FBI 302 reports, Form FD1023, and/or any other reports/documentation related to Mr. Smirnov's cooperation with the FBI or any other agency of the United States Government. This request is not limited in time frame.

16.    We request any charts and/or memorandums of analysis of any phone records and/or email records, including, but not limited to in relation to Mr. Smirnov, the FBI Handler, Associate 1 and/or Associate 2 and/or Businessperson 1 and/or Burisma Official 1 mentioned in the Indictment from 2017 to current.

LAW OFFICES
*Chesnoff & Schonfeld*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 5 -

17. We request full and complete copies of the FBI Handler's cell phone and email records (including text messages and application based messages) related to Mr. Smirnov and the instant case, including, but not limited to, the alleged messages mentioned in the Indictment at pages 5-12, 19-22. We also request full and complete copies of the FBI Hander's cell phone and email records (including text messages and application based messages) of all communication with Mr. Smirnov for the entirety of their relationship.

18. We request any records of compensation/payments made to Mr. Smirnov by the government, including the Department of Justice and/or FBI and/or any other law enforcement or government agency.

19. We request any and all records of compensation, express or implied promises of favorable treatment or leniency, or any other benefit that any of the government's witnesses received in exchange for their cooperation with this prosecution, including, but not limited to, any and all records of any expectation of any benefit or assistance to be received, or already received by any witness presented by the government. This also includes travel either in state, out-of-state, or international travel expenses covered by the government to any witness and an estimate of future benefits to be received during or after the trial.

20. We request any and all records related to the alleged communications referenced in the Indictment, including, but not limited to in para. 4, including on or about 10/1/2010, 1/20/2011, 5/17/2011, 9/14/2011, 8/29/2012, 11/28/2012, 4/12/2013, 8/29/2013, 1/22/2014, 7/9/2014, 7/10/2015, 9/29/2016, 9/26/2017, 9/26/2018, 9/27/2019, 3/11/2020, 2/19/2021, 10/28/2021, 10/17/2022 and 9/29/2023.

21. We request copies of the alleged "FBI form" mentioned in the Indictment in para. 5, including from on or about 10/8/2014, 1/18/2017, 10/8/2018, 1/10/2019, and 8/7/2020.

22. We request a copy of FBI Pittsburgh's assessment, 58A-PG-3250958, mentioned in the Indictment at para. 22.

23. We request any and all records and communications between FBI Pittsburgh and/or USAO WDPA and/or the Handler mentioned in the Indictment and/or otherwise related to Mr. Smirnov.

LAW OFFICES
*Chesnoff & Schonfeld*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

-Page 6-

24. We request any and all communications between Mr. Smirnov and the alleged Associate 1 and/or Associate 2 and/or Businessperson 1 and/or Burisma Official 1 mentioned in the Indictment.

25. We request any and all communications between the government and/or the alleged Associate 1 and/or Associate 2 and/or Businessperson 1 and/or Burisma Official 1 mentioned in the Indictment from 2017 to current.

26. We request any and all travel records for the alleged Associate 1 and/or Associate 2 and/or Businessperson 1 and/or Burisma Official 1 mentioned in the Indictment from 2017 to current.

27. We request any and all phone/email records for the alleged Associate 1 and/or Associate 2 and/or Businessperson 1 and/or Burisma Official 1 mentioned in the Indictment from 2017 to current.

28. We request any and all records, reports, memorandums and/or communications related to the alleged August 29, 2023 meeting between FBI investigators and the Handler mentioned in the Indictment at para. 43-44.

29. We request any and all communications between the White House (Executive Branch) and the Attorney General/Office of the Attorney General regarding Mr. Smirnov.

30. We request any and all communications between the White House (Executive Branch) and the Department of Justice regarding Mr. Smirnov.

31. We request any and all communications between the White House (Executive Branch) and the Office of Special Counsel concerning Mr. Smirnov.

32. We request any and all communications between the White House (Executive Branch) and the FBI regarding Mr. Smirnov.

33. We request any and all communication between the FBI and any member of Congress or Committee of the Congress of the United States, both House and Senate, concerning Mr. Smirnov.[1]

---

[1] It should be noted that as stated in the March 4, 2024 joint letter from James Comer, Chairman of the Committee on Oversight and Accountability, and Jim Jordan, Chairman of the Committee

LAW OFFICES

*Chesnoff & Schonfeld.*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 7 -

33. We request any and all communication between the Department of Justice and any member of Congress or Committee of the Congress of the United States, both House and Senate concerning Mr. Smirnov.

34. We request any and all communication between the Office of Special Counsel and any member of Congress or Committee of the Congress of the United States, both House and Senate concerning Mr. Smirnov.

