DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6090
    E-mail:     LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:     SFM@usdoj.gov; CMR@usdoj.gov
    Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ALEXANDER SMIRNOV,<br><br>        Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY; MEMORANDUM IN SUPPORT; EXHIBITS IN SUPPORT<br><br>Hearing Date:  November 18, 2024<br>Hearing Time:  10:00 a.m.<br>Location:      Courtroom of the Hon. Otis D. Wright II |

    Plaintiff, the United States of America, by and through its counsel of record, hereby submits this Opposition to Defendant's Motion to Compel Production of Discovery (ECF Nos. 136, 139).

The defendant's motion to compel is factually and legally flawed, rambling and disorganized, and wholly unsupported by law. Rather than discuss specific discovery requests and why he believes he is entitled to specific discovery by analyzing his request under applicable precedent, the defendant simply copies and pastes paragraph numbers from his previous discovery letters, does not accurately explain what he believes he is still missing from those requests, and includes only a general discussion of the law governing discovery with hardly any analysis of his requests. As the moving party, the defendant fails to meet his burden. Because the government has complied and will continue to comply with its discovery obligations pursuant to Federal Rule of Criminal Procedure 16, the Jencks Act, *Giglio v. United States,* 405 U.S. 150, 154 (1972*)*, *Brady v. Maryland*, 373 U.S. 83 (1963), and related cases, the Court should deny the defendant's motion.

This Opposition is based upon the attached memorandum of points and authorities, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: October 28, 2024                    Respectfully submitted,

DAVID C. WEISS
Special Counsel


/s/ _____

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

United States Department of Justice

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table of Contents

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND....................................................................... 1

III.    LEGAL BACKGROUND ........................................................................... 3

        A.    Discovery Under Rule 16 ................................................................. 3

        B.    The Jencks Act .................................................................................. 5

        C.    *Brady* and *Giglio* .............................................................................. 6

IV.     ARGUMENT ............................................................................................... 9

        A.    Several of the Defendant's Requests Seek Discovery Materials that Do Not Exist or Were Already Produced to the Defendant.......................... 9

              1.    The government is not withholding any expert reports (Def. Req. ¶ 7) ...................................................................................... 10

              2.    The government is not withholding *Giglio* material for civilian witnesses and, in any event, such information is not discoverable until the witness testifies (Def. Req. ¶¶ 10, 19)........... 10

              3.    The government is not withholding any discovery related to the defendant's interactions with Burisma (Def. Req. ¶¶ 24–27)........... 10

              4.    The government is not withholding photos of the defendant's U.S. Passport (new request in Mot. at 7) .......................................... 11

              5.    The government is not withholding electronic evidence prior to 2016 (Mot. at 6, 7) .............................................................................. 11

        B.    The Defendant's Requests for Information Related to the Pittsburgh Assessment, the FD-1023, and Other Reporting are Moot or Premature.................................................................................. 12

              1.    The government has already produced additional materials related to the Pittsburgh Assessment and will produce additional Jencks material at least one week before trial (Def. Req. ¶¶ 22, 23) .................................................................. 12

              2.    The government will produce certain Jencks Act material for witnesses at least one week before trial (Def. Req. ¶ 38)................ 12

3.  The government has produced other reports involving claims made by the defendant that do not relate to entities or individuals involved in this case (Mot. at 8)......................................13

C.  The Defendant's Remaining Requests Have No Basis in Law..................14

1.  The defendant's request that the government state whether it believes documents produced as CIPA discovery are responsive to his discovery requests is unfounded (Mot. at 6, Def. Exh. 1 at 3)..................................................................14

2.  The defendant's request for return of his phone ignores that he already has all the information in his phone (Mot. at 7-8)..............14

3.  The defendant is not entitled to documents and communications relating to the request to the U.S. Attorney's team to assist with an investigation of allegations related to the FD-1023 (Def. Req. ¶ 37)..................................................15

4.  The defendant's request for "positive independent photographic identification of the FBI handler" is unfounded (Mot. at 8). ............................................................15

5.  U.S. Department of State records cited in a New York Times article are not discoverable and are a fishing expedition (Mot. at 5)....................................................................16

V.  CONCLUSION....................................................................16

# Table of Contents

Cases                                                                    Page(s)

