# EXHIBIT 1

**Page 1**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3
 4    UNITED STATES OF AMERICA,    )
                                   )
 5         v.                      ) CRIMINAL ACTION
                                   ) NO. 23-mj-274(MN)
 6    ROBERT HUNTER BIDEN,         ) CRIMINAL ACTION
                                   ) NO. 23-61(MN)
 7         Defendant.             )
 8
 9                 Wednesday, July 26, 2023
                   10:00 a.m.
10                 Initial Appearance
                   Plea Hearing
11
12                 844 King Street
                   Wilmington, Delaware
13
14    BEFORE: THE HONORABLE MARYELLEN NOREIKA
              United States District Court Judge
15
16
17    APPEARANCES:
18         UNITED STATES ATTORNEY'S OFFICE
           DISTRICT OF DELAWARE
19         BY: BENJAMIN L. WALLACE, ESQ.
           BY: DEREK E. HINES, ESQ.
20         BY: LEO J. WISE, ESQ.
21
                     Counsel for the United States
22
23
24
25
```

**Page 2**

```
 1    APPEARANCES CONTINUED:
 2
 3    CLARK SMITH VILLAZOR LLP
      BY: CHRISTOPHER J. CLARK, ESQ.
 4
      -and-
 5
      BERGER HARRIS, LLP
 6    BY: RICHARD I.G. JONES, JR., ESQ.
 7
                   Counsel for the Defendant
 8
 9
10    ------------------
11
12         THE COURT: All right. Good morning, everyone.
13    Please be seated. All right. Hold on. Let me just start
14    by reminding everyone that there is no recording of these
15    proceedings that is permitted. For those of you in the
16    back, you are certainly permitted to watch, but we will not
17    have any disruptions. Any disruption or attempt to disrupt
18    will result in the Court's security personnel or the U.S.
19    Marshals escorting you out.
20         All right. With that.
21         MR. WISE: Good morning, Your Honor. Leo Wise,
22    Derek Hines, and Benjamin Wallace on behalf of the United
23    States. Now is the time the Court has set for an initial
24    appearance on the criminal information filed in the United
25    States versus Robert Hunter Biden, 23-cr-61-MN charging the
```

**Page 3**

```
 1    Defendant with a firearm offense, and for the entry of a
 2    guilty plea to the criminal information filed in the
 3    separate matter, United States versus Robert Hunter Biden,
 4    23-mj-274-MN, charging the Defendant with two counts of
 5    failure to pay taxes. The parties are ready to proceed. I
 6    ask permission to pass up an executed version of the plea
 7    agreement in the tax case at this time.
 8         THE COURT: You may. Thank you.
 9         MR. WISE: And my understanding, Your Honor, is
10    that we're going -- Your Honor first will conduct the
11    initial appearance on the firearm charge and then turn to
12    the plea hearing on the tax charge.
13         THE COURT: No. Hold on. Let me just take a
14    look. All right.
15         Good morning, Mr. Clark, Mr. Biden.
16         MR. CLARK: Good morning, Your Honor.
17         THE COURT: Just so that we don't have you
18    feeling that you need to pop up and down, I am fine if you
19    want to when I'm asking questions stay seated so you don't
20    have to just keep popping up.
21         MR. CLARK: We won't do it any other time.
22         THE COURT: All right. Thank you. Okay. So we
23    do have two cases here, one is a criminal action based on a
24    felony information related to a gun charge, and the other is
25    Criminal Action 23-274 based on the misdemeanor involving
```

**Page 4**

```
 1    the tax charges. This is the Defendant's first appearance.
 2    I had planned to conduct the initial appearance on the two
 3    cases at the same time. Is there any objection to that?
 4         MR. WISE: None, Your Honor. Thank you.
 5         MR. CLARK: None, Your Honor.
 6         THE COURT: I thought it might be more efficient
 7    and save some time.
 8         THE COURT: Mr. Biden, in Criminal Action 23-61,
 9    the United States Attorney for the District of Delaware has
10    filed a felony information which charges you with possession
11    of a firearm by a person who is an unlawful user of or
12    addicted to a controlled substance in violation of 18 United
13    States Code Sections 922(g)(3) and 924(a)(2).
14         And in Criminal Action 23-274, the United States
15    Attorney for the District of Delaware has filed a
16    misdemeanor information which charges you with two counts of
17    willful failure to pay tax in violation of 26 United States
18    Code Section 7203. Do you understand that those are the
19    charges that are pending here?
20         THE DEFENDANT: Yes, Your Honor.
21         THE COURT: Do you understand that the maximum
22    penalties for the gun charge are ten years of imprisonment,
23    a fine of $250,000, three years of supervised release, and a
24    special assessment of $100?
25         THE DEFENDANT: Yes, Your Honor.
```

5

1    THE COURT:  And do you understand that the
2  maximum penalties for each of Counts I and II of the tax
3  case are twelve months of imprisonment, a $100,000 fine or
4  twice the gross gain or loss from the offense, whichever is
5  greater, one year of supervised release, restitution and a
6  $25 special assessment as well as costs of prosecution?
7    THE DEFENDANT:  Yes, Your Honor.
8    THE COURT:  All right.  Now, Mr. Biden, you have
9  the right to be represented by an attorney in these matters,
10 that means if you can afford to, you can hire an attorney of
11 your own choice.  If you can't afford to, you may ask the
12 court to appointment an attorney to represent you.  Do you
13 understand that?
14   THE DEFENDANT:  Yes, Your Honor.
15   THE COURT:  All right.  You are presently
16 represented by Mr. Clark.  Do you wish to continue that
17 representation?
18   THE DEFENDANT:  Yes, Your Honor.
19   THE COURT:  All right.  Now, Mr. Biden, you have
20 the right to a preliminary hearing in these cases.  At that
21 hearing, the government would have to produce sufficient
22 evidence to show that it has probable cause to believe that
23 you committed the crimes with which you are being charged.
24 At that hearing you would have the right to introduce
25 evidence and to cross-examine any adverse witnesses who

6

1  would be testifying against you.  Do you understand that?
2    THE DEFENDANT:  Yes, Your Honor.
3    THE COURT:  All right.  Now, I understand that
4  you intend to plead guilty to the tax charges.  Do I have
5  that right?
6    THE DEFENDANT:  Yes, Your Honor.
7    THE COURT:  All right.  Do you understand that
8  if you plead guilty to those charges, you will be waiving
9  your right to a preliminary hearing?
10   THE DEFENDANT:  Yes, Your Honor.
11   THE COURT:  I also understand that the plan for
12 the gun charge is a Diversion Agreement.  Counsel, do we
13 need to do anything regarding a preliminary hearing at this
14 point in light of the planned Diversion Agreement?
15   MR. WISE:  No, Your Honor.
16   MR. CLARK:  We're in agreement with that, Your
17 Honor.
18   THE COURT:  All right.  Mr. Biden, you are not
19 required to make any statements to the authorities.  If you
20 had already made statements to the authorities, you may stop
21 and not make any more.  If you start to make a statement and
22 you change your mind, you may stop at any time.  And any
23 statement that you do make may be used against you.  Do you
24 understand all of that?
25   THE DEFENDANT:  Yes, Your Honor.

7

1    THE COURT:  All right.  Now, pursuant to the Due
2  Process Act, I confirm that the government has a continuing
3  obligation pursuant to Brady v. Maryland and its progeny to
4  produce all exculpatory evidence and I order that it do so
5  at the appropriate time.  The consequences for violating a
6  Brady obligation and/or my order could include, but are not
7  limited to, contempt proceedings, sanctions, referral to
8  disciplinary counsel, adverse jury instructions, exclusion
9  of evidence and dismissal of the charges.  Does the
10 government understand that?
11   MR. WISE:  Yes, Your Honor.
12   THE COURT:  Has all Brady material been
13 produced?
14   MR. WISE:  Yes, Your Honor.
15   THE COURT:  Mr. Clark, any concerns about that?
16   MR. CLARK:  None whatsoever, Your Honor.
17   THE COURT:  Thank you.
18   Pretrial release, what is the government's
19 position?
20   MR. WISE:  The conditions that have been
21 recommended we agree with.
22   THE COURT:  Any concerns about that, Mr. Clark?
23   MR. CLARK:  No, Your Honor, we're in accordance.
24   THE COURT:  You can't help yourself, you're just
25 going to keep jumping up.

8

1    MR. CLARK:  I was taught at a hard school.
2    THE COURT:  I know.  I couldn't even think if I
3  wasn't standing.
4    I understand that pretrial release -- I agree
5  that pretrial release is appropriate subject to the
6  following conditions which I will read into the record.  The
7  Defendant must not violate federal, state, or local law
8  while on release.
9    The Defendant must cooperate in the collection
10 of a DNA sample if it is authorized by 34 United States Code
11 Section 40702.
12   The Defendant must advise the court or the
13 pretrial services officer or some supervising officer in
14 writing before making any change in residence or telephone
15 number.
16   The Defendant must appear in court as required
17 and if convicted must surrender as directed to serve a
18 sentence that the Court may impose.
19   I also impose the following additional
20 conditions.
21   Sir, you must submit to supervision by and
22 report to supervision to the probation office in the
23 district in which you are residing.  You must continue or
24 actively seek employment.  You must communicate in writing
25 all international travel plans and provide supporting

9

1  documentation if requested to both the District of Delaware
2  and the district in which you are residing.  You must not
3  possess a firearm, destructive device or other weapon.  You
4  must not use alcohol.  You must not use or unlawfully
5  possess a narcotic drug or other controlled substance
6  defined in 21 United States Code, Section 802, unless
7  prescribed by a licensed medical practitioner.  I will
8  clarify, however, that marijuana is not legal under federal
9  law and you are prohibited from using marijuana regardless
10  of whether it is legal or not in the state in which you are
11  or it is prescribed by a medical practitioner.
12          You must submit to testing for a prohibited
13  substance if required by the pretrial services officer or
14  supervising officer.  Testing may be done with random
15  frequency and may include urine testing, the wearing of a
16  sweat patch, remote alcohol testing system and/or any form
17  of prohibited substance screening or testing.  You must not
18  obstruct, attempt to obstruct or tamper with the efficiency
19  or accuracy of prohibited substance screening or testing.
20          Just give me a minute here.
21          And you must participate in a program of
22  inpatient or outpatient substance abuse, therapy, or
23  counseling if directed by the pretrial services officer or
24  the supervising officer.  Do you understand those
25  conditions, sir?

10

1          THE DEFENDANT:  Yes, Your Honor.
2          THE COURT:  All right.  Any objection or
3  comments on the conditions imposed?
4          MR. CLARK:  None from the defense, Your Honor.
5          MR. WISE:  Nor from the United States, Your
6  Honor.
7          THE COURT:  All right.  Mr. Biden, violating any
8  of the conditions of release may result in the immediate
9  issuance of a warrant for your arrest, revocation of your
10  release, an order for detention, forfeiture of any bond or
11  prosecution for contempt of court, and it could result in
12  imprisonment, a fine, or both.  Do you understand that?
13          THE DEFENDANT:  Yes, Your Honor.
14          THE COURT:  Anything I left out or anything I
15  need to address with respect to the initial appearances?
16          MR. WISE:  Not from the United States, Your
17  Honor.
18          MR. CLARK:  No, Your Honor.
19          THE COURT:  Now, we have two cases and two
20  agreements and I understand that the Diversion Agreement is
21  not something that is typically before the Court, but you
22  all did send it to me so I do want to talk about that a
23  little bit.  There are some provisions in those agreements
24  that are not standard and are different from what I normally
25  see, so I think we need to walk through these documents and

11

1  get some understanding of what is being proposed so that I
2  can give due consideration to the determination that you all
3  are asking me to make.  So I want to start with Criminal
4  Action 23-274 involving the tax charges.
5          All right.  Now, Mr. Biden, you told me that you
6  intend to enter a plea of guilty in those cases, correct?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  So it is my responsibility to make
9  sure that that plea is a voluntary and knowing plea.  And in
10  order to do that, I first need to ask you a series of
11  questions.  Before I ask you those questions, I am going to
12  have you placed under oath to answer those questions
13  truthfully.  And it's important that you do answer those
14  questions truthfully because if you don't, any false answers
15  may be used against you in a separate prosecution for
16  perjury.  Do you understand that?
17          THE DEFENDANT:  Yes, Your Honor.
18          THE COURT:  All right.  Mr. Buckson, will you
19  please swear in the Defendant.
20          COURT CLERK:  Will you please rise and raise
21  your right hand.  Please state and spell your full name for
22  the record.
23          THE DEFENDANT:  Robert Hunter Biden.
24  R-O-B-E-R-T, H-U-N-T-E-R, B-I-D-E-N.
25          ROBERT HUNTER BIDEN, was duly sworn under oath.

12

1          THE COURT:  Thank you, sir.  You may be seated.
2  All right.  Now, sir, if at any time you want to confer with
3  your counsel when I'm asking you questions, you may, just
4  let me know.  All right?
5          THE DEFENDANT:  Thank you, Your Honor.
6          THE COURT:  How old are you?
7          THE DEFENDANT:  Fifty-three years old, Your
8  Honor.
9          THE COURT:  How far did you go in school?
10          THE DEFENDANT:  Law school, Your Honor.
11          THE COURT:  When did you graduate from law
12  school?
13          THE DEFENDANT:  1996.
14          THE COURT:  You're member of the bar?
15          THE DEFENDANT:  Yes, Your Honor.
16          THE COURT:  Any particular?
17          THE DEFENDANT:  District of Columbia and
18  Connecticut, Your Honor.
19          THE COURT:  Thank you.  And you speak and
20  understand English?
21          THE DEFENDANT:  Yes, Your Honor.
22          THE COURT:  Are you currently or have you
23  recently been under the care of a physician or psychiatrist?
24          THE DEFENDANT:  No, Your Honor.
25          THE COURT:  Have you ever been hospitalized or

13

1 treated for any mental illness or addiction to narcotic
2 drugs of any kind?
3         THE DEFENDANT:  I have attended treatment
4 facilities for addiction, Your Honor.
5         THE COURT:  Okay.  So that was included in my
6 question which is treatment for addiction to drugs.
7         THE DEFENDANT:  Yes, Your Honor.
8         THE COURT:  So I need you to tell me about that.
9 How many times have you, to the best of your recollection,
10 been treated whether inpatient or outpatient?
11         THE DEFENDANT:  Beginning in 2003 with the
12 inpatient, Your Honor, I have been to I believe close to six
13 inpatient over the course of twenty years.
14         THE COURT:  All right.
15         THE DEFENDANT:  And I have also been in
16 outpatient programs also during that time.
17         MR. CLARK:  Just to be clear, it's numerous,
18 Your Honor.
19         THE COURT:  I'm not going to walk through every
20 single one, but I just want to make sure I have some
21 understanding.
22         All right.  Now, sir, each time that you were
23 treated in an inpatient facility, what was it for?
24         THE DEFENDANT:  For addiction to alcohol
25 primarily originally, Your Honor.

14

1         THE COURT:  Okay.  And have you ever been in an
2 inpatient treatment program where you were treated for
3 something else other than alcoholism?
4         THE DEFENDANT:  Drugs, also, Your Honor.
5         THE COURT:  Okay.  And I'm just not sure how
6 these programs work.  I'm sorry.  Is it for any particular
7 drug that you're treated or is it just sort of --
8         THE DEFENDANT:  No.
9         THE COURT:  Everything.
10         THE DEFENDANT:  Everything, Your Honor.
11         THE COURT:  Okay.  And when was the most recent
12 time that you were in treatment?  Well, are you currently in
13 treatment for your alcohol or drug issues?
14         THE DEFENDANT:  No, I'm not, Your Honor.
15         THE COURT:  When was the last time that you were
16 in treatment?
17         THE DEFENDANT:  I believe the fall of 2018.
18         MR. CLARK:  I think that's right, Your Honor.
19         THE COURT:  Okay.
20         THE DEFENDANT:  Your Honor, sorry.
21         THE COURT:  That's okay.  So the fall of 2018,
22 and was that inpatient or outpatient?
23         THE DEFENDANT:  Inpatient, and then also
24 outpatient.
25         THE COURT:  Okay.  And when you -- did you

15

1 complete that program or did you leave that program prior to
2 completion?
3         THE DEFENDANT:  I completed that program, the
4 inpatient portion of it, Your Honor.
5         THE COURT:  Okay.  And after you completed that
6 program, did you then continue to use drugs for some period
7 of time?
8         THE DEFENDANT:  I did, Your Honor.
9         THE COURT:  All right.  So when was the last
10 time -- so the fall of 2018 was the last time that you
11 received any treatment, right?
12         THE DEFENDANT:  Yes, Your Honor.
13         THE COURT:  Okay.  When was the last time that
14 you used, ingested, or were under the influence of any drug,
15 legal or illegal medication or alcoholic beverage of any
16 kind?
17         THE DEFENDANT:  June of 2019, Your Honor.
18         THE COURT:  All right.  And so just to be clear,
19 you are not presently under the influence of any drug, legal
20 or illegal, medication or alcoholic beverage of any kind, is
21 that correct?
22         THE DEFENDANT:  No, Your Honor.
23         THE COURT:  Well, let's just be clear because,
24 you know, people might look at this transcript.  I said is
25 that correct and you said no.

16

1         THE DEFENDANT:  I'm sorry, yes, Your Honor,
2 excuse me.
3         THE COURT:  And sir, do you understand what's
4 going on and why we're here today?
5         THE DEFENDANT:  Yes, I do understand.
6         THE COURT:  Counsel, do you have any doubt as to
7 your client's competence?
8         MR. CLARK:  None whatsoever.
9         THE COURT:  Any concerns from the government?
10         MR. WISE:  No, Your Honor.
11         THE COURT:  Based on the information that I
12 received, Mr. Biden, I find that you are competent and
13 capable of proceeding here today.
14         So now I want to talk about the misdemeanor
15 information which contains the tax charges that you are
16 pleading guilty to.  Have you received a copy of the
17 information pending against you?
18         THE DEFENDANT:  Yes, Your Honor.
19         THE COURT:  Have you fully discussed those
20 charges and the case in general with Mr. Clark?
21         THE DEFENDANT:  Yes, Your Honor.
22         THE COURT:  Are you fully satisfied with the
23 counsel, representation, and advice you received from him in
24 this case?
25         THE DEFENDANT:  Yes, Your Honor.

17

1    THE COURT: You have the right to have the
2 information read out loud at this hearing, but you can also
3 waive that reading.  Would you like me to ask the government
4 to read it or do you waive that?
5    THE DEFENDANT: I waive that, Your Honor.
6    THE COURT: Okay.  Next, the Memorandum of Plea
7 Agreement which was handed up to me.  First, let me ask
8 counsel, what provision of the rules is this plea agreement
9 being presented under?
10    MR. WISE: It's presented under Rule
11 11(c)(1)(B), Your Honor, of the Federal Rules of Criminal
12 Procedure.
13    THE COURT: All right.  And so just so we're
14 clear, and Mr. Clark, you agree with that?
15    MR. CLARK: I do, Your Honor.
16    THE COURT: All right.  Just so we're clear,
17 this is not a plea under Rule 11(c)(1)(C), what is often
18 called a C plea which binds me to impose a specific sentence
19 if I accept the plea, is that correct?
20    MR. WISE: It is, Your Honor.
21    MR. CLARK: We agree, Your Honor.
22    THE COURT: So in your view, what is my role
23 here under Rule 11(c)(1)(B)?
24    MR. WISE: Your Honor has two roles as Your
25 Honor has already begun to determine that the plea is

18

1 knowing and voluntary under Rule 11(B), and to apprise the
2 Defendant that you are not bound by the recommendation of
3 the United States in this case pursuant to Rule 11(c)(3)(B).
4    THE COURT: That's it?
5    MR. WISE: That's it.
6    THE COURT: All right.  Now, is it my role to
7 accept or reject this plea?
8    MR. WISE: It is not, Your Honor.
9    THE COURT: Now, let me just ask you this.
10 Would my role be different if this were a plea under Rule
11 11(c)(1)(A)?
12    MR. WISE: Yes, Your Honor, it would.
13    THE COURT: How would you say it's different?
14    MR. WISE: Both Rule 11(c)(1)(A) pleas and
15 11(c)(1)(C) pleas require the Court to either accept, reject
16 or defer on the plea agreement itself, not on the plea which
17 is governed by like I said a separate provision of the rule
18 which is 11(B), but in terms of the Court's role vis-a-vis
19 the agreement is to accept, reject or defer.
20    THE COURT: All right.  And I do want to talk
21 about that a little bit further, but when we talk about the
22 plea, but you can sit down for now.
23    Now, wait, let me ask you this.  If it's a
24 11(c)(1)(A) plea, what is your understanding of the factors
25 that I need to look at?

19

1    MR. WISE: So the rule itself is silent on the
2 factors, but the case law suggest that the factors -- that
3 the rejecting or accepting the plea would relate to the
4 Court's traditional role at sentencing, so if, for instance,
5 the Court thought that the charge bargain which is what
6 11(c)(1)(A) does, if the Court thought the charge bargain
7 did not adequately reflect the seriousness of the offense
8 which would affect the Court's ability to sentence, then
9 there is case law that says under those circumstances the
10 Court could reject the charge bargain that was contained in
11 the (c)(1)(A) plea.
12    THE COURT: When you say the charge bargain, you
13 mean the bargain by which the Defendant pleads guilty and
14 the government agrees not to bring other charges or to drop
15 charges that have already been brought?
16    MR. WISE: Exactly, Your Honor.
17    THE COURT: All right.  And in looking at an
18 11(c)(1)(A) plea, would I need to consider or are those
19 factors that you just sort of talked about, is that usually
20 referred to as in the interest of justice?
21    MR. WISE: They are, Your Honor.
22    THE COURT: All right.  You can be seated.
23    So yesterday I received from third parties a
24 letter with almost 900 pages of attachments in one case, and
25 a memorandum of law with hundreds of more pages of exhibits

20

1 in the other.  I have not had time to review those
2 submissions.  I understand that there is some objection to
3 them and I will give the Defendant and the government if it
4 wishes an opportunity to respond to those if they choose.
5 But even though I have not been able to review the
6 third-party submissions, I do understand that they request
7 that I reject the plea agreement based on information that
8 the filers submit cast doubt on the investigation performed
9 or the charges brought or both.
10    So let me ask you this.  If I were to think that
11 the facts presented in those submissions or even the facts
12 that have been presented to me in this case and the attached
13 agreements suggest that the investigation was lacking or
14 that more serious charges should have been brought, is it
15 within my power to ask or direct the United States Attorney
16 or the Attorney General of the United States to redo the
17 investigation or bring different or more serious charges?
18    MR. WISE: I don't believe so, Your Honor, no.
19    MR. CLARK: We agree, Your Honor, it would raise
20 obviously massive separation of powers questions if that was
21 to be taken.
22    THE COURT: Okay.  And isn't that decision about
23 what charges to bring for the prosecutor as part of the
24 Executive Branch?
25    MR. WISE: It is, Your Honor.

21

1        MR. CLARK:  We concur, Your Honor.
2        THE COURT:  All right.  So if there were a
3  failure in the investigation or the charges brought were
4  inappropriate, how would that get addressed in our form of
5  government?
6        MR. WISE:  Through the political process, Your
7  Honor.
8        MR. CLARK:  In particular, Your Honor, the
9  Executive Branch is charged fully with investigating, making
10  prosecutorial discretion decisions, and indeed that's where
11  the term prosecutorial discretion comes from, it is vested
12  in the Executive Branch.
13        THE COURT:  All right.  Okay.  Let's walk
14  through some of the provisions of the plea, Memorandum of
15  Plea Agreement.  Do you have it in front of you, sir?
16        THE DEFENDANT:  Yes, Your Honor.
17        THE COURT:  It's six pages long and has an
18  attached Exhibit 1 which is four pages long as well as a
19  sealed attachment referenced as Attachment A.  Attachment A
20  is a document that is not public, but it is a standard
21  document that is filed in all cases in this district and is
22  not filed only in connection with this case.  The Memorandum
23  of Plea Agreement has three signatures on the final page.
24  Is one of those signatures yours?
25        THE DEFENDANT:  Yes, Your Honor.

22

1        THE COURT:  Okay.  And when did you sign it?
2        THE DEFENDANT:  This morning, Your Honor.
3        THE COURT:  And before you signed it, did you
4  have an opportunity to read it and discuss it with your
5  attorney?
6        THE DEFENDANT:  I did, Your Honor.
7        THE COURT:  Are you satisfied with the advice
8  and counsel you received regarding the plea agreement.
9        THE DEFENDANT:  I am, Your Honor.
10        THE COURT:  All right.  Let's have a side-bar up
11  here.
12        (Sealed Attachment A side-bar discussion under
13  separate cover.)
14        (End of sealed Attachment A discussion.)
15        THE COURT:  All right.  Let's go back on the
16  unsealed portion of the record.
17        So I'm now going to ask the prosecutor to read
18  the essential terms of the plea agreement.  Sir, I'll ask
19  you to listen carefully to what he says because when he's
20  finished, I'm going to ask you if the agreement as recited
21  by him reflects the deal that you believe you reached with
22  the government.
23        Mr. Wise.
24        MR. WISE:  Thank you, Your Honor.
25        Paragraph 1 provides that the Defendant waives

23

1  any challenge to the information based on venue and agrees
2  to plead guilty in the United States District Court for the
3  District of Delaware to Counts I and II of the information
4  which charge him with willful failure to pay tax in
5  violation of Title 26 United States Code Section 7203.
6        Paragraph 2 describes how the Defendant
7  understands that the maximum penalties for each of Counts I
8  and II are as Your Honor previously indicated, twelve months
9  of imprisonment, a $100,000 fine or twice the gross gain or
10  loss from the offense, whichever is greater, one year of
11  supervised release, restitution and a $25 special assessment
12  per count and the cost of prosecution which the parties
13  stipulate is zero.
14        Paragraph 3 describes the essential elements
15  that the government would have to prove if the case went to
16  trial and those are one, that the Defendant had a duty to
17  pay tax.  Two, that the tax was not paid at the time
18  required by law.  And three, that the failure to pay was
19  willful.  The Defendant knowingly and voluntarily and
20  intelligently admits his guilt to each of these elements and
21  further admits to the information contained in the statement
22  of facts which is attached to the memorandum as Exhibit 1.
23        Paragraph 4 provides that the Defendant is
24  pleading guilty to Counts I and II because he is in fact
25  guilty.

24

1        Paragraph 5 contains certain stipulations under
2  the sentencing guidelines.  Paragraph 5A provides that the
3  amount of loss as to Counts I and II, so a combined loss is
4  no less than $1,199,524 and no greater than $1,593,329.
5        Subparagraph B provides that the conduct set
6  forth in the statement of facts which is Attachment A to the
7  Diversion Agreement filed, which will be filed today does
8  not constitute relevant conduct pursuant to United States
9  Sentencing Guideline 1(b)(1.3).  Paragraph C provides that
10  provided that the United States does not subsequently learn
11  of conduct by the Defendant inconsistent with the acceptance
12  of responsibility, that it will not oppose a two level
13  decrease pursuant to U.S. Sentencing Guideline 3(e)(1.1)(a)
14  for acceptance.  And further, that should it be determined
15  that the Defendant's offense level is 16 or greater prior to
16  the application of the two level reduction for acceptance
17  that the United States will move to reduce the sentence, the
18  guideline by one additional level pursuant to U.S.
19  Sentencing Guideline 3(e)(1.1)(b) for a total reconduction
20  of three levels.
21        It is understood and agreed by the parties that
22  these stipulations are not binding upon either the probation
23  office or the Court.
24        Second, that the Court may make factual and
25  legal determinations that differ from these stipulations

25

1 that may result in an increase or decrease in the sentencing
2 guideline range and the sentence that may be imposed.
3          Paragraph 6 provides that for reasons to be
4 articulated at or near the time of sentencing, the United
5 States will recommend a sentence of probation.
6          Paragraph 7 provides that the United States
7 retains the right to defend the rulings of the District
8 Court in any subsequent proceeding.
9          Paragraph 8 outlines at length the sentencing
10 procedure which I believe the Court will review with the
11 Defendant in more detail.
12          Paragraph 9 contains a broad appellant waiver
13 which I also understand the Court will review with the
14 Defendant in greater detail.
15          Paragraph 10 provides that the Defendant agrees
16 to pay a $50 special assessment at the day of sentencing.
17          Paragraph 11 provides that the memorandum
18 expressly incorporates Attachment A which is attached and
19 filed under seal and that the government as Your Honor has
20 said routinely files such an attachment even though it may
21 or may not continue additional terms.  To the extent it
22 does, however, the parties acknowledge and agree to be bound
23 by it.
24          Paragraph 12 addresses restitution under the
25 Mandatory Victim Restitution Act.  And the Defendant agrees

26

1 to the entry of the restitution order for the full amount of
2 the victims loses attributable to his activities as ordered
3 by the Court which is expected to be zero because the self
4 assessed tax due at the time of filing and associated
5 interest and penalties have been paid to the Internal
6 Revenue Service by a third party on behalf of the Defendant.
7 However, the Defendant understands that an unanticipated
8 amount of a restitution order will not serve as grounds to
9 withdraw his guilty plea.  The parties further understand
10 that should the Internal Revenue Service determine there are
11 additional taxes due and owing for the tax years 2014
12 through 2019, they are not subject to the terms of this
13 agreement and for the purposes of this memorandum the sole
14 victim of Counts I and II is the United States Treasury.
15          And finally paragraph 13 provides that it is
16 further agreed by the parties that the memorandum and
17 Exhibit A together with the sealed attachment supersedes all
18 prior promises, representations and statements of the
19 parties, that the memorandum may be modified only in writing
20 signed by all the parties and that any and all promises,
21 representations, and statements made prior to or after this
22 memorandum are null and void and have no affect whatsoever
23 unless they comport with the subsequent written
24 modifications and provisions of this paragraph.
25          THE COURT:  Thank you.  I did have a couple of

27

1 initial questions.
2          Paragraph 5A says that the amount of losses no
3 less than 1,100 -- well, actually before we ask that,
4 because I'm going to ask how it relates to the facts, why
5 don't you go through Exhibit 1 you referenced, why don't you
6 put Exhibit 1 on the record.
7          MR. WISE:  Yes, Your Honor.
8          At all times relevant to the instant
9 Information, the Defendant, Robert Hunter Biden, hereafter
10 Biden, was an attorney and businessman with lucrative
11 domestic and international business interests.  From 2017 to
12 2019, he served on the board of a Ukrainian energy company
13 and a Chinese private equity fund.  He further negotiated
14 and executed contracts for business and legal services that
15 paid millions of dollars of compensation to him and/or his
16 domestic corporations, Owasco, PC and Owasco, LLC.  Through
17 at least early 2017, he also was employed by a prestigious
18 multi-national law firm in an "of counsel" capacity.  For
19 this work, he earned substantial income, totaling more than
20 $2.3 million in 2017 and $2.1 million in 2018.
21          Biden also has a well-documented and
22 long-standing struggle with substance abuse.  Following the
23 death of his brother in 2015, Biden relapsed and over time
24 progressed from alcohol to abusing illegal drugs, including
25 crack cocaine in 2016.  This contributed to the collapse of

28

1 his marriage, with his divorce finalized in March 2017, as
2 well as the collapse of his most significant professional
3 relationship in Fall 2017.  Nonetheless, in 2017, despite
4 his addiction, Biden successfully entered into business
5 ventures and landed legal clients, earning millions of
6 dollars.  By his own telling in a memoir published in 2021,
7 Biden's substance abuse worsened in 2018, a year that
8 included a move to Los Angeles and what he has described as
9 a "spring and summer of nonstop debauchery."  Even during
10 this period, however, Biden continued to earn money and
11 exercise control over his personal and corporate finances.
12          Federal income tax returns and payments are due
13 on or about April 15th of each year for the prior calendar
14 year.  Biden, like many other taxpayers, routinely requested
15 an automatic extension to file his returns, pushing the due
16 date for a tax return to on or about October 15th.  An
17 extension of time to file a return, however, does not extend
18 the deadline for payment of taxes, which remain due on the
19 April filing date.
20          During calendar year 2017, Biden earned
21 substantial income, including: just under $1 million from a
22 company he formed with the CEO of a Chinese business
23 conglomerate; $666,666 from his domestic business interests;
24 approximately $664,000 from a Chinese infrastructure
25 investment company; $500,000 in director's fees from a

29

1   Ukrainian energy company; $70,000 relating to a Romanian
2   business; and $48,000 from the multi-national law firm.
3           Throughout tax year 2017, Biden worked with a DC
4   and Maryland based accountant to prepare his individual and
5   corporate tax returns.  In 2018, this accountant (who died
6   in 2019) prepared Biden's 2017 corporate and individual
7   income tax returns and throughout the fall repeatedly
8   attempted to provide them to Biden for review and signature.
9   These efforts included directly contacting Biden, reaching
10  out to his administrative assistant, and sending copies to
11  his former business partner.  The former business partner
12  reviewed the returns and sent several emails to Biden in
13  which he commented on their substance and reminded Biden of
14  his filing obligations.  The former business partner left
15  the final returns for Biden at Biden's office.  Despite
16  these actions, Biden neither signed nor submitted the
17  individual or corporate income tax returns to the Internal
18  Revenue Service.
19          Not only did the accountant timely prepare
20  Biden's individual and corporate tax returns, the accountant
21  repeatedly encouraged Biden to timely pay the taxes
22  associated with the 2017 tax returns.  Beginning in
23  April 2018 and continuing into October 2018, the accountant
24  advised Biden to make his tax payments, noting approximately
25  $600,000 owed by Biden personally and an additional $204,000

30

1   owed by Owasco, PC.  Biden told the accountant he could pay
2   $25,000 in April 2018 towards his taxes, but no such payment
3   was made to the Internal Revenue Service.  His large tax
4   liability stemmed in part from the fact that over the course
5   of 2017, Biden began withdrawing substantial funds outside
6   of Owasco, PC's established payroll system, which had been
7   created, in part, to ensure that Biden had sufficient
8   withholdings to timely pay any outstanding tax liability.
9   The end of year liability should not have come as a
10  surprise.  At the time of those withdrawals, Biden's
11  business partner advised him that these transfers, made
12  without withholding, would result in a significant tax
13  liability at year end.
14          Despite his large outstanding tax liability and
15  profligate spending, on or about April 17, 2018, the due
16  date for 2017 tax payments, Biden did, in fact, have the
17  funds available to pay his outstanding 2017 tax liability
18  for both his personal and corporate returns.  On or about
19  March 22, 2018, Biden received a $1 million payment into his
20  Owasco, LLC bank account as payment for legal fees for
21  Patrick Ho, and $939,000 remained available as of tax day.
22  Over the next six months Biden would spend almost the
23  entirety of this balance on personal expenses, including
24  large cash withdrawals, transfers to his personal account,
25  travel, and entertainment.

