DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
     950 Pennsylvania Avenue NW, Room B-200
     Washington, D.C. 20530
     Telephone: (771) 217-6090
     E-mail:    LJW@usdoj.gov, DEH@usdoj.gov
     E-mail:    SFM@usdoj.gov; CMR@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. ALEXANDER SMIRNOV, Defendant. | No. CR 2:24-cr-00091-ODW<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE ANY REFERENCES TO DEFENDANT'S ALLEGED DISLOYALTY; MEMORANDUM IN SUPPORT<br><br>Hearing Date: November 25, 2024<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Otis D. Wright II |
|---|---|

      Plaintiff, the United States of America, by and through its counsel of record, hereby responds in opposition to the defendant's Motion In Limine to Preclude Any References to Defendant's Alleged Disloyalty (ECF No. 147). As addressed in this motion and contrary to the defendant's assertions, the United States is entitled to argue, based on the

charges in this case and their elements as well as the evidence that will be adduced at trial, that during an interview on June 26, 2020, the defendant lied and was deceitful toward the Federal Bureau of Investigation, for whom he served as a confidential human source for more than a decade.  Similarly, the government may argue that the defendant, in lying to and deceiving the FBI, betrayed the trust and confidence bestowed upon him by the FBI and on which the FBI relied during its relationship with him.  Lastly, the government should be permitted to present the defendant's statements made during a subsequent interview with federal law enforcement on September 27, 2023, in which he made statements that are evidence that he lied during his FBI interview on June 26, 2020, and made representations about his self-professed foreign contacts, all as alleged in the indictment.  Evidence and argument relating to the above-referenced matters and issues are relevant to the charges and conduct at issue in this case, would cause no unfair prejudice, and, thus, are admissible at trial.

        This motion is based on the attached memorandum of points and authorities, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated:  November 15, 2024        Respectfully submitted,

        DAVID C. WEISS
        Special Counsel

        */s/*

        LEO J. WISE
        Principal Senior Assistant Special Counsel

        DEREK E. HINES
        Senior Assistant Special Counsel

        SEAN F. MULRYNE
        CHRISTOPHER M. RIGALI
        Assistant Special Counsels

        United States Department of Justice

## MEMORANDUM OF POINTS AND AUTHORITIES

On October 31, 2024, the defendant moved in limine to preclude the government from making any references at trial about his "alleged disloyalty" to the United States. ECF No. 147 ("Def. Mot."). In particular, the defendant argues that the government should not be able to "'dirty him up' by seeking to portray him as a 'Russian Spy' or some sort of equally derogatory, disloyal type of operative." *Id.* at 4. The "derogatory" terms and phrases proffered by the defendant and which he now seeks to preclude at trial—*e.g.*, "'dirty him up'" and "'Russian Spy,'" *id.*, "unpatriotic" and "'double agent,'" *id.* at 5, "'deceitful'" and "'disloyal,'" *id.* at 10—are not quotations drawn from any government statements or briefs but are his own concoctions. The defendant's purported loyalty or patriotism is not relevant to the trial—for all the reasons, for example, set forth in the government's own motion in limine seeking to preclude the defense from referencing or arguing such at trial, *see* ECF No. 154. However, the converse, to the extent that is what the defendant is trying to exclude, as it relates to the specific false statement charged in the indictment, is relevant. The charges in this case are that the defendant lied during, and caused the creation of a false federal record as a result of, his interview with his FBI handler on June 26, 2020. *See* ECF No. 1 ("Indict."). And in so doing, the government is entitled to argue that, in committing the charged conduct, the defendant was—to borrow the defense's term—"'deceitful,'" Def. Mot. at 10, and breached and violated the trust and confidence afforded him by the United States government, vis-a-vis the FBI and his handler. The government also is entitled to introduce at trial, pursuant to Federal Rule of Evidence 801(d)(2), the defendant's own statements proffered during an interview with federal law enforcement on September 27, 2024, wherein he made statements that are evidence of the falsity of his June 26, 2020 statement and provided a new false narrative that, according to the defendant, derived in part from "four different Russian officials." Such argument and evidence, as it relates to the particular facts and charges in this case, are permissible under the Federal Rules of Evidence, and the defendant's motion, therefore, should be denied.

