**O**

# United States District Court
# Central District of California

UNITED STATES OF AMERICA,

Plaintiffs,

v.

ALEXANDER SMIRNOV,

Defendants.

Case № 2:24-CR-00091-ODW

**ORDER RE MOTIONS IN LIMINE [146]–[154]**

## I.    INTRODUCTION

Pending before the Court are Defendant Alexander Smirnov's four Motions in Limine, (ECF Nos. 146–149), and the Government's five Motions in Limine, (ECF Nos. 150–154).  For the reasons discussed below, the Court rules as follows.

## II.    BACKGROUND

Defendant was indicted on two counts: (1) making false statements to federal law enforcement in violation of 18 U.S.C. § 1001 (Count I); and (2) causing the creation of a false record in a federal investigation in violation of 18 U.S.C. § 1519 (Count II).  (Indictment ¶¶ 56–58, ECF No. 1.)  Defendant has pleaded not guilty to both charges.

### III.    DEFENDANT'S MOTIONS IN LIMINE

Defendant moves to exclude or admit certain evidence at trial in four motions in limine ("DMIL").

### A.    Defendant's MIL No. 1, ECF No. 146: GRANTED

Defendant moves to preclude any reference to his nine lawfully owned firearms as not relevant and unduly prejudicial.  (DMIL1, ECF No. 146.)  The Government responds that it does not intend to introduce evidence concerning Defendant's lawfully owned firearms that were seized from Defendant's residence in its case in chief, but reserves the right to do so with photographs or references only if Defendant disputes that other items seized from his residence belong to him.  (Gov't Opp'n DMIL1, ECF No. 172.)  The Government intends to introduce electronic devices and a hat seized from Defendant's residence, which it contends are evidence of Defendant's bias against Public Official 1 and relevant to Defendant's motive for providing false and derogatory information to the FBI.  (*Id.*)

That the Government seized firearms that Defendant undisputedly owns from Defendant's residence does not make it more or less likely that Defendant owns other items also seized from the residence, so it is simply not relevant.  Fed. R. Evid. 401, 402.  Further, to the extent this fact could be considered relevant, evidence that Defendant lawfully owns nine firearms is inflammatory and likely to inflict unfair prejudice on Defendant.  Fed. R. Evid. 403.

Accordingly, the Court **GRANTS** Defendant's Motion in Limine No. 1.  (ECF No. 146.)

### B.    Defendant's MIL No. 2, ECF No. 147: GRANTED IN PART, DENIED IN PART

Defendant moves to preclude any references to his alleged disloyalty, anticipating that the Government will "dirty him up" as a "Russian Spy"; he asks the Court to prohibit evidence or references suggesting that Defendant was "unpatriotic" or a "double agent."  (DMIL2, ECF No. 147.)  The Government responds that it has

no intention of "dirty[ing]" Defendant up, and Defendant's purported loyalty or patriotism are wholly irrelevant to the case. (Gov't Opp'n DMIL2, ECF No. 173.) The Government intends to present evidence that Defendant lied and deceived his FBI handler when he falsely reported the facts *charged in the indictment*, and that by doing so Defendant betrayed the trust and confidence the FBI had bestowed on him. (*Id.*)

The parties argue past each other. To the extent Defendant seeks to preclude evidence of his *general characteristics* of loyalty, disloyalty, patriotism, or lack thereof, the Court grants the motion. However, the Government asserts that it has no intention of introducing evidence to *generally* paint Defendant as a disloyal character and instead will *specifically* tether any references to Defendant's falsehoods to the indictment and charges in this case. Thus, to the extent Defendant seeks to exclude such specifically relevant references, the Court denies the motion. Additionally, if Defendant opens the door by offering reputation or opinion testimony about his loyalty, then the Government may rebut such testimony. (*See* discussion *infra* Section IV.E. (addressing Defendant's ability to offer evidence regarding his loyalty to the United States).)

Accordingly, the Court **GRANTS IN PART** Defendant's Motion in Limine No. 2, (ECF No. 147), but **only to the extent** Defendant seeks to exclude untethered evidence of Defendant's general character of disloyalty or untruthfulness. The Government may introduce evidence and argument that Defendant lied and deceived his FBI handler with respect to the conduct charged in the indictment.

## C. Defendant's MIL No. 3, ECF No. 148: DENIED

Defendant moves for judicial notice of the July 26, 2023, hearing transcript in *United States v. Biden*, CR 23-61-MN & CR 23-mj-274-MN (D. Del. 2023), the plea hearing concerning the Hunter Biden firearms and tax cases. Defendant contends this transcript is relevant to his theory of defense that his prosecution "smacks of political bias." (DMIL3 at 7.) The Government responds that Defendant's motion is frivolous,

the transcript has no relevance, and it is inadmissible.  (Gov't Opp'n DMIL3, ECF No. 175.)