35. We request any documents and information sufficient to show cases (civil/criminal/administrative) in which the United States Government utilized or relied upon information provided by Alexander Smirnov.

36. We request all documents and communications referring or relating to the FBI's validation of Mr. Smirnov as a confidential human source.

37. We request all documents and communications referring or relating to the request to U.S. Attorney David Weiss's team to "assist" with "an investigation of allegations" related to the FD-1023, including but not limited to the date in July 2023 when this request was made. *See* Indictment at para. 41.

38. We request all documents and communications referring or relating to the investigation of Mr. Smirnov's alleged allegations documented in an FD-1023 dated June 30, 2020.

39. We request the return of all electronic devices seized, or alternatively, a mirror image of all electronic devices.

---

on the Judiciary to FBI Director Christopher Wray, "[u]ntil very recently, the FBI held Mr. Smirnov out as a 'highly credible' source whose outing could endanger national security." *See* Exhibit 1. This type of requested information also constitutes *Brady* material.

LAW OFFICES
*Chesnoff & Schonfeld.*
AN ASSOCIATION OF PROFESSIONAL CORPORATIONS

- Page 8 -

40. We request any under seal filings that we have not been informed of between the Office of Special Counsel and Judge Wright regarding Mr. Smirnov.

This is our initial discovery request and we reserve the right to supplement with additional requests for discovery.

Thank you for your attention to this matter.

Sincerely,

CHESNOFF & SCHONFELD

David Z. Chesnoff, Esq.
Richard A. Schonfeld, Esq.

# EXHIBIT 1

**Congress of the United States**

Washington, DC 20515

March 1, 2024

The Honorable Christopher Wray
Director
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, DC 20535

Dear Director Wray:

On February 14, 2024, Special Counsel David Weiss indicted Alexander Smirnov—a longtime confidential human source (CHS) for the Federal Bureau of Investigation (FBI)—on allegations of making false statements to federal authorities.[1] Prior to the indictment, the FBI allowed Mr. Smirnov to serve as a CHS for over 14 years and earn a six-figure income, while maintaining "extensive and extremely recent" foreign intelligence contacts.[2] Until very recently, the FBI held Mr. Smirnov out as a "highly credible" source whose outing could endanger national security.[3] Only after Mr. Smirnov reported that President Joe Biden accepted a bribe from a Ukrainian energy company in exchange for using his official position to oust the Ukrainian Prosecutor General did the FBI apparently take a hard look at this CHS. The Judiciary Committee has been examining the FBI's CHS program in the wake of recent high-profile blunders,[4] but this new information raises even greater concerns about abuse and mismanagement in the FBI's CHS program.

The Committees have been investigating allegations contained in the now-public FD-1023 dated June 30, 2020. At each step in the investigation, the FBI represented to the Committees that the CHS was highly credible and that disclosure of information about the CHS could jeopardize national security. The FBI initially fought tooth-and-nail with House Oversight

---

[1] Associated Press, *FBI informant charged with lying about Joe and Hunter Biden's ties to Ukrainian energy company*, POLITICO (Feb. 15, 2024).

[2] *See* Dan Morrison, *Indicted Biden accuser had 'extensive' contacts with Russian intel, prosecutors say*, USA TODAY (Feb. 20, 2024); Victor Nava, *FBI informant charged by special counsel David Weiss for allegedly making up Biden-Burisma bribery claim*, N.Y. POST (Feb. 15, 2024).

[3] *See* Summer Concepcion, et al., *Comer cancels Wray contempt vote after FBI offers to let full Oversight Committee review Biden document*, NBC NEWS (June 7, 2023); Margot Cleveland, *Special Counsel Indictment Looks Just As Bad For David Weiss As The Charged FBI Informant*, THE FEDERALIST (Feb. 16, 2024). *Also, see* Transcribed Interview of Scott Brady, former U.S. Att'y, W. Dist. of Penn. at 96 (Oct. 23, 2023) (hereinafter Brady Interview).

[4] *See*, e.g. Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Hon. Christopher A. Wray, Dir., Fed. Bureau of Investigation (Nov. 30, 2022); Letter from Rep. Jim Jordan, H. Comm. on the Judiciary to Hon. Christopher A. Wray, Dir., Fed. Bureau of Investigation (Sept. 19, 2023); Letter from Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary, to Hon. Christopher A. Wray, Dir., Fed. Bureau of Investigation (Jan. 11, 2024).