*Beavers v. United States,*
   351 F.2d 507 (9th Cir. 1965) ................................................................ 6

*Brady v. Maryland,*
   373 U.S. 83 (1963) .................................................................... 1, 3, 6

*Giglio v. United States,*
   405 U.S. 150 (1972) ....................................................................... 1, 6

*Kaley v. United States,*
   571 U.S. 320 (2014) ........................................................................... 3

*Smith v. Kemp,*
   715 F.2d 1459 (11th Cir. 1983) ............................................................ 7

*United States v. Armstrong,*
   517 U.S. 456 (1996) ....................................................................... 4, 5

*United States v. Augurs,*
   427 U.S. 97 (1976) ............................................................................ 8

*United States v. Bryan,*
   868 F.2d 1032  (9th Cir. 1989) ............................................................ 7

*United States v. Casas,*
   356 F.3d 104 (1st Cir. 2004) .............................................................. 8

*United States v. Chon,*
   210 F.3d 990 (9th Cir. 2000) .............................................................. 5

*United States v. Cuthbertson,*
   630 F.2d 139 (3rd Cir. 1980) .............................................................. 7

*United States v. Fort,*
   472 F.3d 1106 (9th Cir. 2007) ............................................................ 4

*United States v. Griffin,*
   659 F.2d 932 (9th Cir. 1981) .............................................................. 8

*United States v. Hancock,*
   441 F.2d 1285 (5th Cir. 1971) ............................................................ 5

*United States v. Kenny,*
   462 F.2d 1205 (3d Cir. 1972) ............................................................. 6

*United States v. Mandel,*
   914 F.2d 1215 (9th Cir. 1990) ............................................................ 4

*United States v. Miller,*
   529 F.2d 1125 (9th Cir. 1976) ............................................................ 6

*United States v. Mincoff,*
   574 F.3d 1186 (9th Cir. 2009) ............................................................ 8

*United States v. Nagra,*
    147 F.3d 875 (9th Cir. 1998) ......................................................................6
*United States v. Nixon,*
    418 U.S. 683 (1974) ............................................................................7, 10
*United States v. Ramos,*
    27 F.3d 65 (3rd Cir. 1994) .....................................................................5, 8
*United States v. Rinn*,
    586 F.2d 113 (9th Cir. 1978) ....................................................................7
*United States v. Santiago,*
    46 F.3d 885 (9th Cir. 1995) ....................................................................4, 8
*United States v. Stever,*
    603 F.3d 747 (9th Cir. 2009) ....................................................................4
*United States v. Stinson,*
    647 F.3d 1196 (9th Cir. 2011) ..................................................................8
*United States v. Walk,*
    533 F.2d 417 (9th Cir. 1975) ....................................................................5
*United States v. Zavala,*
    839 F.2d 523 (9th Cir. 1998) ....................................................................6
*United States v. Zuno-Arce,*
    44 F.3d 1420 (9th Cir. 1995) ....................................................................6
*Weatherford v. Bursey*,
    429 U.S. 545 (1977) ............................................................................3, 9

Statutes
18 U.S.C. § 1001 ...........................................................................................1
18 U.S.C. § 1519 ...........................................................................................1
18 U.S.C. § 3500 ...................................................................................1, 4, 5

Rules

Federal Rule of Criminal Procedure 16 ...............................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On October 14, 2024, the defendant filed a motion to compel the production of discovery[1] that seeks, among other items, discovery which he has already received, information to which he is not entitled under the law, or discovery to which he is not yet entitled pursuant to 18 U.S.C. § 3500 et seq. (the Jencks Act) or *Giglio v. United States*, 405 U.S. 150, 154 (1972). Because the government has complied and will continue to comply with its discovery obligations pursuant to Federal Rule of Criminal Procedure 16, the Jencks Act, *Giglio*, *Brady v. Maryland*, 373 U.S. 83 (1963), and related cases, the Court should deny the defendant's motion.

### II.   FACTUAL BACKGROUND

On February 14, 2024, the defendant was indicted for making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001 (Count One), and for causing the creation of a false record in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two). The charges are based on false derogatory information that he provided in 2020 to the Federal Bureau of Investigation about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1. He provided this information about supposed conversations that he had years earlier only after Public Official 1 became a candidate for President of the United States.