31

1           Biden continued to earn handsomely and spend
2   wildly in 2018.  He received a little over $2.6 million in
3   business and consulting fees from the company he formed with
4   the CEO of a Chinese business conglomerate and the Ukrainian
5   energy company.  However, without the structure of a stable
6   business partner and still in the throes of addiction, Biden
7   essentially ignored his tax obligations, withholding only
8   approximately $38,465, less than six percent of the taxes
9   owed.  Tax returns and filings for tax year 2018 were due on
10  April 15th, 2019.  On that date, Biden traded emails with
11  his DC accountant and his attorney about seeking an
12  extension.  The accountant advised Biden of his obligation
13  to make a tax payment on that date, irrespective of the
14  extension to file a return.  Ultimately, the extension was
15  filed, making the return due on October 15, 2019.  Biden,
16  however, paid nothing.  As with tax year 2017, at the time
17  his 2018 tax payment was due, Biden continued to have
18  substantial income and the ability to pay his tax liability,
19  having received payments totaling approximately $758,000
20  during March and April 2019.  By late May, Biden had spent
21  almost the entire sum on personal expenses, including large
22  cash withdrawals, payments to or on behalf of his children,
23  credit card balances, and car payments for his Porsche.
24          After numerous programs and trips to rehab,
25  Biden got sober in May 2019, the same month he married his

32

1   current wife.  He has remained sober since.  Biden remained
2   in California and spent much of 2019 painting and developing
3   plans for his memoir, which he began working on through the
4   fall and into the winter.  During summer 2019, he was sued
5   in two different domestic-relations lawsuits, both seeking
6   payment of support obligations.  He still did not, however,
7   make preparations to file or actually file either his 2018
8   individual or corporate income tax returns on or about
9   October 15, 2019, the extension due date.
10          In or around November 2019, Biden engaged a
11  California accountant to prepare his individual and
12  corporate income tax returns for 2017 and 2018.  The
13  California accountant began gathering materials and started
14  preparing Biden's 2017 and 2018 returns in early 2020.  By
15  that time, the domestic relations lawsuits had progressed,
16  and having failed to do so previously, Biden was under court
17  order to provide his tax returns or face potential sanctions
18  including imprisonment.  On or about January 27, 2020, Biden
19  signed a representation letter for the California
20  accountants, averring that he was providing the accountants
21  with truthful and accurate information and acknowledging his
22  responsibility for the accuracy of those tax returns.  Over
23  the days that followed, Biden participated in a series of
24  meetings with the California accountants and identified
25  business and personal expenses in connection with his tax

33

1  returns.  During this process, Biden miscategorized certain
2  personal expenses as legitimate business expenses, resulting
3  in a reduction in his tax liability.  At the same time, the
4  California accountants overreported Biden's income, which
5  partially offset this reduction.
6      Or on about February 18th, 2020, Biden filed his
7  individual and corporate income tax returns with the
8  Internal Revenue Service for tax years 2017 and 2018.  On
9  his 2017 Form 1040, Biden reported $2,376,436 in total
10  income and a self-assessed tax due of $710,598, of which
11  $125,909 was timely paid, leaving a balance due and owing of
12  $581,713.  On his 2017 Form 1120 for Owasco, PC, Biden
13  reported gross receipts of $2,698,041 and a self-assessed
14  tax due and owing of $13,630.  On his 2018 Form 1040, Biden
15  reported $2,187,286 in total income and a self-assessed tax
16  of $659,366, of which $38,465 was timely paid, leaving a
17  balance due and owing of $620,901.  No additional payments
18  were included at the time of filing.  On his 2018 Form 1120
19  for Owasco, PC, Biden reported gross receipts of $2,659,014
20  and a self-assessed tax due and owing of $4,247.
21      Approximately a year-and-a-half later, on or
22  about October 18th, 2021, a third party paid the Internal
23  Revenue Service $955,800 to cover Biden's self-assessed
24  individual tax liability with interest and penalties for tax
25  year 2017 and $956,632 to cover Biden's self-assessed

34

1  individual tax liability with interest and penalties for tax
2  year 2018.
3      In addition, in or around February of 2020,
4  Biden's California accountants discovered that Biden's 2016
5  Form 1040 had not been filed.  The return was originally
6  prepared in or around October 2017 and showed $15,520 in
7  taxes due and owing.  Though it was delivered to Biden at
8  Biden's office, this return was not filed with the Internal
9  Revenue Service.  After learning in 2020 that the Form 1040
10  for 2016 remained unfiled, Biden filed a Form 1040 on
11  June 12, 2020.  For tax year 2016, Biden reported $1,580,283
12  in total income and self-assessed tax due of $492,895, of
13  which $447,234 was timely paid, leaving a balance due and
14  owing of $45,661.  Biden did not include a payment with this
15  return.  On or about October 18, 2021, this liability, plus
16  accrued interest and penalties, was also fully paid by a
17  third party.
18      Finally, after seeking an extension, Biden
19  timely filed his 2019 Form 1040 on or about October 15th,
20  2020.  He did not, however, pay his estimated tax due when
21  filing for an extension as required by law.  For tax year
22  2019, Biden reported $1,045,850 in total income and a
23  self-assessed tax due and owing of $197,372.  On October 18,
24  2021, this liability, plus accrued interest and penalties,
25  was also fully paid by the same third party.

35

1      THE COURT:  All right.  Thank you.  Now I did
2  have a few questions.
3      Paragraph 5A says that the amount of loss as to
4  Counts I and II including the relevant conduct as defined in
5  sentencing guideline is no less than $1,199,524, and no
6  greater than $1,593,329.  Is that the combined loss or the
7  loss for each count?
8      MR. WISE:  Combined loss, Your Honor.
9      THE COURT:  All right.  In Exhibit 1, there are
10  references to taxes paid by a third party on Mr. Biden's
11  behalf of $955,800, and $956,632, as well as $492,000 in
12  2016 and $197,000 for 2019.  Just looking at 2017 and 2018
13  which are the subject of this case, those numbers add up to
14  more than $1.9 million.  Can you help me square that with
15  the relevant conduct.
16      MR. WISE:  So the amount that was paid by the
17  third party includes significant penalties and interests
18  which we have not included in the loss stipulation that's in
19  paragraph 5A.  The paragraph 5A is the taxes and there is a
20  dispute as to what the taxes were based on the business
21  deductions and that's something that the parties will
22  address in their sentencing memorandum, but this number is
23  loss without inclusion of the penalties and interest.
24      THE COURT:  Is that standard?
25      MR. WISE:  Yes, Your Honor.

36

1      THE COURT:  Did you want to say something?
2      MR. CLARK:  I was going to say it's a relevant
3  guideline, Your Honor, for a failure to pay case omits
4  penalties and interests from the calculation of the tax
5  table loss.  And there is a dispute about where in the range
6  it goes, but the explanation, penalties and interest are not
7  properly included under this guideline for this offense.
8      THE COURT:  And if it were tax evasion, would
9  those be included?
10      MR. CLARK:  It's my understanding that they
11  would be, Your Honor.
12      MR. WISE:  Yes, Your Honor.
13      THE COURT:  Okay.  Paragraph 5b refers to the
14  Diversion Agreement.  That's the Diversion Agreement
15  contemplated in the Criminal Action 23-61, the felony gun
16  charge?
17      MR. WISE:  Yes, Your Honor.
18      THE COURT:  All right.  Paragraph 12 refers to
19  restitution, and says the self-assessed tax due at the time
20  of filing and the associated interest and patents have been
21  paid to the Internal Revenue Service by a third party on
22  behalf of the Defendant.  What does self-assessed mean?
23      MR. WISE:  It means the amount when the returns
24  were prepared that, the return prepared determine what was
25  owed based on the income that was reported and deductions

37

1  and credit.
2      MR. CLARK:  I think, Your Honor, based on that
3  and all this process, these numbers are based on payout
4  numbers that were obtained from the IRS.  Self assessment is
5  a process by which a return filer writes a return, says this
6  is how much tax I owe.  There was a lot of process here
7  between the IRS and these returns and at the end of the day
8  a payout number was obtained by the IRS and that number was
9  paid.
10      THE COURT:  So this isn't -- that's what I'm
11  trying to figure out, is there someone still looking into
12  that to see if the self-assessed number is accurate, or do
13  you know that it's zero?
14      MR. WISE:  So the self-assessed number again is
15  the amount on the return plus the interest and penalties
16  that were derived through the payoff.  As the statement of
17  facts addresses, there is a dispute as to what was
18  self-assessed or what the self-assessed number would be for
19  tax year 2018 and that will be addressed in the sentencing
20  memoranda.
21      MR. CLARK:  To be clear, the dispute is we think
22  it's lower.  As the statement of facts recites, there was
23  actually an overstatement of Mr. Biden's income that year.
24  I mean, my understanding is all of the monies that the IRS
25  takes a position Mr. Biden owes as a result of every tax

38

1  year being discussed have been paid based on their
2  calculation, if that answers Your Honor's question.
3      MR. WISE:  So our position, Your Honor, is there
4  are additional -- there are deductions that were taken that
5  were improper and so that's why for the loss purposes,
6  putting aside what the payoff number was in our sentencing
7  memorandum, we will address those.  The IRS in arriving at
8  the payoff number didn't --
9      THE COURT:  Well, I'm just asking because you
10  said it's expected to be zero, why is it expected to be zero
11  if you're telling me that the numbers might be wrong?
12      MR. WISE:  Because that is the payoff amount
13  that the IRS gave to the Defendant which is sort of a
14  process that produces that that is separate from the
15  criminal investigation and essentially divorced from it.
16  That's why the agreement doesn't bind the IRS if they then
17  make a decision essentially for additional restitution that
18  could occur.
19      THE COURT:  Why do you say it's expected to be
20  zero?
21      MR. WISE:  Because as of the payoff number that
22  was given, there is no at this moment restitution owed to
23  the IRS.
24      THE COURT:  All right.  So those are my initial
25  questions.  I may have some more as we go through this, but

39

1  that's what I had at this moment.
2      Mr. Biden, does the written agreement as
3  summarized by Mr. Wise accurately reflect the agreement you
4  have reached with the government?
5      THE DEFENDANT:  Yes, Your Honor.
6      THE COURT:  Has anyone threatened you or forced
7  you into entering this written agreement?
8      THE DEFENDANT:  No, Your Honor.
9      THE COURT:  Has anyone made you any promises
10  that are not contained in the written agreement?
11      MR. CLARK:  Your Honor, with the exception of
12  the Diversion Agreement --
13      THE COURT:  We're not making an exception.  I
14  want to know, has anyone made you any promises that are not
15  contained in the written Memorandum of Plea Agreement?
16      MR. CLARK:  Yes, there are promises from the
17  government in the Diversion Agreement, Your Honor.
18      THE COURT:  And sir, are you relying on the
19  promises made in the Diversion Agreement in connection with
20  your agreement to plead guilty?
21      THE DEFENDANT:  Yes, Your Honor.
22      THE COURT:  And if the Diversion Agreement were
23  not valid or unenforceable for any reason, would you enter
24  into the Memorandum of Plea Agreement?
25      THE DEFENDANT:  No, Your Honor.

40

1      THE COURT:  All right.  So we're going to
2  discuss that agreement in a bit, but for now let me say --
3  by the way, I didn't get a copy of paragraph 15 of the
4  agreement, but the parties provided me with a copy of that
5  agreement prior to this hearing, so that's what I'm going to
6  quote from at the moment.
7      Paragraph 15 of the Diversion Agreement states
8  the United States agrees not to criminally prosecute Biden
9  outside of the terms of this agreement for any federal
10  crimes encompassed by the attached statement of facts,
11  Attachment A to the Diversion Agreement, and the statement
12  of facts attached as Exhibit 1 to the Memorandum of Plea
13  Agreement filed this same day.  This agreement does not
14  provide any protection against prosecution for any future
15  conduct by Biden or by any of his affiliated businesses.
16      And just so we're clear, I think you already
17  answered this, sir, but are you relying on that promise in
18  connection with your agreement to accept the Memorandum of
19  Plea Agreement and plead guilty?
20      THE DEFENDANT:  Yes, Your Honor.
21      THE COURT:  If that provision were not valid or
22  not enforceable, would you accept the Memorandum of Plea
23  Agreement?
24      THE DEFENDANT:  No, Your Honor.
25      THE COURT:  If you had no immunity from the

41

1  government, perhaps even a different prosecutor and the
2  government could bring a felony tax evasion charge or drug
3  charges against you, would you still enter the plea
4  agreement and plead guilty to these tax charges?
5       THE DEFENDANT:  No, Your Honor.
6       THE COURT:  All right.  So I need some help here
7  because you all told me this was a plea under Rule
8  11(c)(1)(B) and not (c)(1)(A), but yet I have this provision
9  that I would think is normally in a plea agreement.  So tell
10  me, how do these agreements relate?  Are they part of a
11  package deal?
12       MR. WISE:  So, Your Honor, the United State's
13  position is that the agreements stand alone by their own
14  terms and both agreements include their last paragraph that
15  says that with this one caveat --
16       THE COURT:  This is a big caveat, though, if
17  you're telling me Rule 11(c)(1)(B) doesn't give me any
18  authority to look at this, (c)(1)(A) refers to, you know,
19  having an agreement not to prosecute.  That's why I'm
20  looking at this.  I'm not saying that you're wrong, but I
21  need to understand this.
22       MR. WISE:  Sure.  So Your Honor, again, our view
23  is the plea agreement stands alone.  There is no charge
24  bargaining in the plea agreement, period.  And that's what
25  they have agreed to.  The Diversion Agreement --

42

1       THE COURT:  But he would not agree, just so I
2  understand, sir, he would not agree to that plea agreement
3  if you didn't get some immunity from other charges, is that
4  right?
5       MR. CLARK:  Speaking for my client, that's
6  correct, Your Honor.
7       THE COURT:  I didn't mean that to be a
8  rhetorical question.  So you're trying to tell me that
9  that's separate, but I think -- and I understand why he's
10  saying no, I wouldn't -- that isn't separate to me, I need
11  them both.
12       MR. WISE:  That's the intention with the
13  agreement he signed.
14       THE COURT:  So the intention of the agreement he
15  signed was that it would be completely separate and if that
16  Diversion Agreement were not valid or unenforceable and he
17  were on the hook for other charges that he would still be
18  pleading guilty?
19       MR. WISE:  That's right, because that's what the
20  final paragraph of the plea agreement says he's agreeing to,
21  that the plea agreement stands on its own without any
22  additional promises outside the four corners of that
23  agreement.
24       THE COURT:  Do you guys need to talk about this
25  for a few minutes?

43

1       MR. CLARK:  Yes.
2       THE COURT:  How about I give you guys an
3  opportunity so we can make sure we're on the same page
4  because part of my charge here is to make sure that the
5  Defendant knows what he's pleading to.
6       MR. CLARK:  We appreciate it, Your Honor.
7       COURT CLERK:  All rise.
8       (A brief recess was taken.)
9       THE COURT:  All right.  Please be seated.  Where
10  are we?
11       MR. CLARK:  Your Honor, I want to apologize for
12  maybe my unartful phrasing for some of the issues that came
13  up a minute ago.  Perhaps I can explain the Defendant's
14  position and that may clarify things.  There are two
15  agreements in this case.  They are both very important to
16  the Defendant.  One is a plea agreement that the Court has
17  before it and my client is ready to enter a plea to that
18  plea agreement without contingency, without reservation, and
19  without connection.  There is another agreement which is a
20  Diversion Agreement which --
21       THE COURT:  Right.  So let me just ask you, if
22  that Diversion Agreement were not valid or were
23  unenforceable for some reason, would he enter this plea?
24       MR. CLARK:  He is ready to live by the terms of
25  that agreement --

44

1       THE COURT:  If that Diversion Agreement did not
2  exist, he would be willing to live by the terms of the plea
3  and plead guilty?  I have concerns about that Diversion
4  Agreement so I'm asking you, if it were not valid, if it
5  were unenforceable, would he plead to the memorandum of
6  plea?
7       MR. CLARK:  Based on our understanding of the
8  Diversion Agreement, which is a bilateral agreement between
9  the Defendant and the government which the government has
10  reaffirmed to me it will stand by, then yeah, he would enter
11  the plea.
12       THE COURT:  So you're not answering my question.
13  You're saying well, we think it's valid and enforceable.
14  I'm asking you, if it were not, go with me here, if that
15  agreement were not valid and enforceable, if that agreement
16  did not exist and he could not rely on it, would he enter
17  the memoranda of plea?
18       MR. CLARK:  You're asking for a hypothetical
19  from me, Your Honor.
20       THE COURT:  Yes, I'm asking that because --
21       MR. CLARK:  Yes, my client would resolve this
22  case on these terms in the hypothetical situation that exist
23  without that Diversion Agreement.  I want to be clear that
24  it is the parties' position that there is a Diversion
25  Agreement between the parties which is binding.  But take

45

1 that out of today's proceeding and my client is ready to
2 enter a plea under the plea agreement.
3      THE COURT: All right. Let me ask you those
4 questions again, Mr. Biden. If the Diversion Agreement were
5 not valid and enforceable for any reason, would you enter
6 the Memorandum of Plea Agreement?
7      THE DEFENDANT: Yes, Your Honor.
8      THE COURT: And are you relying on the promise
9 in the Diversion Agreement not to prosecute you in
10 connection with your agreement to accept the Memorandum of
11 Plea Agreement and plead guilty?
12      THE DEFENDANT: No, Your Honor.
13      THE COURT: And so if you had no immunity from
14 the government through that Diversion Agreement and the
15 government could bring felony tax evasion charges or drug
16 charges against you, would you still enter the plea
17 agreement and plead guilty to these tax charges?
18      THE DEFENDANT: Yes, Your Honor.
19      THE COURT: All right. Now, I want to talk a
20 little bit about this agreement not to prosecute. The
21 agreement not to prosecute includes -- is in the gun case,
22 but it also includes crimes related to the tax case. So we
23 looked through a bunch of diversion agreements that we have
24 access to and we couldn't find anything that had anything
25 similar to that.

46

1      So let me first ask, do you have any precedent
2 for agreeing not to prosecute crimes that have nothing to do
3 with the case or the charges being diverted?
4      MR. WISE: I'm not aware of any, Your Honor.
5      THE COURT: Do you have any authority that says
6 that that's appropriate and that the probation officer
7 should agree to that as terms, or the chief of probation
8 should agree to that as terms of a Diversion Agreement?
9      MR. WISE: Your Honor, I believe that this is a
10 bilateral agreement between the parties that the parties
11 view in their best interest. I don't believe that the role
12 of probation would include weighing whether the benefit of
13 the bargain is valid or not from the perspective of the
14 United States or the Defendant.
15      THE COURT: Have you ever seen -- I think I
16 just asked you this, but have you ever seen a Diversion
17 Agreement where the agreement not to prosecute is so broad
18 that it encompasses crimes in a different case?
19      MR. WISE: No. And I would say, Your Honor, I
20 don't think it is broad in the sense that --
21      THE COURT: We're going to talk about that. You
22 can sit down.
23      All right. Now, is an agreement not to bring
24 charges or an agreement to drop charges typically something
25 that is included in a Memorandum of Plea Agreement?

47

1      MR. WISE: It can be.
2      THE COURT: And if it were included in the
3 Memorandum of Plea Agreement, would that make this plea
4 agreement one pursuant to Rule 11(c)(1)(A)?
5      MR. WALLACE: It would.
6      THE COURT: In your view, that would change the
7 analysis of what I needed to do in evaluating whether to
8 accept this plea or not, right?
9      MR. WISE: It would.
10      THE COURT: And so let's just understand this.
11 If it were that, then my role would be to accept or reject
12 the plea, right?
13      MR. WISE: It would.
14      THE COURT: What happens if I accept the plea,
15 we go forward to sentencing?
16      MR. WISE: Yes.
17      THE COURT: And what happens if I reject the
18 plea?
19      MR. WISE: Then we -- this is one of the issues
20 with charge bargaining.
21      THE COURT: Because there is a waiver of venue.
22      MR. WISE: Well, there is a waiver of venue, but
23 also, and this has been addressed by some courts outside of
24 this circuit, because of the separation of powers, if the
25 Court were to reject a (c)(1)(A) on its view that the

48

1 charges should be different --
2      THE COURT: Well, what if I were to reject the
3 (c)(1)(A) plea on the grounds that it includes an agreement
4 not to prosecute, that as we're going to talk about in a few
5 minutes, I don't really understand the scope of.
6      MR. WISE: So --
7      THE COURT: I mean, forget all the
8 investigation, what charges were brought, I think that the
9 parties have made clear that we live in a system of
10 separation of powers, those powers are given to the
11 Executive Branch. Right?
12      MR. WISE: Right.
13      THE COURT: So I don't mean to violate the
14 separation of powers or do anything unconstitutional. I'm
15 trying to figure out what my role is and what the
16 appropriate rule is that applies to this.
17      MR. WISE: Right.
18      THE COURT: Okay. And so I am trying to
19 understand if I were to reject the plea, I'm not saying I am
20 going to, I have not -- for anyone in the back, I have not
21 made that determination, but if I were to reject the plea,
22 just tell me what happens.
23      MR. WISE: So then we have two charges against
24 the Defendant and they're misdemeanors, so he doesn't need
25 to be indicted and we go forward and there is a trial on

49

1  those charges, and there is a possibility that there could
2  be additional charges brought.
3          THE COURT:  Related to the tax issues?
4          MR. WISE:  Yes.
5          THE COURT:  Do you agree with that, Mr. Clark,
6  what would happen?  Again, I want to make sure I'm not
7  saying that's my decision.
8          MR. CLARK:  I understand, Your Honor.  I don't
9  necessarily disagree.  I'm not aware of any additional
10  charges that could validly be brought with regard to the tax
11  charges.  Again, without getting into the whole
12  investigation, but I do think there is some context that's
13  important here.  The U.S. Attorney's Office and me spent
14  five years in meeting after meeting, hours, ten hour long
15  meetings going through my client's taxes on a line-by-line
16  basis, and this is the disposition the parties came to after
17  a five-year investigation that was pursued with unbelievable
18  diligence and doggedness.  And so first of all, I don't
19  think there are any other charges to be brought.  I think,
20  you know, we thought that just like in any compromise
21  situation, we had valid arguments with regard to these
22  charges, but my client undertook to plead guilty to them
23  because it was the right disposition for all the parties
24  after extensive negotiation, and so yeah, I think we would
25  have two filed informations and the Court and the parties

50

1  would figure out how to proceed on those informations and
2  that would be the rest of the process.
3          THE COURT:  All right.  So you said there might
4  be additional charges.  Are you at liberty to tell us what
5  you're thinking those might be or is that just a
6  hypothetical that there might be?
7          MR. WISE:  It was a hypothetical response to
8  your question.
9          THE COURT:  Is there an ongoing investigation
10  here?
11          MR. WISE:  There is.
12          THE COURT:  May I ask then why if there is we're
13  doing this piecemeal?
14          MR. WISE:  Your Honor may ask, but I'm not in a
15  position where I can say.
16          THE COURT:  Okay.  So you can sit down.
17          I think what I'm concerned about here is that
18  you seem to be asking for the inclusion of the Court in this
19  agreement, yet you're telling me that I don't have any role
20  in it, and you're leaving provisions of the plea agreement
21  out and putting them into an agreement that you are not
22  asking me to sign off on.  So I need you to help me
23  understand why this isn't in the written plea agreement.
24          MR. CLARK:  If I may, Your Honor.  I mean, the
25  original conception here was something like a deferred

51

1  prosecution, non-prosecution agreement, which generally the
2  Court doesn't necessarily weigh in on.  I don't think it was
3  the -- we are not asking the Court to rule in any way on the
4  Diversion Agreement.  The diversion as far as I understand
5  it has been approved by probation, there is a -- you've
6  arraigned the Defendant on the instrument and I believe that
7  process will go forward.
8          THE COURT:  We have to talk about the Diversion
9  Agreement because you have included me into the Diversion
10  Agreement, so we are going to talk about that.  But I am
11  just still, you know, normally -- so we have two agreements,
12  we have a plea agreement where you're saying Judge, we're
13  all here in front of you for him to plead.  You're saying I
14  don't even get to accept it, I guess I'm supposed to rubber
15  stamp it under Rule (c)(1)(B).  But then it would be a plea
16  under Rule (c)(1)(A) if the provision that you have put in
17  the Diversion Agreement which you do not have anyplace for
18  me to sign and it is not in my purview under the statute to
19  sign, you put that provision over there.  So I am concerned
20  that you're taking provisions out of the agreement, of a
21  plea agreement that would normally be in there.  So can you
22  -- I don't really understand why that is.
23          MR. WISE:  So the bargain that was reached by
24  the parties was the Plea Agreement that is in front of Your
25  Honor, which is a (c)(1)(B) as I mentioned, where there is

52

1  only a recommended sentence, that is -- that is the Plea
2  Agreement --
3          THE COURT:  Well, it's not, because you do
4  reference -- you reference the Diversion Agreement in the
5  Plea Agreement.
6          MR. WISE:  Not in the Plea Agreement.
7          THE COURT:  You do.  I asked you if paragraph 5B
8  referred to the Diversion Agreement and you said yes.
9          MR. WISE:  Only insofar as it's not relevant
10  conduct.
11          THE COURT:  You reference it in the Plea
12  Agreement, right?
13          MR. WISE:  But it doesn't incorporate it.
14          THE COURT:  And in the Diversion Agreement, you
15  reference the Memorandum of Plea Agreement, right?
16          MR. WISE:  Only part of it.
17          THE COURT:  And you say that the -- in the
18  Diversion Agreement when you say there is not going to be
19  any prosecution, you say that's not just prosecution on the
20  gun charge which is the subject of the Diversion Agreement,
21  you say also no prosecution with respect to anything in the
22  statement of facts attached to the memorandum of plea,
23  right.
24          MR. WISE:  Yes.
25          THE COURT:  All right.  Okay.  So I don't really

53

1  understand, though, why that's not part of the Plea
2  Agreement.
3          MR. WISE:  Because by the terms of the Plea
4  Agreement, the only function, the Diversion Agreement --
5  well, it has no function but the parties negotiated that
6  their view, and it's their view, probation can take a
7  different view, Your Honor can take a different view, their
8  view is the firearms offense should not be considered
9  relevant conduct for calculating the guidelines related to
10  the tax offense, that is all that 5(b) says.  It does not
11  incorporate the paragraph 15 or any part of the Diversion
12  Agreement, it simply says our view is the Diversion
13  Agreement, the firearm offense should not be considered
14  relevant conduct in calculating the guidelines.
15          I think practically how this would work, Your
16  Honor, is if Your Honor takes the plea and signs the
17  Diversion Agreement which is what puts it into force as of
18  today, and at some point in the future we were to bring
19  charges that the Defendant thought were encompassed by the
20  factual statement in the Diversion Agreement or the factual
21  statement in the Plea Agreement, they could move to dismiss
22  those charges on the grounds that we had contractually
23  agreed not to bring charges encompassed within the factual
24  statement of the Diversion Agreement or the factual
25  statement of the tax charges.

54

1          MR. CLARK:  That's my understanding, Your Honor,
2  we would be enforcing a contract with the Department of
3  Justice.
4          THE COURT:  I don't understand how you have an
5  agreement not to pursue other charges in the case, the
6  misdemeanor case, and you say that is not part of his Plea
7  Agreement.
8          MR. WISE:  Because the Plea Agreement does not
9  include that.
10          THE COURT:  All right.  So let's talk a little
11  bit more about this.  To the extent that the agreement --
12  you can sit down.
13          To the extent that the agreement not to
14  prosecute is promised, do the parties have some
15  understanding what the scope of that agreement is?
16          MR. WISE:  Yes, Your Honor.
17          THE COURT:  No, tell me, like specifically what
18  does it include.  You said that there is an investigation, I
19  don't know what that is, but you must know that if there are
20  particular charges that could be brought based on the facts
21  that are there.
22          MR. WISE:  So I can tell you what I think we
23  can't charge.  I can't tell you what the ongoing
24  investigation is.  So, for instance, I think based on the
25  terms of the agreement, we cannot bring tax evasion charges

55

1  for the years described in the factual statement to the Plea
2  Agreement.  And I think we cannot bring for the firearms
3  charges based on the firearm identified in the factual
4  statement to the Diversion Agreement.
5          THE COURT:  All right.  So there are references
6  to foreign companies, for example, in the facts section.
7  Could the government bring a charge under the Foreign Agents
8  Registration Act?
9          MR. WISE:  Yes.
10          THE COURT:  I'm trying to figure out if there is
11  a meeting of the minds here and I'm not sure that this
12  provision isn't part of the Plea Agreement and so that's why
13  I'm asking.
14          MR. CLARK:  Your Honor, the Plea Agreement --
15          THE COURT:  I need you to answer my question if
16  you can.  Is there a meeting of the minds on that one?
17          MR. CLARK:  As stated by the government just
18  now, I don't agree with what the government said.
19          THE COURT:  So I mean, these are contracts.  To
20  be enforceable, there has to be a meeting of the minds.  So
21  what do we do now?
22          MR. WISE:  Then there is no deal.
23          THE COURT:  All right.  I guess then the
24  question is where does that leave us?  So what do we need to
25  do?  Do you guys need some time to talk?  Do you need me to

56

1  set a date -- do we need to talk about a preliminary hearing
2  since we didn't really need to do one with the agreement?
3          MR. CLARK:  We'll waive the preliminary hearing.
4  As far as I'm concerned, the Plea Agreement is null and
5  void.  You know, we'll have -- we are going to have to
6  discuss things with the government.
7          THE COURT:  All right.  So I think we're on the
8  clock now.  So what should we do?  Do you want me to set a
9  date for pretrial motions?  Do you want to exclude a little
10  bit of time so that you have some time to talk?  What do you
11  want to do?
12          MR. CLARK:  I think we would need thirty days
13  after the trial clock to figure out what's going on.
14          THE COURT:  All right.  I agree.  I know that
15  this has come as a little bit of a curve ball, but I think
16  that having you guys talk some more makes sense, and we will
17  exclude the time up through -- so the thirty days takes us
18  to the Friday before Labor Day.  Do you want that or do you
19  want the following week?
20          MR. CLARK:  I think that's fine, Your Honor.
21          THE COURT:  So we'll exclude up through
22  September 1st, you guys can get me a status report then.  I
23  think it does make sense in the interest of justice to do
24  so.  We'll get a status report and then we'll figure out
25  where we are.

57

1        MR. CLARK:  Your Honor, can we ask you to take
2    ten minutes and see whether we can somehow make any headway
3    on this?
4            THE COURT:  Okay.
5        MR. CLARK:  Thank you, Your Honor.
6        COURT CLERK:  All rise.
7        (A brief recess was taken.)
8            THE COURT:  All right.  Please be seated.  Where
9    are we?
10        MR. CLARK:  Your Honor, we have had some
11    discussion between the parties to try to clarify the
12    understanding and I just want to kind of summarize where we
13    are and if the government's counsel wants to correct me.
14    The parties have taken the position that the Diversion
15    Agreement is a separate agreement from the Plea Agreement.
16    The Diversion Agreement is a bilateral contract between the
17    parties.  Your Honor has asked the parties what their
18    understanding of the paragraph 15 of the Diversion Agreement
19    is.  I think there was some space between us and at this
20    point, we are prepared to agree with the government that the
21    scope of paragraph 15 relates to the specific areas of
22    federal crimes that are discussed in the statement of facts
23    which in general and broadly relate to gun possession, tax
24    issues, and drug use.
25            THE COURT:  So are you going to rewrite that?

58

1        MR. CLARK:  The government says that's what it
2    means and Your Honor asked for what the parties agree.
3            THE COURT:  I'm just looking at the language of
4    that.  So you're comfortable with that's what it means even
5    though the language of that seems substantially broader?
6        MR. CLARK:  Your Honor, I just put on the record
7    what I have --
8            THE COURT:  You didn't just answer yes so that
9    also -- so yes, you are comfortable that that provision
10    means that it only relate and for what period of time?
11        MR. WISE:  It would be the period of time in the
12    statement of fact, both statement of facts.
13            THE COURT:  Help me out with that.
14        MR. WISE:  '14 to '19 for the tax offenses and
15    the drug -- and the admission of drug use in that period and
16    then the firearms is obviously specifically identified in
17    the time period in which that was possessed.
18            THE COURT:  All right.  So the defense agrees
19    that the agreement not to prosecute only includes the time
20    period from 2014 to 2019, it only includes tax charges in
21    that time period, drug charges in that time period, and the
22    particular -- the firearms charges that relate to this
23    particular firearm?
24        MR. CLARK:  Yes, Your Honor.
25            THE COURT:  All right.  So you can be seated.

59

1    Let me just take a look here.  I mean, part of the issue
2    that I'm having is understanding, you know, regardless of
3    whether this is a plea under subsection B or subsection A,
4    it has to be a knowing plea and I'm already faced with the
5    Defendant under oath saying both that he would not enter the
6    Memorandum of Plea Agreement if the Diversion Agreement were
7    not valid, and that he would.  And so I'm a little bit
8    confused about that.  So I think we can work through that.
9    But let's take a look at some of the rest of this.
10            All right.  Sir, other than what we have just
11    discussed, are there any other promises that have been made
12    to you to entice you to enter the Memorandum of Plea
13    Agreement?
14            THE DEFENDANT:  No, Your Honor.
15            THE COURT:  Do you understand that this is the
16    time to tell me of any promises not in the record or of any
17    threats that have been made because after today you won't be
18    able to withdraw your plea based on information that you
19    could have shared with me here?
20            THE DEFENDANT:  Yes, Your Honor.
21            THE COURT:  Do you understand that the plea --
22    terms of the Plea Agreement are merely recommendations to
23    me, that I can reject those recommendations without
24    permitting you to withdraw your plea and impose a sentence
25    that is harsher or longer or more severe than the one that

60

1    you may anticipate?
2            THE DEFENDANT:  Yes, Your Honor.
3            THE COURT:  Are you pleading guilty of your own
4    free will because you are, in fact, guilty?
5            THE DEFENDANT:  Yes, Your Honor.
6            THE COURT:  All right.  Now I want to walk
7    through some of the specific provisions of the agreement.
8    First, venue.  Do you have the agreement in front of you?
9            THE DEFENDANT:  Yes, Your Honor.
10            THE COURT:  All right.  So paragraph 1 states
11    that you waive any challenge to the information based on
12    venue.  Do you understand that absent that waiver, you could
13    challenge this Court being the appropriate Court to hear
14    these charges?