## I. Background

As alleged in the indictment, the defendant was a confidential human source with the Federal Bureau of Investigation ("FBI") for approximately 13 years, including during the time when he committed the criminal conduct at issue. *See* Indict. ¶¶ 1–6. Specifically, during an interview with his FBI handler on June 26, 2020, the defendant lied about "two purported meetings and two purported phone calls" that he had with Burisma Holdings officials about Public Official 1 and Businessperson 1. *Id.* ¶ 23. During those meetings, according to the defendant and as set forth in the indictment, Burisma officials "told him that they were paying Businessperson 1 to 'protect us, through his dad, from all kinds of problems,' and later that they had specifically paid $5 million each to Public Official 1, when he was in office, and Businessperson 1 so that '[Businessperson 1] will take care of all those issues through his dad,' referring to a criminal investigation being conducted by the then-Ukrainian Prosecutor General into Burisma and to 'deal with' the then-Ukrainian Prosecutor General." *Id.* ¶ 24. Regarding the phone calls, the defendant stated in part, a Burisma official further recounted the illicit payments that he was "'pushed to pay'" Public Official 1 and Businessperson 1. *Id.* Prior to those statements to the FBI, the defendant had expressed bias against Public Official 1 in a series of messages exchanged between himself and his handler. *Id.* ¶¶ 8–21.

The defendant's statements and representations concerning his meetings and calls with Burisma officials, as conveyed during the June 26, 2020 interview, were lies. As alleged in the indictment and as will be proven at trial, the defendant did not meet with Burisma officials in late 2015 or 2016, as he claimed, *see id.* ¶¶ 6(d), 27–34, nor did he speak with a Burisma official in 2016/2017 or 2019, as he claimed, *see id.* ¶¶ 35–37. In addition, the indictment alleges that on September 27, 2023, the defendant met with FBI investigators and repeated some of the false claims that he originally made during his June 26, 2020 interview, changed his story as to other claims, and shared a new false narrative concerning Businessperson 1. *Id.* ¶¶ 45–50. Regarding the new false narrative, the

defendant claimed that he saw video footage of Businessperson 1 visiting a particular hotel in Kiev, Ukraine, and that the defendant learned this story from "a high-level official in a foreign country" and "four different Russian officials." *Id.* ¶¶ 51–54.

As a result of his lies, the defendant was charged by indictment, on February 14, 2024, with one count of making false statements to the FBI, in violation of 18 U.S.C. § 1001, and one count of causing the creation a false record, in violation of 18 U.S.C. § 1519.

## II. The United States May Argue at Trial that the Defendant Was Deceitful and Betrayed His Relationship with the FBI, and May Introduce and Argue His Statements Concerning a New False Narrative Provided by Foreign Actors

At trial, the government expects to present evidence, *inter alia*, that (1) the defendant long served as an FBI CHS, and (2) during an interview with his FBI handler on June 26, 2024, the defendant lied about meetings and calls he allegedly had with Burisma officials in which those officials supposedly admitted to bribes involving Public Official 1 and Businessperson 1. In addition, the government intends to present the defendant's own statements made during his interview with FBI on September 27, 2023, which are evidence of the falsity of his June 26, 2020 statement and promoted a new false narrative after communicating with Russian officials.[1] *See* Indict. ¶¶ 41–55.

To convict the defendant at trial of Count One—making false statements to the FBI—the government will need to prove that "the defendant 1) made a statement, 2) that was false, and 3) material, 4) with specific intent, 5) in a matter within the agency's jurisdiction." *United States v. Fortenberry*, 89 F.4th 702, 705 (9th Cir. 2023); 18 U.S.C. § 1001(a). And to convict the defendant at trial of Count Two—causing a false entry in an FBI record—the government will need to prove that "the defendant (1) knowingly

---

[1] The defendant has moved in limine to preclude the government from introducing any of the defendant's statements that he made during his interview on September 27, 2024. *See* ECF No. 149. The government will address that motion and the admissibility of the defendant's statements in its opposition to that motion. The government respectfully incorporates the arguments set forth in that opposition brief here, insofar as those arguments have any bearing on this matter. Similarly, the government respectfully incorporates here its motion in limine to exclude specific instances of conduct, *see* ECF No. 152, insofar as that motion also is relevant to the present issues as explained above.

committed one of the enumerated acts in the statute, such as [causing the making of a false entry]; (2) [in] 'any record, document, or tangible object'; (3) with the intent to obstruct an actual or contemplated investigation by the United States of a matter within its jurisdiction." *United States v. Singh*, 979 F.3d 697, 715 (9th Cir. 2020); 18 U.S.C. § 1519; *see also* 18 U.S.C. ¶ 2(b) (causing another to commit criminal act).