The proffered transcript is not relevant here; it does not involve Defendant or any witnesses in this case.  An irrelevant fact is not an adjudicative fact for purposes of Federal Rule of Evidence ("FRE") 201 and the Court does not take judicial notice of this irrelevant transcript.  Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 3.  (ECF No. 148.)

**D.    Defendant's MIL No. 4, ECF No. 149: DENIED**

Defendant moves to exclude evidence from his September 27, 2023 FBI interview because he claims it is "uncharged, *post-hoc* conduct [the Government will use] to establish an adverse character trait," Defendant's dishonesty.  (DMIL4 at 4, ECF No. 149.)  The Government responds that evidence from the 2023 FBI interview is not character evidence at all, but instead is a party opponent admission, admissible pursuant to FRE 801(d)(2).  (Gov't Opp'n DMIL4, ECF No. 176.)  The Government argues Defendant's statements at the 2023 interview are highly probative: the 2023 statements are evidence that Defendant's 2020 statements, as charged in the indictment, are false because Defendant could not keep his story straight in 2023 about his previous reporting; and where Defendant's 2020 statements *are* the charged conduct, his 2023 statements are *evidence proving* that conduct.  (*Id.*)

The Court finds Defendant's statements during the September 27, 2023 FBI interview are admissible as party opponent admission.  These statements are not being used as inadmissible character evidence, and they are highly probative with a specific admissible purpose, to prove the charged conduct.  Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 4.  (ECF No. 149.)

## IV.    GOVERNMENT'S MOTIONS IN LIMINE

The Government moves to exclude certain evidence at trial in five motions in limine ("GMIL").

## A.    Government's MIL No. 1, ECF No. 150: GRANTED

Defense offers Gregory Scott Rogers as an expert in the use of confidential informants and undercover operations.  (GMIL1 at 1, ECF No. 150; Decl. Leo J. Wise ISO GMIL1 ("Wise Decl.") Ex. 1 ("Expert Report"), ECF No. 150-2.)  According to his Expert Report, Rogers plans to offer the following testimony:

- Defendant was poorly handled as a confidential human source ("CHS") from the outset, and even though numerous deficiencies on the part of his handler were noted over the years, the handler was allowed to continue operating Defendant as a CHS, "likely due to how effective" he was as a CHS.

- One of the clearly demonstrable problems noted by the file reviewer was a repeated lack of required reporting on the part of the handler.

- A CHS providing the type and amount of information provided by Defendant should be handled with the utmost diligence.

- Defendant should have been polygraphed concerning his reporting on the Biden family in an effort to verify the accuracy of that reporting.

(Expert Report 5.)  The Government moves to exclude Rogers's testimony for several reasons: (1) his report fails to comply with Federal Rule of Criminal Procedure 16, (2) his testimony will not be helpful to the trier of fact because it is irrelevant and therefore should be excluded under FRE 702, and (3) his opinions are not based on sufficient facts or reliable methodology as required for expert testimony under FRE 702.  (*See* GMIL1.)  Defendant responds that Rogers's testimony is material and essential to Defendant's theory of defense, that Defendant disclosed the Burisma information to his handler in 2017, but his handler did not record it, consistent with his poor handling of Defendant.  (*See* Def. Opp'n GMIL1, ECF No. 167.)

Rogers's opinion concerning whether Defendant's handler was sloppy or shoddy in his handling of Defendant in general is not relevant to whether Defendant lied or caused a false report in 2020.  At most, as discussed in the next section, only certain instances of the FBI handling agent's mistakes may be relevant and, to the

limited extent relevant, an expert is unnecessary to offer these purported mistakes. Additionally, that Defendant should have been handled with the "u[t]most diligence," that he should have been polygraphed, and that the Government used Defendant "likely due to how effective" he was, are not relevant to the issues here.  As Rogers's proffered expert opinion is not relevant, it will not help the trier of fact resolve any fact of consequence to the charged conduct and is excluded.

Accordingly, the Court **GRANTS** the Government's Motion in Limine No. 1, (ECF No. 150), and **EXCLUDES** Rogers's expert testimony.