The Honorable Christopher Wray
March 1, 2024
Page 2

Committee Chairman James Comer and Senator Chuck Grassley to produce the FD-1023, at one point even declining to acknowledge that the document existed.[5] On May 22, 2023, a Deputy Assistant Director of the FBI's Directorate of Intelligence briefed Oversight Committee staff on the FBI's CHS program, emphasizing, "the importance of the FBI protecting not only the identity of a specific confidential human source, but also of protecting information that would have a tendency to identify the source, such as contextual material found in many of the kinds of investigative materials requested by the [Oversight] Committee, such [as] FD-1023s."[6]

While continuing to stall production of the FD-1023, the FBI represented that providing information about CHSes would hurt the FBI's ability to "keep[] Americans safe."[7] On May 31, 2023, you had a phone call with Members of Congress about the Oversight Committee's subpoena of the FD-1023, during which you emphasized the particular importance of *this* CHS, who we now know is Mr. Smirnov, to the FBI.[8] You explained that it was important to protect the CHS's identity not only for his personal safety, but also for the integrity of several investigations and prosecutions that relied on information that the CHS provided to the FBI.[9]

On June 1, 2023, the FBI wrote to the Oversight Committee, explaining why it would only allow review of the FD-1023 *in camera* and stating that these protections help the FBI "maintain the confidentiality of this sensitive information . . . both in response to congressional requests and in court in criminal proceedings to protect the physical safety of sources and witnesses and the integrity of investigations."[10] On June 5, 2023, after the Oversight Committee noticed a markup to begin contempt of Congress proceedings against you for refusing to produce the FD-1023, the FBI provided a briefing and an *in camera* review of the FD-1023 to Chairman Comer and Ranking Member Raskin.[11] During the briefing, the FBI stated that the CHS who provided the information documented in the FD-1023 was "highly credible,"[12] had been used by the FBI for years, and had received "six figures" from the FBI.[13] Further, the FBI represented

---

[5] *See* Letter from Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, to Hon. Christopher A. Wray, Dir. Fed. Bureau of Investigation (May 19, 2023).

[6] *See* Letter from Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, to Hon. Christopher A. Wray, Dir. Fed. Bureau of Investigation (May 24, 2023); Letter from Mr. Christopher Durham, Acting Assistant Dir., Fed. Bureau of Investigation to Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability (May 30, 2023).

[7] *See* Message from Acting Assistant Dir. Christopher Dunham and Assistant Dir. Cathy Milhoan, *Message from the FBI on the FD-1023 Request from Congress* (https://socxfbi.org/SFSA/SFSA/Featured-Articles/Message-from-the-FBI-on-the-FD-1023-Request-from-Congress.aspx) (last visited Feb. 22, 2024).

[8] Call with Hon. Christopher A. Wray, Dir. Fed. Bureau of Investigation (May 31, 2023).

[9] *Id.*

[10] *See* Letter from Mr. Christopher Durham, Acting Assistant Dir., Fed. Bureau of Investigation to Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability (June 1, 2023).

[11] *See* Press Release, Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, Comer on FBI Briefing: Record Generated by Trusted Informant, Active During Obama-Biden Administration, Being Used in Ongoing Investigation (June 5, 2023); Press Release, Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, Comer Forces the FBI to Cooperate and Allow All Oversight Committee Members to Review Biden Bribery Record (June 7, 2023).

[12] *See* Press Release, Rep. Jamie Raskin, Ranking Member, H. Comm. on Oversight and Accountability, Ranking Member Raskin's Statement Following Review of Debunked FBI Tip (June 5, 2023).

[13] *See* Press Release, Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, Comer Forces the FBI to Cooperate and Allow All Oversight Committee Members to Review Biden Bribery Record (June 7, 2023).

The Honorable Christopher Wray
March 1, 2024
Page 3

that the information the CHS provided to the FBI had and continued to be used in ongoing criminal investigations and prosecutions.[14]

On October 23, 2023, the Judiciary Committee received testimony from former U.S. Attorney for the Western District of Pennsylvania Scott Brady related to the Department's and FBI's handling of the information provided by Mr. Smirnov dating back to 2017.[15] Mr. Brady, whose office was charged with vetting Ukraine-related information provided by the public in 2020, said it was consistent with his understanding that the FBI determined Mr. Smirnov to be credible, and found the FD-1023 to have "indicia of credibility."[16] Specifically, Mr. Brady testified:

> Q. The FBI has said that they had a pre-existing relationship with this source, as well as they had been used in multiple investigative matters, including during the Obama administration. Are you aware of those public statements from the FBI?
>
> A. I'm not aware of those, but that's consistent with my understanding.
>
> Q. The FBI has also said that they've reviewed information that the CHS has provided and found them to be, quote, highly credible. Have you seen those public statements?
>
> A. I have not, but that's consistent with my understanding.
>
> Q. And can you tell us about the process that your office went through to vet the information that's now contained in this FD-1023?
>
> \* \* \*
>
> A. So we attempted to use open source material to check against what was stated in the 1023. We also interfaced with the CHS' handler about certain statements relating to travel and meetings to see if they were consistent with his or her understanding.
>
> Q. And did you determine if the information was consistent with the handler's understanding?