The Indictment alleges that in June 2020 the defendant reported to his FBI handler, for the first time, two meetings that occurred in 2015 and/or 2016, during the Obama-Biden Administration, in which he claimed Burisma executives admitted to him that they hired Businessperson 1 to "'protect us, through his dad, from all kinds of problems,'" and

---

[1] The defendant filed the motion (ECF No. 136) and later filed the same motion with redactions (ECF No. 139). The government responds to both motions in this opposition.

later that they had paid $5 million each to Public Official 1 and Businessperson 1, when Public Official 1 was still in office, so that "'[Businessperson 1] will take care of all those issues through his dad,'" referring to a criminal investigation being conducted by the then-Ukrainian Prosecutor General into Burisma and to "'deal with [the then-Ukrainian Prosecutor General].'" ECF No. 1 (Indictment) ¶¶ 6(b), 24, 26. The defendant also told his FBI handler about "two purported phone calls between himself and Burisma Official 1 wherein Burisma Official 1 stated that he had been forced to pay Public Official 1 and Businessperson 1 and that it would take investigators 10 years to find records of illicit payments to Public Official 1." *Id.* ¶¶ 6(c), 24, 35. Prior to those statements, the defendant had expressed bias against Public Official 1 in a series of messages exchanged between himself and his handler. *See id.* ¶¶ 8–21.

The Indictment alleges that the defendant knew that his statements about the purported bribery payments were false (based on the defendant's communications and travel records, among other evidence), and that the defendant did not have contacts with Burisma officials until the year 2017, "after the end of the Obama-Biden Administration and after the then-Ukrainian Prosecutor General had been fired in February 2016, in other words, when Public Official 1 had no ability to influence U.S. policy and when the Prosecutor General was no longer in office." *Id.* ¶ 6(d); *see also id.* ¶ 25 (timing of payments according to the defendant), *id.* ¶¶ 29–32. The Indictment further alleges that specific meetings and conversations claimed by the defendant, including the purported bribery admissions made by Burisma officials, did not occur. *See id.* ¶ 31 (no statements made by Burisma Official 2 during meeting at Burisma's headquarters regarding the hiring of Businessperson 1 to "'protect us, through his dad, from all kinds of problems'"); *id.* ¶¶ 33, 36 (no calls or meetings between Associate 1 and Burisma Official 1); *id.* ¶ 34 (no travel to Vienna by the defendant during relevant period).

The government has complied with its discovery obligations to date and has made eight discovery productions to the defendant. Among other items produced to the

defendant, the government has provided evidence that supports the charges in the Indictment and has produced Rule 16 materials. The government has also produced some early Jencks and *Giglio* materials even though the government previously advised the defendant that it would provide such materials one week before trial. Exh. 1 at p.1. The government is not withholding any *Brady* materials.

By contrast, the government requested reciprocal discovery from the defendant in April; however, the defendant did not produce any discovery to the government until October 24, 2024, when he provided, for the first time, what purports to be an expert witness disclosure, six months after the government requested discovery and a little over a month before trial. The government intends to move the Court to exclude this witness from testifying.  The government has not received any other discovery from the defendant.

## III.    LEGAL BACKGROUND

The United States Supreme Court has held that defendants do not have a general constitutional right to discovery in criminal cases. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady v. Maryland*, 373 U.S. 83 (1963)] did not create one."); *Kaley v. United States*, 571 U.S. 320, 335 (2014). As discussed below, criminal discovery in this case is governed primarily by Rule 16, the Jencks Act, and *Giglio*. The government is not withholding any *Brady* material.

### A.    Discovery Under Rule 16

Rule 16 of the Federal Rules of Criminal Procedure controls discovery in a criminal case. Rule 16 allows a defendant to obtain discovery described in the rule before trial. The defendant must show materiality under Rule 16(a)(1)(E)(i) to receive discovery of certain documents and items described in the rule that are within the government's control.

The Ninth Circuit has held that a defendant must make a *prima facie* showing of materiality to support his request: "Neither a general description of the information sought

nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). To compel the government to produce discovery under Rule 16, a defendant must make a "threshold showing of materiality." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2009) (citing *United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995) (holding that a defendant must show "case specific facts which would demonstrate the materiality of the information sought")).