15            THE DEFENDANT:  Yes, Your Honor.
16            THE COURT:  By entering this plea you are giving
17    up that challenge?
18            THE DEFENDANT:  Yes, Your Honor.
19            THE COURT:  Did you discuss that provision with
20    your counsel?
21            THE DEFENDANT:  Yes, Your Honor.
22            THE COURT:  Again, are you satisfied with the
23    advice that you received?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Now, next, in paragraph 2, Mr. Wise

61

1  went over the maximum penalties for Counts I and II when he
2  summarized the essential terms and I mentioned those to you
3  earlier when we were doing the initial plea.  Do you
4  understand what the maximum penalties are for each of the
5  counts that's pending against you?
6          THE DEFENDANT:  Yes, Your Honor.
7          THE COURT:  Do you need me to go through them
8  one more time or are you okay?
9          THE DEFENDANT:  No, Your Honor, thank you.
10         THE COURT:  Paragraph 3.  Paragraph 3 list the
11 essential elements of Counts I and II that the government
12 would have to prove.  Specifically for each count the
13 government would have to prove beyond a reasonable doubt
14 that the Defendant, you, had a duty to pay a tax.  Two, the
15 tax was not paid at the time required by law.  And three,
16 that your failure to pay was willful.  Do you understand
17 that if I accept your guilty plea, the government will not
18 have to prove anything?
19         THE DEFENDANT:  Yes, Your Honor.
20         THE COURT:  Paragraph 3 also references the
21 statement of facts attached to the Plea Agreement as
22 Exhibit 1.  Mr. Wise read those into the record and that is
23 something that is not common in my experience.  I just want
24 to ask you about some of those.  I'm not going to go through
25 all of those facts but I want to ask them because it is part

62

1  of the Plea Agreement that is being presented to me and
2  particularly given our earlier discussion about the fact
3  that those facts are incorporated into the agreement not to
4  prosecute.
5          All right.  So, do you have those in front of
6  you?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  All right.  So in the very first
9  paragraph of Exhibit 1, it says towards the end, it says
10 through at least early 2017 -- I think before that, in the
11 first paragraph, in the second sentence it says from 2017 to
12 2019, you served on the board of Ukrainian energy company
13 and a Chinese private equity fund.  Can you tell me what
14 those companies were?
15         THE DEFENDANT:  The Ukrainian energy company was
16 Burisma, and the Chinese private equity fund was Bohai,
17 Harvest and Rosemont.
18         THE COURT:  And some of this I'm asking just so
19 I understand because there are other references to Ukrainian
20 companies and Chinese companies and I can't tell if they're
21 the same company or not, so that's part of why I'm asking
22 you.  Later in that paragraph, it says through at least 2017
23 you were employed by a prestigious multi-national law firm
24 in an of counsel position.  It says through at least 2017.
25 What were the years, do you remember like how long you

63

1  worked there?
2          THE DEFENDANT:  Your Honor, I think I was at
3  Boise Schiller 2010, maybe, was when I started, but I am not
4  positive of that.  That's what I believe.
5          THE COURT:  Okay.  And were you in an of counsel
6  position that whole time?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  All right.  Now, it says then that
9  you -- for the work you did, you earned 2.3 million in 2017
10 and 2.1 million in 2018.  Now, you left Boise Schiller in
11 2017, right?
12         THE DEFENDANT:  Yes, Your Honor.
13         THE COURT:  So, can you tell me how -- I'm
14 trying to understand the 2018 $2.1 million.
15         MR. CLARK:  My understanding, Your Honor, is
16 that sentence picks up the work described in the last couple
17 of sentences, not just the work for Boise Schiller.
18         THE COURT:  Well, Mr. Biden actually knows.
19         THE DEFENDANT:  Yeah, exactly, Your Honor, I
20 believe what the government intended for that sentence was
21 that it was the total income, not just as it relates to my
22 capacity for Boise Schiller.
23         THE COURT:  So for all your work --
24         THE DEFENDANT:  For this work, it's all of the
25 things that are listed above there.

64

1          THE COURT:  All right.  Thank you.  Okay.  In
2  the next paragraph, it says you have a well-documented and
3  long-standing struggle with abuse and you did tell me
4  already, I'm not going to ask you again about your efforts
5  to treat that.  But when we talk about well-documented, is
6  there a particular thing that we're looking at for where
7  it's documented or is that just based on your discussions?
8          THE DEFENDANT:  Well, I believe the government
9  is referring to a book that I wrote about my struggles with
10 addiction in that period of time in my life.  And quite
11 possibly other news outlets and interviews and things that
12 have been done.
13         THE COURT:  Okay.  In that paragraph, it refers
14 sort of towards the middle, it refers to your struggles with
15 addiction led to the collapse of your most significant
16 professional relationship.  Is that referring to the law
17 firm or something else?
18         THE DEFENDANT:  My business relationship, my
19 business relationships, all of my business relationships,
20 ultimately including the law firm.  I had a business that
21 was Rosemont Seneca advisors, and I had a long-standing
22 business partner from the inception of that company that I
23 started.  And others that all collapsed during that period
24 of time.
25         THE COURT:  So one of the businesses was

65

1 Rosemont Seneca.  Were there others that collapsed?  The one
2 reference here to Owasco.
3          THE DEFENDANT:  Virtually everything collapsed.
4 Owasco is the holding company for all of the other companies
5 below there.
6          THE COURT:  Okay.  And who was your business
7 partner?
8          THE DEFENDANT:  A gentleman named Eric Schwerin.
9          THE COURT:  All right.  The fourth paragraph
10 says during the calendar year 2017, you earned substantial
11 income including just under a million dollars from a company
12 you formed with a CEO of a Chinese business conglomerate.
13 Is that the same or a different Chinese company from the one
14 you referenced earlier?
15          THE DEFENDANT:  I started a company called
16 Hudson West, Your Honor, and my partner was associated with
17 a Chinese energy company called CEFC.
18          THE COURT:  Who was your partner?
19          THE DEFENDANT:  I don't know how to spell his
20 name, Yi Jianming is the chairman of that company.
21          THE COURT:  Is that company still in existence?
22          THE DEFENDANT:  No.
23          THE COURT:  Okay.  Then it says you made
24 $666,666 from your domestic business interest.  Is that the
25 Rosemont Seneca one?

66

1          THE DEFENDANT:  Yes, Your Honor, I believe
2 that's what it refers to.
3          THE COURT:  $664,000 from a Chinese
4 infrastructure investment company.  Is that one of the
5 companies we've already talked about?
6          THE DEFENDANT:  I believe so, yes, Your Honor.
7          THE COURT:  Which one is that?
8          THE WITNESS:  I believe CEFC.
9          THE COURT:  Okay.  $500,000 in director's fees
10 from the Ukrainian energy company.  That's the one that you
11 already told me about?
12          THE DEFENDANT:  Same, Burisma.
13          THE COURT:  Burisma.
14          Okay.  48,000 from the law firm.
15          THE DEFENDANT:  Yes.
16          THE COURT:  That's the Boise Schiller?
17          THE DEFENDANT:  Yes, it is.
18          THE COURT:  All right.  Okay.  The bottom of
19 that first page, the final paragraph says that the
20 accountant sent copies of the tax documents, copies of the
21 tax documents to your former business partner.  Is that
22 Mr. Schwerin?
23          THE DEFENDANT:  I believe that's who it's
24 referring to, yes, Your Honor.
25          THE COURT:  All right.  On the next page, at the

67

1 end of the second paragraph, starting four lines from the
2 bottom in the middle of the line, the paragraph talks about
3 your tax liability.  And it says the end of year liability
4 should not have come as a surprise.  Do you see that?
5          THE DEFENDANT:  I'm sorry, I'm just trying --
6          THE COURT:  That's okay.  Take your time.
7          THE DEFENDANT:  Yes, I see that here.
8          THE COURT:  It says it should not have come as a
9 surprise.  It wasn't a surprise, is that right?
10          THE DEFENDANT:  Yes, Your Honor.
11          THE COURT:  And you knew --
12          THE DEFENDANT:  Well, I don't -- I didn't write
13 this, Your Honor, so the characterization --
14          MR. CLARK:  Can we elaborate the time there,
15 Your Honor?
16          THE COURT:  Yes.
17          MR. CLARK:  So essentially there was a tax
18 treatment that was undertaken in that year, and it changed
19 the tax treatment at the very end of the year for a
20 particular asset.  And so I think the point is, and I didn't
21 write this either, there was substantial influx of income
22 during that year.  There was an issue with this last minute
23 tax treatment change, and so there were expressions at times
24 of surprise at that.  I think the government's point is you
25 knew you made a lot of money, it shouldn't have come as a

68

1 surprise.
2          THE COURT:  My only concern is when I read this
3 as a lawyer, it shouldn't have come as a surprise, that
4 doesn't preclude Mr. Biden from saying yes, it did.
5          MR. CLARK:  Your Honor's characterization is
6 exactly right.
7          THE COURT:  You're saying it actually was a
8 surprise?
9          MR. CLARK:  In that year.
10          THE COURT:  You guys are okay with that?
11          MR. WISE:  Yes, Your Honor.
12          THE COURT:  All right.  But you did know that
13 you owed tax money, right?
14          THE DEFENDANT:  Yes, Your Honor.
15          THE COURT:  And your business partner,
16 Mr. Schwerin, told you that no withholdings had been made?
17          THE DEFENDANT:  Yes, Your Honor, I believe that
18 to be the case.
19          THE COURT:  All right.  In the third paragraph,
20 which is actually the second full paragraph, it says on or
21 about March 22nd, 2018, you received a million dollar
22 payment into your Owasco bank account as payment for legal
23 fees for Patrick Ho.
24          THE DEFENDANT:  Yes, Your Honor.
25          THE COURT:  Who is that payment received from,

69

1  was that the law firm?
2        THE DEFENDANT:  Received from Patrick Ho, Your
3  Honor.
4        THE COURT:  Mr. Ho himself?
5        THE DEFENDANT:  Yes.
6        THE COURT:  Were you doing legal work for him
7  separate and apart from the law firm?
8        THE DEFENDANT:  Yes, Your Honor.  Well --
9        MR. CLARK:  That wasn't through Boise Schiller,
10  Your Honor, Mr. Biden was engaged as an attorney.
11        THE COURT:  Right.  So that's why I asked.  You
12  were doing work for him --
13        THE DEFENDANT:  My own law firm, not as counsel.
14        THE COURT:  So you had your own law firm as
15  well?
16        THE DEFENDANT:  I think Owasco PT acted as a --
17  acted as a law firm entity, yeah.
18        THE COURT:  Okay.
19        THE DEFENDANT:  I believe that's the case, but I
20  don't know that for a fact.
21        THE COURT:  Okay.  The final paragraph on the
22  second page of the exhibit says that you received a little
23  bit more than $2.6 million in business and consulting fees
24  from the company you formed with the CEO of the Chinese
25  business conglomerate and the Ukrainian energy company, and

70

1  -- I guess originally I was asking if that was in addition
2  to the money you had received from the -- if that was in
3  addition to the money you had received from the law firm,
4  but I think we clarified earlier that --
5        THE DEFENDANT:  Yes, Your Honor.
6        THE COURT:  So I guess what I'm confused about
7  is -- so is that $2.6 million, that was in 2018?
8        MR. CLARK:  That's our understanding, Your
9  Honor.
10        THE COURT:  But it says in the first paragraph
11  of the exhibit for the work that you did for the Ukrainian
12  company and the Chinese company and your domestic
13  businesses, it was $2.1 million.
14        MR. CLARK:  Your Honor, I think actually for
15  this one, and again, we didn't write this, but we don't
16  dispute its accuracy, I think this may summarize a chain of
17  payments that was made over a couple of years.
18        MR. WISE:  Your Honor, as I read that, the
19  reference in the first paragraph is to -- is income and it's
20  more than -- the language is more than 2.1 million in 2018,
21  and by contrast the paragraph Your Honor just pointed out,
22  it's talking about fees he generated at about 2.6 million, I
23  think there were expenses that were business expenses that
24  would be taken from those fees that would get you to a lower
25  income number that's north of 2.1 million.

71

1        THE COURT:  Okay.  In the first full paragraph
2  on the third one, it says after numerous programs and trips
3  to rehab, you got sober in May of 2019.  Do you see that?
4        THE COURT:  Yes, Your Honor.
5        THE COURT:  When I asked you earlier when you
6  last used or were under the influence of a controlled
7  substance or a medication, you said June of 2019.  What was
8  it that you did in June of 2019?
9        THE DEFENDANT:  I was married on May of --
10  May 17th of 2019, and that is my sobriety date.
11        THE COURT:  When I asked you earlier --
12        THE DEFENDANT:  I was being conservative, Your
13  Honor.  I think in between that date to be technically and
14  completely honest from the day that I got married until
15  June 1st, I did have a drink or two.
16        THE COURT:  Okay.
17        THE DEFENDANT:  So I count my sobriety date at
18  least in the program that you attend as June 1st, so that's
19  why I did that.
20        THE COURT:  You said the program you attend.  I
21  thought you -- are you attending a --
22        THE DEFENDANT:  No, a separate program that
23  required anonymity, Your Honor.
24        THE COURT:  Okay.  But I am just trying to make
25  sure that we don't --

72

1        THE DEFENDANT:  No, no, I'm not saying that
2  there are any programs that I'm involved in right now, I'm
3  saying meetings that I go to, the sobriety date is often
4  quoted.
5        MR. CLARK:  He draws a distinction between
6  treatment and a program.
7        THE COURT:  Okay.
8        THE DEFENDANT:  And it's not --
9        THE COURT:  And I appreciate that, whether we
10  call it a treatment or something, you are doing something to
11  support your sobriety, is that correct?
12        THE DEFENDANT:  Yes, Your Honor.
13        THE COURT:  Okay.  All right.  Then that
14  paragraph says that you did not make preparations to file or
15  actually file your 2018 individual or corporate income tax
16  when it was due in 2019.  Is that right?
17        THE DEFENDANT:  Yes, Your Honor.
18        THE COURT:  Okay.  And it was due according to
19  this in October of 2019.  Right?
20        THE DEFENDANT:  Yes, Your Honor.
21        THE COURT:  And you were sober at that time?
22        THE DEFENDANT:  I was, Your Honor.
23        THE COURT:  But you didn't file your taxes.
24        THE DEFENDANT:  Yes, Your Honor, in putting my
25  life back together, it was a flood, an enormous amount of

73

1  problems and by the time I was able to find someone to be
2  able to help me, I was already past the deadline in which I
3  should not have gone past.
4  　　　　　THE COURT:  At the end of the next paragraph, it
5  says that in 2020, during the process of putting together
6  your 2017 and 2018 tax returns, you mischaracterized certain
7  personal expenses as legitimate business expenses.  What's
8  that referencing?
9  　　　　　MR. CLARK:  Your Honor, it may be better if I
10  explain it because Mr. Biden is actually not that close to
11  the facts.  In essence, in a very compressed time frame,
12  Mr. Biden was asked to identify for all of these tax years
13  that were being done from his credit cards and other bank
14  accounts what's a business expense and what is a personal
15  expense.  And he was asked to go through charts and mark
16  them.  And there are situations in which he made an error
17  with regard to marking business expenses or personal
18  expenses.  In several instances, most of them relate to one
19  account, which was a business line of credit account, which
20  he and his accountants treated as business expenses but that
21  he never reviewed the actual records for because the
22  accountants couldn't get the records.  So we concede that he
23  made mistakes, erroneous mistakes in categorizing some of
24  these business and personal expenses.  And that's what it
25  refers to.

74

1  　　　　　THE COURT:  Do you know the approximate amount
2  of money of these mistakes?
3  　　　　　MR. CLARK:  That's what the discussion of the
4  dispute was.  We see it in not minimizing, around $30,000
5  over the entirety of all the filings.  I think the
6  government thinks it's higher.  But that's part of what
7  we're going to shake out at sentencing.  It is not massive
8  amounts of money from the perspective of these tax returns.
9  And as this points out I think in the next sentence, during
10  the same year that these errors were made, Mr. Biden's
11  accountants erroneously overreported his income by several
12  hundred thousand dollars.  And so there is -- there are
13  errors going both ways in that year, some of them are these
14  mistakes, and that mistake by his accountants.
15  　　　　　THE COURT:  And just so I understand, are these
16  things that he made these mistakes and gave them to his
17  accountant and then they were corrected or he made these
18  mistakes, gave them to his accountant and then those
19  mistakes ended up in the filing that were ultimately made to
20  the Internal Revenue Service?
21  　　　　　MR. CLARK:  It was the latter, the accountants
22  didn't catch the mistakes.
23  　　　　　THE COURT:  And again, sir, this was done after
24  you were already sober?
25  　　　　　THE DEFENDANT:  Yes, Your Honor.

75

1  　　　　　THE COURT:  All right.  In the next paragraph,
2  there are more references to self-assessed tax.  Is that the
3  same as we discussed previously, the amount of tax that he
4  determined he owed?
5  　　　　　MR. WISE:  Yes, Your Honor.
6  　　　　　THE COURT:  And at the top of the last page, and
7  also in I guess the last paragraph, or maybe even all those
8  paragraphs, there is a reference to a third party who paid
9  your tax liability.  Is it the same person who paid all of
10  the outstanding liability?
11  　　　　　THE DEFENDANT:  Yes, Your Honor.  I took a loan
12  from that individual.
13  　　　　　THE COURT:  You took a loan?
14  　　　　　THE DEFENDANT:  Yes.
15  　　　　　THE COURT:  Do you make payments on that loan?
16  　　　　　THE DEFENDANT:  Not currently, Your Honor, but
17  it's a normal typical loan with terms and a time frame.
18  　　　　　THE COURT:  Okay.  All right.  Let's talk now
19  about the paragraph 9, the appellant waiver provision.
20  Mr. Biden, your agreement contains an appellant waiver
21  provision in paragraph 9.  This waiver limits your ability
22  to appeal your sentence.  Have you discussed this waiver
23  with your attorney?
24  　　　　　THE DEFENDANT:  Yes.  Yes, I have Your Honor.
25  　　　　　THE COURT:  Are you satisfied with the advice

76

1  and counsel you have received with respect to the waiver?
2  　　　　　THE DEFENDANT:  Yes, I am, Your Honor.
3  　　　　　THE COURT:  Now, I can read the waiver to you if
4  you would like me to or you can tell me that you're
5  confident that you understand it.  Do you want me to review
6  it with you?
7  　　　　　THE DEFENDANT:  I'm confident that I understand
8  it, Your Honor.
9  　　　　　THE COURT:  Do you understand that it is a broad
10  waiver provision and it leaves you with narrow appellant
11  rights should you disagree with your conviction or your
12  sentence?
13  　　　　　THE DEFENDANT:  Yes, Your Honor.
14  　　　　　THE COURT:  And that it leaves you little
15  ability to challenge your conviction or sentence?
16  　　　　　THE DEFENDANT:  Yes, Your Honor.
17  　　　　　THE COURT:  Do you understand that it is
18  unlikely that the conditions that would allow you to appeal
19  will occur and you will likely have no relief should you
20  receive a sentence that is different than the one that you
21  anticipate?
22  　　　　　THE DEFENDANT:  Yes, Your Honor.
23  　　　　　THE COURT:  All right.  I find that the
24  Defendant has knowingly and voluntarily waived his appellant
25  rights.

77

1        Now, as Mr. Wise said earlier, I want to talk to
2  you a little about the sentencing process in federal court.
3  It's not required in a misdemeanor case, but I am going to
4  ask the United States Probation Office to prepare a
5  presentence investigation report to the Court before
6  sentencing.  You and the government will have a chance to
7  review and challenge the facts in that report.  Do you
8  understand that?
9        THE DEFENDANT:  Yes, Your Honor.
10       THE COURT:  It's been my responsibility under
11  the statute, 18 United States Code Section 3553(a) to impose
12  a sentence that is sufficient but not greater than necessary
13  to provide punishment and afford deterrents.  Under the
14  current law I have to follow a three-step process.  First, I
15  have to consider the sentencing guidelines that's been
16  calculated by the probation office and any objections to
17  those guidelines.  Then, I have to rule on any motions for a
18  departure from those guidelines and explain how those
19  motions if granted would impact the guidelines.  And
20  finally, I have to consider all of the factors in the
21  statute including personal factors that would help me to
22  determine what an appropriate sentence is.  And that
23  sentence may, again, vary either upwards or downwards from
24  the guidelines.
25       The government has agreed not to oppose a

78

1  sentence of probation, but it's important that you
2  understand that without reviewing the presentence report, I
3  can't predict for you today whether I will agree that that's
4  an appropriate sentence or not.  Do you understand that?
5       THE DEFENDANT:  Yes, Your Honor.
6       THE COURT:  Do you also understand that parole
7  has been abolished and that to the extent that you were
8  given any period of imprisonment, you would not be released
9  on parole from that imprisonment?
10       THE DEFENDANT:  I understand that, Your Honor.
11       THE COURT:  Do you understand that if you're
12  sentenced to a term of incarceration followed by a period of
13  supervised release or a period -- if you were given a period
14  of probation, if you are found in violation of the
15  conditions of your supervised release or your probation that
16  that may be revoked and you would have to serve additional
17  time in prison if you were imprisoned or if you were on
18  probation that you might have to serve time in prison?
19       THE DEFENDANT:  Yes, Your Honor.
20       THE COURT:  Do you understand that your sentence
21  may include payment of a fine or payment of restitution, and
22  it will include a mandatory special assessment for each
23  offense to which you plead guilty?
24       THE DEFENDANT:  Yes, Your Honor.
25       THE COURT:  Have you discussed with your counsel

79

1  what the sentencing guideline calculation might be for the
2  offenses to which you are pleading guilty?
3       THE DEFENDANT:  Yes, Your Honor.
4       THE COURT:  And do you understand that if I
5  impose a sentence that is harsher or longer or more severe
6  than the one that you may anticipate, you will still be
7  bound by your plea and will not have the right to withdraw
8  it on that basis?
9       THE DEFENDANT:  Yes, Your Honor.
10       THE COURT:  All right.  Now I want to talk about
11  some of the rights that you waive if you plead guilty.  Do
12  you understand that you have the right to plead not guilty
13  to this offense, to persist in your plea of not guilty and
14  to have a trial by jury on the offense during which you
15  would also have the right to the assistance of counsel and
16  the right to see and hear all of the witnesses and have them
17  cross-examined on your behalf?
18       THE DEFENDANT:  Yes, Your Honor.
19       THE COURT:  The standard of proving guilt is
20  beyond a reasonable doubt and it is the highest standard of
21  proof in our justice system.  If the government failed to
22  establish your guilt beyond a reasonable doubt, you would be
23  acquited of the charges against you.  Do you understand
24  that?
25       THE DEFENDANT:  Yes, Your Honor.

80

1       THE COURT:  Do you understand that at trial you
2  would have the right on your own part to decline to testify
3  or to put on any evidence at all and that if you decided not
4  to testify or to put on any evidence, that could not be used
5  against you?
6       THE DEFENDANT:  Yes, Your Honor.
7       THE COURT:  Do you understand that if the case
8  were to go to trial, it would be the government's burden to
9  prove to the jury, again, beyond a reasonable doubt, each of
10  the essential elements of the offenses charge and the jury
11  would have unanimously agree as to your guilt?
12       THE DEFENDANT:  Yes, Your Honor.
13       THE COURT:  Do you further understand that by
14  entering a plea of guilty, there will be no trial and you
15  will have waived and given up your right to trial by jury as
16  well as the rights associated with that trial?
17       THE DEFENDANT:  Yes, Your Honor.
18       THE COURT:  I'm going to ask the prosecutor to
19  summarize for us what the government would be prepared to
20  prove if the case were to go to trial.
21       MR. WISE:  Your Honor, I have read in its
22  entirety the factual statement that we would be prepared to
23  prove.
24       THE COURT:  All right.  Do you want to tell me
25  how that meets the essential elements?

81

1  MR. WISE: Yes, Your Honor.
2  THE COURT: I mean, I can figure it out, but I
3  think it's probably worthwhile you telling me.
4  MR. WISE: The first element, the Defendant had
5  a duty to pay a tax. The Defendant earned substantial
6  income as the factual statement points out. And we can go
7  with -- as Your Honor has pointed out, there are several
8  places in the factual statement where it identified where he
9  obviously earned, looking at the first paragraph,
10 2.3 million in 2017 and 2.1 million in 2018, he therefore
11 had a duty to pay a tax on that income. That is the highest
12 level of summary.
13 The tax was not paid at the time required by
14 law. Again, even when he received an extension, the tax was
15 due in April of 2018 for calendar year 2017 and in April of
16 2019 for calendar year 2018. And finally, the failure to
17 pay was willful. And the Plea Agreement statement of facts
18 describes that despite his addiction issues, he was able to
19 generate significant amounts of income and made financial
20 decisions about how to spend that money, and that those
21 decisions did not include meeting his obligations to pay his
22 taxes.
23 THE COURT: All right. Mr. Biden, is there
24 anything you wish to challenge or amend in the government's
25 recitation of proof?

82

1  THE DEFENDANT: No, Your Honor.
2  THE COURT: Do you disagree with any of the
3  government's factual recitations?
4  THE DEFENDANT: No, Your Honor.
5  THE COURT: Mr. Clark, do you have any
6  objections or concerns with the government's recitation of
7  proof?
8  MR. CLARK: I do not, Your Honor.
9  THE COURT: All right. Now at this point I
10 would normally ask Mr. Biden how he pleads, but as we've
11 already discussed, the Diversion Agreement is out there in a
12 felony case, it is cross-referenced in the Memorandum of
13 Plea Agreement. The Plea Agreement is cross-referenced in
14 the Diversion Agreement, so before I ask him how he pleads,
15 I need to understand -- well, ask him how he pleads or
16 decide if I can accept the Plea Agreement, I need to
17 understand the Diversion Agreement.
18 So the felony gun charge here is a bit unusual,
19 and we don't usually make diversion agreements public. I
20 don't usually see a diversion agreement as the parties up
21 here have hinted, but in fact you all did send it to me and
22 it is referenced in the agreement that is before me in the
23 tax case.
24 So it's a little bit unique in that I have a
25 copy of the Diversion Agreement and that the Diversion

83

1  Agreement contains what I view to be some nonstandard terms
2  like the broad immunity and a term that invokes the Court or
3  involves the Court as part of that agreement.
4  So given all that, Mr. Wise, why don't you go
5  ahead and summarize the terms of the Diversion Agreement
6  given that the parties have agreed to make it public.
7  MR. WISE: Yes, Your Honor. The first under
8  Roman numeral one, the parties to the Diversion Agreement
9  are the United States of America by and through the United
10 States Attorney's Office for the District of Delaware and
11 Robert Hunter Biden.
12 Roman two describes the terms and conditions of
13 the agreement. Paragraph 1 provides that this is for a
14 two-year period, twenty-four months beginning on the date of
15 approval of this agreement, and that would be when the chief
16 probation officer, Ms. Brey signs it, unless there is a
17 breach as set forth in paragraphs 13 and 14.
18 Paragraph 2 provides that this 24-month period
19 will be known as the diversion period.
20 Paragraph 3 provides that Biden shall waive
21 Indictment in relation to the Information filed in the gun
22 case, which again is 23cr61 which charges him with one count
23 of knowingly possessing a firearm while an unlawful user or
24 person addicted to a controlled substance in violation of
25 Title 18 United States Code Section 922(g)(3) and 924(a)(2).

84

1  And the relevant year for the conduct is 2018.
2  Paragraph 4 provides that if Biden complies with
3  his obligations under the agreement, then the United States
4  within thirty days after the expiration of the diversion
5  period will file a motion with the Court seeking the
6  dismissal of the Information.
7  Paragraph 5, Biden agrees that the United States
8  has probable cause to bring the charge in the Information
9  and that the charge is not frivolous or made in bad faith.
10 He also agrees at a future time the United States should
11 move to dismiss the information pursuant to this agreement,
12 he will not be a prevailing party with regard to the
13 Information and he waives any possible claims to attorney
14 fees or litigation expenses arising out of the investigation
15 or prosecution of this case.
16 Paragraph 6 provides that in light of the fact
17 that Biden has accepted responsibility for the actions
18 referred to in the statement of facts as Attachment A to
19 this agreement and taken into consideration Biden's candid
20 acknowledgment of his historical drug use as well as his
21 current sobriety and in consideration for the other terms in
22 the agreement, the United States shall divert this matter in
23 the manner set forth in this agreement pursuant to the terms
24 and conditions set forth in the agreement.
25 Paragraph 7 provides that Biden agrees to waive

85

1   all defenses based on statute of limitations with respect to
2   charges in the information and any other federal firearm
3   charges that could be brought with respect to the conduct
4   set forth in the statement of fact which again is Attachment
5   A. And he agrees that the applicable statute of limitation
6   period for any charges arising under the firearms purchase
7   shall be tolled during the diversion period. He agrees not
8   to assert any speedy trial rights under the Sixth Amendment
9   or Federal Rule of Criminal Procedure 48(b) B or any local
10  rule here in the District of Delaware.
11          Paragraph 8 provides that it is the intent of
12  this agreement for Biden to agree to be subject to the
13  jurisdiction of and venue in the United States District
14  Court for the District of Delaware with respect to the
15  charge set forth in the information and for any federal
16  charges arising out of the firearms purchase set forth in
17  the statement of facts.
18          Paragraph 9 and its subparagraph are the
19  commitments and undertakings of Biden and that includes not
20  purchasing, possessing, attempting to purchase firearms as
21  that term is defined in the relevant statute during the
22  diversion period, consent to a permanent entry in the
23  National Instant Criminal Background Check System such that
24  he will be denied via NICS if he attempts to legally
25  purchase another firearm.

86

1           And then paragraph C, I'm not going to read the
2   entire paragraph, but it's a provision that the gun in
3   question is forfeited to the United States.
4           Starting at paragraph 10 --
5           THE COURT: Could I ask to you pause for one
6   second. I forgot my glasses and I'm going to ask someone in
7   the back to get my glasses, but I didn't want her to open
8   the door and freak people out.
9           All right. Apologies, go ahead.
10          MR. WISE: Starting at paragraph 10, or in
11  paragraph 10 and subparagraph are additional conditions
12  applicable to the diversion period and these include that
13  Biden is subject to supervision as directed by U.S.
14  Probation and Pretrial Services; that he continue to
15  actively seek employment; that he refrain from unlawfully
16  possessing controlled substance; that he refrain from using
17  alcohol; that he submit to substance abuse testing and
18  participate in substance abuse treatment as directed by the
19  U.S. Probation and Pretrial Services Office in this
20  district; that he submits to fingerprinting by the FBI and
21  it describes what will be done with that fingerprint and how
22  it will be preserved for a time; that he communicate in
23  writing all international travel plans and provide
24  documentation, if requested, to U.S. Probation and Pretrial
25  and that he not commit a violation of any federal, state or

87

1   local law.
2           Paragraph 11, in paragraph 11 Biden acknowledges
3   and agrees to the statement of facts that are Attachment A
4   to this agreement and he agrees that they're truthful and
5   accurate.
6           Paragraph 12, Biden agrees that neither he nor
7   anyone else at his direction will make any statement in
8   litigation or otherwise repudiating or contradicting the
9   statement of fact. If the United States believes such a
10  contrary statement has been made, and such statement
11  constitutes a knowing material breach, then the United
12  States may seek a determination regarding such alleged
13  breach pursuant to the procedures set forth in paragraph 14.
14          Starting in paragraph 13, it lays out the
15  procedure if there is a breach. First, paragraph 13. Biden
16  agrees that a knowing failure to abide by or fully perform
17  any of the terms, promises, or agreements set forth in this
18  Agreement shall constitute a breach of this Agreement.
19          Paragraph 14 provides that if the United States
20  believes that a knowing material breach of this Agreement
21  has occurred, it may seek a determination by the United
22  States District Judge for the District of Delaware with
23  responsibility for supervision of this agreement. Upon
24  notice to Biden the United States may seek a determination
25  on a preponderance of the evidence presented to such

88

1   District Judge. Biden shall have the right to present
2   evidence to rebut any such claim. If after that process the
3   judge overseeing such process makes a final determination
4   that Biden has committed a knowing material breach of this
5   agreement, then the United States may elect from two
6   remedies that are specified in the agreement depending on
7   the nature and seriousness testify breach.
8           Remedy 1, which is a sub A of paragraph 14 is
9   the United States may give Biden a specific time period in
10  which to remedy the breach. If the United States determines
11  that Biden has failed to remedy the breach during the
12  specified time period, then the United States may elect
13  Remedy 2. Remedy 2 is the United States may prosecute Biden
14  for any federal criminal violation in which the United
15  States has knowledge including crimes relating to the
16  conduct set forth in the statement of facts, which is
17  Attachment A, and that includes obstruction of justice and
18  any such prosecution is not time barred by any statute of
19  limitation on the date of signing of this agreement,
20  notwithstanding the statute of limitation between the
21  signing and the commencement of such prosecution.
22          And finally, the United States does not require
23  to offer Remedy 1 before proceeding to Remedy 2 if in its
24  sole determination the nature and the serious of the breach
25  warrants termination of the agreement.

89

1       Paragraph 15 is the agreement not to prosecute.
2  The language, the United States agrees not to criminally
3  prosecute Biden outside the terms of this agreement for any
4  federal crimes encompassed by the attached statement of
5  facts, Attachment A, and the statement of facts attached as
6  Exhibit 1 to the Memorandum of Plea Agreement filed this
7  same day.  This Agreement does not provide any protection
8  against prosecution for any further conduct by Biden or by
9  any of his affiliated businesses.  Obviously this paragraph
10 has been orally modified by counsel for Mr. Biden and we
11 would -- I'm not going to attempt to paraphrase it.  I don't
12 want to make the record muddy.  The statement by counsel is
13 obviously as Your Honor acknowledged a modification of this
14 provision, and that we believe is binding.
15      Paragraph 16, starting paragraph 16, there are
16 general terms and conditions, the parties consented to the
17 public disclosure of this agreement, and shall be publicly
18 filed.  The parties stipulate and agree that the conduct set
19 forth in the statement of facts does not constitute relevant
20 conduct for the offenses, to the tax offenses, which Your
21 Honor has identified as a similar provision in the Plea
22 Agreement, that the firearms offense is not relevant conduct
23 for the tax charge.
24      Paragraph 18 this agreement may be executed in
25 counterparts, each of which constitutes an original and all

90

1  of which constitutes one and the same agreement.