Given the allegations and evidence in this case, and the offenses charged and their essential elements, the government is entitled to argue that the defendant was deceitful toward the FBI, and breached and violated the FBI's trust and confidence in him. The defendant's state of mind deceit is an element of the offenses against him. To be convicted, he must have intentionally lied to the FBI and knowingly caused a false entry to be made in a federal record. *See* 18 U.S.C. §§ 1001(a), 1519. The government, therefore, may—and, indeed, must—present evidence and argue that the defendant deceived (or attempted to deceive) the FBI when claiming that he met and spoke with Burisma officials who told him about a bribery scheme involving Public Official 1 and Businessperson 1. In other words, evidence and argument relating to the defendant's deceit and deceitful conduct is relevant to the charges at issue. *See* Fed. R. Evid. 401. Moreover, evidence and argument relating to the defendant's deceit is not unfairly prejudicial pursuant to Federal Rule of Evidence 403; rather, it is essential to the government's case. Proving and arguing the defendant's deceit is at the heart of the criminal charges in this case.

Similarly, the government may argue at trial that the defendant, a longtime FBI CHS, breached and violated the FBI's trust by intentionally providing false information to the FBI. The fact that the FBI trusted the defendant, and he betrayed that trust, is relevant to the materiality element of Section 1001. *See* 18 U.S.C. ¶ 1001(a)(1); *Fortenberry*, 89 F.4th at 705. And the defendant's longstanding CHS relationship and familiarity with the FBI is relevant in showing that he knew and understood that his false statements could influence an actual or contemplated investigation as encompassed in Section 1519. *See*

18 U.S.C. ¶ 1519; *Singh*, 979 F.3d at 715. Therefore, the government is entitled to argue that the defendant betrayed his relationship with, and the confidence entrusted in him by, the FBI. Such argument is relevant to the two criminal charges, *see* Fed. R. Evid. 401, and, given its relevance and centrality to the charges, will not unfairly prejudice the defendant, *see* Fed. R. Evid. 403.

Further, insofar as the defendant's motion seeks to preclude the government from referencing or admitting into evidence his contacts with foreign actors including Russian officials, his motion should be denied. Again, the indictment alleges that the defendant shared a new false narrative with the FBI during his interview on September 27, 2024. *See* Indict. ¶¶ 51–54. The defendant, by his own admission, learned the story from "a high-level official in a foreign country" and "four different Russian officials." *Id.* ¶ 52. During that same interview with the FBI, the defendant repeated some of the false claims that he originally made during his June 26, 2020 interview, which are the subject of the charged offenses here, and changed his story as to other claims. *See id.* ¶¶ 45–50. Consequently, the defendant's statements concerning this new false narrative and the alleged source of that narrative are inextricably intertwined with his continued, ongoing false statements to the FBI related to Burisma; are relevant to the conduct charged in this case; and should be admissible at trial. There is nothing unfairly prejudicial in admitting the defendant's own statements about the new false narrative when they concern the same person as the false statements for which the defendant is charged (*i.e.*, Businessperson 1), relate to foreign affairs just as the charged false statements do, and, like the charged statements, are demonstrably false. The government, therefore, should be able to present the jury with the defendant's own admitted contacts with foreign actors, including Russian officials, as it relates to the specific conduct alleged and charged in the indictment. The government does not intend to argue at trial, based on his September 27, 2023 interview, that the defendant is a "Russian Spy," a "double agent," or "unpatriotic," thereby further ameliorating any risk of unfair prejudice. Def. Mot. at

4–5. The government will simply introduce the defendant's statements as he presented them to federal law enforcement and as they are alleged in the indictment.

The defendant proffers no legal authority justifying the exclusion of the above-referenced arguments or evidence. And the cases cited by the defendant are inapposite to the present matter. *See, e.g.*, *United States v. Lawrence*, 189 F.3d 838 (9th Cir. 1999) (concerning admissibility of evidence about defendant's "unconventional" marriage in unrelated mail and bankruptcy fraud case); *United States v. Fawbush*, 634 F.3d 420 (8th Cir. 2011) (admissibility of adult daughters' testimony about defendant's prior sexual abuse in case involving sexual abuse of other minor children approximately eight or more years later, decided primarily on Rule 404(b) grounds); *United States v. Schulte*, S-2 17 Cr. 548, 172020 U.S. Dist. LEXIS 9818 (S.D.N.Y. Jan. 17, 2020) (admissibility of defendant's post-arrest statements regarding his anger toward government for arrest and indictment and racist remarks in classified information case). What is relevant and admissible under the Federal Rules of Evidence depends largely on the specific facts, charges, and circumstances in each particular case, and here it is clear that the defendant's deceit, betrayal, and admissions are relevant and admissible as they relate to the charges of making false statements to the FBI and causing false entries in an FBI record.