## B.    Government's MIL No. 2, ECF No. 151: GRANTED IN PART, DEFERRED IN PART

The Government moves to exclude the "alleged mistakes," i.e., documentation errors, of Defendant's FBI handling agent.  (GMIL2, ECF No. 151.)  The Government argues that evidence of the FBI handling agent's purported documentation errors has no relevance to the charged offenses and will only muddy the waters for the jury.  The Government identifies three administrative reports that defense counsel has indicated an intent to use: (1) a February 13, 2013 Human Source Validation Report; (2) a February 13, 2013, to March 18, 2021 Standard Validation Report; and (3) a March 18, 2021, to November 16, 2023 Standard Validation Report.  (GMIL2 at 1–2.) Defendant responds that these reports are relevant and material to his defense, which is, in part, that he made the disclosure in 2017 but his handler failed to document it. Defendant seeks to use these reports to establish that the handling agent made documentation errors during the time period at issue.  (Def. Opp'n GMIL2, ECF No. 168.)  Defendant also argues the reports contain evidence of specific incidents of conduct demonstrating his character for truthfulness, as they reflect that he cooperated and assisted the government for more than a decade.  (*Id.*)

The Court finds the third report irrelevant and it is therefore excluded. Defendant's proffer about the contents of the report do not relate to the handler's past documentation errors.  Instead, Defendant states that the report shows that Defendant

was no longer fully under the handler's control; that Defendant may be committing unauthorized illegal activity; and that the media's reporting of Defendant would vitiate his ability to continue to function as a CHS.  These points are not relevant to this case.

In contrast, the first and second report reflect potentially relevant information. According to Defendant, the reports show that the handler did not properly document certain information; for example, the handler identified Defendant's wrong country of birth in his file.  However, without more, these documentation errors are simply not relevant.  The Government appears to intend to offer as evidence the fact that Defendant's allegedly false statements do not appear in any pre-2020 reports as proof that Defendant made a false statement when he did report them in 2020.  If the Government intends to prove that such statements would have been in the reports had Defendant actually made them at the time, then Defendant should be allowed to rebut this fact with evidence that the handler has omitted or presented inaccurate information in past reports.  Such evidence concerning previous documentation errors could be relevant in minimizing the importance of the absence of Burisma statements and meetings in past reports.

However, at this time, the parties have not provided the Court with the information necessary to make this determination, including how the Government intends to prove that the reports would have had Defendant's statements about Burisma if he had made them, or how Defendant intends to prove that the information in the reports he seeks to admit is incorrect or false.  As one example, if the Government offers FBI policy as evidence that the information would have been in the reports if it had been disclosed, then Defendant should be able to use such policies to show that the handler has not properly documented information in the past, making it more likely that the handler did not document the disclosure at issue.  Ultimately, without additional information, the Court cannot yet rule on the admissibility of the documentation errors appearing in the first two reports, until the Government has

introduced the fact that pre-2020 reports contain no Burisma-related statements from Defendant at trial.

Accordingly, The Court **GRANTS IN PART** and **DEFERS IN PART** ruling on the Government's Motion in Limine No. 2.  (ECF No. 151.)  The Court **GRANTS IN PART** the motion and **EXCLUDES** the third, March 18, 2021, to November 16, 2023 Standard Validation Report.  The Court **DEFERS IN PART** regarding whether to permit introduction of documentation errors appearing in the first February 13, 2013 Human Source Validation Report and the second February 13, 2013, to March 18, 2021 Standard Validation Report.

## C.     Government's MIL No. 3, ECF No. 152: GRANTED

The Government moves to exclude "specific instances of conduct" evidence that Defendant intends to use, as impermissible pursuant to FRE 405(b).  (GMIL3, ECF No. 152.)  Defendant responds that "specific instances of conduct" evidence is admissible here under FRE 405(b) as evidence of his character for truthfulness, honesty, helpfulness, or reliability.  (Def. Opp'n GMIL4, ECF No. 169.)  He argues he will use this evidence to negate the mens rea of the charged conduct, "knowingly," by establishing he is a truthful and reliable source.  (*Id.*)

FRE 404(a)(2)(A) permits a defendant to offer evidence of the defendant's pertinent character trait, subject to the limitations of FRE 405.  FRE 405(b) permits "specific instances of conduct" evidence to establish a character trait only where that character trait is an "essential element of a charge, claim, or defense."  Otherwise, a defendant is limited to proving the pertinent character trait through reputation or opinion evidence, with an exception for cross examination.  Fed. R. Evid. 405(a).  To establish a character trait is an "essential element" for purposes of FRE 405(b), the court considers whether "proof, or failure of proof, of the character trait by itself [would] actually satisfy an element of the charge, claim or defense."  *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).