---

[14] *See* Press Release, Rep. James Comer, Chairman, H. Comm. on Oversight and Accountability, Comer on FBI Briefing: Record Generated by Trusted Informant, Active During Obama-Biden Administration, Being Used in Ongoing Investigation (June 5, 2023).
[15] Brady Interview at 19-22, 90-91.
[16] *Id.* at 19-20.

The Honorable Christopher Wray
March 1, 2024
Page 4

> A. What we were able to identify, we found that it was consistent. And so we felt that there were sufficient indicia of credibility in this 1023 to pass it on to an office that had a predicated grand jury investigation.[17]

Although the FBI and Justice Department received Mr. Smirnov's information in 2020, it was only after the FD-1023 was publicly released nearly three years later—implicating President Biden and his family—that the FBI apparently decided to conduct any review of Mr. Smirnov's credibility as a CHS.[18] During the intervening period, the FBI represented to Congress that the CHS was "highly credible" and that the release of his information would endanger Americans. In fact, just last month, the Justice Department denied the Judiciary Committee full access to a FD-1023 dated March 2017, memorializing additional information received from Mr. Smirnov, asserting the need to protect sensitive law enforcement information.[19] At no time did the FBI correct its representations to the Committees about the credibility of the CHS or the apparently baseless assertions that release of his information would endanger Americans.

This episode is just another example of how the FBI is motivated by politics. Since last year, Congress has relied on the FBI's word that this CHS was highly credible, while not ever receiving his name or the full, unredacted FD-1023 form. The FBI's noncooperation prevented the Committees from ever knowing Mr. Smirnov's identity, speaking with him directly or indirectly, or independently assessing the credibility of the information he provided. Pursuant to the House's impeachment inquiry into President Biden,[20] as well as the Committees' Constitutional oversight authority over the Department of Justice and the FBI,[21] the Committees require documents and information related to the FBI's handling of Mr. Smirnov and the information he provided to the FBI for over a decade. Accordingly, to further the Committees' ongoing oversight, please provide the following documents and information:

1. Documents and information sufficient to show what criminal cases utilized or relied upon information provided by Alexander Smirnov;

2. Documents and information sufficient to show the total amount paid by the Justice Department to Alexander Smirnov during his tenure as a confidential human source;

3. All documents and communications referring or relating to the FBI's validation of Alexander Smirnov as a confidential human source;

---

[17] *Id.*
[18] Indictment at 41-43, *United States v. Smirnov*, No. 2:24-cr-00091-ODW (C.D. Cal. Feb. 14, 2023) (hereinafter Smirnov Indictment).
[19] Letter from Assistant Attorney General Carlos Uriarte, Dep't of Justice, to Rep. Jim Jordan, Chairman, H. Comm. on the Judiciary (Jan. 19, 2024).
[20] *See* H.R. Res. 918, 118th Cong. (2023); Memorandum from Hon. James Comer, Chairman, H. Comm. on Oversight & Accountability, Hon. Jim Jordan, Chairman, H. Comm. on the Judiciary, & Hon. Jason Smith, Chairman, H. Comm. on Ways & Means, to H. Comm. on Oversight & Accountability, H. Comm. on the Judiciary, & H. Comm. on Ways & Means. Re: Impeachment Inquiry (Sept. 27, 2023)
[21] Rules of the U.S. House of Representatives, R. X (2023).

The Honorable Christopher Wray
March 1, 2024
Page 5

4. All documents and communications referring or relating to the FBI's suspicion or awareness of wrongdoing or inaccurate reporting from Alexander Smirnov;

5. All documents and communications referring or relating to the request to U.S. Attorney David Weiss's team to "assist" with "an investigation of allegations" related to the FD-1023,[22] including but not limited to the date in July 2023 when this request was made; and

6. All documents and communications referring or relating to the investigation of Alexander Smirnov's allegations documented in an FD-1023 dated June 30, 2020.

Please provide the information requested as soon as possible but not later than 5:00 p.m. on March 15, 2024. If you have any questions about this request, please contact Oversight Committee staff at (202) 225-5074 or Judiciary Committee staff at (202) 225-6906.

Thank you for your prompt attention to this matter.

Sincerely,

James Comer
Chairman
Committee on Oversight and Accountability

Jim Jordan
Chairman
Committee on the Judiciary

cc:   The Honorable Jamie Raskin, Ranking Member
      Committee on Oversight and Accountability

      The Honorable Jerrold L. Nadler, Ranking Member
      Committee on the Judiciary

---

[22] Smirnov Indictment at 29.