Additionally, Rule 16(a)(2) provides exceptions to the discovery requirements of Rule 16(a)(1)(E):

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Pursuant to this rule, witness statements and law enforcement reports are exempt from Rule 16 and not discoverable under Rule 16 even if material to preparing a defense. *See United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007). In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court considered the parameters of Rule 16(a)(1)(C) [now Rule 16(a)(1)(E)] and ruled that a defendant is entitled to the discovery of only those materials that are material to the defendant's response to the government's case in chief:

> While it might be argued that as a general matter, the concept of a 'defense' includes any claim that is a 'sword,' challenging the prosecution's conduct of the case, the term may encompass only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)(C) tends to support the 'shield-only' reading. If 'defense' means an argument in response to the

4

prosecution's case in chief, there is a perceptible symmetry between documents 'material to the preparation of the defendant's defense,' and, in the very next phrase, documents 'intended for use by the government as evidence in chief at the trial.'

*Id.* at 462; *see also United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (quoting *Armstrong*).

Despite the defendant's apparent belief to the contrary, Rule 16 is not the equivalent of a "request for production" in a civil suit, in that the defendant is not entitled to all documents that might lead the defendant to relevant evidence. *See Chon*, 210 F.3d at 995 (defendants only entitled to materials relevant to the specific charges); *United States v. Ramos,* 27 F.3d 65, 67 (3rd Cir. 1994) (criminal and civil discovery "vastly different"); *United States v. Hancock*, 441 F.2d 1285, 1287 (5th Cir. 1971) (criminal discovery "narrower" than civil discovery). Were it to be adopted, the defendant's view of Rule 16 would lead to an unprecedented expansion of the scope of criminal discovery.

**B.    The Jencks Act**

In addition to Rule 16, discovery in a criminal case is also governed by statute and case law. For example, the Jencks Act, set forth in 18 U.S.C. § 3500, deals with the issue of when witness "statements" must be disclosed to a defendant. Section 3500(a) provides as follows:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness (other than the defendant) shall be the subject of a subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500; *United States v. Walk*, 533 F.2d 417, 419 (9th Cir. 1975) (Under Jencks Act, "witness statements may not be discovered until the witness has testified on direct examination."). The Jencks Act does not conflict with Rule 16, because Rule 16 expressly

1  excludes witness statements from its scope. Fed. R. Crim. P. 16(a)(2) ("Nor does this rule
2  authorize the discovery or inspection of statements made by prospective government
3  witnesses, except as provided in 18 U.S.C. § 3500."); *see also United States v. Kenny*, 462
4  F.2d 1205 (3d Cir. 1972). The Jencks Act only applies to statements of witnesses that are
5  in the actual custody and control of the government. *See Beavers v. United States*, 351
6  F.2d 507, 509 (9th Cir. 1965). As explained below, the majority of the defendant's requests
7  are for Jencks materials, but the government has already advised the defendant it will
8  provide additional Jencks materials at least one week before trial, and thus the defendant's
9  request is simply premature.

10       **C.    *Brady* and *Giglio***

11       Beyond Rule 16 and the Jencks Act, the Constitution imposes certain disclosure
12  obligations on the government in criminal cases. In *Brady v. Maryland*, the Supreme Court
13  held that the government must disclose "evidence favorable to an accused . . . where the
14  evidence is material either to guilt or to punishment." 373 U.S. at 87. The failure to
15  disclose such evidence to a defendant violates due process, "irrespective of the good faith
16  or bad faith of the prosecution." *Id.* The government is not responsible for producing *Brady*
17  material that it does not know about that is in the custody of third parties. *United States v.
18  Zavala*, 839 F.2d 523, 528 (9th Cir. 1998). In *Giglio v. United States*, the Supreme Court
19  held that *Brady* material includes material that might be used to impeach key government
20  witnesses. 405 U.S. at 154. *Brady* and *Giglio* material are conceptually different kinds of
21  evidence: "*Giglio* material" being the label for impeachment evidence, and "*Brady*
22  material" being the label for every other kind of evidence that could be helpful to the
23  defendant's efforts to create a reasonable doubt, i.e., "exculpatory evidence."