2       And paragraph 19 is an incorporation agreement
3  like in the Plea Agreement, this agreement sets forth all of
4  the terms of the agreement between the United States and
5  Biden.  It constitutes a complete and final agreement
6  between the United States and Biden in this matter.  There
7  are no other agreements written or otherwise modifying the
8  terms, conditions or obligations of this agreement.  No
9  future modifications or additions of this agreement in whole
10 or in part shall be valid unless they are set forth in
11 writing or signed by the United States, and Biden and
12 Biden's counsel.
13      THE COURT:  All right.  Thank you.
14      Mr. Clark, any corrections you want to make?
15      MR. CLARK:  No, Your Honor.
16      THE COURT:  The information charges Mr. Biden
17 with violation of 18 United States Code 922(g)(3).  Does
18 anyone have any concerns about the constitutionality of that
19 charge in light of the recent Third Circuit *Range* case?
20      MR. WISE:  No, Your Honor.
21      MR. CLARK:  Your Honor, I note our -- that's one
22 of the reasons the parties I think are in the disposition we
23 are in.  We don't waive in a later prosecution any
24 challenges on that.
25      THE COURT:  I completely understand that.  That

91

1  was kind of why I was asking the government the question.
2       So if 922(g)(3), which makes it unlawful for a
3  drug user addict to possess a gun were found by some court
4  to be unconstitutional, what happens to the Diversion
5  Agreement?
6       MR. WISE:  Your Honor, the Diversion Agreement
7  is a contract between the parties so it's in effect until
8  it's either breached or a determination, period.
9       MR. CLARK:  I can tell you our intention would
10 be to abide by the agreement and only raise such
11 constitutional determining at such time that somebody tried
12 to bring any charges on this, otherwise it's an agreement
13 between the parties.  We are going to honor the agreement.
14      THE COURT:  I have had one or two cases
15 involving a person struggling with addiction who bought a
16 gun, we usually see a felony charge for false statement.
17 The Defendant has admitted that his statement was false, but
18 he wasn't charged.  Again, I'm not trying to get into the
19 purview of the prosecutor, and I understand the separation
20 of powers, it's in your discretion, but I just want to ask,
21 does the government have any concern about not bringing the
22 false statement charge in light of our discussion of that
23 922(g)(3) and the constitutionality of that charge.
24      MR. WISE:  No, Your Honor.
25      THE COURT:  Paragraph 7 says that the statute of

92

1  limitations is waived.  Can you just tell me when would the
2  statute of limitation be waived on a charge for false
3  statement if the Diversion Agreement were not in place?
4       MR. CLARK:  When would it run, Your Honor?
5       THE COURT:  I understand it's tolled by the
6  agreement.  I have concerns about the agreement, that's why
7  I'm asking these questions, so if the agreement weren't
8  there.
9       MR. CLARK:  It would be October 2023.
10      MR. WISE:  October 12th, 2023.
11      THE COURT:  All right.  Thank you.
12      All right.  Now I have reviewed the case law and
13 I have reviewed the statute and I had understood that the
14 decision to offer the defendant, any defendant a pretrial
15 diversion rest squarely with the prosecutor and consistent
16 with that, you all have told me repeatedly that's a separate
17 agreement, there is no place for me to sign off on it, and
18 as I think I mentioned earlier, usually I don't see those
19 agreements.  But you all did send it to me and as we've
20 discussed, some of it seems like it could be relevant to the
21 plea.
22      One provision in particular stands out to me,
23 and that is paragraph 14.  That paragraph says if the United
24 States believes that a knowing material breach of this
25 agreement has occurred, it may seek a determination by the

93

1   United States District Judge for the District of Delaware
2   with responsibility for the supervision of this agreement.
3   It then goes on to say that if I do find a breach, then the
4   government can either give the Defendant time to remedy the
5   breach or prosecute him for the crime that is the subject of
6   the information or any other that falls within the language
7   of the agreement.  Do I have that understanding correct?
8           MR. CLARK:  That's my understanding of the
9   provision, Your Honor.
10          THE COURT:  So can you tell me what's
11  contemplated by that, how it would work?
12          MR. WISE:  So, Your Honor, obviously the
13  Diversion Agreement covers offenses related to firearms, so
14  if there was a breach, then he could be charged with -- the
15  offenses related to that firearm as well as perjury,
16  obstruction of justice, and any prosecution not barred by
17  the statute of limitations related to that.
18          MR. CLARK:  I think Your Honor may be asking the
19  functionality of your involvement.  And the concept was
20  along the lines of a VOSR where a situation is brought to
21  the Court and the Court would make a factual determination
22  in the first instance that there was a violation of
23  supervised -- I mean, diversion is not supervised release,
24  but in some senses it can be, and so the idea was that the
25  Court would determine whether or not there was a violation

94

1   and then the government would move on to a remedy.
2           THE COURT:  First it got my attention because
3   you keep telling me that I have no role, I shouldn't be
4   reading this thing, I shouldn't be concerned about what's in
5   these provisions, but you have agreed that I will do that,
6   but you didn't ask me for sign off, so do you have any
7   precedent for that?
8           MR. WISE:  Your Honor, no.  No, I don't have
9   precedent.
10          THE COURT:  As I read it, tell me if I'm reading
11  this correctly, that under the agreement as you all have
12  drafted it the only way that charges could ever be brought
13  is if I have the hearing that you all agreed that I have to
14  have, right?
15          MR. WISE:  Yes.
16          THE COURT:  So if I don't have a hearing or make
17  a finding, no criminal charges can be pursued for the gun
18  charge or any other federal charge within the scope of the
19  agreement not to be prosecuted, right?
20          MR. WISE:  I believe that's right, Your Honor.
21          THE COURT:  So is there some requirement that
22  you have that I have to make that finding that you all
23  agreed that I would without asking?
24          MR. WISE:  Is there some --
25          THE COURT:  Requirement that says I have to make

95

1   that finding?
2           MR. WISE:  No.
3           THE COURT:  And you don't have any precedent for
4   that, right?
5           MR. WISE:  No, Your Honor.
6           THE COURT:  Do you have any authority that any
7   Court has ever accepted that or said that they would do
8   that?
9           MR. WISE:  No, Your Honor, this was crafted to
10  suit the facts and circumstances.
11          THE COURT:  I'm concerned that that provision
12  makes me a gatekeeper to criminal charges and puts me in the
13  middle of a decision as to whether to bring a charge.  And
14  we already talked about separation of powers and that choice
15  as to whether to bring charges is not -- that's the
16  executive branch, not the judicial branch, so is this even
17  constitutional?
18          MR. CLARK:  I believe it is, Your Honor, because
19  what the structure makes clear is that Your Honor is just
20  finding facts.
21          THE COURT:  But no charges -- usually in these
22  agreements, right, Mr. Clark, the prosecutor says we think
23  he breached, and I don't mean to point it out, I'm not
24  saying you're going to breach.
25          MR. CLARK:  I understand.

96

1           THE COURT:  We're doing a hypothetical.
2           MR. CLARK:  I understand the question.
3           THE COURT:  The prosecutor says there is a
4   breach, Judge, we got to move forward on the information.
5   You then come forward and you're like, Judge, he didn't
6   breach, review this, okay, so that's the standard.  The
7   government has -- the executive branch has already made a
8   determination we are going to proceed with the charges.
9   Now, the government cannot make the decision to proceed with
10  charges absent involving the Court.
11          MR. CLARK:  Respectfully, Your Honor, I don't
12  think that's the way it's structured and I do think the way
13  it's structured may get some way past your concern.  What it
14  is is that it's not that the government has decided to bring
15  charges, it's that the government believes there is a
16  breach.  In paragraph 14, the government brings the breach
17  to Your Honor and says we need a determination of whether
18  there is a breach.  So it's not a question that we've
19  decided what to opt into, we've decided what to do, we want
20  your -- it's Your Honor, we believe there is a factual
21  dispute between the parties, not a breach, we would like you
22  to make a factual determination.
23          THE COURT:  Why can't you do that in the normal
24  way?  As I read this, the government has no discretion to
25  bring charges if it believes that a breach has occurred

97

1  unless I opine.
2          MR. CLARK: Can we approach and discuss one
3  issue with Your Honor?
4          THE COURT: You mean because it's confidential?
5          MR. CLARK: Yeah.
6          THE COURT: Okay. You're going to have to make
7  -- you're going to have to make a showing as to why. As I
8  understand, once we're in court in the Third Circuit, it's
9  essentially strict scrutiny, so can you explain to me why
10  this is something that cannot go on the record?
11          MR. CLARK: It relates to the plea discussions
12  between the parties generally which aren't discussed
13  publicly.
14          THE COURT: I will allow you to have -- we will
15  have a discussion on the sealed portion, but you're going to
16  have to convince me that it needs to be maintained as
17  sealed. All right? Because I can't -- it's hard for me to
18  say that in the abstract if you're saying that's a plea
19  discussion.
20          MR. CLARK: Your Honor, let me try to handle it
21  separately. There was a desire because of there being as
22  Your Honor has seen a tremendous amount of political drag
23  with this Defendant that the normal mechanism that might
24  take place would have the protection of the Court not in the
25  discretion to bring a charge, but in finding a breach, and

98

1  so that that wouldn't be something that would become more
2  politicized, but rather would be something that the parties
3  could rely on, someone we consider a neutral arbiter to
4  determine the breach, not the charge.
5          THE COURT: I understand. Look, I knew why you
6  brought it, okay, I could see why you would want that
7  provision in here, but I don't -- you are putting me -- the
8  government, the executive branch has the discretion to bring
9  charges. Here, the government does not have discretion to
10  continue to pursue this charge or any other charge unless
11  you include the Court. And that seems like it's getting
12  outside of my lane in terms of what I am allowed to do. And
13  thus, I have concerns about the constitutionality of this
14  provision. That gives me concerns about the
15  constitutionality of this agreement because there doesn't
16  seem to be a separate severability, and that gives me
17  concerns about whether the Defendant has the protection from
18  prosecution that he thinks he's getting if this agreement
19  turns out to be not worth the paper it's written on.
20          MR. CLARK: Your Honor, all --
21          THE COURT: My concern is, and part of what I
22  have to do is knowing and voluntary, and I can't let him --
23  I'm not convinced this is a plea under subsection B, but
24  even if it is, and all I have to say is, is it knowing and
25  voluntary. I can't let him plead to something if he thinks

99

1  he has protection and he doesn't.
2          MR. CLARK: Absolutely, Your Honor. I think the
3  analogy to a VOSR is not a bad analogy. The government
4  comes to the Court and it says Your Honor, we believe there
5  has been a violation of supervised release. Unless you,
6  Judge, make a factual finding that that's happened, we can't
7  do what we would normally do with regards to this Defendant.
8  Right? And again, it's the fact and then the discretion.
9  Right? And so here it's very analogous to that process
10  which is not a violation of separation of powers. I
11  understand what your Your Honor is saying.
12          THE COURT: I think I might need a little bit
13  more on this because it is confusing to me. But let me --
14  or concerning I should say more than confusing.
15          Let me ask you this, if that provision violates
16  the constitution, what happens to the Diversion Agreement?
17          MR. CLARK: If that provision violates the
18  constitution, the diversion -- first of all, I'm not aware
19  of a manner in which we can challenge the Diversion
20  Agreement, but if it did, I think we would say that, if it's
21  unconstitutional, right --
22          THE COURT: The way I'm seeing it is the
23  government decides -- not to be politicized, the government
24  decides we're going to bring a charge and you say no, that's
25  prohibited by the Diversion Agreement, and the government

100

1  says that Diversion Agreement is unconstitutional. You
2  don't have the protection of it. So I'm not going to not
3  voice my concerns when I think that there are -- you know,
4  you telling me we're not going to challenge it, that really
5  doesn't --
6          MR. CLARK: No, I'm not saying that, Your Honor.
7  Under those circumstances we would have a contractual
8  dispute about this contract between the government and us
9  and that would get litigated like any other contractual
10  dispute would get litigated. That's what this is.
11          THE COURT: But what if it is unconstitutional,
12  what happens to the Diversion Agreement?
13          MR. CLARK: I think it's valid but for this
14  provision.
15          THE COURT: Is there a severability provision?
16          MR. CLARK: There isn't, but there is nothing
17  that says it is a unitary contract either, it's kind of half
18  and half. There is no merger clause or severability clause,
19  so in my -- it's a toss up on that, right, Your Honor.
20          THE COURT: So if I say that I am not going to
21  do what is requested, what you all have agreed that I am
22  going to do, what happens to the Diversion Agreement?
23          MR. CLARK: If you're saying it right now in a
24  binding manner --
25          THE COURT: I'm just asking you, I'm not making

101

1  a finding, I'm asking you because I'm trying to exercise due
2  deliberation and consideration and make sure that we don't
3  make a misstep.
4          So Mr. Wise, if I say I'm not doing it, your
5  contract has an impossibility in there because nothing can
6  happen, I understand Mr. Clark might say that's fine, Your
7  Honor, but the government, what happens if I say I'm not
8  going to do that, you can agree I'm going to do it, but I'm
9  not?
10         MR. WISE:  So in negotiating these terms we
11  obviously agreed to -- as Your Honor has pointed out, the
12  executive branch has the authority to bring charges, we have
13  agreed to a limitation, if you will, that is predicated on
14  the Court taking certain action.  If the Court declines to
15  take the action contemplated by the agreement, we would have
16  to examine whether there were other ways to seek the
17  enforcement of the agreement.
18         MR. CLARK:  And there is a way to modify the
19  agreement obviously between the parties, Your Honor, so by
20  written modification we could modify that provision if Your
21  Honor said I won't participate.
22         THE COURT:  All right.  So what are you talking
23  about?
24         MR. CLARK:  I'm saying that if Your Honor said
25  I've determined that this isn't proper, I'm not going to

102

1  participate, we would work on provision, paragraph 19 which
2  says that, you know, we can modify or add to the agreement
3  with the written consent of the parties and we would come up
4  with an alternative dispute resolution system.
5          I personally, Your Honor, I mean, again, I don't
6  mean to hang everything on a VOSR analogy, I have done many
7  of them in my life, I don't think it is unconstitutional, I
8  think it's very fair question from the Court, I don't think
9  it is, but I think if the Court were to determine it was not
10  appropriate, we would modify the contract and you would
11  determine on another dispute resolution.
12         MR. WISE:  The analogy that I would offer, Your
13  Honor, VOSR's statutory framework is many U.S. Attorney's
14  offices' practice around the country have proffer agreements
15  or Queen for a day agreements where a defendant -- a
16  defendant, a witness, a target will sit down, make certain
17  statements pursuant to an agreement and some of those
18  agreements have provisions that in the event that the
19  government believes there is a breach that they lied, they
20  will go to a judicial officer for a determination and if
21  that is the case and the agreement is deemed void, then
22  charges, for instance, 1001 charges making a false statement
23  to a law enforcement officer could be brought.  So I think
24  that's a similar -- and those agreements unlike VOSR are not
25  governed by an elaborate statutory scheme, they're contracts

103

1  between United States and individuals, but it contemplates a
2  role for a judicial officer that then affects the ability of
3  the government to bring charges.
4          THE COURT:  I take your points on the analogy to
5  the VOSR, but I know, I asked if there is any precedent for
6  this, I was told no.  I was asked if there is any authority
7  for this, I was told no.  And I get the analogy, but I don't
8  think that I can on the fly make the analogy that you're
9  asking me to make or even, you know, you're telling me that
10  this is -- so that this is appropriate.  So I am not sure --
11  I'm not sure what to do with that.  It may be that you're
12  correct, that that's an appropriate analogy, but it may be
13  that you are not.
14         MR. CLARK:  May I propose something, Your Honor?
15  You don't have to -- there is no action again, not to -- I
16  know you don't necessarily want to hear that all the time,
17  that you have to take with a regular Diversion Agreement.
18  Can I propose that Your Honor can take time with regard to
19  this provision, inform the parties, and if you find that the
20  provision is improper, and we can even brief it to you, I'll
21  commit with the government that we'll work under
22  paragraph 19 to implement another procedure.  But again, I
23  don't think that needs to hold up today's disposition.
24         THE COURT:  The problem that I have, I'm not
25  sure that it doesn't.  Again, you all are telling me just

104

1  rubber stamp the agreement, Your Honor, because all we're
2  doing is recommending a plea.  But it seems like the
3  argument you're making is form over substance.  What's funny
4  to me is you put me right smack in the middle of the
5  Diversion Agreement that I should have no role in, you plop
6  meet right in there and then on the thing that I would
7  normally have the ability to sign off on or look at in the
8  context of a Plea Agreement, you just take it out and you
9  say Your Honor, don't pay any attention to that provision
10  not to prosecute because we put it in an agreement that's
11  beyond your ability.
12         So this is what I am going to do.  These
13  agreements are not straightforward and they contain some
14  atypical provisions.  I am not criticizing you for coming up
15  with those, I think that you have worked hard to come up
16  with creative ways to deal with this.  But I am not in a
17  position where I can decide to accept or reject the Plea
18  Agreement, so I need to defer it.
19         First, I don't know which rule this falls under.
20  I am not convinced that it is actually a plea under
21  subsection B, which you all suggest is me rubber stamping
22  the plea if it's a knowing plea.  But even if it were, I
23  have testimony under oath both that the Defendant is
24  concerned about ensuring that he has immunity from
25  additional charges, and also that well, he doesn't need that

105

1  in terms of the Plea Agreement.  So I need to think about
2  that.
3          Additionally, I need some understanding as to
4  why this is a plea under B and that my concern about the
5  form over substance of the agreement not to prosecute is not
6  valid, or why I should do this.  So I would like some
7  briefing, additional briefing on why subsection B is the
8  appropriate section, and if I were to determine that this
9  actually is a plea under subsection A, it would be helpful
10  to me to have your views on what it is that makes this plea
11  acceptable, because I'm not saying that it is not, but
12  nobody seems to really have given me that what I would need
13  if I were to determine that as I read this as a whole, I
14  think that that really is what is in front of me.  So I need
15  that.
16          And then I would like as you offered, Mr. Clark,
17  you guys can go back and work on whether or not you can take
18  out that provision and come up with something else that's
19  acceptable, and while you do that, you might, though I'm not
20  trying to tell you how to negotiate the Diversion Agreement,
21  you might fix that one paragraph that you have orally
22  modified today.
23          I would like to understand why that provision,
24  if you want it to go forward is appropriate, and why I am
25  not doing something that gets me outside of my lane in terms

106

1  of my branch of government if I were to do what is being
2  requested.
3          Does that make sense?
4          MR. CLARK:  That makes sense, Your Honor.  I
5  think that the parties have been very eager to resolve this
6  matter, and it has been pending for an extended period of
7  time.
8          THE COURT:  It hasn't been pending for that long
9  a period of time, I know that when you guys first called,
10  you said you would send me the agreements on a Tuesday or a
11  Thursday and you wanted to have the hearing within a few
12  days.  I couldn't accommodate that schedule, but the fact
13  is, this is a -- this is our normal course of timing of
14  things and so I understand, and I certainly understand why
15  you want to get this resolved, but I am not in a position
16  where I can do that now.  So if you guys want to tell me
17  when you're thinking you can get me the papers that I'm
18  asking for.
19          MR. WISE:  Your Honor, we would -- what I would
20  anticipate is we'll need to order the transcript from
21  today's proceeding to address some of the issues you have
22  raised to make sure we're precisely addressing what you're
23  asking us to, so I think building in a little bit of time to
24  get the transcript and then a reasonable amount of time
25  after that to submit, I would say at least fourteen days.

107

1          MR. CLARK:  Fine with us, Your Honor.
2          MR. WISE:  I would also say, Your Honor, we're
3  not asking the Court to rubber stamp anything.
4          THE COURT:  It certainly sounds like it.  Tell
5  me again what you think my role is for a plea under
6  11(b)(1)(B).
7          MR. WISE:  It's not what I think the Court's
8  role --
9          THE COURT:  I agree, I read the rule, the rule
10  says I couldn't accept or reject, you're saying it's not a
11  rubber stamp, so what is it I do?
12          MR. WISE:  You don't take action on the Plea
13  Agreement.  What Rule 11(c) says is for Rule (c)(1)(B) the