With all this in mind, it bears highlighting that a critical distinction, *inter alia*, between the government's motion in limine to exclude irrelevant factual issues (including any argument or references to the defendant's general patriotism and loyalty to the United States), *see* ECF No. 154, and the government's opposition to the defendant's present motion is that any arguments or references that the government will make at trial about the defendant's deceit and "disloyalty" toward the FBI or about his foreign contacts *will be specific to only the criminal conduct charged in the indictment*. In other words, should the government argue that the defendant deceived the FBI and betrayed its trust and reliance upon him, those arguments will be tethered to the false statement made by the defendant to the FBI on June 26, 2020, as charged in the indictment. Similarly, should the

government present evidence that the defendant had contacts with foreign actors, that evidence and any related arguments will be tethered to the indictment's averments (specifically those concerning the September 27, 2023 interview). The government will not do as the defendant proposes to do impermissibly—present evidence (or argument) of specific instances of conduct that are entirely unrelated, temporarily or substantively, from the charged crimes and conduct. *See* Def. Mot. at 4 (noting that defendant seeks to present at trial "specific instances of [defendant] providing helpful information, with reproach-free conduct"); *see also* ECF No. 152 (government's motion in limine to exclude specific instances of conduct).[3] But the government is entitled to argue the evidence and its significance to the jury with vigor and incisiveness. *See, e.g.*, *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993) ("[C]ourts must allow the prosecution to strike 'hard blows' based on the evidence presented and all reasonable inferences therefrom." (citations omitted)); *United States v. Boyd*, 640 F.3d 657, 669 (6th Cir. 2011) (affording "wide latitude to a prosecutor during closing argument" and noting that "[t]he prosecution is not required to present closing arguments that are devoid of all passion" (citations and internal quotation marks omitted)); *United States v. Johnson*, 89 F.4th 997, 1002 (7th Cir. 2024) (reversing district court's exclusion of government evidence under Rule 403 where there is "general presumption that the prosecution is entitled to tell 'a colorful story with descriptive richness' and 'evidentiary depth'" (quoting *Old Chief v. United States*, 519 U.S. 172, 187–90 (1997))); *United States v. Hobbs*, 2024 U.S. App. LEXIS 27066, at *4 (10th Cir. Oct. 25, 2024) (in rejecting defendant's Rule 403 argument against

---

[3] According to the defendant, another related basis for excluding references to his "disloyalty" at trial is—in the defense's estimation—evidence that demonstrates the defendant's "undivided, years-long loyalty to the United States." Def. Mot. at 4–5. Thus, the defendant argues, such references to his "disloyalty" "would be false" and precluded by Federal Rule of Evidence 402. *Id.* at 7. But, of course, whether the defendant was honest and truthful to the FBI *at the time and about the matter for which he is charged* is a matter for the jury to decide. And that issue cannot be addressed or resolved by specific instances of past conduct. *See* Fed. R. Evid. 404(a)(1), 405(b); ECF Nos. 152.

government's trial evidence, "we think it is the government's call on how to try the case and address potential inferences from the testimony (citing *Old Chief*, 519 U.S. at 186–87)); *United States v. Gregory*, 54 F.4th 1183, 1210–11 (10th Cir. 2022) ("Arguments may be forceful, colorful, or dramatic," so long as they are "supported by the facts and circumstances properly in evidence[.]").

Therein lies the key difference between what is admissible under the Federal Rules of Evidence and what is not: the government may present evidence and argue that which is central to the charges and criminal conduct at issue—*e.g.*, the defendant's lies, deceit, and betrayal of his trusted relationship with the FBI as it is specifically charged and related to the elements of the two criminal counts in this case. But the defendant cannot simply present generalized evidence or argument concerning his supposed good deeds or conduct over the years in a generalized attempt to disprove the specific lies and misconduct for which he is charged or to invite jury nullification. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); *see also* ECF No. 152 (government's motion in limine to exclude specific instances of conduct); ECF No. 154 at 7–8 (government's motion in limine to exclude argument or evidence that the defendant was "loyal" to or "servant of the United States"); *cf. United States v. Covington*, No. 3:23-cr-68, 2023 U.S. Dist. LEXIS 218458, at *8 (E.D. Va. Dec. 7, 2023) (granting government's motion to exclude evidence of specific instances of conduct) ("[E]ven if the jurors were presented with evidence—and believed—that the Defendants . . . possessed general truthful or honest character, the jurors would be free to find that the Defendants nevertheless made the alleged false statements or false report in the instances in question.").

### III. Conclusion

For the reasons set forth above, the Court should deny the defendant's Motion In Limine to Preclude Any References to Defendant's Alleged Disloyalty.