Here, Defendant's character for truthfulness is *not* an essential element of the charges or defense, so specific instances tending to show that character trait are inadmissible under FRE 405(b).  The two-count indictment charges Defendant with (1) making specific false statements to a government agent, in violation of 18 U.S.C. § 1001; and (2) causing falsification of specific records in a federal investigation, in violation of 18 U.S.C. § 1519.  Defendant's general character for truthfulness plays no part in establishing whether he lied and/or caused a false report on the *specific* occasion charged here.  Defendant argues his character for truthfulness is an essential element of his defense, to show he was truthful and was never flagged as suspicious in his time as a CHS.  But whether he was generally truthful in other specific instances over multiple years provides no defense if he was not truthful on the occasion charged.

Accordingly, the Court **GRANTS** the Government's Motion in Limine No. 3 and **EXCLUDES** Defendant's "specific instances of conduct" evidence.  (ECF No. 152.)

**D.    Government's MIL No. 4, ECF No. 153: GRANTED**

The Government moves to preclude Defendant from introducing evidence, argument, or questioning that suggests the prosecution is "politically motivated, that the government is selectively or vindictively prosecuting him, that government agents or prosecutors engaged in outrageous government misconduct," that his prosecution is unlawful, costly, or inappropriately funded, or that the prosecutors or agents are conflicted.  (GMIL4, ECF No. 153.)  Defendant does not specifically oppose these arguments, and instead responds that evidence and inquiry into the FBI's conduct, bias, and shoddy record-keeping are relevant and essential to Defendant's defense.  (Def. Opp'n GMIL4 at 5, ECF No. 170.)  He argues that the heart of his defense is that his handler's shoddy work and negligent record keeping is consistent with the handler's failure to record Defendant's disclosure related to Burisma.  (*Id.*)  However, this defense concerns his handler's behavior, not the prosecution's.

1    The Court **GRANTS** the Government's Motion in Limine No. 4, (ECF
2  No. 153), and **EXCLUDES** evidence, argument, or questioning that suggests the
3  prosecution is politically motivated, vindictively prosecuting Defendant, or the other
4  inflammatory accusations the Government lists for exclusion.

5  **E.     Government's MIL No. 5, ECF No. 154: GRANTED IN PART, DENIED**
6           **IN PART**

7    The Government moves to exclude five factual issues that it contends are
8  irrelevant to the case: **(1)** Defendant's potential punishment; **(2)** Defendant's pretrial
9  detention status and medical condition of his eyes; **(3)** Defendant's claims that the
10 United States directed him to meet with Burisma in April 2017 and with a foreign
11 intelligence in 2023; **(4)** that Defendant's handler used a personal phone to
12 communicate with Defendant; and **(5)** that Defendant is "loyal" to or a "servant of"
13 the United States.  (GMIL5, ECF No. 154.)

14   Defendant responds to each issue: **(1)** Defendant will not raise potential
15 punishment; **(2)** Defendant will not raise his pretrial detention status but contends that
16 his eye condition may arise in a factual context where his ability to perceive events is
17 at issue; **(3)** there is evidence that suggests the United States directed him to meet with
18 Burisma in April 2017; **(4)** Defendant's handler's use of a personal phone to
19 communicate with Defendant is relevant to the type of informal relationship
20 Defendant shared with the handler; and **(5)** Defendant intends to use specific instances
21 of his good conduct as well as reputation and opinion evidence to establish his
22 character for lawfulness and loyalty.  (Def. Opp'n GMIL5, ECF No. 171.)

23   As discussed below, the Court **GRANTS IN PART** the Government's Motion
24 in Limine No. 5, (ECF No. 154), and **EXCLUDES** evidence, arguments, or references
25 to categories (1), (2), and (3), and specific instances of conduct evidence in
26 category (5).   The Court **DENIES IN PART** the Government's Motion in Limine
27 No. 5 as to evidence in category (4) and reputation or opinion testimony in
28 category (5).

*1.    Potential Punishment*

Defendant does not oppose and will not raise his potential punishment at trial. The Government's Motion in Limine No. 5 as to category (1) is therefore **MOOT**.

*2.    Pretrial Detention Status and Medical Eye Condition*

Defendant agrees not to raise his pretrial detention status at trial. Defendant has not explained how his eye condition is relevant to the issues in the case, and the Court does not see how his ability to perceive events at the 2015 and/or 2016 allegedly nonexistent meetings with Burisma will be relevant. Accordingly, the Government's Motion in Limine No. 5 as to category (2) is tentatively **GRANTED**. However, if the Government opens the door to Defendant's ability to perceive events or Defendant proffers why this ability to perceive events is relevant, the Court may reconsider whether Defendant can introduce evidence regarding his eye condition.