24       Moreover, the timing of disclosure of *Brady* and *Giglio* material also varies. For
25  example, with respect to *Brady* material, the Ninth Circuit has held that such material
26  should be disclosed before trial, *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998),
27  when the defense can make practical use of the material. *United States v. Zuno-Arce*, 44

28

6

F.3d 1420, 1427 (9th Cir. 1995); *see also United States v. Miller*, 529 F.2d 1125 (9th Cir. 1976) (if exculpatory evidence can be effectively presented at trial and the defendant is not prevented by lack of time to make necessary investigation, there is no grounds for reversal from belated disclosure).

On the other hand, *Giglio* material "ripens into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3rd Cir. 1980)**;** *see also United States v. Nixon*, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983) ("The thrust of *Giglio* and its progeny has been to ensure that the jury knows the facts that might motivate a witness in giving testimony[.]"). Indeed, the Ninth Circuit has held that "information concerning 'favor[s] or deals' merely goes to the credibility of the witness, [and] it [therefore] need not be disclosed prior to the witness testifying." *United States v. Rinn*, 586 F.2d 113, 119 (9th Cir. 1978).

Importantly, *Giglio* does not extend to potential impeachment material found anywhere in the vast custody of the federal government, but rather it specifically applies to material that is in the possession of federal agencies connected with the investigative and prosecution team, in this case, the FBI and the Special Counsel's Office. For virtually every witness who testifies, the Executive Branch maintains information that might contain *Giglio* or *Brady*: tax returns, passport applications, social security files, Medicare submissions, immigration records, background checks, bank records of FDIC run institutions, etc. Courts, including the Ninth Circuit, do not require the prosecution team to search records that are afield of the investigation and prosecution. The prosecution is only deemed to "have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032,1036 (9th Cir. 1989)(Rule 16 context). Courts, therefore, examine whether information is within the prosecution's control by considering

whether the prosecution has "knowledge and access" to the information in question, looking closely at the relationship between the information sought and the prosecution's (as opposed to the government's) connection to it. *Santiago*, 46 F.3d at 893; *accord United States v. Casas*, 356 F.32d 104, 115-16 (1st Cir. 2004) (no *Brady* violation when a cooperators' immigration file contained perjured information because immigration file was not in prosecution team's control).

Finally, a defendant may not demand documents that are not otherwise discoverable under Rule 16 or *Giglio* by making unsupported claims that they might contain *Brady* or *Giglio* materials. Mere speculation is not a sufficient basis to create a discovery obligation. If it were, the government's discovery obligations would be bound by opposing counsel's imagination and not the rules. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981) (citing *United States v. Augurs*, 427 U.S. 97 (1976)). In *Griffin*, the defendant demanded the notes taken by agents of his interviews. The defendant offered nothing more than speculation that the missing records might contain *Brady* or *Giglio*. The Ninth Circuit held that this speculation was insufficient to sustain a discovery violation. *Id.*; *see also United States v. Ramos*, 27 F.3d 65, 70 (3rd Cir. 1994) ("We think it unwise to infer the existence of Brady material based upon speculation alone."). "[M]ere speculation about materials in the government's files [does] not require the district court to make those materials available, or mandate an in camera inspection." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009). Additionally, *Brady*, *Giglio*, and its progeny do not require the government to disclose neutral, irrelevant, or speculative, evidence. *See, e.g., United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011).

## IV.    ARGUMENT

The defendant's motion to compel is factually and legally flawed, rambling and disorganized, and wholly unsupported by law. Rather than discuss specific discovery requests and why he believes he is entitled to specific discovery by analyzing his request under applicable precedent and case law, the defendant simply copies and pastes paragraph numbers from his previous discovery letters, does not accurately explain what he believes he is still missing from those requests, and includes only a general discussion of the law governing discovery without any specific analysis of his requests. In other words, he appears to be attempting to flip his burden onto the government by baldly alleging he did not receive certain discovery, and seeing whether the government points him to the information he is seeking in what it has already produced or analyzes why his request is not actually discoverable under the law. *See* Mot. at 12 ("These principles require the government not only to *look* at Mr. Smirnov's discovery requests, but to comply with them in good faith and then *provide* any responsive discovery."). But, as discussed above, that is not the law in a criminal case. *See Weatherford,* 429 U.S. at 559. As the moving party, the defendant falls far short of attempting to meet his burden in his motion and the Court should deny his motion on that basis alone. Nonetheless, the government has attempted to organize and decipher each of his discovery requests below and explain why he is not entitled to such discovery, or why such requests are already fulfilled or are premature because Jencks or *Giglio* materials will be produced at least one week prior to trial.