14  Court must advised the Defendant that the Defendant has no
15  right to withdraw the plea if the Court does not follow the
16  recommendation or request.  So the rule does not contemplate
17  the Court taking any position on the agreement if it's a
18  (c)(1)(B), rather the rule requires the Court to give that
19  advisement, and that is the extent of the Court's role.  And
20  this has been briefed not in this circuit, but in other
21  circuits and we can certainly include that, that's not my
22  view --
23          THE COURT:  I certainly understand what -- if
24  it's a plea under subsection (c)(1)(B), I am not going to
25  just agree with you as to the limits of my role.  My problem

108

1  is I am not -- I am not sure, and I need to understand the
2  propriety, it may very well be that it is appropriate, but
3  as I said, it did catch my attention, you throw me in there,
4  Judge, you're the gatekeeper and then you take me out of the
5  other aspects of the -- you throw me into the Diversion
6  Agreement and then you take me out of the Memorandum of Plea
7  Agreement.
8          So I cannot accept the Plea Agreement today.  I
9  mean, based on what you just said, Mr. Wise, Mr. Clark, if
10  you want, I can accept a guilty plea while I defer my
11  decision on the Plea Agreement, which the Supreme Court said
12  is appropriate in the *Hyde* case, 520 U.S. 670 (1997), if
13  your client wants to plead guilty pending my determination
14  on the Plea Agreement.
15          MR. CLARK:  We're pleading guilty pursuant to
16  the Plea Agreement, Your Honor, so that would not be
17  something that we would do.
18          THE COURT:  Does that mean that I need to take a
19  plea of not guilty?
20          MR. CLARK:  I believe you do, Your Honor.
21          THE COURT:  All right.  So Mr. Biden, I know you
22  want to get this over with, and I'm sorry, but I do want to
23  make sure that I am careful in my view of this.  So I do
24  need some more information.  And part of that is making sure
25  that your plea gets you what you think it gets and part of

109

1  it is making sure that I do justice as I'm required to do in
2  this court. So I need some additional information. I'm not
3  saying I'm not going to reject the plea, I'm not saying I'm
4  going to accept the Plea Agreement. I need more
5  information.
6          So at this point I'm just going to ask you,
7  without the Plea Agreement, without me saying that I would
8  agree to the Plea Agreement, how do you plead to the charges
9  that we have been discussing?
10         THE DEFENDANT: Not guilty, Your Honor.
11         THE COURT: Thank you.
12         So I will look forward to the parties'
13  submissions. And after we have a chance to review those, we
14  will either issue an order as to what we're planning to do
15  with the plea or we'll have a status conference or we'll get
16  back here.
17         Do we need to do anything else? I know that we
18  talked about we were on the clock now. Can we exclude the
19  time, that gives me some time to look at these for
20  thirty days or not?
21         MR. CLARK: I would imagine the Court can
22  exclude the time for briefing, yeah.
23         MR. WISE: We agree, Your Honor.
24         THE COURT: So we will do that. And after we
25  see it, we will take a look and get back to you.

110

1          Mr. Biden, I need you to just stick around for a
2  minute after we adjourn. I need you -- my deputy is going
3  to ask you to sign the release order that we talked about,
4  and then I need you to go downstairs to the marshals for
5  processing and to catch up with probation.
6          All right?
7          THE DEFENDANT: Yes, Your Honor.
8          THE COURT: Anything else that we need to talk
9  about while we are here today?
10         MR. WISE: Not on behalf of the United States.
11         MR. CLARK: No, Your Honor.
12         THE COURT: Thank you.
13         (Court adjourned at 1:14 p.m.)
14
15         I hereby certify the foregoing is a true and
    accurate transcript from my stenographic notes in the proceeding.
16
17              /s/ Dale C. Hawkins
              Official Court Reporter
18              U.S. District Court
19
20
21
22
23
24
25

## $

**$1,045,850** [1] - 34:22
**$1,199,524** [2] - 24:4, 35:5
**$1,580,283** [1] - 34:11
**$1,593,329** [2] - 24:4, 35:6
**$100** [1] - 4:24
**$100,000** [2] - 5:3, 23:9
**$125,909** [1] - 33:11
**$13,630** [1] - 33:14
**$15,520** [1] - 34:6
**$197,000** [1] - 35:12
**$197,372** [1] - 34:23
**$2,187,286** [1] - 33:15
**$2,376,436** [1] - 33:9
**$2,659,014** [1] - 33:14
**$2,698,041** [1] - 33:13
**$204,000** [1] - 29:25
**$25** [2] - 5:6, 23:11
**$25,000** [1] - 30:2
**$250,000** [1] - 4:23
**$30,000** [1] - 74:4
**$38,465** [2] - 31:8, 33:16
**$4,247** [1] - 33:20
**$447,234** [1] - 34:13
**$45,661** [1] - 34:14
**$48,000** [1] - 29:2
**$492,000** [1] - 35:11
**$492,895** [1] - 34:12
**$50** [1] - 25:16
**$500,000** [2] - 28:25, 66:9
**$581,713** [1] - 33:12
**$600,000** [1] - 29:25
**$620,901** [1] - 33:17
**$659,366** [1] - 33:16
**$664,000** [2] - 28:24, 66:3
**$666,666** [2] - 28:23, 65:24
**$70,000** [1] - 29:1
**$710,598** [1] - 33:10
**$758,000** [1] - 31:19
**$939,000** [1] - 30:21
**$955,800** [2] - 33:23, 35:11
**$956,632** [2] - 33:25, 35:11

### '

**'14** [1] - 58:14
**'19** [1] - 58:14

## /

**/s** [1] - 110:17

## 1

**1** [16] - 21:18, 22:25, 23:22, 27:5, 27:6, 28:21, 30:19, 35:9, 40:12, 60:10, 61:22, 62:9, 83:13, 88:8, 88:23, 89:6
**1(b)(1,3)** [1] - 24:9
**1,100** [1] - 27:3
**1.9** [1] - 35:14
**10** [4] - 25:15, 86:4, 86:10, 86:11
**1001** [1] - 102:22
**1040** [6] - 33:9, 33:14, 34:5, 34:9, 34:10, 34:19
**10:00** [1] - 1:9
**11** [3] - 25:17, 87:2
**11(B** [2] - 18:1, 18:18
**11(b)(1)(B)** [1] - 107:6
**11(c** [1] - 107:13
**11(c)(1)(A** [6] - 18:11, 18:14, 18:24, 19:6, 19:18, 47:4
**11(c)(1)(B** [4] - 17:11, 17:23, 41:8, 41:17
**11(c)(1)(C** [2] - 17:17, 18:15
**11(c)(3)(B)** [1] - 18:3
**1120** [2] - 33:12, 33:18
**12** [4] - 25:24, 34:11, 36:18, 87:6
**12th** [1] - 92:10
**13** [4] - 26:15, 83:17, 87:14, 87:15
**14** [6] - 83:17, 87:13, 87:19, 88:8, 92:23, 96:16
**15** [8] - 31:15, 32:9, 40:3, 40:7, 53:11, 57:18, 57:21, 89:1
**15th** [4] - 28:13, 28:16, 31:10, 34:19
**16** [3] - 24:15, 89:15
**17** [1] - 30:15
**17th** [1] - 71:10
**18** [7] - 4:12, 34:15, 34:23, 77:11, 83:25, 89:24, 90:17
**18th** [2] - 33:6, 33:22
**19** [3] - 90:2, 102:1, 103:22
**1996** [1] - 12:13
**1997** [1] - 108:12
**1:14** [1] - 110:13

## 1st

**1st** [3] - 56:22, 71:15, 71:18

## 2

**2** [6] - 23:6, 60:25, 83:18, 88:13, 88:23
**2.1** [7] - 27:20, 63:10, 63:14, 70:13, 70:20, 70:25, 81:10
**2.3** [3] - 27:20, 63:9, 81:10
**2.6** [4] - 31:2, 69:23, 70:7, 70:22
**2003** [1] - 13:11
**2010** [1] - 63:3
**2014** [2] - 26:11, 58:20
**2015** [1] - 27:23
**2016** [5] - 27:25, 34:4, 34:10, 34:11, 35:12
**2017** [32] - 27:11, 27:17, 27:20, 28:1, 28:3, 28:20, 29:3, 29:6, 29:22, 30:5, 30:16, 30:17, 31:16, 32:12, 32:14, 33:8, 33:9, 33:12, 33:25, 34:6, 35:12, 62:10, 62:11, 62:22, 62:24, 63:9, 63:11, 65:10, 73:6, 81:10, 81:15
**2018** [34] - 14:17, 14:21, 15:10, 27:20, 28:7, 29:5, 29:23, 30:2, 30:15, 30:19, 31:2, 31:9, 31:17, 32:7, 32:12, 32:14, 33:8, 33:14, 33:18, 34:2, 35:12, 37:19, 63:10, 63:14, 68:21, 70:7, 70:20, 72:15, 73:6, 81:10, 81:15, 81:16, 84:1
**2019** [24] - 15:17, 26:12, 27:12, 29:6, 31:10, 31:15, 31:20, 31:25, 32:2, 32:4, 32:9, 32:10, 34:19, 34:22, 35:12, 58:20, 62:12, 71:3, 71:7, 71:8, 71:10, 72:16, 72:19, 81:16
**2020** [8] - 32:14, 32:18, 33:6, 34:3, 34:9, 34:11, 34:20, 73:5
**2021** [4] - 28:6, 33:22, 34:15, 34:24
**2023** [3] - 1:8, 92:9, 92:10

## 21

**21** [1] - 9:6
**22** [1] - 30:19
**22nd** [1] - 68:21
**23-274** [3] - 3:25, 4:14, 11:4
**23-61** [2] - 4:8, 36:15
**23-61(MN** [1] - 1:6
**23-cr-61-MN** [1] - 2:25
**23-mj-274(MN** [1] - 1:5
**23-mj-274-MN** [1] - 3:4
**23cr61** [1] - 83:22
**24-month** [1] - 83:18
**26** [3] - 1:8, 4:17, 23:5
**27** [1] - 32:18

## 3

**3** [5] - 23:14, 61:10, 61:20, 83:20
**3(e)(1.1)(a** [1] - 24:13
**3(e)(1.1)(b** [1] - 24:19
**34** [1] - 8:10
**3553(a** [1] - 77:11

## 4

**4** [2] - 23:23, 84:2
**40702** [1] - 8:11
**48(b** [1] - 85:9
**48,000** [1] - 66:14

## 5

**5** [2] - 24:1, 84:7
**5(b** [1] - 53:10
**520** [1] - 108:12
**5A** [5] - 24:2, 27:2, 35:3, 35:19
**5b** [1] - 36:13
**5B** [1] - 52:7

## 6

**6** [2] - 25:3, 84:16
**670** [1] - 108:12

## 7

**7** [3] - 25:6, 84:25, 91:25
**7203** [2] - 4:18, 23:5

## 8

**8** [2] - 25:9, 85:11
**802** [1] - 9:6
**844** [1] - 1:11

## 9

**9** [4] - 25:12, 75:19, 75:21, 85:18
**900** [1] - 19:24
**922(g)(3** [4] - 4:13, 83:25, 91:2, 91:23
**922(g)(3)** [1] - 90:17
**924(a)(2)** [2] - 4:13, 83:25

## A

**a.m** [1] - 1:9
**abide** [2] - 87:16, 91:10
**ability** [7] - 19:8, 31:18, 75:21, 76:15, 103:2, 104:7, 104:11
**able** [5] - 20:5, 59:18, 73:1, 73:2, 81:18
**abolished** [1] - 78:7
**absent** [2] - 60:12, 96:10
**absolutely** [1] - 99:2
**abstract** [1] - 97:18
**abuse** [9] - 9:22, 27:22, 28:7, 64:3, 86:17, 86:18
**abusing** [1] - 27:24
**accept** [18] - 17:19, 18:7, 18:15, 18:19, 40:18, 40:22, 45:10, 47:8, 47:11, 47:14, 51:14, 61:17, 82:16, 104:17, 107:10, 108:8, 108:10, 109:4
**acceptable** [2] - 105:11, 105:19
**acceptance** [3] - 24:11, 24:14, 24:16
**accepted** [2] - 84:17, 95:7
**accepting** [1] - 19:3
**access** [1] - 45:24
**accommodate** [1] - 106:12
**accordance** [1] - 7:23
**according** [1] - 72:18
**account** [5] - 30:20, 30:24, 68:22, 73:19
**accountant** [13] - 29:4, 29:5, 29:19, 29:20, 29:23, 30:1, 31:11, 31:12, 32:11, 32:13, 66:20, 74:17, 74:18
**accountants** [10] - 32:20, 32:24, 33:4, 34:4, 73:20, 73:22,

74:11, 74:14, 74:21
accounts [1] - 73:14
accrued [2] - 34:16, 34:24
accuracy [3] - 9:19, 32:22, 70:16
accurate [4] - 32:21, 37:12, 87:5, 110:15
accurately [1] - 39:3
acknowledge [1] - 25:22
acknowledged [1] - 89:13
acknowledges [1] - 87:2
acknowledging [1] - 32:21
acknowledgment [1] - 84:20
acquited [1] - 79:23
Act [3] - 7:2, 25:25, 55:8
acted [2] - 69:16, 69:17
action [5] - 3:23, 101:14, 101:15, 103:15, 107:12
ACTION [2] - 1:4, 1:6
Action [5] - 3:25, 4:8, 4:14, 11:4, 36:15
actions [2] - 29:16, 84:17
actively [1] - 8:24, 86:15
activities [1] - 26:2
actual [1] - 73:21
add [2] - 35:13, 102:2
addict [1] - 91:3
addicted [4] - 4:12, 83:24
addiction [10] - 13:1, 13:4, 13:6, 13:24, 28:4, 31:6, 64:10, 64:15, 81:18, 91:15
addition [3] - 34:3, 70:1, 70:3
additional [17] - 8:19, 24:18, 25:21, 26:11, 29:25, 33:17, 38:4, 38:17, 42:22, 49:2, 49:9, 50:4, 78:16, 86:11, 104:25, 105:7, 109:2
additionally [1] - 105:3
additions [1] - 90:9
address [4] - 10:15, 35:22, 38:7, 106:21
addressed [3] - 21:4, 37:19, 47:23

addresses [2] - 25:24, 37:17
addressing [1] - 106:22
adequately [1] - 19:7
adjourn [1] - 110:2
adjourned [1] - 110:13
administrative [1] - 29:10
admission [1] - 58:15
admits [2] - 23:20, 23:21
admitted [1] - 91:17
adverse [2] - 5:25, 7:8
advice [4] - 16:23, 22:7, 60:23, 75:25
advise [1] - 8:12
advised [4] - 29:24, 30:11, 31:12, 107:14
advisement [1] - 107:19
advisors [1] - 64:21
affect [2] - 19:8, 26:22
affects [1] - 103:2
affiliated [2] - 40:15, 89:9
afford [3] - 5:10, 5:11, 77:13
Agents [1] - 55:7
ago [1] - 43:13
agree [24] - 7:21, 8:4, 17:14, 17:21, 20:19, 25:22, 42:1, 42:2, 46:7, 46:8, 49:5, 55:18, 56:14, 57:20, 58:2, 78:3, 80:11, 85:12, 89:18, 101:8, 107:9, 107:25, 109:8, 109:23
agreed [2] - 24:21, 26:16, 41:25, 53:23, 77:25, 83:6, 94:5, 94:13, 94:23, 100:21, 101:11, 101:13
agreeing [2] - 42:20, 46:2
agreement [124] - 3:7, 6:16, 17:8, 18:16, 18:19, 20:7, 22:8, 22:18, 22:20, 26:13, 38:16, 39:2, 39:3, 39:7, 39:10, 39:20, 40:2, 40:4, 40:5, 40:9, 40:13, 40:18, 41:4, 41:9, 41:19, 41:23, 41:24, 42:2, 42:13, 42:14, 42:20, 42:21, 42:23, 43:16, 43:18, 43:19, 43:25,

44:8, 44:15, 45:2, 45:10, 45:17, 45:20, 45:21, 46:10, 46:17, 46:23, 46:24, 47:4, 48:3, 50:19, 50:20, 50:21, 50:23, 51:1, 51:12, 51:20, 51:21, 54:5, 54:11, 54:13, 54:15, 54:25, 56:2, 57:15, 58:19, 60:7, 60:8, 62:3, 75:20, 82:20, 82:22, 83:3, 83:13, 83:15, 84:3, 84:11, 84:19, 84:22, 84:23, 84:24, 85:12, 87:4, 87:23, 88:5, 88:6, 88:19, 88:25, 89:1, 89:3, 89:17, 89:24, 90:1, 90:2, 90:3, 90:4, 90:5, 90:8, 90:9, 91:10, 91:12, 91:13, 92:6, 92:7, 92:17, 92:25, 93:2, 93:7, 94:11, 94:19, 98:15, 98:18, 101:15, 101:17, 101:19, 102:2, 102:17, 102:21, 104:1, 104:10, 105:5, 107:17
Agreement [123] - 6:12, 6:14, 10:20, 17:7, 21:15, 21:23, 24:7, 36:14, 39:12, 39:15, 39:17, 39:19, 39:22, 39:24, 40:7, 40:11, 40:13, 40:19, 40:23, 41:25, 42:16, 43:20, 43:22, 44:1, 44:4, 44:8, 44:23, 44:25, 45:4, 45:6, 45:9, 45:11, 45:14, 46:8, 46:17, 46:25, 47:3, 51:4, 51:9, 51:10, 51:17, 51:24, 52:2, 52:4, 52:5, 52:6, 52:8, 52:12, 52:14, 52:15, 52:18, 52:20, 53:2, 53:4, 53:12, 53:13, 53:17, 53:20, 53:21, 53:24, 54:7, 54:8, 55:2, 55:4, 55:12, 55:14, 56:4, 57:15, 57:16, 57:18, 59:6, 59:13, 59:22, 61:21, 62:1, 81:17, 82:11, 82:13, 82:14, 82:16, 82:17, 82:25, 83:1, 83:5, 83:8, 87:18, 87:20, 89:6, 89:7, 89:22,

90:3, 91:5, 91:6, 92:3, 93:13, 99:16, 99:20, 99:25, 100:1, 100:12, 100:22, 103:17, 104:5, 104:8, 104:18, 105:1, 105:20, 107:13, 108:6, 108:7, 108:8, 108:11, 108:14, 108:16, 109:4, 109:7, 109:8
agreements [20] - 10:20, 10:23, 20:13, 41:10, 41:13, 41:14, 43:15, 45:23, 51:11, 82:19, 87:17, 90:7, 92:19, 95:22, 102:14, 102:15, 102:18, 102:24, 104:13, 106:10
agrees [16] - 19:14, 23:1, 25:15, 25:25, 40:8, 58:18, 84:7, 84:10, 84:25, 85:5, 85:7, 87:3, 87:4, 87:6, 87:16, 89:2
ahead [2] - 83:5, 86:9
alcohol [6] - 9:4, 9:16, 13:24, 14:13, 27:24, 86:17
alcoholic [2] - 15:15, 15:20
alcoholism [1] - 14:3
alleged [1] - 87:12
allow [2] - 76:18, 97:14
allowed [1] - 98:12
almost [3] - 19:24, 30:22, 31:21
alone [2] - 41:13, 41:23
alternative [1] - 102:4
amend [1] - 81:24
Amendment [1] - 85:8
AMERICA [1] - 1:3
America [1] - 83:9
amount [14] - 24:3, 26:1, 26:8, 27:2, 35:3, 35:16, 36:23, 37:15, 38:12, 72:25, 74:1, 75:3, 97:22, 106:24
amounts [2] - 74:8, 81:19
analogous [1] - 99:9
analogy [8] - 99:3, 102:6, 102:12, 103:4, 103:7, 103:8, 103:12

analysis [1] - 47:7
Angeles [1] - 28:8
anonymity [1] - 71:23
answer [4] - 11:12, 11:13, 55:15, 58:8
answered [1] - 40:17
answering [1] - 44:12
answers [2] - 11:14, 38:2
anticipate [4] - 60:1, 76:21, 79:6, 106:20
anyplace [1] - 51:17
apart [1] - 69:7
apologies [1] - 86:9
apologize [1] - 43:11
appeal [2] - 75:22, 76:18
appear [1] - 8:16
appearance [2] - 2:24, 3:11, 4:1, 4:2
Appearance [1] - 1:9
appearances [1] - 10:15
APPEARANCES [2] - 1:16, 2:1
appellant [5] - 25:12, 75:19, 75:20, 76:10, 76:24
applicable [2] - 85:5, 86:12
application [1] - 24:16
applies [1] - 48:16
appointment [1] - 5:12
appreciate [2] - 43:6, 72:9
apprise [1] - 18:1
approach [1] - 97:2
appropriate [14] - 7:5, 8:5, 46:6, 48:16, 60:13, 77:22, 78:4, 102:10, 103:10, 103:12, 105:8, 105:24, 108:2, 108:12
approval [1] - 83:15
approved [1] - 51:5
approximate [1] - 74:1
April [9] - 28:13, 28:19, 29:23, 30:2, 30:15, 31:10, 31:20, 81:15
arbiter [1] - 98:3
areas [1] - 57:21
argument [1] - 104:3
arguments [1] - 49:21
arising [3] - 84:14, 85:6, 85:16
arraigned [1] - 51:6
arrest [1] - 10:9

arriving [1] - 38:7
articulated [1] - 25:4
aside [1] - 38:6
aspects [1] - 108:5
assert [1] - 85:8
assessed [16] - 26:4, 33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:12, 37:14, 37:18, 75:2
assessment [6] - 4:24, 5:6, 23:11, 25:16, 37:4, 78:22
asset [1] - 67:20
assistance [1] - 79:15
assistant [1] - 29:10
associated [5] - 26:4, 29:22, 36:20, 65:16, 80:16
attached [10] - 20:12, 21:18, 23:22, 25:18, 40:10, 40:12, 52:22, 61:21, 89:4, 89:5
attachment [4] - 21:19, 25:20, 26:17
Attachment [11] - 21:19, 22:12, 22:14, 24:6, 25:18, 40:11, 84:18, 85:4, 87:3, 88:17, 89:5
attachments [1] - 19:24
attempt [3] - 2:17, 9:18, 89:11
attempted [1] - 29:8
attempting [1] - 85:20
attempts [1] - 85:24
attend [2] - 71:18, 71:20
attended [1] - 13:3
attending [1] - 71:21
attention [3] - 94:2, 104:9, 108:3
attorney [9] - 5:9, 5:10, 5:12, 22:5, 27:10, 31:11, 69:10, 75:23, 84:13
Attorney [4] - 4:9, 4:15, 20:15, 20:16
Attorney's [3] - 49:13, 83:10, 102:13
ATTORNEY'S [1] - 1:18
attributable [1] - 26:2
atypical [1] - 104:14
authorities [2] - 6:19, 6:20
authority [5] - 41:18, 46:5, 95:6, 101:12,

103:6
authorized [1] - 8:10
automatic [1] - 28:15
available [2] - 30:17, 30:21
averring [1] - 32:20
aware [3] - 46:4, 49:9, 99:18

**B**

B-I-D-E-N [1] - 11:24
Background [1] - 85:23
bad [2] - 84:9, 99:3
balance [4] - 30:23, 33:11, 33:17, 34:13
balances [1] - 31:23
ball [1] - 56:15
bank [3] - 30:20, 68:22, 73:13
bar [3] - 12:14, 22:10, 22:12
bargain [7] - 19:5, 19:6, 19:10, 19:12, 19:13, 46:13, 51:23
bargaining [2] - 41:24, 47:20
barred [2] - 88:18, 93:16
based [20] - 3:23, 3:25, 16:11, 20:7, 23:1, 29:4, 35:20, 36:25, 37:2, 37:3, 38:1, 44:7, 54:20, 54:24, 55:3, 59:18, 60:11, 64:7, 85:1, 108:9
basis [2] - 49:16, 79:8
become [1] - 98:1
BEFORE [1] - 1:13
began [3] - 30:5, 32:3, 32:13
beginning [3] - 13:11, 29:22, 83:14
begun [1] - 17:25
behalf [7] - 2:22, 26:6, 31:22, 35:11, 36:22, 79:17, 110:10
believes [6] - 87:9, 87:20, 92:24, 96:15, 96:25, 102:19
below [1] - 65:5
benefit [1] - 46:12
Benjamin [1] - 2:22
BENJAMIN [1] - 1:19
BERGER [1] - 2:5
best [2] - 13:9, 46:11
better [1] - 73:9
between [19] - 37:7,

44:8, 44:25, 46:10, 57:11, 57:16, 57:19, 71:13, 72:5, 88:20, 90:4, 90:6, 91:7, 91:13, 96:21, 97:12, 100:8, 101:19, 103:1
beverage [2] - 15:15, 15:20
beyond [5] - 61:13, 79:20, 79:22, 80:9, 104:11
Biden [100] - 2:25, 3:3, 3:15, 4:8, 5:8, 5:19, 6:18, 10:7, 11:5, 11:23, 16:12, 27:9, 27:10, 27:21, 27:23, 28:4, 28:10, 28:14, 28:20, 29:3, 29:8, 29:9, 29:12, 29:13, 29:15, 29:16, 29:21, 29:24, 29:25, 30:1, 30:5, 30:7, 30:16, 30:19, 30:22, 31:1, 31:6, 31:10, 31:12, 31:15, 31:17, 31:20, 31:25, 32:1, 32:10, 32:16, 32:18, 32:23, 33:1, 33:6, 33:9, 33:12, 33:14, 33:19, 34:7, 34:10, 34:11, 34:14, 34:18, 34:22, 37:25, 39:2, 40:8, 40:15, 45:4, 63:18, 68:4, 69:10, 73:10, 73:12, 75:20, 81:23, 82:10, 83:11, 83:20, 84:2, 84:7, 84:17, 84:25, 85:12, 85:19, 86:13, 87:2, 87:6, 87:15, 87:24, 88:1, 88:4, 88:9, 88:11, 88:13, 89:3, 89:8, 89:10, 90:5, 90:6, 90:11, 90:16, 108:21, 110:1
BIDEN [2] - 1:6, 11:25
Biden's [17] - 28:7, 29:6, 29:15, 29:20, 30:10, 32:14, 33:4, 33:23, 33:25, 34:4, 34:8, 35:10, 37:23, 74:10, 84:19, 90:12
big [1] - 41:16
bilateral [3] - 44:8, 46:10, 57:16
bind [1] - 38:16
binding [4] - 24:22, 44:25, 89:14, 100:24
binds [1] - 17:18
bit [13] - 10:23, 18:21,

40:2, 45:20, 54:11, 56:10, 56:15, 59:7, 69:23, 82:18, 82:24, 99:12, 106:23
board [2] - 27:12, 62:12
Bohai [1] - 62:16
Boise [6] - 63:3, 63:10, 63:17, 63:22, 66:16, 69:9
bond [1] - 10:10
book [1] - 64:9
bottom [2] - 66:18, 67:2
bought [1] - 91:15
bound [3] - 18:2, 25:22, 79:7
Brady [3] - 7:3, 7:6, 7:12
branch [6] - 95:16, 96:7, 98:8, 101:12, 106:1
Branch [4] - 20:24, 21:9, 21:12, 48:11
breach [26] - 83:17, 87:11, 87:13, 87:15, 87:18, 87:20, 88:4, 88:7, 88:10, 88:11, 88:24, 92:24, 93:3, 93:5, 93:14, 95:24, 96:4, 96:6, 96:16, 96:18, 96:21, 96:25, 97:25, 98:4, 102:19
breached [2] - 91:8, 95:23
Brey [1] - 83:16
brief [3] - 43:8, 57:7, 103:20
briefed [1] - 107:20
briefing [3] - 105:7, 109:22
bring [22] - 19:14, 20:17, 20:23, 41:2, 45:15, 46:23, 53:18, 53:23, 54:25, 55:2, 55:7, 84:8, 91:12, 95:13, 95:15, 96:14, 96:25, 97:25, 98:8, 99:24, 101:12, 103:3
bringing [1] - 91:21
brings [1] - 96:16
broad [5] - 25:12, 46:17, 46:20, 76:9, 83:2
broader [1] - 58:5
broadly [1] - 57:23
brother [1] - 27:23
brought [14] - 19:15, 20:9, 20:14, 21:3, 48:8, 49:2, 49:10,

49:19, 54:20, 85:3, 93:20, 94:12, 98:6, 102:23
Buckson [1] - 11:18
building [1] - 106:23
bunch [1] - 45:23
burden [1] - 80:8
Burisma [2] - 62:16, 66:12, 66:13
business [35] - 27:11, 27:14, 28:4, 28:22, 28:23, 29:2, 29:11, 29:14, 30:11, 31:3, 31:4, 31:6, 32:25, 33:2, 35:20, 64:18, 64:19, 64:20, 64:22, 65:6, 65:12, 65:24, 66:21, 68:15, 69:23, 69:25, 70:23, 73:7, 73:14, 73:17, 73:19, 73:20, 73:24
businesses [4] - 40:15, 64:25, 70:13, 89:9
businessman [1] - 27:10
BY [4] - 1:19, 1:20, 2:3, 2:6

**C**

c)(1)(A [6] - 19:11, 41:8, 41:18, 47:25, 48:3, 51:16
c)(1)(B [4] - 51:25, 107:13, 107:18, 107:24
c)(1)(B) [1] - 51:15
calculated [1] - 77:16
calculating [2] - 53:9, 53:14
calculation [3] - 36:4, 38:2, 79:1
calendar [3] - 28:13, 28:20, 65:10, 81:15, 81:16
California [7] - 32:2, 32:11, 32:13, 32:19, 32:24, 33:4, 34:4
candid [1] - 84:19
cannot [5] - 54:25, 55:2, 96:9, 97:10, 108:8
capable [1] - 16:13
capacity [2] - 27:18, 63:22
car [1] - 31:23
card [1] - 31:23
cards [1] - 73:13
care [1] - 12:23

careful [1] - 108:23
carefully [1] - 22:19
case [34] - 3:7, 5:3, 16:20, 16:24, 18:3, 19:2, 19:9, 19:24, 20:12, 21:22, 23:15, 35:13, 36:3, 43:15, 44:22, 45:21, 45:22, 46:3, 46:18, 54:5, 54:6, 68:18, 69:19, 77:3, 80:7, 80:20, 82:12, 82:23, 83:22, 84:15, 90:19, 92:12, 102:21, 108:12
cases [7] - 3:23, 4:3, 5:20, 10:19, 11:6, 21:21, 91:14
cash [2] - 30:24, 31:22
cast [1] - 20:8
catch [3] - 74:22, 108:3, 110:5
categorizing [1] - 73:23
caveat [2] - 41:15, 41:16
CEFC [2] - 65:17, 66:8
CEO [4] - 28:22, 31:4, 65:12, 69:24
certain [3] - 24:1, 33:1, 73:6, 101:14, 102:16
certainly [5] - 2:16, 106:14, 107:4, 107:21, 107:23
certify [1] - 110:15
chain [1] - 70:16
chairman [1] - 65:20
challenge [9] - 23:1, 60:11, 60:13, 60:17, 76:15, 77:7, 81:24, 99:19, 100:4
challenges [1] - 90:24
chance [2] - 77:6, 109:13
change [4] - 6:22, 8:14, 47:6, 67:23
changed [1] - 67:18
characterization [2] - 67:13, 68:5
charge [37] - 3:11, 3:12, 3:24, 4:22, 6:12, 19:5, 19:6, 19:10, 19:12, 23:4, 36:16, 41:2, 41:23, 43:4, 47:20, 52:20, 54:23, 55:7, 80:10, 82:18, 84:8, 84:9, 85:15, 89:23, 90:19, 91:16, 91:22, 91:23, 92:2, 94:18, 95:13,

97:25, 98:4, 98:10, 99:24
charged [4] - 5:23, 21:9, 91:18, 93:14
charges [73] - 4:1, 4:10, 4:16, 4:19, 6:4, 6:8, 7:9, 11:4, 16:15, 16:20, 19:14, 19:15, 20:9, 20:14, 20:17, 20:23, 21:3, 41:3, 41:4, 42:3, 42:17, 45:15, 45:16, 45:17, 46:3, 46:24, 48:1, 48:8, 48:23, 49:1, 49:2, 49:10, 49:11, 49:19, 49:22, 50:4, 53:19, 53:22, 53:23, 53:25, 54:5, 54:20, 54:25, 55:3, 58:20, 58:21, 58:22, 60:14, 79:23, 83:22, 85:2, 85:3, 85:6, 85:16, 90:16, 91:12, 94:12, 94:17, 95:12, 95:15, 95:21, 96:8, 96:10, 96:15, 96:25, 98:9, 101:12, 102:22, 103:3, 104:25, 109:8
charging [2] - 2:25, 3:4
charts [1] - 73:15
Check [1] - 85:23
chief [2] - 46:7, 83:15
children [1] - 31:22
Chinese [13] - 27:13, 28:22, 28:24, 31:4, 62:13, 62:16, 62:20, 65:12, 65:13, 65:17, 66:3, 69:24, 70:12
choice [2] - 5:11, 95:14
choose [1] - 20:4
CHRISTOPHER [1] - 2:3
Circuit [2] - 90:19, 97:8
circuit [2] - 47:24, 107:20
circuits [1] - 107:21
circumstances [3] - 19:9, 95:10, 100:7
claim [1] - 88:2
claims [1] - 84:13
clarified [1] - 70:4
clarify [3] - 9:8, 43:14, 57:11
Clark [13] - 3:15, 5:16, 7:15, 7:22, 16:20, 17:14, 49:5, 82:5, 90:14, 95:22, 101:6,

105:16, 108:9
CLARK [91] - 2:3, 2:3, 3:16, 3:21, 4:5, 6:16, 7:16, 7:23, 8:1, 10:4, 10:18, 13:17, 14:18, 16:8, 17:15, 17:21, 20:19, 21:1, 21:8, 36:2, 36:10, 37:2, 37:21, 39:11, 39:16, 42:5, 43:1, 43:6, 43:11, 43:24, 44:7, 44:18, 44:21, 49:8, 50:24, 54:1, 55:14, 55:17, 56:3, 56:12, 56:20, 57:1, 57:5, 57:10, 58:1, 58:6, 58:24, 63:15, 67:14, 67:17, 68:5, 68:9, 69:9, 70:8, 70:14, 72:5, 73:9, 74:3, 74:21, 82:8, 90:15, 90:21, 91:9, 92:4, 92:9, 93:8, 93:18, 95:18, 95:25, 96:2, 96:11, 97:2, 97:5, 97:11, 97:20, 98:20, 99:2, 99:17, 100:6, 100:13, 100:16, 100:23, 101:18, 101:24, 103:14, 106:4, 107:1, 108:15, 108:20, 109:21, 110:11
clause [2] - 100:18
clear [10] - 13:17, 15:18, 15:23, 17:14, 17:16, 37:21, 40:16, 44:23, 48:9, 95:19
CLERK [3] - 11:20, 43:7, 57:6
client [6] - 42:5, 43:17, 44:21, 45:1, 49:22, 108:13
client's [2] - 16:7, 49:15
clients [1] - 28:5
clock [3] - 56:8, 56:13, 109:18
close [2] - 13:12, 73:10
cocaine [1] - 27:25
Code [8] - 4:13, 4:18, 8:10, 9:6, 23:5, 77:11, 83:25, 90:17
collapse [3] - 27:25, 28:2, 64:15
collapsed [3] - 64:23, 65:1, 65:3
collection [1] - 8:9
Columbia [1] - 12:17

combined [3] - 24:3, 35:6, 35:8
comfortable [2] - 58:4, 58:9
coming [1] - 104:14
commencement [1] - 88:21
commented [1] - 29:13
comments [1] - 10:3
commit [2] - 86:25, 103:21
commitments [1] - 85:19
committed [2] - 5:23, 88:4
common [1] - 61:23
communicate [2] - 8:24, 86:22
companies [6] - 55:6, 62:14, 62:20, 65:4, 66:5
company [23] - 27:12, 28:22, 28:25, 29:1, 31:3, 31:5, 62:12, 62:15, 62:21, 64:22, 65:4, 65:11, 65:13, 65:15, 65:17, 65:20, 65:21, 66:4, 66:10, 69:24, 69:25, 70:12