*3.    Claims that U.S. Government Directed Defendant to Certain Meetings*

The indictment charges Defendant with lying to his handler in 2020 about meetings with Burisma that he claims occurred in 2015 and/or 2016. (Indictment ¶¶ 6(b)–(c).) And the indictment already alleges that Defendant had contact with executives from Burisma in 2017. (*Id.* ¶ 6(d).) Whether the United States directed him to meet with Burisma in April 2017 (as opposed to the fact that he met with Burisma in 2017) has no bearing on the charges. Accordingly, the Court **GRANTS** the Government's Motion in Limine No. 5 as to category (3).

*4.    Handler's Personal Phone*

That Defendant's handler used a personal phone to communicate with Defendant may be somewhat relevant to the charges in this case. Defendant contends the informal relationship he shared with his handler supports that Defendant reported things to the handler that the handler did not document. This could support a defense that Defendant had previously reported a 2015/2016 Burisma meeting, even though no such meeting appears in the FBI reports. The Government does not address whether the evidence is relevant, and instead contends that "[t]here is no evidence to support

this claim." That may be true, and if Defendant offers no admissible evidence about the handler using his personal phone, then, as with any argument, Defendant would not be permitted to argue at opening or closing that Defendant's handler used a personal phone. Until that time, Defendant may offer *evidence* that his handler used a personal phone to communicate with him. Accordingly, the Court **DENIES** the Government's Motion in Limine No. 5 as to category (4).

        5.    *Loyalty; Patriotism*

        Finally, Defendant's loyalty, patriotism, or service to the United States may be relevant to the charges or defense. If Defendant is truly loyal and patriotic, a jury could find that makes it less likely that he would lie to the federal government. As a general matter, FRE 404 prohibits evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with the character or trait. Fed. R. Evid. 404(a)(1). However, there is an exception where a defendant may offer evidence of the defendant's *pertinent* trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it. Fed. R. Evid. 404(2)(A). FRE 405(a) permits a defendant to use reputation or opinion testimony to prove a pertinent character or trait. Therefore, Defendant may use reputation or opinion evidence to show his loyalty, patriotism, or service to the United States. If so offered, the Government may cross-examine Defendant's character witness with relevant specific instances of Defendant's conduct. Accordingly, to the extent Defendant seeks to use reputation or opinion testimony to prove his character trait for loyalty or patriotism, the Government's Motion in Limine No. 5 as to category (5) is **DENIED IN PART**.

        However, to the extent Defendant seeks to use "specific instances of conduct" evidence, it is impermissible under FRE 405(b). As discussed above, FRE 405(b) permits such evidence only when a person's character or character trait is an essential element of a charge, claim, or defense. But loyalty, patriotism, and service are not essential elements of the charges or defense. As such, specific instances of conduct

evidence is excluded and the Government's Motion in Limine No. 5 as to category (5) "specific instances" evidence is **GRANTED IN PART**.

In sum, the Court **GRANTS IN PART** the Government's Motion in Limine No. 5, (ECF No. 154), and **EXCLUDES** evidence, argument, or questioning concerning categories (1), (2), and (3), and specific instances evidence in category (5). The Court **DENIES IN PART** the Government's Motion in Limine No. 5 regarding evidence in category (4) and reputation or opinion testimony in category (5).

## V.    CONCLUSION

For the reasons discussed above, the Court rules as follows on the parties' Motions in Limine:

- Defendant's MIL No. 1, to preclude reference to Defendant's lawfully owned firearms, ECF No. 146: **GRANTED**;

- Defendant's MIL No. 2, to preclude reference to Defendant's alleged disloyalty, ECF No. 147: **GRANTED IN PART**, **DENIED IN PART**;

- Defendant's MIL No. 3, to take judicial notice of hearing transcript, ECF No. 148: **DENIED**;

- Defendant's MIL No. 4, to preclude evidence from Defendant's FBI interview on September 27, 2023, ECF No. 149: **DENIED**;

- Government's MIL No. 1, to preclude proposed defense expert witness Gregory Scott Rogers, ECF No. 150: **GRANTED**;

- Government's MIL No. 2, to exclude FBI handling agent's alleged mistakes, ECF No. 151: **GRANTED IN PART, DEFERRED IN PART**;

- Government's MIL No. 3, to exclude impermissible "specific instances of conduct" evidence, ECF No. 152: **GRANTED**;

- Government's MIL No. 4, to exclude alleged defects in prosecution, ECF No. 153: **GRANTED**; and

- Government's MIL No. 5, to exclude irrelevant factual issues, ECF No. 154: **GRANTED IN PART, DENIED IN PART.**

**IT IS SO ORDERED.**

November 26, 2024

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**