### A.    Several of the Defendant's Requests Seek Discovery Materials that Do Not Exist or Were Already Produced to the Defendant

In at least nine of his requests, the defendant demands information that does not exist even though the government has repeatedly advised defense counsel that it has complied with its discovery obligations.

1        1.    <u>The government is not withholding any expert reports (Def. Req. ¶ 7)</u>

The defendant's motion seeks reports of physical/mental examinations, scientific tests, and expert reports pursuant to Rule 16(a)(1)(F), (G). Mot. at 5, ¶ 7., Def. Exh. 2, ¶ 7. The government is not aware of any such reports and does not anticipate calling any experts at trial.

        2.    The government is not withholding *Giglio* material for civilian witnesses and, in any event, such information is not discoverable until <u>the witness testifies (Def. Req. ¶¶ 10, 19)</u>

The defendant's motion seeks impeachment materials for civilian witnesses, which are discoverable under *Giglio*. Mot. at 5, ¶¶ 10, 19., Def. Exh. 2, ¶¶ 10, 19. Although the government agreed to produce *Giglio* materials at least one week before trial, the deadline for producing such materials is not until the witness testifies. *Nixon*, 418 U.S. at 701. Nonetheless, the government is not withholding any *Giglio* for civilian witnesses but will produce such information at least one week before trial if it becomes aware of any such *Giglio* information.

        3.    The government is not withholding any discovery related to the <u>defendant's interactions with Burisma (Def. Req. ¶¶ 24–27)</u>

The defendant's motion cites four requests related to Burisma, Mot. at 5, Def. Exh. 2, ¶¶ 24–27, but discusses only one of them: "[t]he only item that appears responsive regarding communications between AS and Associate 2 are some emails, texts and travel records; none of these, however, appear to relate to interaction with Burisma officials." Mot. at 5. As the defendant admits, the government has already produced communications involving Associate 2 related to Burisma. While the defendant contends none of those communications "appear to relate to interaction with Burisma officials," the government is not withholding communications between the defendant and Associate 2 that "appear to relate to interaction with Burisma officials." Indeed, the indictment alleges that the defendant falsely described various interactions related to Burisma. It is not surprising, therefore, that there is no evidence that supports his fabrications. In any event, the

defendant concedes that this request is for impeachment material, *see* Mot. at 14, and the government will produce any such *Giglio* materials that it discovers that are responsive to this category at least one week before trial.

### 4. The government is not withholding photos of the defendant's U.S. Passport (new request in Mot. at 7)

Although he does not cite any prior request to the government for his old passport, the defendant makes a misleading claim in his motion that "[t]he government has not provided complete photos of AS's full USA passport book." Mot. at 7. The government seized the defendant's U.S. Passport that he maintained at his residence, copied all of its pages, and produced copies of those pages. The defendant received this complete copy in production 6. *See* USA-06-0000001 et seq. This Passport was issued March 6, 2020, and is the only U.S. Passport that the government obtained from the defendant. The government has also produced to the defendant electronic evidence from his iCloud account and iPhone, and messages between the defendant and the Handling Agent from the Handling Agent's phones. Some of these messages include photos that the defendant took of his own, older passport. The government is not withholding copies of an older U.S. Passport. Additionally, the government produced records of the defendant's travel prior to 2020 that were obtained from independent government databases. *See* USA-06-00003101 et seq. The fact that none of his travel records corroborates the defendant's account does not mean that the government is withholding evidence; rather, it shows the defendant did not tell the truth about his travels.