compensation [1] - 27:15
competence [1] - 16:7
competent [1] - 16:12
complete [2] - 15:1, 90:5
completed [2] - 15:3, 15:5
completely [3] - 42:15, 71:14, 90:25
completion [1] - 15:2
complies [1] - 84:2
comport [1] - 26:23
compressed [1] - 73:11
compromise [1] - 49:20
concede [1] - 73:22
concept [1] - 93:19
conception [1] - 50:25
concern [6] - 68:2, 91:21, 96:13, 98:21, 105:4
concerned [6] - 50:17, 51:19, 56:4, 94:4, 95:11, 104:24
concerning [1] - 99:14
concerns [11] - 7:15, 7:22, 16:9, 44:3, 82:6, 90:18, 92:6,

98:13, 98:14, 98:17, 100:3
concur [1] - 21:1
conditions [13] - 7:20, 8:6, 8:20, 9:25, 10:3, 10:8, 76:18, 78:15, 83:12, 84:24, 86:11, 89:16, 90:8
conduct [18] - 3:10, 4:2, 24:5, 24:8, 24:11, 35:4, 35:15, 40:15, 52:10, 53:9, 53:14, 84:1, 85:3, 88:16, 89:8, 89:18, 89:20, 89:22
confer [1] - 12:2
conference [1] - 109:15
confident [2] - 76:5, 76:7
confidential [1] - 97:4
confirm [1] - 7:2
confused [2] - 59:8, 70:6
confusing [2] - 99:13, 99:14
conglomerate [4] - 28:23, 31:4, 65:12, 69:25
Connecticut [1] - 12:18
connection [6] - 21:22, 32:25, 39:19, 40:18, 43:19, 45:10
consent [2] - 85:22, 102:3
consented [1] - 89:16
consequences [1] - 7:5
conservative [1] - 71:12
consider [4] - 19:18, 77:15, 77:20, 98:3
consideration [4] - 11:2, 84:19, 84:21, 101:2
considered [2] - 53:8, 53:13
consistent [1] - 92:15
constitute [3] - 24:8, 87:18, 89:19
constitutes [4] - 87:11, 89:25, 90:1, 90:5
constitution [2] - 99:16, 99:18
constitutional [2] - 91:11, 95:17
constitutionality [4] - 90:18, 91:23, 98:13,

98:15
consulting [2] - 31:3, 69:23
contacting [1] - 29:9
contain [1] - 104:13
contained [4] - 19:10, 23:21, 39:10, 39:15
contains [5] - 16:15, 24:1, 25:12, 75:20, 83:1
contemplate [1] - 107:16
contemplated [3] - 36:15, 93:11, 101:15
contemplates [1] - 103:1
contempt [2] - 7:7, 10:11
context [2] - 49:12, 104:8
contingency [1] - 43:18
continue [6] - 5:16, 8:23, 15:6, 25:21, 86:14, 98:10
CONTINUED [1] - 2:1
continued [3] - 28:10, 31:1, 31:17
continuing [2] - 7:2, 29:23
contract [7] - 54:2, 57:16, 91:7, 100:8, 100:17, 101:5, 102:10
contracts [3] - 27:14, 55:19, 102:25
contractual [2] - 100:7, 100:9
contractually [1] - 53:22
contradicting [1] - 87:8
contrary [1] - 87:10
contrast [1] - 70:21
contributed [1] - 27:25
control [1] - 28:11
controlled [5] - 4:12, 9:5, 71:6, 83:24, 86:16
convicted [1] - 8:17
conviction [2] - 76:11, 76:15
convince [1] - 97:16
convinced [2] - 98:23, 104:20
cooperate [1] - 8:9
copies [3] - 29:10, 66:20
copy [4] - 16:16, 40:3,

40:4, 82:25
corners [1] - 42:22
corporate [10] - 28:11, 29:5, 29:6, 29:17, 29:20, 30:18, 32:8, 32:12, 33:7, 72:15
corporations [1] - 27:16
correct [9] - 11:6, 15:21, 15:25, 17:19, 42:6, 57:13, 72:11, 93:7, 103:12
corrected [1] - 74:17
corrections [1] - 90:14
correctly [1] - 94:11
cost [1] - 23:12
costs [1] - 5:6
Counsel [2] - 1:21, 2:7
counsel [19] - 6:12, 7:8, 12:3, 16:6, 16:23, 17:8, 22:8, 27:18, 57:13, 60:20, 62:24, 63:5, 69:13, 76:1, 78:25, 79:15, 89:10, 89:12, 90:12
counseling [1] - 9:23
count [5] - 23:12, 35:7, 61:12, 71:17, 83:22
counterparts [1] - 89:25
country [1] - 102:14
Counts [9] - 5:2, 23:3, 23:7, 23:24, 24:3, 26:14, 35:4, 61:1, 61:11
counts [3] - 3:4, 4:16, 61:5
couple [3] - 26:25, 63:16, 70:17
course [3] - 13:13, 30:4, 106:13
COURT [311] - 1:1, 2:12, 3:8, 3:13, 3:17, 3:22, 4:6, 4:8, 4:21, 5:1, 5:8, 5:15, 5:19, 6:3, 6:7, 6:11, 6:18, 7:1, 7:12, 7:15, 7:17, 7:22, 7:24, 8:2, 10:2, 10:7, 10:14, 10:19, 11:8, 11:18, 11:20, 12:1, 12:6, 12:9, 12:11, 12:14, 12:16, 12:19, 12:22, 12:25, 13:5, 13:8, 13:14, 13:19, 14:1, 14:5, 14:9, 14:11, 14:15, 14:19, 14:21, 14:25, 15:5, 15:9, 15:13, 15:18, 15:23, 16:3,

16:6, 16:9, 16:11, 16:19, 16:22, 17:1, 17:6, 17:13, 17:16, 17:22, 18:4, 18:6, 18:9, 18:13, 18:20, 19:12, 19:17, 19:22, 20:22, 21:2, 21:13, 21:17, 22:1, 22:3, 22:7, 22:10, 22:15, 26:25, 35:1, 35:9, 35:24, 36:1, 36:8, 36:13, 36:18, 37:10, 38:9, 38:19, 38:24, 39:6, 39:9, 39:13, 39:18, 39:22, 40:1, 40:21, 40:25, 41:6, 41:16, 42:1, 42:7, 42:14, 42:24, 43:2, 43:7, 43:9, 43:21, 44:1, 44:12, 44:20, 45:3, 45:8, 45:13, 45:19, 46:5, 46:15, 46:21, 47:2, 47:6, 47:10, 47:14, 47:17, 47:21, 48:2, 48:7, 48:13, 48:18, 49:3, 49:5, 50:3, 50:9, 50:12, 50:16, 51:8, 52:3, 52:7, 52:11, 52:14, 52:17, 52:25, 54:4, 54:10, 54:17, 55:5, 55:10, 55:15, 55:19, 55:23, 56:7, 56:14, 56:21, 57:4, 57:6, 57:8, 57:25, 58:3, 58:8, 58:13, 58:18, 58:25, 59:15, 59:21, 60:3, 60:6, 60:10, 60:16, 60:19, 60:22, 60:25, 61:7, 61:10, 61:20, 62:8, 62:18, 63:5, 63:8, 63:13, 63:18, 63:23, 64:1, 64:13, 64:25, 65:6, 65:9, 65:18, 65:21, 65:23, 66:3, 66:7, 66:9, 66:13, 66:16, 66:18, 66:25, 67:6, 67:8, 67:11, 67:16, 68:2, 68:7, 68:10, 68:12, 68:15, 68:19, 68:25, 69:4, 69:6, 69:11, 69:14, 69:18, 69:21, 70:6, 70:10, 71:1, 71:5, 71:11, 71:16, 71:20, 71:24, 72:7, 72:9, 72:13, 72:18, 72:21, 72:23, 73:4, 74:1, 74:15, 74:23, 75:1, 75:6, 75:13, 75:15,

75:18, 75:25, 76:3, 76:9, 76:14, 76:17, 76:23, 77:10, 78:6, 78:11, 78:20, 78:25, 79:4, 79:10, 79:19, 80:1, 80:7, 80:13, 80:18, 80:24, 81:2, 81:23, 82:2, 82:5, 82:9, 86:5, 90:13, 90:16, 90:25, 91:14, 91:25, 92:5, 92:11, 93:10, 94:2, 94:10, 94:16, 94:21, 94:25, 95:3, 95:6, 95:11, 95:21, 96:1, 96:3, 96:23, 97:4, 97:6, 97:14, 98:5, 98:21, 99:12, 99:22, 100:11, 100:15, 100:20, 100:25, 101:22, 103:4, 103:24, 106:8, 107:4, 107:9, 107:23, 108:18, 108:21, 109:11, 109:24, 110:8, 110:12
court [9] - 5:12, 8:12, 8:16, 10:11, 32:16, 77:2, 91:3, 97:8, 109:2
Court [50] - 1:14, 2:23, 8:18, 10:21, 18:15, 19:5, 19:6, 19:10, 23:2, 24:23, 24:24, 25:8, 25:10, 25:13, 26:3, 43:16, 47:25, 49:25, 50:18, 51:2, 51:3, 60:13, 77:5, 83:2, 83:3, 84:5, 85:14, 93:21, 93:25, 95:7, 96:10, 97:24, 98:11, 99:4, 101:14, 102:8, 102:9, 107:3, 107:14, 107:15, 107:17, 107:18, 108:11, 109:21, 110:13, 110:17, 110:18
Court's [6] - 2:18, 18:18, 19:4, 19:8, 107:7, 107:19
courts [1] - 47:23
cover [3] - 22:13, 33:23, 33:25
covers [1] - 93:13
crack [1] - 27:25
crafted [1] - 95:9
created [1] - 30:7
creative [1] - 104:16

credit [4] - 31:23, 37:1, 73:13, 73:19
crime [1] - 93:5
crimes [8] - 5:23, 40:10, 45:22, 46:2, 46:18, 57:22, 88:15, 89:4
Criminal [8] - 3:25, 4:8, 4:14, 11:3, 17:11, 36:15, 85:9, 85:23
CRIMINAL [2] - 1:4, 1:6
criminal [7] - 2:24, 3:2, 3:23, 38:15, 88:14, 94:17, 95:12
criminally [2] - 40:8, 89:2
criticizing [1] - 104:14
cross [4] - 5:25, 79:17, 82:12, 82:13
cross-examine [1] - 5:25
cross-examined [1] - 79:17
cross-referenced [2] - 82:12, 82:13
current [3] - 32:1, 77:14, 84:21
curve [1] - 56:15

D

Dale [1] - 110:17
date [14] - 28:16, 28:19, 30:16, 31:10, 31:13, 32:9, 56:1, 56:9, 71:10, 71:13, 71:17, 72:3, 83:14, 88:19
days [7] - 32:23, 56:12, 56:17, 84:4, 106:12, 106:25, 109:20
DC [2] - 29:3, 31:11
deadline [2] - 28:18, 73:2
deal [4] - 22:21, 41:11, 55:22, 104:16
death [1] - 27:23
debauchery [1] - 28:9
decide [2] - 82:16, 104:17
decided [4] - 80:3, 96:14, 96:19
decides [2] - 99:23, 99:24
decision [7] - 20:22, 38:17, 49:7, 92:14, 95:13, 96:9, 108:11

decisions [3] - 21:10, 81:20, 81:21
decline [1] - 80:2
declines [1] - 101:14
decrease [2] - 24:13, 25:1
deductions [3] - 35:21, 36:25, 38:4
deemed [1] - 102:21
defend [1] - 25:7
DEFENDANT [144] - 4:20, 4:25, 5:7, 5:14, 5:18, 6:2, 6:6, 6:10, 6:25, 10:1, 10:13, 11:7, 11:17, 11:23, 12:5, 12:7, 12:10, 12:13, 12:15, 12:17, 12:21, 12:24, 13:3, 13:7, 13:11, 13:15, 13:24, 14:4, 14:8, 14:10, 14:14, 14:17, 14:20, 14:23, 15:3, 15:8, 15:12, 15:17, 15:22, 16:1, 16:5, 16:18, 16:21, 16:25, 17:5, 21:16, 21:25, 22:2, 22:6, 22:9, 39:5, 39:8, 39:21, 39:25, 40:20, 40:24, 41:5, 45:7, 45:12, 45:18, 59:14, 59:20, 60:2, 60:5, 60:9, 60:15, 60:18, 60:21, 60:24, 61:6, 61:9, 61:19, 62:7, 62:15, 63:2, 63:7, 63:12, 63:19, 63:24, 64:8, 64:18, 65:3, 65:8, 65:15, 65:19, 65:22, 66:1, 66:6, 66:12, 66:15, 66:17, 66:23, 67:5, 67:7, 67:10, 67:12, 68:14, 68:17, 68:24, 69:2, 69:5, 69:8, 69:13, 69:16, 69:19, 70:5, 71:4, 71:9, 71:12, 71:17, 71:22, 72:1, 72:8, 72:12, 72:17, 72:20, 72:22, 72:24, 74:25, 75:11, 75:14, 75:16, 75:24, 76:2, 76:7, 76:13, 76:16, 76:22, 77:9, 78:5, 78:10, 78:19, 78:24, 79:3, 79:9, 79:18, 79:25, 80:6, 80:12, 80:17, 82:1, 82:4, 109:10, 110:7
Defendant [47] - 1:7,

2:7, 3:1, 3:4, 8:7, 8:9, 8:12, 8:16, 11:19, 18:2, 19:13, 20:3, 22:25, 23:6, 23:16, 23:19, 23:23, 24:11, 25:11, 25:14, 25:15, 25:25, 26:6, 26:7, 27:9, 36:22, 38:13, 43:5, 43:16, 44:9, 46:14, 48:24, 51:6, 53:19, 59:5, 61:14, 76:24, 81:4, 81:5, 91:17, 93:4, 97:23, 98:17, 99:7, 104:23, 107:14
defendant [4] - 92:14, 102:15, 102:16
Defendant's [3] - 4:1, 24:15, 43:13
defense [2] - 10:4, 58:18
defenses [1] - 85:1
defer [4] - 18:16, 18:19, 104:18, 108:10
deferred [1] - 50:25
defined [3] - 9:6, 35:4, 85:21
DELAWARE [2] - 1:2, 1:18
Delaware [10] - 1:12, 4:9, 4:15, 9:1, 23:3, 83:10, 85:10, 85:14, 87:22, 93:1
deliberation [1] - 101:2
delivered [1] - 34:7
denied [1] - 85:24
Department [1] - 54:2
departure [1] - 77:18
deputy [1] - 110:2
Derek [1] - 2:22
DEREK [1] - 1:19
derived [1] - 37:16
described [3] - 28:8, 55:1, 63:16
describes [2] - 23:6, 23:14, 81:18, 83:12, 86:21
desire [1] - 97:21
despite [4] - 28:3, 29:15, 30:14, 81:18
destructive [1] - 9:3
detail [2] - 25:11, 25:14
detention [1] - 10:10
determination [15] - 11:2, 48:21, 87:12, 87:21, 87:24, 88:3, 88:24, 91:8, 92:25,

93:21, 96:8, 96:17, 96:22, 102:20, 108:13
determinations [1] - 24:25
determine [10] - 17:25, 26:10, 36:24, 77:22, 93:25, 98:4, 102:9, 102:11, 105:8, 105:13
determined [3] - 24:14, 75:4, 101:25
determines [1] - 88:10
determining [1] - 91:11
deterrents [1] - 77:13
developing [1] - 32:2
device [1] - 9:3
died [1] - 29:5
differ [1] - 24:25
different [12] - 10:24, 18:10, 18:13, 20:17, 32:5, 41:1, 46:18, 48:1, 53:7, 65:13, 76:20
diligence [1] - 49:18
direct [1] - 20:15
directed [4] - 8:17, 9:23, 86:13, 86:18
direction [1] - 87:7
directly [1] - 29:9
director's [1] - 28:25, 66:9
disagree [3] - 49:9, 76:11, 82:2
disciplinary [1] - 7:8
disclosure [1] - 89:17
discovered [1] - 34:4
discretion [8] - 21:10, 21:11, 91:20, 96:24, 97:25, 98:8, 98:9, 99:8
discuss [5] - 22:4, 40:2, 56:6, 60:19, 97:2
discussed [10] - 16:19, 38:1, 57:22, 59:11, 75:3, 75:22, 78:25, 82:11, 92:20, 97:12
discussing [1] - 109:9
discussion [8] - 22:12, 22:14, 57:11, 62:2, 74:3, 91:22, 97:15, 97:19
discussions [2] - 64:7, 97:11
dismiss [2] - 53:21, 84:11
dismissal [2] - 7:9,

84:6
disposition [4] - 49:16, 49:23, 90:22, 103:23
dispute [11] - 35:20, 36:5, 37:17, 37:21, 70:16, 74:4, 96:21, 100:8, 100:10, 102:4, 102:11
disrupt [1] - 2:17
disruption [1] - 2:17
disruptions [1] - 2:17
distinction [1] - 72:5
DISTRICT [3] - 1:1, 1:2, 1:18
district [5] - 8:23, 9:2, 12:17, 21:21, 86:20
District [17] - 1:14, 4:9, 4:15, 9:1, 23:2, 23:3, 25:7, 83:10, 85:10, 85:13, 85:14, 87:22, 88:1, 93:1, 110:18
diversion [12] - 45:23, 51:4, 82:19, 82:20, 83:19, 84:4, 85:7, 85:22, 86:12, 92:15, 93:23, 99:18
Diversion [67] - 6:12, 6:14, 10:20, 24:7, 36:14, 39:12, 39:17, 39:19, 39:22, 40:7, 40:11, 41:25, 42:16, 43:20, 43:22, 44:1, 44:3, 44:8, 44:23, 44:24, 45:4, 45:9, 45:14, 46:8, 46:16, 51:4, 51:8, 51:9, 51:17, 52:4, 52:8, 52:14, 52:18, 52:20, 53:4, 53:11, 53:12, 53:17, 53:20, 53:24, 55:4, 57:14, 57:16, 57:18, 59:6, 82:11, 82:14, 82:17, 82:25, 83:5, 83:8, 91:4, 91:6, 92:3, 93:13, 99:16, 99:19, 99:25, 100:1, 100:12, 100:22, 103:17, 104:5, 105:20, 108:5
divert [1] - 84:22
diverted [1] - 46:3
divorce [1] - 28:1
divorced [1] - 38:15
DNA [1] - 8:10
document [2] - 21:20, 21:21
documentation [2] - 9:1, 86:24

documented [4] - 27:21, 64:2, 64:5, 64:7
documents [3] - 10:25, 66:20, 66:21
doggedness [1] - 49:18
dollar [1] - 68:21
dollars [4] - 27:15, 28:6, 65:11, 74:12
domestic [7] - 27:11, 27:16, 28:23, 32:5, 32:15, 65:24, 70:12
domestic-relations [1] - 32:5
done [6] - 9:14, 64:12, 73:13, 74:23, 86:21, 102:6
door [1] - 86:8
doubt [6] - 16:6, 20:8, 61:13, 79:20, 79:22, 80:9
down [6] - 3:18, 18:22, 46:22, 50:16, 54:12, 102:16
downstairs [1] - 110:4
downwards [1] - 77:23
drafted [1] - 94:12
drag [1] - 97:22
draws [1] - 72:5
drink [1] - 71:15
drop [2] - 19:14, 46:24
drug [13] - 9:5, 14:7, 14:13, 15:14, 15:19, 41:2, 45:15, 57:24, 58:15, 58:21, 84:20, 91:3
drugs [5] - 13:2, 13:6, 14:4, 15:6, 27:24
Due [1] - 7:1
due [26] - 11:2, 26:4, 26:11, 28:12, 28:15, 28:18, 30:15, 31:9, 31:15, 31:17, 32:9, 33:10, 33:11, 33:14, 33:17, 33:20, 34:7, 34:12, 34:13, 34:20, 34:23, 36:19, 72:16, 72:18, 81:15, 101:1
duly [1] - 11:25
during [16] - 13:16, 28:9, 28:20, 31:20, 32:4, 33:1, 64:23, 65:10, 67:22, 73:5, 74:9, 79:14, 85:7, 85:21, 88:11
duty [4] - 23:16, 61:14, 81:5, 81:11

**E**

eager [1] - 106:5
early [3] - 27:17,
  32:14, 62:10
earn [2] - 28:10, 31:1
earned [6] - 27:19,
  28:20, 63:9, 65:10,
  81:5, 81:9
earning [1] - 28:5
effect [1] - 91:7
efficiency [1] - 9:18
efficient [1] - 4:6
efforts [2] - 29:9, 64:4
either [9] - 18:15,
  24:22, 32:7, 67:21,
  77:23, 91:8, 93:4,
  100:17, 109:14
elaborate [2] - 67:14,
  102:25
elect [2] - 88:5, 88:12
element [1] - 81:4
elements [5] - 23:14,
  23:20, 61:11, 80:10,
  80:25
emails [2] - 29:12,
  31:10
employed [2] - 27:17,
  62:23
employment [2] -
  8:24, 86:15
encompassed [4] -
  40:10, 53:19, 53:23,
  89:4
encompasses [1] -
  46:18
encouraged [1] -
  29:21
end [9] - 22:14, 30:9,
  30:13, 37:7, 62:9,
  67:1, 67:3, 67:19,
  73:4
ended [1] - 74:19
energy [8] - 27:12,
  29:1, 31:5, 62:12,
  62:15, 65:17, 66:10,
  69:25
enforceable [5] -
  40:22, 44:13, 44:15,
  45:5, 55:20
enforcement [2] -
  101:17, 102:23
enforcing [1] - 54:2
engaged [2] - 32:10,
  69:10
English [1] - 12:20
enormous [1] - 72:25
ensure [1] - 30:7
ensuring [1] - 104:24
enter [12] - 11:6,

39:23, 41:3, 43:17,
  43:23, 44:10, 44:16,
  45:2, 45:5, 45:16,
  59:5, 59:12
entered [1] - 28:4
entering [3] - 39:7,
  60:16, 80:14
entertainment [1] -
  30:25
entice [1] - 59:12
entire [2] - 31:21, 86:2
entirety [3] - 30:23,
  74:5, 80:22
entity [1] - 69:17
entry [3] - 3:1, 26:1,
  85:22
equity [3] - 27:13,
  62:13, 62:16
Eric [1] - 65:8
erroneous [1] - 73:23
erroneously [1] -
  74:11
error [1] - 73:16
errors [2] - 74:10,
  74:13
escorting [1] - 2:19
ESQ [5] - 1:19, 1:19,
  1:20, 2:3, 2:6
essence [1] - 73:11
essential [6] - 22:18,
  23:14, 61:2, 61:11,
  80:10, 80:25
essentially [5] - 31:7,
  38:15, 38:17, 67:17,
  97:9
establish [1] - 79:22
established [1] - 30:6
estimated [1] - 34:20
evaluating [1] - 47:7
evasion [4] - 36:8,
  41:2, 45:15, 54:25
event [1] - 102:18
evidence [8] - 5:22,
  5:25, 7:4, 7:9, 80:3,
  80:4, 87:25, 88:2
exactly [3] - 19:16,
  63:19, 68:6
examine [2] - 5:25,
  101:16
examined [1] - 79:17
example [1] - 55:6
exception [2] - 39:11,
  39:13
exclude [5] - 56:9,
  56:17, 56:21,
  109:18, 109:22
exclusion [1] - 7:8
exculpatory [1] - 7:4
excuse [1] - 16:2
executed [3] - 3:6,

27:14, 89:24
executive [4] - 95:16,
  96:7, 98:8, 101:12
Executive [4] - 20:24,
  21:9, 21:12, 48:11
exercise [2] - 28:11,
  101:1
Exhibit [10] - 21:18,
  23:22, 26:17, 27:5,
  27:6, 35:9, 40:12,
  61:22, 62:9, 89:6
exhibit [2] - 69:22,
  70:11
exhibits [1] - 19:25
exist [3] - 44:2, 44:16,
  44:22
existence [1] - 65:21
expected [4] - 26:3,
  38:10, 38:19
expense [2] - 73:14,
  73:15
expenses [14] - 30:23,
  31:21, 32:25, 33:2,
  70:23, 73:7, 73:17,
  73:18, 73:20, 73:24,
  84:14
experience [1] - 61:23
expiration [1] - 84:4
explain [4] - 43:13,
  73:10, 77:18, 97:9
explanation [1] - 36:6
expressions [1] -
  67:23
expressly [1] - 25:18
extend [1] - 28:17
extended [1] - 106:6
extension [9] - 28:15,
  28:17, 31:12, 31:14,
  32:9, 34:18, 34:21,
  81:14
extensive [1] - 49:24
extent [5] - 25:21,
  54:11, 54:13, 78:7,
  107:19

**F**

face [1] - 32:17
faced [1] - 59:4
facilities [1] - 13:4
facility [1] - 13:23
fact [13] - 23:24, 30:4,
  30:16, 58:12, 60:4,
  62:2, 69:20, 82:21,
  84:16, 85:4, 87:9,
  99:8, 106:12
factors [6] - 18:24,
  19:2, 19:19, 77:20,
  77:21
facts [29] - 20:11,

23:22, 24:6, 27:4,
  37:17, 37:22, 40:10,
  40:12, 52:22, 54:20,
  55:6, 57:22, 58:12,
  61:21, 61:25, 62:3,
  73:11, 77:7, 81:17,
  84:18, 85:17, 87:3,
  88:16, 89:5, 89:19,
  95:10, 95:20
factual [15] - 24:24,
  53:20, 53:23, 53:24,
  55:1, 55:3, 80:22,
  81:6, 81:8, 82:3,
  93:21, 96:20, 96:22,
  99:6
failed [3] - 32:16,
  79:21, 88:11
failure [3] - 3:5, 4:17,
  21:3, 23:4, 23:18,
  36:3, 61:16, 81:16,
  87:16
fair [1] - 102:8
faith [1] - 84:9
fall [5] - 14:17, 14:21,
  15:10, 29:7, 32:4
Fall [1] - 28:3
falls [2] - 93:6, 104:19
false [6] - 11:14,
  91:16, 91:17, 91:22,
  92:2, 102:22
far [3] - 12:9, 51:4,
  56:4
FBI [1] - 86:20
February [2] - 33:6,
  34:3
federal [12] - 8:7, 9:8,
  28:12, 40:9, 57:22,
  77:2, 85:2, 85:15,
  86:25, 88:14, 89:4,
  94:18
Federal [2] - 17:11,
  85:9
fees [9] - 28:25, 30:20,
  31:3, 66:9, 68:23,
  69:23, 70:22, 70:24,
  84:14
felony [8] - 3:24, 4:10,
  36:15, 41:2, 45:15,
  82:12, 82:18, 91:16
few [4] - 35:2, 42:25,
  48:4, 106:11
fifty [1] - 12:7
fifty-three [1] - 12:7
figure [7] - 37:11,
  48:15, 50:1, 55:10,
  56:13, 56:24, 81:2
file [9] - 28:15, 28:17,
  31:14, 32:7, 72:14,
  72:15, 72:23, 84:5
filed [20] - 2:24, 3:2,

4:10, 4:15, 21:21,
  21:22, 24:7, 25:19,
  31:15, 33:6, 34:5,
  34:8, 34:10, 34:19,
  40:13, 49:25, 83:21,
  89:6, 89:18
filer [1] - 37:5
filers [1] - 20:8
files [1] - 25:20
filing [7] - 26:4, 28:19,
  29:14, 33:18, 34:21,
  36:20, 74:19
filings [2] - 31:9, 74:5
final [7] - 21:23, 29:15,
  42:20, 66:19, 69:21,
  88:3, 90:5
finalized [1] - 28:1
finally [5] - 26:15,
  34:18, 77:20, 81:16,
  88:22
finances [1] - 28:11
financial [1] - 81:19
fine [9] - 3:18, 4:23,
  5:3, 10:12, 23:9,
  56:20, 78:21, 101:6,
  107:1
fingerprint [1] - 86:21
fingerprinting [1] -
  86:20
finished [1] - 22:20
firearm [11] - 3:1,
  3:11, 4:11, 9:3,
  53:13, 55:3, 58:23,
  83:23, 85:2, 85:25,
  93:15
firearms [1] - 53:8,
  55:2, 58:16, 58:22,
  85:6, 85:16, 85:20,
  89:22, 93:13
firm [12] - 27:18, 29:2,
  62:23, 64:17, 64:20,
  66:14, 69:1, 69:7,
  69:13, 69:14, 69:17,
  70:3
first [23] - 3:10, 4:1,
  11:10, 17:7, 46:1,
  49:18, 60:8, 62:8,
  62:11, 66:19, 70:10,
  70:19, 71:1, 77:14,
  81:4, 81:9, 83:7,
  87:15, 93:22, 94:2,
  99:18, 104:19, 106:9
five [2] - 49:14, 49:17
five-year [1] - 49:17
fix [1] - 105:21
flood [1] - 72:25
fly [1] - 103:8
follow [2] - 77:14,
  107:15
followed [2] - 32:23,

78:12

following [4] - 8:6, 8:19, 27:22, 56:19
FOR [1] - 1:2
force [1] - 53:17
forced [1] - 39:6
foregoing [1] - 110:15
foreign [1] - 55:6
Foreign [1] - 55:7
forfeited [1] - 86:3
forfeiture [1] - 10:10
forget [1] - 48:7
forgot [1] - 86:6
form [4] - 9:16, 21:4, 104:3, 105:5
Form [8] - 33:9, 33:12, 33:14, 33:18, 34:5, 34:9, 34:10, 34:19
formed [4] - 28:22, 31:3, 65:12, 69:24
former [4] - 29:11, 29:14, 66:21
forth [13] - 24:6, 83:17, 84:23, 84:24, 85:4, 85:15, 85:16, 87:13, 87:17, 88:16, 89:19, 90:3, 90:10
forward [7] - 47:15, 48:25, 51:7, 96:4, 96:5, 105:24, 109:12
four [4] - 21:18, 42:22, 67:1, 83:14
fourteen [1] - 106:25
fourth [1] - 65:9
frame [2] - 73:11, 75:17
framework [1] - 102:13
freak [1] - 86:8
free [1] - 60:4
frequency [1] - 9:15
Friday [1] - 56:18
frivolous [1] - 84:9
front [6] - 21:15, 51:13, 51:24, 60:8, 62:5, 105:14
full [4] - 11:21, 26:1, 68:20, 71:1
fully [6] - 16:19, 16:22, 21:9, 34:16, 34:25, 87:16
function [2] - 53:4, 53:5
functionality [1] - 93:19
fund [3] - 27:13, 62:13, 62:16
funds [2] - 30:5, 30:17
funny [1] - 104:3
future [4] - 40:14,

53:18, 84:10, 90:9

## G

gain [2] - 5:4, 23:9
gatekeeper [2] - 95:12, 108:4
gathering [1] - 32:13
General [1] - 20:16
general [3] - 16:20, 57:23, 89:16
generally [2] - 51:1, 97:12
generate [1] - 81:19
generated [1] - 70:22
gentleman [1] - 65:8
given [9] - 38:22, 48:10, 62:2, 78:8, 78:13, 80:15, 83:4, 83:6, 105:12
glasses [2] - 86:6, 86:7
governed [2] - 18:17, 102:25
government [57] - 5:21, 7:2, 7:10, 16:9, 17:3, 19:14, 20:3, 21:5, 22:22, 23:15, 25:19, 39:4, 39:17, 41:1, 41:2, 44:9, 45:14, 45:15, 55:7, 55:17, 55:18, 56:6, 57:20, 58:1, 61:11, 61:13, 61:17, 63:20, 64:8, 74:6, 77:6, 77:25, 79:21, 80:19, 91:1, 91:21, 93:4, 94:1, 96:7, 96:9, 96:14, 96:15, 96:16, 96:24, 98:8, 98:9, 99:3, 99:23, 99:25, 100:8, 101:7, 102:19, 103:3, 103:21, 106:1
government's [7] - 7:18, 57:13, 67:24, 80:8, 81:24, 82:3, 82:6
graduate [1] - 12:11
granted [1] - 77:19
greater [7] - 5:5, 23:10, 24:4, 24:15, 25:14, 35:6, 77:12
gross [4] - 5:4, 23:9, 33:13, 33:19
grounds [3] - 26:8, 48:3, 53:22
guess [5] - 51:14, 55:23, 70:1, 70:6, 75:7

Guideline [3] - 24:9, 24:13, 24:19
guideline [6] - 24:18, 25:2, 35:5, 36:3, 36:7, 79:1
guidelines [8] - 24:2, 53:9, 53:14, 77:15, 77:17, 77:18, 77:19, 77:24
guilt [4] - 23:20, 79:19, 79:22, 80:11
guilty [32] - 3:2, 6:4, 6:8, 11:6, 16:16, 19:13, 23:2, 23:24, 23:25, 26:9, 39:20, 40:19, 41:4, 42:18, 44:3, 45:11, 45:17, 49:22, 60:3, 60:4, 61:17, 78:23, 79:2, 79:11, 79:12, 79:13, 80:14, 108:10, 108:13, 108:15, 108:19, 109:10
gun [13] - 3:24, 4:22, 6:12, 36:15, 45:21, 52:20, 57:23, 82:18, 83:21, 86:2, 91:3, 91:16, 94:17
guys [9] - 42:24, 43:2, 55:25, 56:16, 56:22, 68:10, 105:17, 106:9, 106:16

## H

half [3] - 33:21, 100:17, 100:18
hand [1] - 11:21
handed [1] - 17:7
handle [1] - 97:20
handsomely [1] - 31:1
hang [1] - 102:6
hard [3] - 8:1, 97:17, 104:15
HARRIS [1] - 2:5
harsher [2] - 59:25, 79:5
Harvest [1] - 62:17
Hawkins [1] - 110:17
headway [1] - 57:2
hear [3] - 60:13, 79:16, 103:16
hearing [13] - 3:12, 5:20, 5:21, 5:24, 6:9, 6:13, 17:2, 40:5, 56:1, 56:3, 94:13, 94:16, 106:11
Hearing [1] - 1:10
help [7] - 7:24, 35:14, 41:6, 50:22, 58:13,

73:2, 77:21
helpful [1] - 105:9
hereafter [1] - 27:9
hereby [1] - 110:15
higher [1] - 74:6
highest [2] - 79:20, 81:11
himself [1] - 69:4
Hines [1] - 2:2
HINES [1] - 1:19
hinted [1] - 82:21
hire [1] - 5:10
historical [1] - 84:20
ho [1] - 69:4
Ho [3] - 30:21, 68:23, 69:2
hold [3] - 2:13, 3:13, 103:23
holding [1] - 65:4
honest [1] - 71:14
honor [1] - 91:13
Honor [254] - 2:21, 3:9, 3:10, 3:16, 4:4, 4:5, 4:20, 4:25, 5:7, 5:14, 5:18, 6:2, 6:6, 6:10, 6:15, 6:17, 6:25, 7:11, 7:14, 7:16, 7:23, 10:1, 10:4, 10:6, 10:13, 10:17, 10:18, 11:7, 11:17, 12:5, 12:8, 12:10, 12:15, 12:18, 12:21, 12:24, 13:4, 13:7, 13:12, 13:18, 13:25, 14:4, 14:10, 14:14, 14:18, 14:20, 15:4, 15:8, 15:12, 15:17, 15:22, 16:1, 16:10, 16:18, 16:21, 16:25, 17:5, 17:11, 17:15, 17:20, 17:21, 17:24, 17:25, 18:8, 18:12, 19:16, 19:21, 20:18, 20:19, 20:25, 21:1, 21:7, 21:8, 21:16, 21:25, 22:2, 22:6, 22:9, 22:24, 23:8, 25:19, 27:7, 35:8, 35:25, 36:3, 36:11, 36:12, 36:17, 37:2, 38:3, 39:5, 39:8, 39:11, 39:17, 39:21, 39:25, 40:20, 40:24, 41:5, 41:12, 41:22, 42:6, 43:6, 43:11, 44:19, 45:7, 45:12, 45:18, 46:4, 46:9, 46:19, 49:8, 50:14, 50:24, 51:25, 53:7, 53:16, 54:1,

54:16, 55:14, 56:20, 57:1, 57:5, 57:10, 57:17, 58:2, 58:6, 58:24, 59:14, 59:20, 60:2, 60:5, 60:9, 60:15, 60:18, 60:21, 60:24, 61:6, 61:9, 61:19, 62:7, 63:2, 63:7, 63:12, 63:15, 63:19, 65:16, 66:1, 66:6, 66:24, 67:10, 67:13, 67:15, 68:11, 68:14, 68:17, 68:24, 69:3, 69:8, 69:10, 70:5, 70:9, 70:14, 70:18, 70:21, 71:4, 71:13, 71:23, 72:12, 72:17, 72:20, 72:22, 72:24, 73:9, 74:25, 75:5, 75:11, 75:16, 75:24, 76:2, 76:8, 76:13, 76:16, 76:22, 77:9, 78:5, 78:10, 78:19, 78:24, 79:3, 79:9, 79:18, 79:25, 80:6, 80:12, 80:17, 80:21, 81:1, 81:7, 82:1, 82:4, 82:8, 83:7, 89:13, 89:21, 90:15, 90:20, 90:21, 91:6, 91:24, 92:4, 93:9, 93:12, 93:18, 94:8, 94:20, 95:5, 95:9, 95:18, 95:19, 96:11, 96:17, 96:20, 97:3, 97:20, 97:22, 98:20, 99:2, 99:4, 99:11, 100:6, 100:19, 101:7, 101:11, 101:19, 101:21, 101:24, 102:5, 102:13, 103:14, 103:18, 104:1, 104:9, 106:4, 106:19, 107:1, 107:2, 108:16, 108:20, 109:10, 109:23, 110:7, 110:11
Honor's [2] - 38:2, 68:5
HONORABLE [1] - 1:13
hook [1] - 42:17
hospitalized [1] - 12:25
hour [1] - 49:14
hours [1] - 49:14
Hudson [1] - 65:16
hundred [1] - 74:12