### 5. The government is not withholding electronic evidence prior to 2016 (Mot. at 6, 7)

The defendant falsely claims that he has not received any evidence of communications between the defendant and his Handling Agent "dating from before 2016." Mot. at 7. He also falsely claims that he is missing electronic media he created before 2016. *Id.* These inaccurate claims show that the defendant has not examined the materials the government produced for his iCloud account and iPhone, which include

11

messages between the defendant and his Handling Agents dating back to 2014, as well as all other electronic evidence (including photos and videos) that was imaged from the defendant's phone and was "created before 2016". The government is not withholding pre-2016 electronic media evidence from the defendant's phone or iCloud account, or from the Handling Agent's phones—the defendant has what the government has.

**B.    The Defendant's Requests for Information Related to the Pittsburgh Assessment, the FD-1023, and Other Reporting are Moot or Premature**

1.    The government has already produced additional materials related to the Pittsburgh Assessment and will produce additional Jencks material <u>at least one week before trial (Def. Req. ¶¶ 22, 23)</u>

In their motion, the defense incorrectly references paragraph 12 of their letter but appears to be referring to paragraph 22 of their letter based on their description, "We do not see this assessment." Mot. at 5., Def. Exh. 2 at ¶ 12. Request 22 of their letter states, "We request a copy of FBI Pittsburgh's assessment, 58A-PG-3250958, mentioned in the Indictment at para. 22." Additionally, the defendant requests, in Request 23 of their letter, "any and all records and communications between FBI Pittsburgh and/or USAO WDPA and/or the Handler mentioned in the Indictment and/or otherwise related to Mr. Smirnov." Although the government previously indicated it would provide Jencks and *Giglio* materials one week before trial, since the filing of their motion, the government has made available to the defense material from the Pittsburgh assessment that relates to the defendant. This material includes information related to both of their requests, 22 and 23. Additional Jencks material related to request 23, involving communications of testifying law enforcement officers, will be produced at least one week prior to trial, if such communications exist.

2.    The government will produce certain Jencks Act material for witnesses <u>at least one week before trial (Def. Req. ¶ 38)</u>

The defendant requested "communications referring or relating to the investigation of Mr. Smirnov's alleged allegations documented in an FD-1023," and, although he admits

that some of this Jencks material has already been produced, he states "there appears to be more communications on this topic that has not been produced." Mot. at 5., Def. Exh. 2, ¶ 38. The defendant fails to specify what he believes is missing and, as such, fails to meet his burden. Nonetheless, if there are additional communications involving the government's witnesses that are discoverable pursuant to the Jencks Act, these communications will be produced at least one week prior to trial.

3. The government has produced other reports involving claims made by the defendant that do not relate to entities or individuals involved in this case (Mot. at 8)

In his motion, the defendant, without citing a prior request to the government, demands reports of claims made by the defendant involving individuals and entities who are not witnesses or otherwise involved in this case. Mot. at 8. Since the filing of his motion, the government has produced numerous unclassified FBI Form 1023s that document information/allegations made by the defendant about other individuals and entities. These include 1023s for the years 2010 to 2024, which would necessarily include third parties that Mr. Smirnov "reported on." The government therefore believes this request is largely moot, with the exception of the defendant's unfounded request for "full names, contact information, aliases, and the complete contents of any official files or investigations (by the FBI or any other government entity) concerning such third parties" that the defendant reported on. The defendant offers no authority in support of this request in his motion; the government could not locate any such authority; and the defendant, therefore, has failed to meet his burden, because information about these other individuals derived by law enforcement has no relevance in this matter and is not discoverable.

### C.    The Defendant's Remaining Requests Have No Basis in Law

1.    The defendant's request that the government state whether it believes documents produced as CIPA discovery are responsive to his <u>discovery requests is unfounded (Mot. at 6, Def. Exh. 1 at 3)</u>

The defendant demands that the government notify the defendant if any CIPA-related discovery is responsive to his discovery requests. Mot. at 6, Def. Exh. 1 at 3. To be clear, the government produced a limited amount of classified discovery to the defendant prior to his filing of the motion, and the defendant reviewed those materials. The production is less than 20 pages. The defendant cites no precedent in support of his request that the government essentially do the defense lawyer's work to analyze the documents. It is not incumbent on the government to analyze the documents and tell defense counsel how they relate to the defendant's discovery requests. His precedent-less demand is unfounded.[2]