**hundreds** [1] - 19:25
**HUNTER** [3] - 1:6, 11:24, 11:25
**Hunter** [5] - 2:25, 3:3, 11:23, 27:9, 83:11
**Hyde** [1] - 108:12
**hypothetical** [5] - 44:18, 44:22, 50:6, 50:7, 96:1

**I**

**I.G** [1] - 2:6
**idea** [1] - 93:24
**identified** [5] - 32:24, 55:3, 58:16, 81:8, 89:21
**identify** [1] - 73:12
**ignored** [1] - 31:7
**II** [9] - 5:2, 23:3, 23:8, 23:24, 24:3, 26:14, 35:4, 61:1, 61:19
**illegal** [3] - 15:15, 15:20, 27:24
**illness** [1] - 13:1
**imagine** [1] - 109:21
**immediate** [1] - 10:8
**immunity** [5] - 40:25, 42:3, 45:13, 83:2, 104:24
**impact** [1] - 77:19
**implement** [1] - 103:22
**important** [4] - 11:13, 43:15, 49:13, 78:1
**impose** [6] - 8:18, 8:19, 17:18, 59:24, 77:11, 79:5
**imposed** [2] - 10:3, 25:2
**impossibility** [1] - 101:5
**imprisoned** [1] - 78:17
**imprisonment** [7] - 4:22, 5:3, 10:12, 23:9, 32:18, 78:8, 78:9
**improper** [2] - 38:5, 103:20
**IN** [1] - 1:1
**inappropriate** [1] - 21:4
**incarceration** [1] - 78:12
**inception** [1] - 64:22
**include** [13] - 7:6, 9:15, 34:14, 41:14, 46:12, 54:9, 54:18, 78:21, 78:22, 81:21, 86:12, 98:11, 107:21

**included** [10] - 13:5, 28:8, 29:9, 33:18, 35:18, 36:7, 36:9, 46:25, 47:2, 51:9
**includes** [8] - 35:17, 45:21, 45:22, 48:3, 58:19, 58:20, 85:19, 88:17
**including** [10] - 27:24, 28:21, 30:23, 31:21, 32:18, 35:4, 64:20, 65:11, 77:21, 88:15
**inclusion** [2] - 35:23, 50:18
**income** [26] - 27:19, 28:12, 28:21, 29:7, 29:17, 31:18, 32:8, 32:12, 33:4, 33:7, 33:10, 33:15, 34:12, 34:22, 36:25, 37:23, 63:21, 65:11, 67:21, 70:19, 70:25, 72:15, 74:11, 81:6, 81:11, 81:19
**inconsistent** [1] - 24:11
**incorporate** [2] - 52:13, 53:11
**incorporated** [1] - 62:3
**incorporates** [1] - 25:18
**incorporation** [1] - 90:2
**increase** [1] - 25:1
**indeed** [1] - 21:10
**indicated** [1] - 23:8
**indicted** [1] - 48:25
**indictment** [1] - 83:21
**individual** [11] - 29:4, 29:6, 29:17, 29:20, 32:8, 32:11, 33:7, 33:24, 34:1, 72:15, 75:12
**individuals** [1] - 103:1
**influence** [3] - 15:14, 15:19, 71:6
**influx** [1] - 67:21
**inform** [1] - 103:19
**information** [27] - 2:24, 3:2, 3:24, 4:10, 4:16, 16:11, 16:15, 16:17, 17:2, 20:7, 23:1, 23:3, 23:21, 32:21, 59:18, 60:11, 83:21, 84:6, 84:11, 85:2, 85:15, 90:16, 93:6, 96:4, 108:24, 109:2, 109:5
**Information** [3] - 27:9,

84:8, 84:13
**informations** [2] - 49:25, 50:1
**infrastructure** [2] - 28:24, 66:4
**ingested** [1] - 15:14
**Initial** [1] - 1:9
**initial** [7] - 2:23, 3:11, 4:2, 10:15, 27:1, 38:24, 61:3
**inpatient** [5] - 9:22, 13:10, 13:12, 13:13, 13:23, 14:2, 14:22, 14:23, 15:4
**insofar** [1] - 52:9
**instance** [4] - 19:4, 54:24, 93:22, 102:22
**instances** [1] - 73:18
**Instant** [1] - 85:23
**instant** [1] - 27:8
**instructions** [1] - 7:8
**instrument** [1] - 51:6
**intelligently** [1] - 23:20
**intend** [2] - 6:4, 11:6
**intended** [1] - 63:20
**intent** [1] - 85:11
**intention** [3] - 42:12, 42:14, 91:9
**interest** [13] - 19:20, 26:5, 33:24, 34:1, 34:16, 34:24, 35:23, 36:6, 36:20, 37:15, 46:11, 56:23, 65:24
**interests** [4] - 27:11, 28:23, 35:17, 36:4
**Internal** [9] - 26:5, 26:10, 29:17, 30:3, 33:8, 33:22, 34:8, 36:21, 74:20
**international** [3] - 8:25, 27:11, 86:23
**interviews** [1] - 64:11
**introduce** [1] - 5:24
**investigating** [1] - 21:9
**investigation** [13] - 20:8, 20:13, 20:17, 21:3, 38:15, 48:8, 49:12, 49:17, 50:9, 54:18, 54:24, 77:5, 84:14
**investment** [2] - 28:25, 66:4
**invokes** [1] - 83:2
**involved** [1] - 72:2
**involvement** [1] - 93:19
**involves** [1] - 83:3
**involving** [4] - 3:25,

11:4, 91:15, 96:10
**irrespective** [1] - 31:13
**IRS** [8] - 37:4, 37:7, 37:8, 37:24, 38:7, 38:13, 38:16, 38:23
**issuance** [1] - 10:9
**issue** [4] - 59:1, 67:22, 97:3, 109:14
**issues** [7] - 14:13, 43:12, 47:19, 49:3, 57:24, 81:18, 106:21
**itself** [2] - 18:16, 19:1

**J**

**January** [1] - 32:18
**Jianming** [1] - 65:20
**JONES** [1] - 2:6
**JR** [1] - 2:6
**judge** [1] - 88:3
**Judge** [9] - 1:14, 51:12, 87:22, 88:1, 93:1, 96:4, 96:5, 99:6, 108:4
**judicial** [3] - 95:16, 102:20, 103:2
**July** [1] - 1:8
**jumping** [1] - 7:25
**June** [6] - 15:17, 34:11, 71:7, 71:8, 71:15, 71:18
**jurisdiction** [1] - 85:13
**jury** [5] - 7:8, 79:14, 80:9, 80:10, 80:15
**justice** [1] - 19:20, 56:23, 79:21, 88:17, 93:16, 109:1
**Justice** [1] - 54:3

**K**

**keep** [3] - 3:20, 7:25, 94:3
**kind** [6] - 13:2, 15:16, 15:20, 57:12, 91:1, 100:17
**King** [1] - 1:11
**knowing** [11] - 11:9, 18:1, 59:4, 87:11, 87:16, 87:20, 88:4, 92:24, 98:22, 98:24, 104:22
**knowingly** [3] - 23:19, 76:24, 83:23
**knowledge** [1] - 88:15
**known** [1] - 83:19
**knows** [2] - 43:5, 63:18

**L**

**Labor** [1] - 56:18
**lacking** [1] - 20:13
**landed** [1] - 28:5
**lane** [2] - 98:12, 105:25
**language** [5] - 58:3, 58:5, 70:20, 89:2, 93:6
**large** [4] - 30:3, 30:14, 30:24, 31:21
**last** [10] - 14:15, 15:9, 15:10, 15:13, 41:14, 63:16, 67:22, 71:6, 75:6, 75:7
**late** [1] - 31:20
**latter** [1] - 74:21
**law** [37] - 8:7, 9:9, 12:10, 12:11, 19:2, 19:9, 19:25, 23:18, 27:18, 29:2, 34:21, 61:15, 62:23, 64:16, 64:20, 66:14, 69:1, 69:7, 69:13, 69:14, 69:17, 70:3, 77:14, 81:14, 87:1, 92:12, 102:23
**lawsuits** [2] - 32:5, 32:15
**lawyer** [1] - 68:3
**lays** [1] - 87:14
**learn** [1] - 24:10
**learning** [1] - 34:9
**least** [6] - 27:17, 62:10, 62:22, 62:24, 71:18, 106:25
**leave** [2] - 15:1, 55:24
**leaves** [2] - 76:10, 76:14
**leaving** [4] - 33:11, 33:16, 34:13, 50:20
**led** [1] - 64:15
**left** [3] - 10:14, 29:14, 63:10
**legal** [10] - 9:8, 9:10, 15:15, 15:19, 24:25, 27:14, 28:5, 30:20, 68:22, 69:6
**legally** [1] - 85:24
**legitimate** [2] - 33:2, 73:7
**length** [1] - 25:9
**LEO** [1] - 1:20
**Leo** [1] - 2:21
**less** [4] - 24:4, 27:3, 31:8, 35:5
**letter** [2] - 19:24, 32:19
**level** [5] - 24:12,

24:15, 24:16, 24:18,
81:12
**levels** [1] - 24:20
**liability** [16] - 30:4,
30:8, 30:9, 30:13,
30:14, 30:17, 31:18,
33:3, 33:24, 34:1,
34:15, 34:24, 67:3,
75:9, 75:10
**liberty** [1] - 50:4
**licensed** [1] - 9:7
**lied** [1] - 102:19
**life** [3] - 64:10, 72:25,
102:7
**light** [4] - 6:14, 84:16,
90:19, 91:22
**likely** [1] - 76:19
**limitation** [5] - 85:5,
88:19, 88:20, 92:2,
101:13
**limitations** [3] - 85:1,
92:1, 93:17
**limited** [1] - 7:7
**limits** [2] - 75:21,
107:25
**line** [4] - 49:15, 67:2,
73:19
**line-by-line** [1] - 49:15
**lines** [2] - 67:1, 93:20
**list** [1] - 61:10
**listed** [1] - 63:25
**listen** [1] - 22:19
**litigated** [2] - 100:9,
100:10
**litigation** [2] - 84:14,
87:8
**live** [3] - 43:24, 44:2,
48:9
**LLC** [2] - 27:16, 30:20
**LLP** [2] - 2:3, 2:5
**loan** [4] - 75:11, 75:13,
75:15, 75:17
**local** [3] - 8:7, 85:9,
87:1
**long-standing** [3] -
27:22, 64:3, 64:21
**look** [11] - 3:14, 15:24,
18:25, 41:18, 59:1,
59:9, 98:5, 104:7,
109:12, 109:19,
109:25
**looked** [1] - 45:23
**looking** [7] - 19:17,
35:12, 37:11, 41:20,
58:3, 64:6, 81:9
**Los** [1] - 28:8
**loses** [1] - 26:2
**loss** [12] - 5:4, 23:10,
24:3, 35:3, 35:6,
35:7, 35:8, 35:18,

35:23, 36:5, 38:5
**losses** [1] - 27:2
**loud** [1] - 17:2
**lower** [2] - 37:22,
70:24
**lucrative** [1] - 27:10

**M**

**maintained** [1] - 97:16
**mandatory** [1] - 78:22
**Mandatory** [1] - 25:25
**manner** [3] - 84:23,
99:19, 100:24
**March** [4] - 28:1,
30:19, 31:20, 68:21
**marijuana** [2] - 9:8,
9:9
**mark** [1] - 73:15
**marking** [1] - 73:17
**marriage** [1] - 28:1
**married** [3] - 31:25,
71:9, 71:14
**Marshals** [1] - 2:19
**marshals** [1] - 110:4
**MARYELLEN** [1] -
1:13
**Maryland** [2] - 7:3,
29:4
**massive** [2] - 20:20,
74:7
**material** [5] - 7:12,
87:11, 87:20, 88:4,
92:24
**materials** [1] - 32:13
**matter** [4] - 3:3, 84:22,
90:6, 106:6
**matters** [1] - 5:9
**maximum** [5] - 4:21,
5:2, 23:7, 61:1, 61:4
**mean** [17] - 19:13,
36:22, 37:24, 42:7,
48:7, 48:13, 50:24,
55:19, 59:1, 81:2,
93:23, 95:23, 97:4,
102:5, 102:6, 108:9,
108:18
**means** [5] - 5:10,
36:23, 58:2, 58:4,
58:10
**mechanism** [1] -
97:23
**medical** [2] - 9:7, 9:11
**medication** [3] -
15:15, 15:20, 71:7
**meet** [1] - 104:6
**meeting** [6] - 49:14,
55:11, 55:16, 55:20,
81:21
**meetings** [3] - 32:24,

49:15, 72:3
**meets** [1] - 80:25
**member** [1] - 12:14
**memoir** [2] - 28:6,
32:3
**memoranda** [2] -
37:20, 44:17
**memorandum** [11] -
19:25, 23:22, 25:17,
26:13, 26:16, 26:19,
26:22, 35:22, 38:7,
44:5, 52:22
**Memorandum** [18] -
17:6, 21:14, 21:22,
39:15, 39:24, 40:12,
40:18, 40:22, 45:6,
45:10, 46:25, 47:3,
52:15, 59:6, 59:12,
82:12, 89:6, 108:6
**mental** [1] - 13:1
**mentioned** [3] - 51:25,
61:2, 92:18
**merely** [1] - 59:22
**merger** [1] - 100:18
**middle** [4] - 64:14,
67:2, 95:13, 104:4
**might** [13] - 4:6, 15:24,
38:11, 50:3, 50:5,
50:6, 78:18, 79:1,
97:23, 99:12, 101:6,
105:19, 105:21
**million** [19] - 27:20,
28:21, 30:19, 31:2,
35:14, 63:9, 63:10,
63:14, 65:11, 68:21,
69:23, 70:7, 70:13,
70:20, 70:22, 70:25,
81:10
**millions** [2] - 27:15,
28:5
**mind** [1] - 6:22
**minds** [3] - 55:11,
55:16, 55:20
**minimizing** [1] - 74:4
**minute** [4] - 9:20,
43:13, 67:22, 110:2
**minutes** [3] - 42:25,
48:5, 57:2
**miscategorized** [1] -
33:1
**mischaracterized** [1] -
73:6
**misdemeanor** [5] -
3:25, 4:16, 16:14,
54:6, 77:3
**misdemeanors** [1] -
48:24
**misstep** [1] - 101:3
**mistake** [1] - 74:14
**mistakes** [8] - 73:23,

74:2, 74:14, 74:16,
74:18, 74:19, 74:22
**modification** [2] -
89:13, 101:20
**modifications** [2] -
26:24, 90:9
**modified** [3] - 26:19,
89:10, 105:22
**modify** [4] - 101:18,
101:20, 102:2,
102:10
**modifying** [1] - 90:7
**moment** [3] - 38:22,
39:1, 40:6
**money** [8] - 28:10,
67:25, 68:13, 70:2,
70:3, 74:2, 74:8,
81:20
**monies** [1] - 37:24
**month** [1] - 31:25
**months** [4] - 5:3, 23:8,
30:22, 83:14
**morning** [5] - 2:12,
2:21, 3:15, 3:16,
22:2
**most** [4] - 14:11, 28:2,
64:15, 73:18
**motion** [1] - 84:5
**motions** [3] - 56:9,
77:17, 77:19
**move** [6] - 24:17, 28:8,
53:21, 84:11, 94:1,
96:4
**MR** [188] - 2:21, 3:9,
3:16, 3:21, 4:4, 4:5,
6:15, 6:16, 7:11,
7:14, 7:16, 7:20,
7:23, 8:1, 10:4, 10:5,
10:16, 10:18, 13:17,
14:18, 16:8, 16:10,
17:10, 17:15, 17:20,
17:21, 17:24, 18:5,
18:8, 18:12, 18:14,
19:1, 19:16, 19:21,
20:18, 20:19, 20:25,
21:1, 21:6, 21:8,
22:24, 27:7, 35:8,
35:16, 35:25, 36:2,
36:10, 36:12, 36:17,
36:23, 37:2, 37:14,
37:21, 38:3, 38:12,
38:21, 39:11, 39:16,
41:12, 41:22, 42:5,
42:12, 42:19, 43:1,
43:6, 43:11, 43:24,
44:7, 44:18, 44:21,
46:4, 46:9, 46:19,
47:1, 47:5, 47:9,
47:13, 47:16, 47:19,
47:22, 48:6, 48:12,

74:2, 74:14, 74:16,
74:18, 74:19, 74:22

48:17, 48:23, 49:4,
49:8, 50:7, 50:11,
50:14, 50:24, 51:23,
52:6, 52:9, 52:13,
52:16, 52:24, 53:3,
54:1, 54:8, 54:16,
54:22, 55:9, 55:14,
55:17, 55:22, 56:3,
56:12, 56:20, 57:1,
57:5, 57:10, 58:1,
58:6, 58:11, 58:14,
58:24, 63:15, 67:14,
67:17, 68:5, 68:9,
68:11, 69:9, 70:8,
70:14, 70:18, 72:5,
73:9, 74:3, 74:21,
75:5, 80:21, 81:1,
81:4, 82:8, 83:7,
86:10, 90:15, 90:20,
90:21, 91:6, 91:9,
91:24, 92:4, 92:9,
92:10, 93:8, 93:12,
93:18, 94:8, 94:15,
94:20, 94:24, 95:2,
95:5, 95:9, 95:18,
95:25, 96:2, 96:11,
97:2, 97:5, 97:11,
97:20, 98:20, 99:2,
99:17, 100:6,
100:13, 100:16,
100:23, 101:10,
101:18, 101:24,
102:12, 103:14,
106:4, 106:19,
107:1, 107:2, 107:7,
107:12, 108:15,
108:20, 109:21,
109:23, 110:10,
110:11
**muddy** [1] - 89:12
**multi** [3] - 27:18, 29:2,
62:23
**multi-national** [1] -
27:18, 29:2, 62:23
**must** [16] - 8:7, 8:9,
8:12, 8:16, 8:17,
8:21, 8:23, 8:24, 9:2,
9:4, 9:12, 9:17, 9:21,
54:19, 107:14

**N**

**name** [2] - 11:21,
65:20
**named** [1] - 65:8
**narcotic** [2] - 9:5, 13:1
**narrow** [1] - 76:10
**National** [1] - 85:23
**national** [3] - 27:18,
29:2, 62:23

nature [2] - 88:7, 88:24
near [1] - 25:4
necessarily [3] - 49:9, 51:2, 103:16
necessary [1] - 77:12
need [43] - 3:18, 6:13, 10:15, 10:25, 11:10, 13:8, 18:25, 19:18, 41:6, 41:21, 42:10, 42:24, 48:24, 50:22, 55:15, 55:24, 55:25, 56:1, 56:2, 56:12, 61:7, 82:15, 82:16, 96:17, 99:12, 104:18, 104:25, 105:1, 105:3, 105:12, 105:14, 106:20, 108:1, 108:18, 108:24, 109:2, 109:4, 109:17, 110:1, 110:2, 110:4, 110:8
needed [1] - 47:7
needs [2] - 97:16, 103:23
negotiate [1] - 105:20
negotiated [2] - 27:13, 53:5
negotiating [1] - 101:10
negotiation [1] - 49:24
neutral [1] - 98:3
never [1] - 73:21
news [1] - 64:11
next [8] - 17:6, 30:22, 60:25, 64:2, 66:25, 73:4, 74:9, 75:1
NICS [1] - 85:24
NO [2] - 1:5, 1:6
nobody [1] - 105:12
non [1] - 51:1
non-prosecution [1] - 51:1
none [5] - 4:4, 4:5, 7:16, 10:4, 16:8
nonetheless [1] - 28:3
nonstandard [1] - 83:1
nonstop [1] - 28:9
NOREIKA [1] - 1:13
normal [4] - 75:17, 96:23, 97:23, 106:13
normally [7] - 10:24, 41:9, 51:11, 51:21, 82:10, 99:7, 104:7
north [1] - 70:25
note [1] - 90:21
notes [1] - 110:15
nothing [4] - 31:16,

46:2, 100:16, 101:5
notice [1] - 87:24
noting [1] - 29:24
notwithstanding [1] - 88:20
November [1] - 32:10
null [2] - 26:22, 56:4
number [8] - 8:15, 35:22, 37:8, 37:12, 37:14, 37:18, 38:6, 38:8, 38:21, 70:25
numbers [4] - 35:13, 37:3, 37:4, 38:11
numeral [1] - 83:8
numerous [3] - 13:17, 31:24, 71:2

## O

oath [4] - 11:12, 11:25, 59:5, 104:23
objection [3] - 4:3, 10:2, 20:2
objections [2] - 77:16, 82:6
obligation [3] - 7:3, 7:6, 31:12
obligations [6] - 29:14, 31:7, 32:6, 81:21, 84:3, 90:8
obstruct [2] - 9:18
obstruction [2] - 88:17, 93:16
obtained [2] - 37:4, 37:8
obviously [4] - 20:20, 58:16, 81:9, 89:9, 89:13, 93:12, 101:11, 101:19
occur [2] - 38:18, 76:19
occurred [3] - 87:21, 92:25, 96:25
October [12] - 28:16, 29:23, 31:15, 32:9, 33:22, 34:6, 34:15, 34:19, 34:23, 72:19, 92:9, 92:10
OF [3] - 1:2, 1:3, 1:18
offense [13] - 3:1, 5:4, 19:7, 23:10, 24:15, 36:7, 53:8, 53:10, 53:13, 78:23, 79:13, 79:14, 89:22
offenses [7] - 58:14, 79:2, 80:10, 89:20, 93:13, 93:15
offer [3] - 88:23, 92:14, 102:12
offered [1] - 105:16

office [5] - 8:22, 24:23, 29:15, 34:8, 77:16
Office [4] - 49:13, 77:4, 83:10, 86:19
OFFICE [1] - 1:18
officer [1] - 8:13, 9:13, 9:14, 9:23, 9:24, 46:6, 83:16, 102:20, 102:23, 103:2
offices' [1] - 102:14
Official [1] - 110:17
offset [1] - 33:5
often [2] - 17:17, 72:3
old [2] - 12:6, 12:7
omits [1] - 36:3
once [1] - 97:8
one [37] - 3:23, 5:5, 13:20, 19:24, 21:24, 23:10, 23:16, 24:18, 41:15, 43:16, 47:4, 47:19, 55:16, 56:2, 59:25, 61:8, 64:25, 65:1, 65:13, 65:25, 66:4, 66:7, 66:10, 70:15, 71:2, 73:18, 76:20, 79:6, 83:8, 83:22, 86:5, 90:1, 90:21, 91:14, 92:22, 97:2, 105:21
ongoing [2] - 50:9, 54:23
open [1] - 86:7
opine [1] - 97:1
opportunity [3] - 20:4, 22:4, 43:3
oppose [2] - 24:12, 77:25
opt [1] - 96:19
orally [2] - 89:10, 105:21
order [10] - 7:4, 7:6, 10:10, 11:10, 26:1, 26:8, 32:17, 106:20, 109:14, 110:3
ordered [1] - 26:2
original [2] - 50:25, 89:25
originally [3] - 13:25, 34:5, 70:1
otherwise [2] - 87:8, 90:7, 91:12
outlets [1] - 64:11
outlines [1] - 25:9
outpatient [5] - 9:22, 13:10, 13:16, 14:22, 14:24
outside [1] - 30:5, 40:9, 42:22, 47:23,

89:3, 98:12, 105:25
outstanding [4] - 30:8, 30:14, 30:17, 75:10
overreported [2] - 33:4, 74:11
overseeing [1] - 88:3
overstatement [1] - 37:23
Owasco [1] - 27:16, 30:1, 30:6, 30:20, 33:12, 33:19, 65:2, 65:4, 68:22, 69:16
owe [1] - 37:6
owed [7] - 29:25, 30:1, 31:9, 36:25, 38:22, 68:13, 75:4
owes [1] - 37:25
owing [8] - 26:11, 33:11, 33:14, 33:17, 33:20, 34:7, 34:14, 34:23
own [8] - 5:11, 28:6, 41:13, 42:21, 60:3, 69:13, 69:14, 80:2

## P

p.m [1] - 110:13
package [1] - 41:11
page [6] - 21:23, 43:3, 66:19, 66:25, 69:22, 75:6
pages [4] - 19:24, 19:25, 21:17, 21:18
paid [5] - 23:17, 26:5, 27:15, 31:16, 33:11, 33:16, 33:22, 34:13, 34:16, 34:25, 35:10, 35:16, 36:21, 37:9, 38:1, 61:15, 75:8, 75:9, 81:13
painting [1] - 32:2
paper [1] - 98:19
papers [1] - 106:17
paragraph [93] - 22:25, 23:6, 23:14, 23:23, 24:1, 24:2, 24:9, 25:3, 25:6, 25:9, 25:12, 25:15, 25:17, 25:24, 26:15, 26:24, 27:2, 35:3, 35:19, 36:13, 36:18, 40:3, 40:7, 41:14, 42:20, 52:7, 53:11, 57:18, 57:21, 60:10, 60:25, 61:10, 61:20, 62:9, 62:11, 62:22, 64:2, 64:13, 65:9, 66:19, 67:1, 67:2,

68:19, 68:20, 69:21, 70:10, 70:19, 70:21, 71:1, 72:14, 73:4, 75:1, 75:7, 75:19, 75:21, 81:9, 83:13, 83:18, 83:20, 84:2, 84:7, 84:16, 84:25, 85:11, 85:18, 86:1, 86:2, 86:4, 86:10, 86:11, 87:2, 87:6, 87:13, 87:14, 87:15, 87:19, 88:8, 89:1, 89:9, 89:15, 89:24, 90:2, 91:25, 92:23, 96:16, 102:1, 103:22, 105:21
paragraphs [2] - 75:8, 83:17
paraphrase [1] - 89:11
parole [2] - 78:6, 78:9
part [20] - 20:23, 30:4, 30:7, 41:10, 43:4, 52:16, 53:1, 53:11, 54:6, 55:12, 59:1, 61:25, 62:21, 74:6, 80:2, 83:3, 90:10, 98:21, 108:24, 108:25
partially [1] - 33:5
participate [4] - 9:21, 86:18, 101:21, 102:1
participated [1] - 32:23
particular [9] - 12:16, 14:6, 21:8, 54:20, 58:22, 58:23, 64:6, 67:20, 92:22
particularly [1] - 62:2
parties [41] - 3:5, 19:23, 23:12, 24:21, 25:22, 26:9, 26:16, 26:19, 26:20, 35:21, 40:4, 44:25, 46:10, 48:9, 49:16, 49:23, 49:25, 51:24, 53:5, 54:14, 57:11, 57:14, 57:17, 58:2, 82:20, 83:6, 83:8, 89:16, 89:18, 90:22, 91:7, 91:13, 96:21, 97:12, 98:2, 101:19, 102:3, 103:19, 106:5
parties' [2] - 44:24, 109:12
partner [11] - 29:11, 29:14, 30:11, 31:6, 64:22, 65:7, 65:16, 65:18, 66:21, 68:15
party [10] - 20:6, 26:6, 33:22, 34:17, 34:25,

35:10, 35:17, 36:21,
75:8, 84:12
**pass** [1] - 3:6
**past** [3] - 73:2, 73:3,
96:13
**patch** [1] - 9:16
**patents** [1] - 36:20
**Patrick** [3] - 30:21,
68:23, 69:2
**pause** [1] - 86:5
**pay** [20] - 3:5, 4:17,
23:4, 23:17, 23:18,
25:16, 29:21, 30:1,
30:8, 30:17, 31:18,
34:20, 36:3, 61:14,
61:16, 81:5, 81:11,
81:17, 81:21, 104:9
**payment** [13] - 28:18,
30:2, 30:19, 30:20,
31:13, 31:17, 32:6,
34:14, 68:22, 68:25,
78:21
**payments** [9] - 28:12,
29:24, 30:16, 31:19,
31:22, 31:23, 33:17,
70:17, 75:15
**payoff** [5] - 37:16,
38:6, 38:8, 38:12,
38:21
**payout** [2] - 37:3, 37:8
**payroll** [1] - 30:6
**PC** [4] - 27:16, 30:1,
33:12, 33:19
**PC's** [1] - 30:6
**penalties** [15] - 4:22,
5:2, 23:7, 26:5,
33:24, 34:1, 34:16,
34:24, 35:17, 35:23,
36:4, 36:6, 37:15,
61:1, 61:4
**pending** [6] - 4:19,
16:17, 61:5, 106:6,
106:8, 108:13
**people** [2] - 15:24,
86:8
**per** [1] - 23:12
**percent** [1] - 31:8
**perform** [1] - 87:16
**performed** [1] - 20:8
**perhaps** [2] - 41:1,
43:13
**period** [29] - 15:6,
28:10, 41:24, 58:10,
58:11, 58:15, 58:17,
58:20, 58:21, 64:10,
64:23, 78:8, 78:12,
78:13, 83:14, 83:18,
83:19, 84:5, 85:6,
85:7, 85:22, 86:12,
88:9, 88:12, 91:8,

106:6, 106:9
**perjury** [2] - 11:16,
93:15
**permanent** [1] - 85:22
**permission** [1] - 3:6
**permitted** [2] - 2:15,
2:16
**permitting** [1] - 59:24
**persist** [1] - 79:13
**person** [4] - 4:11,
75:9, 83:24, 91:15
**personal** [12] - 28:11,
30:18, 30:23, 30:24,
31:21, 32:25, 33:2,
73:7, 73:14, 73:17,
73:24, 77:21
**personally** [2] - 29:25,
102:5
**personnel** [1] - 2:18
**perspective** [2] -
46:13, 74:8
**phrasing** [1] - 43:12
**physician** [1] - 12:23
**picks** [1] - 63:16
**piecemeal** [1] - 50:13
**place** [3] - 92:3, 92:17,
97:24
**placed** [1] - 11:12
**places** [1] - 81:8
**plan** [1] - 6:11
**planned** [2] - 4:2, 6:14
**planning** [1] - 109:14
**plans** [3] - 8:25, 32:3,
86:23
**plea** [89] - 3:2, 3:6,
3:12, 11:6, 11:9,
17:8, 17:17, 17:18,
17:19, 17:25, 18:7,
18:10, 18:16, 18:22,
18:24, 19:3, 19:11,
19:18, 20:7, 21:14,
22:8, 22:18, 26:9,
41:3, 41:7, 41:9,
41:23, 41:24, 42:2,
42:20, 42:21, 43:16,
43:17, 43:18, 43:23,
44:2, 44:6, 44:11,
44:17, 45:2, 45:16,
47:3, 47:8, 47:12,
47:14, 47:18, 48:3,
48:19, 48:21, 50:20,
50:23, 51:12, 51:15,
51:21, 52:22, 53:16,
59:3, 59:4, 59:18,
59:21, 59:24, 60:16,
61:3, 61:17, 79:7,
79:13, 80:14, 92:21,
97:11, 97:18, 98:23,
104:2, 104:20,
104:22, 105:4,

105:9, 105:10,
107:5, 107:15,
107:24, 108:10,
108:19, 108:25,
109:3, 109:15
**positive** [1] - 63:4
**possess** [3] - 9:3, 9:5,
91:3
**possessed** [1] - 58:17
**possessing** [3] -
83:23, 85:20, 86:16
**possession** [2] - 4:10,
57:23
**possibility** [1] - 49:1
**possible** [1] - 84:13
**possibly** [1] - 64:11
**potential** [1] - 32:17
**power** [1] - 20:15
**powers** [8] - 20:20,
47:24, 48:10, 48:14,
91:20, 95:14, 99:10
**practically** [1] - 53:15
**practice** [1] - 102:14
**practitioner** [2] - 9:7,
9:11
**precedent** [5] - 46:1,
94:7, 94:9, 95:3,
103:5
**precisely** [1] - 106:22
**preclude** [1] - 68:4
**predicated** [1] -
101:13
**predict** [1] - 78:3
**preliminary** [5] - 5:20,
6:9, 6:13, 56:1, 56:3
**preparations** [2] -
32:7, 72:14
**prepare** [4] - 29:4,
29:19, 32:11, 77:4
**prepared** [7] - 29:6,
34:6, 36:24, 57:20,
80:19, 80:22
**preparing** [1] - 32:14
**preponderance** [1] -
87:25
**prescribed** [2] - 9:7,
9:11
**present** [1] - 88:1
**presented** [6] - 17:9,
17:10, 20:11, 20:12,
62:1, 87:25
**presentence** [2] -
77:5, 78:2
**presently** [2] - 5:15,
15:19
**preserved** [1] - 86:22
**prestigious** [2] -
27:17, 62:23
**Pretrial** [3] - 86:14,
86:19, 86:24
**pretrial** [8] - 7:18, 8:4,
8:5, 8:13, 9:13, 9:23,

57:14, 62:24, 63:6,
104:17, 106:15,
107:17
**prevailing** [1] - 84:12
**previously** [3] - 23:8,
32:16, 75:3
**primarily** [1] - 13:25
**prison** [2] - 78:17,
78:18
**private** [3] - 27:13,
62:13, 62:16
**probable** [5] - 5:22,
84:8
**Probation** [4] - 77:4,
86:14, 86:19, 86:24
**probation** [15] - 8:22,
24:22, 25:5, 46:6,
46:7, 46:12, 51:5,
53:6, 77:16, 78:1,
78:14, 78:15, 78:18,
83:16, 110:5
**problem** [2] - 103:24,
107:25
**problems** [1] - 73:1
**Procedure** [2] - 17:12,
85:9
**procedure** [3] - 25:10,
87:15, 103:22
**procedures** [1] - 87:13
**proceed** [4] - 3:5,
50:1, 96:8, 96:9
**proceeding** [6] -
16:13, 25:8, 45:1,
88:23, 106:21,
110:15
**proceedings** [2] -
2:15, 7:7
**Process** [1] - 7:2
**process** [14] - 21:6,
33:1, 37:3, 37:5,
37:6, 38:14, 50:2,
51:7, 73:5, 77:2,
77:14, 88:2, 88:3,
99:9
**processing** [1] - 110:5
**produce** [2] - 5:21, 7:4
**produced** [1] - 7:13
**produces** [1] - 38:14
**professional** [2] -
28:2, 64:16
**proffer** [1] - 102:14
**profligate** [1] - 30:15
**progeny** [1] - 7:3
**program** [10] - 9:21,
14:2, 15:1, 15:3,
15:6, 71:18, 71:20,
71:22, 72:6
**programs** [5] - 13:16,
14:6, 31:24, 71:2,
72:2
**progressed** [2] -
27:24, 32:15

56:9, 92:14

prohibited [5] - 9:9, 9:12, 9:17, 9:19, 99:25
promise [2] - 40:17, 45:8
promised [1] - 54:14
promises [10] - 26:18, 26:20, 39:9, 39:14, 39:16, 39:19, 42:22, 59:11, 59:16, 87:17
proof [3] - 79:21, 81:25, 82:7
proper [1] - 101:25
properly [1] - 36:7
propose [2] - 103:14, 103:18
proposed [1] - 11:1
propriety [1] - 108:2
prosecute [17] - 40:8, 41:19, 45:9, 45:20, 45:21, 46:2, 46:17, 48:4, 54:14, 58:19, 62:4, 88:13, 89:1, 89:3, 93:5, 104:10, 105:5
prosecuted [1] - 94:19
prosecution [17] - 5:6, 10:11, 11:15, 23:12, 40:14, 51:1, 52:19, 52:21, 84:15, 88:18, 88:21, 89:8, 90:23, 93:16, 98:18
prosecutor [8] - 20:23, 22:17, 41:1, 80:18, 91:19, 92:15, 95:22, 96:3
prosecutorial [2] - 21:10, 21:11
protection [6] - 40:14, 89:7, 97:24, 98:17, 99:1, 100:2
prove [7] - 23:15, 61:12, 61:13, 61:18, 80:9, 80:20, 80:23
provide [7] - 8:25, 29:8, 32:17, 40:14, 77:13, 86:23, 89:7
provided [2] - 24:10, 40:4
provides [18] - 22:25, 23:23, 24:2, 24:5, 24:9, 25:3, 25:6, 25:15, 25:17, 26:15, 83:13, 83:18, 83:20, 84:2, 84:16, 84:25, 85:11, 87:19
providing [1] - 32:20
proving [1] - 79:19
provision [31] - 17:8, 18:17, 40:21, 41:8,

51:16, 51:19, 55:12, 58:9, 60:19, 75:19, 75:21, 76:10, 86:2, 89:14, 89:21, 92:22, 93:9, 95:11, 98:7, 98:14, 99:15, 99:17, 100:14, 100:15, 101:20, 102:1, 103:19, 103:20, 104:9, 105:18, 105:23
provisions [9] - 10:23, 21:14, 26:24, 50:20, 51:20, 60:7, 94:5, 102:18, 104:14
psychiatrist [1] - 12:23
PT [1] - 69:16
public [4] - 21:20, 82:19, 83:6, 89:17
publicly [2] - 89:17, 97:13
published [1] - 28:6
punishment [1] - 77:13
purchase [4] - 85:6, 85:16, 85:20, 85:25
purchasing [1] - 85:20
purposes [2] - 26:13, 38:5
pursuant [12] - 7:1, 7:3, 18:3, 24:8, 24:13, 24:18, 47:4, 84:11, 84:23, 87:13, 102:17, 108:15
pursue [2] - 54:5, 98:10
pursued [2] - 49:17, 94:17
purview [2] - 51:18, 91:19
pushing [1] - 28:15
put [6] - 27:6, 51:16, 51:19, 58:6, 80:3, 80:4, 104:4, 104:10
puts [2] - 53:17, 95:12
putting [3] - 38:6, 50:21, 72:24, 73:5, 98:7

**Q**

Queen [1] - 102:15
questions [12] - 3:19, 11:11, 11:12, 11:14, 12:3, 20:20, 27:1, 35:2, 38:25, 45:4, 92:7
quite [1] - 64:10
quote [1] - 40:6

quoted [1] - 72:4

**R**

raise [3] - 11:20, 20:19, 91:10
raised [1] - 106:22
random [1] - 9:14
Range [1] - 90:19
range [2] - 25:2, 36:5
rather [2] - 98:2, 107:18
reached [3] - 22:21, 39:4, 51:23
reaching [1] - 29:9
read [15] - 8:6, 17:2, 17:4, 22:4, 22:17, 61:22, 68:2, 70:18, 76:3, 80:21, 86:1, 94:10, 96:24, 105:13, 107:9
reading [3] - 17:3, 94:4, 94:10
ready [4] - 3:5, 43:17, 43:24, 45:1
reaffirmed [1] - 44:10
really [7] - 48:5, 51:22, 52:25, 56:2, 100:4, 105:12, 105:14
reason [3] - 39:23, 43:23, 45:5
reasonable [5] - 61:13, 79:20, 79:22, 80:9, 106:24
reasons [2] - 25:3, 90:22
rebut [1] - 88:2
receipts [2] - 33:13, 33:19
receive [1] - 76:20
received [18] - 15:11, 16:12, 16:16, 16:23, 19:23, 22:8, 30:19, 31:2, 31:19, 60:23, 68:21, 68:25, 69:2, 69:22, 70:2, 70:3, 76:1, 81:14
recent [2] - 14:11, 90:19
recently [1] - 12:23
recess [2] - 43:8, 57:7
recitation [1] - 81:25, 82:6
recitations [1] - 82:3
recited [1] - 22:20
recites [1] - 37:22
recollection [1] - 13:9
recommend [1] - 25:5
recommendation [2] - 18:2, 107:16

recommendations [2] - 59:22, 59:23
recommended [2] - 7:21, 52:1
recommending [1] - 104:2
reconduction [1] - 24:19
record [9] - 8:6, 11:22, 22:16, 27:6, 58:6, 59:16, 61:22, 89:12, 97:10
recording [1] - 2:14
records [2] - 73:21, 73:22
redo [1] - 20:16
reduce [1] - 24:17
reduction [3] - 24:16, 33:3, 33:5