2.    The defendant's request for return of his phone ignores that he already <u>has all the information in his phone (Mot. at 7-8)</u>

The defendant requests that the government return his physical iPhone for him to review because "Mr. Smirnov reasserts that he requires the physical phone to provide the date, times and context for the videos and voice messages exchanged with his handler." Mot. at 8. The defendant's motion fails to disclose that he has already received the electronic evidence from his device and iCloud account in discovery, and this electronic evidence shows dates, times and context for the videos. Further, the government provided a software program called Axiom Portable Case that allows the defense to easily review, search, code and process the data from the defendant's phone. The defendant fails to cite any authority that requires the government to also provide his physical phone. Indeed, his

---

[2] To the extent the defendant is seeking additional classified information to satisfy his discovery requests in his motion, the defendant is well aware that the government filed a motion, pursuant to CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1), seeking certain relief regarding classified information. The Court granted the government's motion.

physical phone is a piece of evidence in this case and its integrity must be maintained. Because the defendant has already received the information on his phone, he is not entitled to receive the physical phone itself.

> 3.   The defendant is not entitled to documents and communications relating to the request to the U.S. Attorney's team to assist with an <u>investigation of allegations related to the FD-1023 (Def. Req. ¶ 37)</u>

The defendant's motion seeks "documents and communications referring or relating to the request to U.S. Attorney's team to 'assist' with 'an investigation of allegations' related to the FD-1023." Mot. at 5, ¶ 37, Def. Exh. 2, ¶ 37. The government is not in possession of any *Brady* material related to this request. The defendant offers no authority or analysis in his motion related to this request. Rule 16(a)(2) expressly prohibits the defendant from obtaining these materials (". . . this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case"). Rule 16(a)(2) should be followed, and consequently, the defendant is not entitled to these materials.

> 4.   The defendant's request for "positive independent photographic <u>identification of the FBI handler" is unfounded (Mot. at 8).</u>

In his motion, the defendant raises another request that he has not previously raised with the government—that is, he requests "positive independent photographic identification of the FBI handler for Mr. Smirnov." Mot. at 8. The defendant claims that the identification is necessary for "Mr. Smirnov to be able to identify his handler in Mr. Smirnov's photos and to document the course of dealings, travel, and relationship between the two." *Id.* The defendant fails to cite any authority in support of this request and the government could not find any. Although the government doubts his claim is true, if the defendant can no longer remember what his FBI handler looks like after a 13-year relationship, that fact does not permit him to receive a photograph of his handler. The

government will not accommodate this request because it has no basis in law and it jeopardizes the safety of law enforcement.

> 5. **U.S. Department of State records cited in a New York Times article are not discoverable and are a fishing expedition (Mot. at 5)**

In a letter dated August 28, 2024, the defendant seeks State Department records cited in a New York Times article. Mot. at 5, Def. Exh. 4 at 2. On August 13, 2024, the New York Times published an article titled "Hunter Biden Sought State Department Help for Ukrainian Company." Def. Exh. 2. The article, which is attached as Exhibit 2, does not mention the defendant or the false statements he made to his Handling Agent. Instead, according to the article, "Hunter Biden sought assistance from the U.S. government for a potentially lucrative energy project in *Italy* while his father was vice president, according to newly release records and interviews." Def. Exh. 2 at 1 (emphasis added). Among other reasons, this request should be denied is because the State Department is not part of the prosecution team, and the defendant does not (and cannot) allege otherwise. Beyond that, this request is a fishing expedition and has nothing to do with the defendant's false statements. The defendant is not alleged to have made any false statements related to "a potentially lucrative energy project in Italy." The defendant did not claim that any of the referenced individuals or entities in Italy or the U.S. government were parties to the conversations that he fabricated about Burisma, a Ukrainian business entity. Records and information that may be in the possession of the State Department and relate to a potentially lucrative energy project in Italy have no relevance in this case. They are not discoverable and are simply an effort by the defense to cause the government to embark on a fishing expedition. The defendant fails to meet his burden in his motion.

## V.    CONCLUSION

For the reasons set forth above, the Court should deny the defendant's motion to compel discovery (ECF Nos. 136, 139).