reference [7] - 52:4, 52:11, 52:15, 65:2, 70:19, 75:8
referenced [6] - 21:19, 27:5, 65:14, 82:12, 82:13, 82:22
references [5] - 35:10, 55:5, 61:20, 62:19, 75:2
referencing [1] - 73:8
referral [1] - 7:7
referred [3] - 19:20, 52:8, 84:18
referring [3] - 64:9, 64:16, 66:24
refers [7] - 36:13, 36:18, 41:18, 64:13, 64:14, 66:2, 73:25
reflect [2] - 19:7, 39:3
reflects [1] - 22:21
refrain [2] - 86:15, 86:16
regard [5] - 49:10, 49:21, 73:17, 84:12, 103:18
regarding [3] - 6:13, 22:8, 87:12
regardless [2] - 9:9, 59:2
regards [1] - 99:7
Registration [1] - 55:8
regular [1] - 103:17
rehab [2] - 31:24, 71:3
reject [15] - 18:7, 18:15, 18:19, 19:10, 20:7, 47:11, 47:17, 47:25, 48:2, 48:19, 48:21, 59:23, 104:17, 107:10, 109:3
rejecting [1] - 19:3

relapsed [1] - 27:23
relate [6] - 19:3, 41:10, 57:23, 58:10, 58:22, 73:18
related [7] - 3:24, 45:22, 49:3, 53:9, 93:13, 93:15, 93:17
relates [4] - 27:4, 57:21, 63:21, 97:11
relating [2] - 29:1, 88:15
relation [1] - 83:21
relations [2] - 32:5, 32:15
relationship [3] - 28:3, 64:16, 64:18
relationships [2] - 64:19
release [14] - 4:23, 5:5, 7:18, 8:4, 8:5, 8:8, 10:8, 10:10, 23:11, 78:13, 78:15, 93:23, 99:5, 110:3
released [1] - 78:8
relevant [13] - 24:8, 27:8, 35:4, 35:15, 36:2, 52:9, 53:9, 53:14, 84:1, 85:21, 89:19, 89:22, 92:20
relief [1] - 76:19
rely [2] - 44:16, 98:3
relying [3] - 39:18, 40:17, 45:8
remain [1] - 28:18
remained [4] - 30:21, 32:1, 34:10
remedies [1] - 88:6
remedy [5] - 88:8, 88:10, 88:11, 93:4, 94:1
Remedy [4] - 88:13, 88:23
remember [1] - 62:25
reminded [1] - 29:13
reminding [1] - 2:14
remote [1] - 9:16
repeatedly [3] - 29:7, 29:21, 92:16
report [6] - 8:22, 56:22, 56:24, 77:5, 77:7, 78:2
reported [7] - 33:9, 33:13, 33:15, 33:19, 34:11, 34:22, 36:25
Reporter [1] - 110:17
represent [5] - 5:12
representation [3] - 5:17, 16:23, 32:19
representations [2] - 26:18, 26:21

**represented** [2] - 5:9, 5:16
**repudiating** [1] - 87:8
**request** [2] - 20:6, 107:16
**requested** [5] - 9:1, 28:14, 86:24, 100:21, 106:2
**require** [2] - 18:15, 88:22
**required** [10] - 6:19, 8:16, 9:13, 23:18, 34:21, 61:15, 71:23, 77:3, 81:13, 109:1
**requirement** [2] - 94:21, 94:25
**requires** [1] - 107:18
**reservation** [1] - 43:18
**residence** [1] - 8:14
**residing** [1] - 8:23, 9:2
**resolution** [2] - 102:4, 102:11
**resolve** [2] - 44:21, 106:5
**resolved** [1] - 106:15
**respect** [6] - 10:15, 52:21, 76:1, 85:1, 85:3, 85:14
**respectfully** [1] - 96:11
**respond** [1] - 20:4
**response** [1] - 50:7
**responsibility** [7] - 11:8, 24:12, 32:22, 77:10, 84:17, 87:23, 93:2
**rest** [3] - 50:2, 59:9, 92:15
**restitution** [9] - 5:5, 23:11, 25:24, 26:1, 26:8, 36:19, 38:17, 38:22, 78:21
**Restitution** [1] - 25:25
**result** [6] - 2:18, 10:8, 10:11, 25:1, 30:12, 37:25
**resulting** [1] - 33:2
**retains** [1] - 25:7
**return** [11] - 28:16, 28:17, 31:14, 31:15, 34:5, 34:8, 34:15, 36:24, 37:5, 37:15
**returns** [22] - 28:12, 28:15, 29:5, 29:7, 29:12, 29:15, 29:17, 29:20, 29:22, 30:18, 31:9, 32:8, 32:12, 32:14, 32:17, 32:22, 33:1, 33:7, 36:23, 37:7, 73:6, 74:8

**Revenue** [9] - 26:6, 26:10, 29:18, 30:3, 33:8, 33:23, 34:9, 36:21, 74:20
**review** [9] - 20:1, 20:5, 25:10, 25:13, 29:8, 76:5, 77:7, 96:6, 109:13
**reviewed** [4] - 29:12, 73:21, 92:12, 92:13
**reviewing** [1] - 78:2
**revocation** [1] - 10:9
**revoked** [1] - 78:16
**rewrite** [1] - 57:25
**rhetorical** [1] - 42:8
**RICHARD** [1] - 2:6
**rights** [5] - 76:11, 76:25, 79:11, 80:16, 85:8
**rise** [3] - 11:20, 43:7, 57:6
**Robert** [5] - 2:25, 3:3, 11:23, 27:9, 83:11
**ROBERT** [3] - 1:6, 11:24, 11:25
**role** [6] - 17:22, 18:6, 18:10, 18:18, 19:4, 46:11, 47:11, 48:15, 50:19, 94:3, 103:2, 104:5, 107:5, 107:8, 107:19, 107:25
**roles** [1] - 17:24
**Roman** [2] - 83:8, 83:12
**Romanian** [1] - 29:1
**Rosemont** [4] - 62:17, 64:21, 65:1, 65:25
**routinely** [2] - 25:20, 28:14
**rubber** [5] - 51:14, 104:1, 104:21, 107:3, 107:11
**rule** [11] - 18:17, 19:1, 48:16, 51:3, 77:17, 85:10, 104:19, 107:9, 107:16, 107:18
**Rule** [15] - 17:10, 17:17, 17:23, 18:1, 18:3, 18:10, 18:14, 41:7, 41:17, 47:4, 51:15, 51:16, 85:9, 107:13
**rules** [1] - 17:8
**Rules** [1] - 17:11
**rulings** [1] - 25:7
**run** [1] - 92:4

## S

**sample** [1] - 8:10
**sanctions** [2] - 7:7, 32:17
**satisfied** [4] - 16:22, 22:7, 60:22, 75:25
**save** [1] - 4:7
**schedule** [1] - 106:12
**scheme** [1] - 102:25
**Schiller** [6] - 63:3, 63:10, 63:17, 63:22, 66:16, 69:9
**school** [4] - 8:1, 12:9, 12:10, 12:12
**Schwerin** [3] - 65:8, 66:22, 68:16
**scope** [4] - 48:5, 54:15, 57:21, 94:18
**screening** [2] - 9:17, 9:19
**scrutiny** [1] - 97:9
**seal** [1] - 25:19
**sealed** [5] - 21:19, 22:14, 26:17, 97:15, 97:17
**Sealed** [1] - 22:12
**seated** [7] - 2:13, 3:19, 12:1, 19:22, 43:9, 57:8, 58:25
**second** [6] - 24:24, 62:11, 67:1, 68:20, 69:22, 86:6
**Section** [6] - 4:18, 8:11, 9:6, 23:5, 77:11, 83:25
**section** [2] - 55:6, 105:8
**Sections** [1] - 4:13
**security** [1] - 2:18
**see** [13] - 10:25, 37:12, 57:2, 67:4, 67:7, 71:3, 74:4, 79:16, 82:20, 91:16, 92:18, 98:6, 109:25
**seeing** [1] - 99:22
**seek** [7] - 8:24, 86:15, 87:12, 87:21, 87:24, 92:25, 101:16
**seeking** [4] - 31:11, 32:5, 34:18, 84:5
**seem** [2] - 50:18, 98:16
**self** [17] - 26:3, 33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:4, 37:12, 37:14, 37:18, 75:2
**self-assessed** [15] -

33:10, 33:13, 33:15, 33:20, 33:23, 33:25, 34:12, 34:23, 36:19, 36:22, 37:12, 37:14, 37:18, 75:2
**send** [4] - 10:22, 82:21, 92:19, 106:10
**sending** [1] - 29:10
**Seneca** [3] - 64:21, 65:1, 65:25
**sense** [5] - 46:20, 56:16, 56:23, 106:3, 106:4
**senses** [1] - 93:24
**sent** [2] - 29:12, 66:20
**sentence** [23] - 8:18, 17:18, 19:8, 24:17, 25:2, 25:5, 52:1, 59:24, 62:11, 63:16, 63:20, 74:9, 75:22, 76:12, 76:15, 76:20, 77:12, 77:22, 77:23, 78:1, 78:4, 78:20, 79:5
**sentenced** [1] - 78:12
**sentences** [1] - 63:17
**Sentencing** [3] - 24:9, 24:13, 24:19
**sentencing** [16] - 19:4, 24:2, 25:1, 25:4, 25:9, 25:16, 35:5, 35:22, 37:19, 38:6, 47:15, 74:7, 77:2, 77:6, 77:15, 79:1
**separate** [13] - 3:3, 11:15, 18:17, 22:13, 38:14, 42:9, 42:10, 42:15, 57:15, 69:7, 71:22, 92:16, 98:16
**separately** [1] - 97:21
**separation** [7] - 20:20, 47:24, 48:10, 48:14, 91:19, 95:14, 99:10
**September** [1] - 56:22
**series** [2] - 11:10, 32:23
**serious** [3] - 20:14, 20:17, 88:24
**seriousness** [2] - 19:7, 88:7
**serve** [4] - 8:17, 26:8, 78:16, 78:18
**served** [2] - 27:12, 62:12
**Service** [9] - 26:6, 26:10, 29:18, 30:3, 33:8, 33:23, 34:9, 36:21, 74:20
**services** [4] - 8:13, 9:13, 9:23, 27:14

**Services** [2] - 86:14, 86:19
**set** [15] - 2:23, 24:5, 56:1, 56:8, 83:17, 84:23, 84:24, 85:4, 85:15, 85:16, 87:13, 87:17, 88:16, 89:18, 90:10
**sets** [1] - 90:3
**severability** [3] - 98:16, 100:15, 100:18
**several** [4] - 29:12, 73:18, 74:11, 81:7
**severe** [2] - 59:25, 79:5
**shake** [1] - 74:7
**shall** [7] - 83:20, 84:22, 85:7, 87:18, 88:1, 89:17, 90:10
**shared** [1] - 59:19
**show** [1] - 5:22
**showed** [1] - 34:6
**showing** [1] - 97:7
**side** [2] - 22:10, 22:12
**side-bar** [2] - 22:10, 22:12
**sign** [8] - 22:1, 50:22, 51:18, 51:19, 92:17, 94:6, 104:7, 110:3
**signature** [1] - 29:8
**signatures** [2] - 21:23, 21:24
**signed** [7] - 22:3, 26:20, 29:16, 32:19, 42:13, 42:15, 90:11
**significant** [5] - 28:2, 30:12, 35:17, 64:15, 81:19
**signing** [2] - 88:19, 88:21
**signs** [2] - 53:16, 83:16
**silent** [1] - 19:1
**similar** [3] - 45:25, 89:21, 102:24
**simply** [1] - 53:12
**single** [1] - 13:20
**sit** [5] - 18:22, 46:22, 50:16, 54:12, 102:16
**situation** [3] - 44:22, 49:21, 93:20
**situations** [1] - 73:16
**six** [4] - 13:12, 21:17, 30:22, 31:8
**Sixth** [1] - 85:8
**smack** [1] - 104:4
**SMITH** [1] - 2:3
**sober** [5] - 31:25, 32:1, 71:3, 72:21,

74:24

**sobriety** [5] - 71:10, 71:17, 72:3, 72:11, 84:21

**sole** [2] - 26:13, 88:24

**someone** [4] - 37:11, 73:1, 86:6, 98:3

**sorry** [5] - 14:6, 14:20, 16:1, 67:5, 108:22

**sort** [4] - 14:7, 19:19, 38:13, 64:14

**sounds** [1] - 107:4

**space** [1] - 57:19

**speaking** [1] - 42:5

**special** [5] - 4:24, 5:6, 23:11, 25:16, 78:22

**specific** [4] - 17:18, 57:21, 60:7, 88:9

**specifically** [3] - 54:17, 58:16, 61:12

**specified** [2] - 88:6, 88:12

**speedy** [1] - 85:8

**spell** [2] - 11:21, 65:19

**spend** [3] - 30:22, 31:1, 81:20

**spending** [1] - 30:15

**spent** [3] - 31:20, 32:2, 49:13

**spring** [1] - 28:9

**square** [1] - 35:14

**squarely** [1] - 92:15

**stable** [1] - 31:5

**stamp** [4] - 51:15, 104:1, 107:3, 107:11

**stamping** [1] - 104:21

**stand** [2] - 41:13, 44:10

**standard** [6] - 10:24, 21:20, 35:24, 79:19, 79:20, 96:6

**standing** [4] - 8:3, 27:22, 64:3, 64:21

**stands** [3] - 41:23, 42:21, 92:22

**start** [3] - 2:13, 6:21, 11:3

**started** [4] - 32:13, 63:3, 64:23, 65:15

**starting** [5] - 67:1, 86:4, 86:10, 87:14, 89:15

**state** [4] - 8:7, 9:10, 11:21, 86:25

**State's** [1] - 41:12

**statement** [41] - 6:21, 6:23, 23:21, 24:6, 37:16, 37:22, 40:10, 40:11, 52:22, 53:20, 53:21, 53:24, 53:25,

55:1, 55:4, 57:22, 58:12, 61:21, 80:22, 81:6, 81:8, 81:17, 84:18, 85:4, 85:17, 87:3, 87:7, 87:9, 87:10, 88:16, 89:4, 89:5, 89:12, 89:19, 91:16, 91:17, 91:22, 92:3, 102:22

**statements** [5] - 6:19, 6:20, 26:18, 26:21, 102:17

**states** [2] - 40:7, 60:10

**STATES** [3] - 1:1, 1:3, 1:18

**States** [58] - 1:14, 1:21, 2:23, 2:25, 3:3, 4:9, 4:13, 4:14, 4:17, 8:10, 9:6, 10:5, 10:16, 18:3, 20:15, 20:16, 23:2, 23:5, 24:8, 24:10, 24:17, 25:5, 25:6, 26:14, 40:8, 46:14, 77:4, 77:11, 83:9, 83:10, 83:25, 84:3, 84:7, 84:10, 84:22, 85:13, 86:3, 87:9, 87:12, 87:19, 87:22, 87:24, 88:5, 88:9, 88:10, 88:12, 88:13, 88:15, 88:22, 89:2, 90:4, 90:6, 90:11, 90:17, 92:24, 93:1, 103:1, 110:10

**status** [3] - 56:22, 56:24, 109:15

**statute** [12] - 51:18, 77:11, 77:21, 85:1, 85:5, 85:21, 88:18, 88:20, 91:25, 92:2, 92:13, 93:17

**statutory** [2] - 102:13, 102:25

**stay** [1] - 3:19

**stemmed** [1] - 30:4

**stenographic** [1] - 110:15

**step** [1] - 77:14

**stick** [1] - 110:1

**still** [9] - 31:6, 32:6, 37:11, 41:3, 42:17, 45:16, 51:11, 65:21, 79:6

**stipulate** [2] - 23:13, 89:18

**stipulation** [1] - 35:18

**stipulations** [3] - 24:1, 24:22, 24:25

**stop** [2] - 6:20, 6:22

**straightforward** [1] - 104:13

**Street** [1] - 1:11

**strict** [1] - 97:9

**structure** [2] - 31:5, 95:19

**structured** [2] - 96:12, 96:13

**struggle** [2] - 27:22, 64:3

**struggles** [2] - 64:9, 64:14

**struggling** [1] - 91:15

**sub** [1] - 88:8

**subject** [7] - 8:5, 26:12, 35:13, 52:20, 85:12, 86:13, 93:5

**submissions** [4] - 20:2, 20:6, 20:11, 109:13

**submit** [5] - 8:21, 9:12, 20:8, 86:17, 106:25

**submits** [1] - 86:20

**submitted** [1] - 29:16

**subparagraph** [2] - 24:5, 85:18, 86:11

**subsection** [7] - 59:3, 98:23, 104:21, 105:7, 105:9, 107:24

**subsequent** [2] - 25:8, 26:23

**subsequently** [1] - 24:10

**substance** [16] - 4:12, 9:5, 9:13, 9:17, 9:19, 9:22, 27:22, 28:7, 29:13, 71:7, 83:24, 86:16, 86:17, 86:18, 104:3, 105:5

**substantial** [7] - 27:19, 28:21, 30:5, 31:18, 65:10, 67:21, 81:5

**substantially** [1] - 58:5

**successfully** [1] - 28:4

**sued** [1] - 32:4

**sufficient** [5] - 5:21, 30:7, 77:12

**suggest** [3] - 19:2, 20:13, 104:21

**suit** [1] - 95:10

**sum** [1] - 31:21

**summarize** [4] - 57:12, 70:16, 80:19, 83:5

**summarized** [2] - 39:3, 61:2

**summary** [1] - 81:12

**summer** [2] - 28:9, 32:4

**supersedes** [1] - 26:17

**supervised** [8] - 4:23, 5:5, 23:11, 78:13, 78:15, 93:23, 99:5

**supervising** [3] - 8:13, 9:14, 9:24

**supervision** [5] - 8:21, 8:22, 86:13, 87:23, 93:2

**support** [2] - 32:6, 72:11

**supporting** [1] - 8:25

**supposed** [1] - 51:14

**Supreme** [1] - 108:11

**surprise** [8] - 30:10, 67:4, 67:9, 67:24, 68:1, 68:3, 68:8

**surrender** [1] - 8:17

**swear** [1] - 11:19

**sweat** [1] - 9:16

**sworn** [1] - 11:25

**System** [1] - 85:23

**system** [5] - 9:16, 30:6, 48:9, 79:21, 102:4

# T

**table** [1] - 36:5

**talks** [1] - 67:2

**tamper** [1] - 9:18

**target** [1] - 102:16

**taught** [1] - 8:1

**tax** [99] - 3:7, 3:12, 4:1, 4:17, 5:2, 6:4, 11:4, 16:15, 23:4, 23:17, 26:4, 26:11, 28:12, 28:16, 29:3, 29:5, 29:7, 29:17, 29:20, 29:22, 29:24, 30:3, 30:8, 30:12, 30:14, 30:16, 30:17, 30:21, 31:7, 31:9, 31:13, 31:16, 31:17, 31:18, 32:8, 32:12, 32:17, 32:22, 32:25, 33:3, 33:7, 33:8, 33:10, 33:14, 33:15, 33:20, 33:24, 34:1, 34:11, 34:12, 34:20, 34:21, 34:23, 36:4, 36:8, 36:19, 37:6, 37:19, 37:25, 41:2, 41:4, 45:15, 45:17, 45:22, 49:3, 49:10, 53:10, 53:25, 54:25, 57:23, 58:14, 58:20,

61:14, 61:15, 66:20, 66:21, 67:3, 67:17, 67:19, 67:23, 68:13, 72:15, 73:6, 73:12, 74:8, 75:2, 75:3, 75:9, 81:5, 81:11, 81:13, 81:14, 82:23, 89:20, 89:23

**taxes** [13] - 3:5, 26:11, 28:18, 29:21, 30:2, 31:8, 34:7, 35:10, 35:19, 35:20, 49:15, 72:23, 81:22

**taxpayers** [1] - 28:14

**technically** [1] - 71:13

**telephone** [1] - 8:14

**ten** [3] - 4:22, 49:14, 57:2

**term** [4] - 21:11, 78:12, 83:2, 85:21

**termination** [1] - 88:25

**terms** [30] - 18:18, 22:18, 25:21, 26:12, 40:9, 41:14, 43:24, 44:2, 44:22, 46:7, 46:8, 53:3, 54:25, 59:22, 61:2, 75:17, 83:1, 83:5, 83:12, 84:21, 84:23, 87:17, 89:3, 89:16, 90:4, 90:8, 98:12, 101:10, 105:1, 105:25

**testify** [3] - 80:2, 80:4, 88:7

**testifying** [1] - 6:1

**testimony** [1] - 104:23

**testing** [2] - 9:12, 9:14, 9:15, 9:16, 9:17, 9:19, 86:17

**THE** [455] - 1:1, 1:2, 1:13, 2:12, 3:8, 3:13, 3:17, 3:22, 4:6, 4:8, 4:20, 4:21, 4:25, 5:1, 5:7, 5:8, 5:14, 5:15, 5:18, 5:19, 6:2, 6:3, 6:6, 6:7, 6:10, 6:11, 6:18, 6:25, 7:1, 7:12, 7:15, 7:17, 7:22, 7:24, 8:2, 10:1, 10:2, 10:7, 10:13, 10:14, 10:19, 11:7, 11:8, 11:17, 11:18, 11:23, 12:1, 12:5, 12:6, 12:7, 12:9, 12:10, 12:11, 12:13, 12:14, 12:15, 12:16, 12:17, 12:19, 12:21, 12:22, 12:24, 12:25, 13:3, 13:5, 13:7, 13:8,

13:11, 13:14, 13:15, 13:19, 13:24, 14:1, 14:4, 14:5, 14:8, 14:9, 14:10, 14:11, 14:14, 14:15, 14:17, 14:19, 14:20, 14:21, 14:23, 14:25, 15:3, 15:5, 15:8, 15:9, 15:12, 15:13, 15:17, 15:18, 15:22, 15:23, 16:1, 16:3, 16:5, 16:6, 16:9, 16:11, 16:18, 16:19, 16:21, 16:22, 16:25, 17:1, 17:5, 17:6, 17:13, 17:16, 17:22, 18:4, 18:6, 18:9, 18:13, 18:20, 19:12, 19:17, 19:22, 20:22, 21:2, 21:13, 21:16, 21:17, 21:25, 22:1, 22:2, 22:3, 22:6, 22:7, 22:9, 22:10, 22:15, 26:25, 35:1, 35:9, 35:24, 36:1, 36:8, 36:13, 36:18, 37:10, 38:9, 38:19, 38:24, 39:5, 39:6, 39:8, 39:9, 39:13, 39:18, 39:21, 39:22, 39:25, 40:1, 40:20, 40:21, 40:24, 40:25, 41:5, 41:6, 41:16, 42:1, 42:7, 42:14, 42:24, 43:2, 43:9, 43:21, 44:1, 44:12, 44:20, 45:3, 45:7, 45:8, 45:12, 45:13, 45:18, 45:19, 46:5, 46:15, 46:21, 47:2, 47:6, 47:10, 47:14, 47:17, 47:21, 48:2, 48:7, 48:13, 48:18, 49:3, 49:5, 50:3, 50:9, 50:12, 50:16, 51:8, 52:3, 52:7, 52:11, 52:14, 52:17, 52:25, 54:4, 54:10, 54:17, 55:5, 55:10, 55:15, 55:19, 55:23, 56:7, 56:14, 56:21, 57:4, 57:8, 57:25, 58:3, 58:8, 58:13, 58:18, 58:25, 59:14, 59:15, 59:20, 59:21, 60:2, 60:3, 60:5, 60:6, 60:9, 60:10, 60:15, 60:16, 60:18, 60:19, 60:21, 60:22, 60:24, 60:25, 61:6, 61:7, 61:9, 61:10, 61:19,

61:20, 62:7, 62:8, 62:15, 62:18, 63:2, 63:5, 63:7, 63:8, 63:12, 63:13, 63:18, 63:19, 63:23, 63:24, 64:1, 64:8, 64:13, 64:18, 64:25, 65:3, 65:6, 65:8, 65:9, 65:15, 65:18, 65:19, 65:21, 65:22, 65:23, 66:1, 66:3, 66:6, 66:7, 66:8, 66:9, 66:12, 66:13, 66:15, 66:16, 66:17, 66:18, 66:23, 66:25, 67:5, 67:6, 67:7, 67:8, 67:10, 67:11, 67:12, 67:16, 68:2, 68:7, 68:10, 68:12, 68:14, 68:15, 68:17, 68:19, 68:24, 68:25, 69:2, 69:4, 69:5, 69:6, 69:8, 69:11, 69:13, 69:14, 69:16, 69:18, 69:19, 69:21, 70:5, 70:6, 70:10, 71:1, 71:4, 71:5, 71:9, 71:11, 71:12, 71:16, 71:17, 71:20, 71:22, 71:24, 72:1, 72:7, 72:8, 72:9, 72:12, 72:13, 72:17, 72:18, 72:20, 72:21, 72:22, 72:23, 72:24, 73:4, 74:1, 74:15, 74:23, 74:25, 75:1, 75:6, 75:11, 75:13, 75:14, 75:15, 75:16, 75:18, 75:24, 75:25, 76:2, 76:3, 76:7, 76:9, 76:13, 76:14, 76:16, 76:17, 76:22, 76:23, 77:9, 77:10, 78:5, 78:6, 78:10, 78:11, 78:19, 78:20, 78:24, 78:25, 79:3, 79:4, 79:9, 79:10, 79:18, 79:19, 79:25, 80:1, 80:6, 80:7, 80:12, 80:13, 80:17, 80:18, 80:24, 81:2, 81:23, 82:1, 82:2, 82:4, 82:5, 82:9, 86:5, 90:13, 90:16, 90:25, 91:14, 91:25, 92:5, 92:11, 93:10, 94:2, 94:10, 94:16, 94:21, 94:25, 95:3, 95:6, 95:11, 95:21, 96:1, 96:3, 96:23, 97:4, 97:6, 97:14, 98:5,

98:21, 99:12, 99:22, 100:11, 100:15, 100:20, 100:25, 101:22, 103:4, 103:24, 106:8, 107:4, 107:9, 107:23, 108:18, 108:21, 109:10, 109:11, 109:24, 110:7, 110:8, 110:12
**therapy** [1] - 9:22
**therefore** [1] - 81:10
**thinking** [2] - 50:5, 106:17
**thinks** [3] - 74:6, 98:18, 98:25
**third** [12] - 19:23, 20:6, 26:6, 33:22, 34:17, 34:25, 35:10, 35:17, 36:21, 68:19, 71:2, 75:8
**Third** [2] - 90:19, 97:8
**third-party** [1] - 20:6
**thirty** [4] - 56:12, 56:17, 84:4, 109:20
**thousand** [1] - 74:12
**threatened** [1] - 39:6
**threats** [1] - 59:17
**three** [7] - 4:23, 12:7, 21:23, 23:18, 24:20, 61:15, 77:14
**three-step** [1] - 77:14
**throes** [1] - 67:14
**throughout** [2] - 29:3, 29:7
**throw** [2] - 108:3, 108:5
**Thursday** [1] - 106:11
**timely** [7] - 29:19, 29:21, 30:8, 33:11, 33:16, 34:13, 34:19
**timing** [1] - 106:13
**Title** [2] - 23:5, 83:25
**today** [9] - 16:4, 16:13, 24:7, 53:18, 59:17, 78:3, 105:22, 108:8, 110:9
**today's** [3] - 45:1, 103:23, 106:21
**together** [3] - 26:17, 72:25, 73:5
**tolled** [2] - 85:7, 92:5
**took** [2] - 75:11, 75:13
**top** [1] - 75:6
**toss** [1] - 100:19
**total** [6] - 24:19, 33:9, 33:15, 34:12, 34:22, 63:21
**totaling** [2] - 27:19, 31:19

towards [3] - 30:2, 62:9, 64:14
**traded** [1] - 31:10
**traditional** [1] - 19:4
**transcript** [4] - 15:24, 106:20, 106:24, 110:15
**transfers** [2] - 30:11, 30:24
**travel** [3] - 8:25, 30:25, 86:23
**Treasury** [1] - 26:14
**treat** [1] - 64:5
**treated** [6] - 13:1, 13:10, 13:23, 14:2, 14:7, 73:20
**treatment** [13] - 13:3, 13:6, 14:2, 14:12, 14:13, 14:16, 15:11, 67:18, 67:19, 67:23, 72:6, 72:10, 86:18
**tremendous** [1] - 97:22
**trial** [11] - 23:16, 48:25, 56:13, 79:14, 80:1, 80:8, 80:14, 80:15, 80:16, 80:20, 85:8
**tried** [1] - 91:11
**trips** [1] - 31:24, 71:2
**true** [1] - 110:15
**truthful** [2] - 32:21, 87:4
**truthfully** [2] - 11:13, 11:14
**try** [2] - 57:11, 97:20
**trying** [11] - 37:11, 42:8, 48:15, 48:18, 55:10, 63:14, 67:5, 71:24, 91:18, 101:1, 105:20
**Tuesday** [1] - 106:10
**turn** [1] - 3:11
**turns** [1] - 98:19
**twelve** [2] - 5:3, 23:8
**twenty** [2] - 13:13, 83:14
**twenty-four** [1] - 83:14
**twice** [2] - 5:4, 23:9
**two** [21] - 3:4, 3:23, 4:2, 4:16, 10:19, 17:24, 23:17, 24:12, 24:16, 32:5, 43:14, 48:23, 49:25, 51:11, 61:14, 71:15, 83:12, 83:14, 88:5, 91:14
**two-year** [1] - 83:14
**typical** [1] - 75:17
**typically** [2] - 10:21, 46:24

# U

**U.S** [10] - 2:18, 24:13, 24:18, 49:13, 86:13, 86:19, 86:24, 102:13, 108:12, 110:18
**Ukrainian** [9] - 27:12, 29:1, 31:4, 62:12, 62:15, 62:19, 66:10, 69:25, 70:11
**ultimately** [3] - 31:14, 64:20, 74:19
**unanimously** [1] - 80:11
**unanticipated** [1] - 26:7
**unartful** [1] - 43:12
**unbelievable** [1] - 49:17
**unconstitutional** [6] - 48:14, 91:4, 99:21, 100:1, 100:11, 102:7
**under** [47] - 9:8, 11:12, 11:25, 12:23, 15:14, 15:19, 17:9, 17:10, 17:17, 17:23, 18:1, 18:10, 19:9, 22:12, 24:1, 25:19, 25:24, 28:21, 32:16, 36:7, 41:7, 45:2, 51:15, 51:16, 51:18, 55:7, 59:3, 59:5, 65:11, 71:6, 77:10, 77:13, 83:7, 84:3, 85:6, 85:8, 94:11, 98:23, 100:7, 103:21, 104:19, 104:20, 104:23, 105:4, 105:9, 107:5, 107:24
**understood** [2] - 24:21, 92:13
**undertaken** [1] - 67:18
**undertakings** [1] - 85:19
**undertook** [1] - 49:22
**unenforceable** [4] - 39:23, 42:16, 43:23, 44:5
**unfiled** [1] - 34:10
**unique** [1] - 82:24
**unitary** [1] - 100:17
**UNITED** [3] - 1:1, 1:3, 1:18
**United** [59] - 1:14, 1:21, 2:22, 2:24, 3:3, 4:9, 4:12, 4:14, 4:17, 8:10, 9:6, 10:5, 10:16, 18:3, 20:15, 20:16, 23:2, 23:5,

24:8, 24:10, 24:17, 25:4, 25:6, 26:14, 40:8, 41:12, 46:14, 77:4, 77:11, 83:9, 83:25, 84:3, 84:7, 84:10, 84:22, 85:13, 86:3, 87:9, 87:11, 87:19, 87:21, 87:24, 88:5, 88:9, 88:10, 88:12, 88:13, 88:14, 88:22, 89:2, 90:4, 90:6, 90:11, 90:17, 92:23, 93:1, 103:1, 110:10
**unlawful** [3] - 4:11, 83:23, 91:2
**unlawfully** [2] - 9:4, 86:15
**unless** [7] - 9:6, 26:23, 83:16, 90:10, 97:1, 98:10, 99:5
**unlike** [1] - 102:24
**unlikely** [1] - 76:18
**unsealed** [1] - 22:16
**unusual** [1] - 82:18
**up** [22] - 3:6, 3:18, 3:20, 7:25, 17:7, 22:10, 35:13, 43:13, 56:17, 56:21, 60:17, 63:16, 74:19, 80:15, 82:20, 100:19, 102:3, 103:23, 104:14, 104:15, 105:18, 110:5
**upwards** [1] - 77:23
**urine** [1] - 9:15
**user** [3] - 4:11, 83:23, 91:3

## V

**valid** [14] - 39:23, 40:21, 42:16, 43:22, 44:4, 44:13, 44:15, 45:5, 46:13, 49:21, 59:7, 90:10, 100:13, 105:6
**validly** [1] - 49:10
**vary** [1] - 77:23
**ventures** [1] - 28:5
**venue** [6] - 23:1, 47:21, 47:22, 60:8, 60:12, 85:13
**version** [1] - 3:6
**versus** [2] - 2:25, 3:3
**vested** [1] - 21:11
**via** [1] - 85:24
**victim** [1] - 26:14
**Victim** [1] - 25:25
**victims** [1] - 26:2

**view** [14] - 17:22, 41:22, 46:11, 47:6, 47:25, 53:6, 53:7, 53:8, 53:12, 83:1, 107:22, 108:23
**views** [1] - 105:10
**VILLAZOR** [1] - 2:3
**violate** [2] - 8:7, 48:13
**violates** [2] - 99:15, 99:17
**violating** [2] - 7:5, 10:7
**violation** [12] - 4:12, 4:17, 23:5, 78:14, 83:24, 86:25, 88:14, 90:17, 93:22, 93:25, 99:5, 99:10
**virtually** [1] - 65:3
**vis** [2] - 18:18
**vis-a-vis** [1] - 18:18
**voice** [1] - 100:3
**void** [3] - 26:22, 56:5, 102:21
**voluntarily** [2] - 23:19, 76:24
**voluntary** [4] - 11:9, 18:1, 98:22, 98:25
**VOSR** [5] - 93:20, 99:3, 102:6, 102:24, 103:5
**VOSR's** [1] - 102:13

## W

**wait** [1] - 18:23
**waive** [9] - 17:3, 17:4, 17:5, 56:3, 60:11, 79:11, 83:20, 84:25, 90:23
**waived** [4] - 76:24, 80:15, 92:1, 92:2
**waiver** [11] - 25:12, 47:21, 47:22, 60:12, 75:19, 75:20, 75:21, 75:22, 76:1, 76:3, 76:10
**waives** [2] - 22:25, 84:13
**waiving** [1] - 6:8
**walk** [4] - 10:25, 13:19, 21:13, 60:6
**Wallace** [1] - 2:22
**WALLACE** [2] - 1:19, 47:5
**wants** [2] - 57:13, 108:13
**warrant** [1] - 10:9
**warrants** [1] - 88:25
**watch** [1] - 2:16
**ways** [3] - 74:13,

101:16, 104:16
**weapon** [1] - 9:3
**wearing** [1] - 9:15
**Wednesday** [1] - 1:8
**week** [1] - 56:19
**weigh** [1] - 51:2
**weighing** [1] - 46:12
**well-documented** [3] - 27:21, 64:2, 64:5
**West** [1] - 65:16
**whatsoever** [3] - 7:16, 16:8, 26:22
**whichever** [2] - 5:4, 23:10
**whole** [4] - 49:11, 63:6, 90:9, 105:13
**wife** [1] - 32:1
**wildly** [1] - 31:2
**willful** [5] - 4:17, 23:4, 23:19, 61:16, 81:17
**willing** [1] - 44:2
**Wilmington** [1] - 1:12
**winter** [1] - 32:4
**wise** [6] - 22:23, 61:22, 77:1, 83:4, 101:4, 108:9
**WISE** [99] - 1:20, 2:21, 3:9, 4:4, 6:15, 7:11, 7:14, 7:20, 10:5, 10:16, 16:10, 17:10, 17:20, 17:24, 18:5, 18:8, 18:12, 18:14, 19:1, 19:16, 19:21, 20:18, 20:25, 21:6, 22:24, 27:7, 35:8, 35:16, 35:25, 36:12, 36:17, 36:23, 37:14, 38:3, 38:12, 38:21, 41:12, 41:22, 42:12, 42:19, 46:4, 46:9, 46:19, 47:1, 47:9, 47:13, 47:16, 47:19, 47:22, 48:6, 48:12, 48:17, 48:23, 49:4, 50:7, 50:11, 50:14, 51:23, 52:6, 52:9, 52:13, 52:16, 52:24, 53:3, 54:8, 54:16, 54:22, 55:9, 55:22, 58:11, 58:14, 68:11, 70:18, 75:5, 80:21, 81:1, 81:4, 83:7, 86:10, 90:20, 91:6, 91:24, 92:10, 93:12, 94:8, 94:15, 94:20, 94:24, 95:2, 95:5, 95:9, 101:10, 102:12, 106:19, 107:2, 107:7, 107:12, 109:23,

110:10
**Wise** [3] - 2:21, 39:3, 60:25
**wish** [2] - 5:16, 81:24
**wishes** [1] - 20:4
**withdraw** [5] - 26:9, 59:18, 59:24, 79:7, 107:15
**withdrawals** [3] - 30:10, 30:24, 31:22
**withdrawing** [1] - 30:5
**withholding** [2] - 30:12, 31:7
**withholdings** [2] - 30:8, 68:16
**WITNESS** [1] - 66:8
**witness** [1] - 102:16
**witnesses** [2] - 5:25, 79:16
**worsened** [1] - 28:7
**worth** [1] - 98:19
**worthwhile** [1] - 81:3
**write** [3] - 67:12, 67:21, 70:15
**writes** [1] - 37:5
**writing** [5] - 8:14, 8:24, 26:19, 86:23, 90:11
**written** [10] - 26:23, 39:2, 39:7, 39:10, 39:15, 50:23, 90:7, 98:19, 101:20, 102:3
**wrote** [1] - 64:9

## Y

**year** [32] - 5:5, 23:10, 28:7, 28:13, 28:14, 28:20, 29:3, 30:9, 30:13, 31:9, 31:16, 33:21, 33:25, 34:2, 34:11, 34:21, 37:19, 37:23, 38:1, 49:17, 65:10, 67:3, 67:18, 67:19, 67:22, 68:9, 74:10, 74:13, 81:15, 81:16, 83:14, 84:1
**year-and-a-half** [1] - 33:21
**years** [11] - 4:22, 4:23, 12:7, 13:13, 26:11, 33:8, 49:14, 55:1, 62:25, 70:17, 73:12
**yesterday** [1] - 19:23
**Yi** [1] - 65:20
**yourself** [1] - 7:24

## Z

**zero** [6] - 23:13, 26:3,

37:13, 38:10, 38:20