DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 2:24-CR-00091-ODW |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM IN MITIGATION** |
| v. | ) | **OF PUNISHMENT** |
| | ) | |
| ALEXANDER SMIRNOV, | ) | |
| | ) | **Honorable Otis D. Wright II** |
| Defendant, | ) | **January 8, 2025 at 10:30 a.m.** |
| _____ | ) | |

Comes Now, Defendant Alexander Smirnov, by and through his counsel of record, David Z. Chesnoff, Esq., and Richard A. Schonfeld, Esq., of the law firm of Chesnoff & Schonfeld, and hereby submits his Sentencing Memorandum in Mitigation of Punishment in advance of the sentencing hearing set for January 8, 2025.

1

At the time of filing this Sentencing Memorandum, Mr. Smirnov has not received the Presentence Investigation Report ("PSR"), which is being produced on an expedited basis. Mr. Smirnov reserves the right to respond and/or object to the PSR at the time of the sentencing hearing.

This Memorandum is made and based upon the papers and pleadings on file herein, any exhibits to this Memorandum, and any argument that is heard or testimony that is adduced.

Dated this 24th day of December, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

## **TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................... 6

II.     PROCEDURAL HISTORY AND PLEA NEGOTIATIONS............ 6

III.    APPLICATION OF THE FOREGOING 3553 FACTORS MILITATES IN
        FAVOR OF A SENTENCE OF 48 MONTHS.......................... 8

        1.      The history and characteristics of the defendant............ 8

                i.      Mr. Smirnov's background.......................... 8

                ii.     Letters of Support......................................15

        2.      The need for the sentence imposed.......................... 19

        (A)     to reflect the seriousness of the offense, to promote respect for
                the law, and to provide just punishment for the
                offense................................................................ 19

        (B)     to afford adequate deterrence to criminal conduct.......... 19

        (C)     to protect the public from further crimes of the defendant.20

        (D)     to provide the defendant with needed educational or vocational
                training, medical care, or other correctional treatment in the most
                effective manner.................................................... 21

        3.      The kinds of sentences available............................. 21

        4.      Guidelines, Policy, and Other Criteria of Sentencing
                Commission......................................................... 24

        5.      The need to avoid unwarranted sentence disparities among
                defendants with similar records who have been found guilty of
                similar conduct................................................... 24

        6.      The need to provide restitution to any victims of the
                Offense............................................................. 25

IV.     CONCLUSION...................................................................26

1

**<u>TABLE OF AUTHORITIES</u>**

2

3    *Gall v. United States,*
     552 U.S. 38, 52 (2007)……………………………………………….. 8

4

5    *Pepper v. United States,*
     562 U.S. 476, 488 (2011)………………………...……...………..8

6

7    *United States v. Cole,*
     622 F. Supp. 2d 632 (N.D. Ohio 2008)……………………………….20

8

9    *United States v. Cole,*
     765 F.3d 884 (8th Cir. 2014)…………………………………….... 22

10

11   *United States v. Edwards,*
     595 F.3d 1004 (9th Cir. 2010)……………………………….… 22

12

13   *United States v. Evans-Martinez,*
     611 F.3d 635 (9th Cir. 2010)…………………...……...……….... 13

14

15   *United States v. Fred E. Cooper,*
     394 F.3d 172 (3rd Cir. 2005)……………………………….…24

16

17   *U.S. v. Nesbeth,*
     188 F.Supp.3d 179 (E.D. N.Y. 2015)……………………………….. 20

18

19   *United States v. O'Leary,*
     No. CR 19-33-M-DLC, 2021 WL 3677109 (D. Mont. Aug. 19, 2021)……...14

20

21   *United States v. Roth,*
     No. 05 CR 792-5, 2008 WL 686783, *3-4, 7 (N.D. Ill. Mar. 11, 2008)……...22

22

23   *United States v. Stern,*
     590 F.Supp.2d 945 (N.D. Ohio 2008)…………………………...…19

24

25   *United States v. Whitehead,*
     532 F. 3d 991 (9th Cir. 2008)……………………………….….. 22

26

27   *United States v. Wood,*
     5:05-CR-00044, (D. N.C. 2010)……………………………….. 22

28

## <u>TABLE OF EXHIBITS</u>

<u>**Exhibit No.**</u>                <u>**Description**</u>

1.                FILED UNDER SEAL

2.                FILED UNDER SEAL

3.                Letter from Dr. H. George Tanaka

4.                Letter from Anet Smirnov

5.                Letter from Ekaterina Li

6.                Letter from Anna Stone

7.                Letter from Angelika and Anatoly Baryshevs

8.                Letter from Linor Shefer

9.                Letter from Diana Lavrenyuk

10.               Letter from Alexei Odesskiy

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mr. Smirnov accepts responsibility for his conduct which led to his conviction in this case. As will be discussed below, Mr. Smirnov is a dedicated family member and friend. He has support from his family, friends, and his community. He is a caring and compassionate person. Furthermore, the attached letters show that he has been a person of good character and that his remorse is sincere. Mr. Smirnov is a first-time offender and a former Confidential Human Source ("CHS") who faithfully and effectively served the Federal Bureau of Investigation ("FBI") for over a decade. *See infra.* Moreover, it is respectfully submitted that Mr. Smirnov is not a danger to the public and he has significant health issues related to his eyes. *See infra.*

It is respectfully submitted that in accordance with the negotiations in this case, this Honorable Court should impose a custodial sentence of no more than 48 months. Due to the unique circumstances of this case, it is submitted that such a sentence is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing and would sufficiently deter and promote respect for the law.

### II. PROCEDURAL HISTORY AND PLEA NEGOTIATIONS

Mr. Smirnov was arrested for the first time in his life on or about February 14, 2024, in Las Vegas, Nevada. The two-count Indictment filed in the Central District of California ("Ind. No. 1") charged Mr. Smirnov with: 1) Making False Statements

to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519.

Mr. Smirnov made his initial appearance in Las Vegas before the Honorable Daniel J. Albregts, United States Magistrate Judge, on February 15, 2024. Five days later, following the recommendation of the Pretrial Services Office, Judge Albregts released Mr. Smirnov on various conditions.

Mr. Smirnov was rearrested on the same charges on an arrest warrant issued by this Court on February 22, 2024. At a hearing on February 26, 2024, this Court overruled Judge Albregts and ordered that Mr. Smirnov detained.

On November 22, 2024, just ten days before the trial date, the second Indictment ("Ind. No. 2") was returned. This latter Indictment charged Mr. Smirnov with various federal tax violations, including three violations of 28 U.S.C. § 7201, under Counts 1, 5, and 8, which charged tax evasion for the tax years 2020, 2021, and 2022, respectively.

On December 16, 2024, Mr. Smirnov appeared before this Honorable Court and pled guilty to pursuant to a binding plea agreement under Rule 11(c)(1)(C) ("Plea. Ag."). Pursuant to that agreement, this Court shall sentence him in total on both cases to be served concurrently to not less than 48 and not more than 72 months' imprisonment, as well as one year supervised release (with conditions to be fixed by the Court), a $400 special assessment, and $675,502 in restitution.

III. **APPLICATION OF THE FOREGOING 3553 FACTORS MILITATES
IN FAVOR OF A SENTENCE OF 48 MONTHS**

1. **The history and characteristics of the defendant**

   i. **Mr. Smirnov's background**

Section 3553(a)(1) requires courts to consider the "history and circumstances" of each defendant. This command reflects the federal judicial tradition for the sentencing judge to view "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007); *see also Pepper v. United States*, 562 U.S. 476, 488 (2011) (possessing "the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence.") (internal citations omitted).

While it is not possible to capture the complexity of a person's life in a legal filing (even when it is supplemented by many strong character references, as shown in the attached letters), that is perhaps uniquely true for Mr. Smirnov. As described below, he has lived a remarkable life but has, since his first indictment in February 2024, experienced a personal downfall.

Mr. Smirnov is a dual citizen of the United States and Israel. Besides this case, he has no criminal history in this—or any other—country. He was born in the U.S.S.R. (now Ukraine) and, at approximately seven years old, he immigrated to

8

Israel with his mother. He enlisted in the Israeli military and served in counterterrorism after recruitment by another branch of the Israel government. ███ ████████████████. After his service, Mr. Smirnov immigrated to the United States and in July 2007, he became a lawful permanent resident of the United States. ████████████████.







#:2419



Prior to this case, Mr. Smirnov had never been charged or arrested. ███████ ███████████ As a result of his service as a CHS for the FBI, Mr. Smirnov's *risked his life and put his family's life in danger.* ███████████████████. Mr. Smirnov's substantial assistance to the United States government—while not specifically resulting from a government motion under Section 3553(e)—is just one aspect of his "history," and one of his many "characteristics," that support a 48-month sentence. *See, e.g., United States v. Evans-Martinez*, 611 F.3d 635, 642–43 (9th Cir. 2010) (substantial assistance may support in below-guidelines sentence).

Furthermore, as shown from the letter (coupled with the prior letters) of Dr. H. George Tanaka (attached as Exhibit 3), and as directly implicated by 18 U.S.C. § 3553(a)(2)(D) (reasonable sentence must take into account need for defendant's "medical care"), Mr. Smirnov suffers from advanced open angle glaucoma in both eyes. *See also* Document 52-1 (Mar. 11, 2024); *see infra*. Now in his mid-40s, Mr. Smirnov is not only highly unlikely to re-offend, but he also suffers outsized, and ongoing, physical punishment. *See Human Rights Watch, Old Behind Bars: The Aging Prison Population in the United States* 7, 43-88 (2012).

Mr. Smirnov has suffered for years from severe optic nerve damage due to glaucoma. As a result, he has marked constriction of his peripheral vision in both

eyes. He has undergone several surgeries to treat his glaucoma and prevent

blindness; however, his intraocular pressure continues to be poorly controlled

despite maximal tolerated medical therapy.

As this Court is well aware, Mr. Smirnov's repeated efforts to obtain a needed

eye operation while in custody has not been approved. Mr. Smirnov's eye

deterioration certainly will not reverse (much less heal) itself, and Dr. Tanaka's

attached letter makes plain that a six-year sentence would unnecessarily prolong his

suffering. *See* Exhibit 3. Dr. Tanaka states in part: "This court's decision regarding

Mr. Smirnov's sentencing will profoundly affect his ability to access the medical

care he urgently needs. A sentence of forty-eight (48) months would not only allow

Mr. Smirnov to address his health sooner but also provide an opportunity for him to

contribute meaningfully to society within the constraints of his disability." *See id.*

It is respectfully requested that this Court consider this among other factors in

fashioning a sentence that is "sufficient, but not greater than necessary," to "reflect

the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense." 18 U.S.C. §§ 3553(a) and (a)(2)(A); 18 U.S.C. §§

3553(a)(2)(D) (sentence must be based on need to provide defendant with needed

"medical care"); *see, e.g., United States v. O'Leary*, No. CR 19-33-M-DLC, 2021

WL 3677109, at *2 (D. Mont. Aug. 19, 2021) ("Take for example the factor related

to medical care, 18 U.S.C. § 3553(a)(2)(D), or the overarching consideration that the

defendant shall not be subjected a punishment that is greater than necessary, 18

U.S.C. § 3553(a).

**ii.    Letters of Support**

Mr. Smirnov's sister, Anet Smirnov, writes in part:

> Alexander has always been a deeply patriotic and proud American. He
> loves his country and embodies the values of service and community.
> He consistently goes out of his way to assist those around him, whether
> they are family members, friends, or even strangers. His kindness and
> generosity have touched the lives of many.
>
> As his sister, I have had the privilege of growing up with Alexander
> and seeing firsthand what an incredible person he is. He is a devoted
> and supportive brother, always there when I need him, whether for
> advice, encouragement, or simply a listening ear. Alexander is also a
> wonderful uncle—deeply loved and admired by his nieces and
> nephews. He has always gone out of his way to create joyful memories
> with them, and I know he is looking forward to meeting his newest
> niece, who was recently born.
>
> Family is everything to Alexander. His love, care, and unwavering
> support for those around him are a testament to the kind of person he
> is: selfless, compassionate, and reliable.
>
> While I cannot excuse his conduct, I want to emphasize that he has
> taken full responsibility for his actions. He deeply regrets what
> happened and has shown genuine remorse. He understands the impact
> of his decisions and is committed to learning and growing from this
> experience.
>
> I respectfully ask the Court to consider Alexander's positive
> contributions to his family and community, as well as his sincere regret
> and acceptance of responsibility. I truly believe that he will take this as
> an opportunity to better himself and continue being the good-hearted
> and dependable person we all know him to be.

Exhibit 4.

Anna Stone, a friend for approximately 10 years, writes in part:

We can describe him as a man who is considerate and genuine. He did everything for friends and family. Impeccable. We like everyone else we're shocked to learn his informant life. With that being said we are convinced that Alex is a person who is capable of recognizing his mistakes and take full responsibility for his actions.

Exhibit 5.

Ekaterina Li, writes in part:

From my experience, Alex is a deeply family-oriented person, consistently gentle and caring with his loved ones. His true happiness seems to lie in ensuring the well-being and security of those closest to him, a responsibility he fulfills selflessly, without seeking anything in return.

Over time, I have observed the thoughtfulness in his actions, reflecting a genuine effort to always do what is right. It is for that reason that I believe his conduct in this case is aberrant.

I, along with all of Alex's loved ones, humbly rely on your understanding and gracious consideration. We believe in his ability to acknowledge mistakes, and start anew with a clean slate. Alex has accepted responsibility and expressed remorse, and therefore we believe that he falls within that group of people.

Exhibit 6.

Friends for approximately 10 years, Angelika and Anatoly Baryshevs, write in part:

We recognize the seriousness of the charges and the impact that Mr. Smirnov's actions may have had on the community, and we do not intend to minimize the gravity of the situation.

We have known Alex Smirnov for about 10 years. We eventually became good friends through the introduction of mutual friends. As a

friend, Alex Smirnov has always displayed qualities of honesty, integrity, and responsibility. He always offered his help to his friends and family. As an example, when our mom, who still lives in Ukraine and due to her medical conditions was in needs of medication and food, he just simply said "Don't worry, I'll take care of that," and the very next day everything was delivered to her. It is an honor to vouch for his character, generosity and integrity in our time knowing him.

We would like to highlight Mr. Smirnov's genuine remorse for his actions. He has expressed deep regrets for what he has done. He has no prior criminal record. In addition, he is a dedicated family member and friend. His actions in this case are an aberration, and those who know him personally can attest to his inherent kindness, integrity, and generosity.

Exhibit 7.

His cousin, Linor Shefer, writes in part:

Growing up together in Israel we both spent a lot of time together. Alex was always a well-rounded and responsible individual, always stood for justice and took responsibility for his actions. Alex has good friends from childhood who love and worry about him. He is an extrovert even though it doesn't seem that way always. He is sociable and can always carry on a good conversation.  He is very knowledgeable and spends his time self-educating constantly.

I understand he placed himself in a very difficult situation. As his only family in the US, I find great responsibility to deliver to you my concern and hope that with everything Alex did right for the good of the United States of America, you can take into account his good actions when deciding on his sentence.

Of course, there's nothing more I would like to see than Alex going back to his life as a loving partner to Diana, Son to Irina, Cousin to me, and friend to many.

I speak to your heart as a representative of the family. Please help us get Alex back to his life as soon as possible. He is sincerely remorseful and accepts responsibility.

17

Exhibit 8.

Mr. Smirnov's significant other, Diana Lavrenyuk, writes in part:

Alexander Smirnov is the man I have been blessed to share my life with for many years.

I have always known Alex to be a man of integrity, kindness and loyalty-someone who consistently demonstrates responsibility and care for those around him. He has built a life centered on family and gratitude for the opportunities he has been given.

I could never have imagined we would find ourselves in this situation. I know Alex to be a proud patriot of America, a country he loves deeply and grateful beyond words for the opportunities this land has given him.

Your Honor, I humbly and sincerely ask for your mercy, compassion and understanding.

I ask that you please forgive Alex. He has always been a man who takes responsibility for his actions and works tirelessly to make amends when necessary. His remorse is sincere.

Exhibit 9.

Friend since 2008, Alexei Odesskiy, writes in part:

During my time serving in the Marine Corps, I was stationed at Camp Pendleton, California, far from my home on the East Coast. Alex played a pivotal role in making my transition to the West Coast much easier.

From the very beginning, Alex treated me like family, creating a sense of belonging that I deeply appreciated during my service. He and his wonderful girlfriend welcomed me into their home with open arms, offering support, companionship, and a sense of stability. Their kindness and generosity left a lasting impression on me, and I will always be grateful for how they helped me during that time.

Even after my service, Alex has consistently stayed in touch, checking in on my well-being and proving himself to be a caring and dependable

friend. He has always been someone I could count on, a person with a good heart who genuinely cares about others.

Exhibit 10.

Accordingly, it is evident that Mr. Smirnov is a man of good character, and he has accepted responsibility and his remorse is sincere.

**2.  The need for the sentence imposed**

**(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

**(B)  to afford adequate deterrence to criminal conduct**

Additional factors under Section 3553(a) support a sentence of 48 months. For example, promoting "respect for the law" is a two-way street under § 3553(a). *See, e.g.*, *United States v. Stern*, 590 F.Supp.2d 945, 956 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair . . . not those that simply punish for punishment's sake") (emphasis omitted). A four-year sentence would thus reflect nuance and thoughtful calibration, rather than vindictiveness towards a man with years of loyal United States service under his belt.

Furthermore, Mr. Smirnov has caused himself shame and sustained a felony conviction due to his actions giving rise to this case. As Senior Judge Block noted in the United States District Court for the Eastern District of New York, there are "nearly 50,000 federal and state statutes and regulations that impose penalties,

disabilities, and disadvantages on convicted felons." *See U.S. v. Nesbeth*, 188 F.Supp.3d 179, 184 (E.D. N.Y. 2015).

In the event that this Honorable Court imposes a sentence of 48 months, Mr. Smirnov will serve a significant custodial sentence which will deter other individuals as well. Mr. Smirnov has learned a very grave lesson and proffers to this Honorable Court that he will not find himself on this side of the law again.

**(C)    to protect the public from further crimes of the defendant;**

Mr. Smirnov is not a danger to the public. These are non-violent offenses and besides the charges in this case, Mr. Smirnov has no prior criminal history. Accordingly, the "public" (that is, the grateful United States citizens whom Mr. Smirnov helped by serving as their effective CHS) will not need to be "protected" from him when he is released from custody. *See* 18 U.S.C. § 3553(a)(2)(C) (sentence must reflect need "to protect the public from further crimes of the defendant"). Mr. Smirnov is an ailing, middle-aged man who has never been involved in any other criminal activity—or, cited for any form of emotional or mental instability or drug or alcohol abuse—in his entire life. *See, e.g., United States v. Cole*, 622 F. Supp. 2d 632, 638 (N.D. Ohio 2008) ("In this case, there is little need for incapacitation. Cole has no appreciable prior record of criminal conduct. He did not engage in any violent offense and it is highly unlikely that he will be in a position to use insider information in the future. The Court therefore finds that incapacitation [under Section

3553(a)(2)(C)] is not a significant concern in this case."); *see also* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (note to 18 U.S.C. § 3551) (directing that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "alternative sentences" should be considered for less serious offenders). Accordingly, this factor supports a sentence of 48 months as being sufficient under the circumstances.

**(D)** **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. Smirnov has an educational and vocational training history. As stated above, Mr. Smirnov has suffered for years from severe optic nerve damage due to glaucoma. Mr. Smirnov will need medical care and extended period of incarceration would further jeopardize his health and expend the BOP's resources even further. Accordingly, this factor weighs in favor of a sentence of 48 months.

**3.** **The kinds of sentences available**

Here, a sentence of 48 months is reasonable. While Mr. Smirnov does not request a sentence less than 48 months, the following are examples of cases where defendants engaged in fraudulent conduct and received sentences other than incarceration in a federal prison:

\*    *U.S. v. Cole*, 765 F.3d 884 (8th Cir. 2014) (affirming sentence of three years'
probation where guideline range called for 135-168 months of imprisonment).

In *Cole*, the Eighth Circuit in affirming the sentence of three years' probation
where guideline range called for 135-168 months of imprisonment stated: "The court
focused on Cole's history and characteristics, emphasizing that she had no prior
contact with law enforcement and was 'markedly different' than 'most of the
fraudsters who appear before th[e] Court' in that Cole 'is not a consummate
fraudster....'" *Id.* at 886.

\*    *U.S. v. Roth*, No. 05 CR 792-5, 2008 WL 686783, \*3-4, 7 (N.D. Ill. Mar. 11,
2008). The Court departed from guidelines range of 63 to 78 months to probation on
charge of making false statement to the FBI due, in part, to defendant's sincere
remorse and absence of criminal history, all indicating no threat of recidivism);

\*    *U.S. v. Wood*, 5:05-CR-00044, (D. N.C. 2010) (imposing sentence of four
years' probation and six months home confinement, among other conditions, in
relation to securities fraud case involving $15,000,000 after a jury verdict);

\*    *U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) (affirming probation for
bankruptcy fraud where guideline range was 27-33 months);

\*    *U.S. v. Whitehead*, 532 F. 3d 991 (9th Cir. 2008) (affirming sentence of 1000
hours of community service, restitution, and five years' supervised release where

22

guideline range was 41-51 months where defendant was convicted of selling more than $1,000,000 in counterfeit access cards);

* *U.S. v. Steven Rubinstein*, Southern District of Florida, Case No. 09-CR-60166. Hid approximately $7 million in undisclosed accounts he used to purchase real estate and South African Kruggerands. Sentenced to 3 years' probation, 12 months home detention, and a fine of $40,000;

* *U.S. v. Juergen Homann*, District of New Jersey, Case No. 09-CR-724. Control account of $5 million and made a conscious decision not to seek out and enter into the IRS' voluntary disclosure program. Sentenced to 5 years' probation, 300 hours community service, and a fine of $60,000.

* *U.S. v. Jules Robbins*, Southern District of New York, Case No. 10-CR-333. Created a sham corporation to be listed as the nominal holder of his UBS accounts containing nearly $42 million. Sentenced to 12 months' probation, and a fine of $2,000.

* *U.S. v. Andrew Silva*, Eastern District of Virginia, Case No. 10-CR-00044. Repatriated funds from his undisclosed offshore account by mailing himself 26 packages of currency and carrying another two packages into the U.S., always structured in amounts under $10,000. Sentenced to 2 years' probation, 4 months' home detention, 100 hours community service, and a fine of $20,000.

\*      *U.S. v. Fred E. Cooper*, 394 F.3d 172 (3rd Cir. 2005) (holding a four-level

downward departure was warranted because of the defendant's good works that were

of a personal nature). The departure resulted in three years' probation for a defendant

who pleaded guilty to one count of securities fraud and one count of subscribing to

a false tax return, and had a Guidelines range of fifteen to twenty-one months.

**4.      Guidelines, Policy, and Other Criteria of Sentencing Commission**

The fourth and fifth factors in § 3553(a)(4)-(5) require the Court to consider

the Guidelines and Policy Statements applicable to the case. As set forth above, a

sentence of 48 months is reasonable. Additionally, under the circumstances, it is

submitted that incarceration beyond 48 months would be an inefficient use of

resources.

**5.      The need to avoid unwarranted sentence disparities among defendants
with similar records who have been found guilty of similar conduct**

While not involving the same federal charges as Mr. Smirnov's charges, both

President-elect Trump and Hunter Biden (the current President's son) were all

caught up in the same web of federal prosecutions commenced by the current

administration's special counsel: Mr. Weiss (in this case and the Hunter Biden

"firearm case") and Jack Smith (in President-elect Trump's "document case" in the

Southern District of Florida). Both of those defendants have walked free and clear

of any meaningful punishment: the President-elect (by filing a meritorious motion

to dismiss the Indictment) and Hunter Biden, by dint of President Biden's decision

24

to issue his son a broad, sweeping pardon, due to (in President Biden's own words) the unfairness of his son's indictments. *See, e.g.*, "Hunter Biden prosecutor pushes back on president's politicization claim," NBC News (posted Dec. 2, 2024) (President Biden states that he "believe[s] [the] raw politics [spurring the instant Special Counsel to prosecute his son] has infected this process and . . . led to a miscarriage of justice").

Mr. Smirnov respectfully requests that this Court do its best to avoid (or, at least, mitigate) these obvious sentencing disparities under 18 U.S.C. § 3553(a)(6) and impose a low-end sentence of 48 months.

**6.      The need to provide restitution to any victims of the offense**

Here, Mr. Smirnov has agreed to pay a substantial restitution fee of $675,502. *See* Plea Ag. at ¶¶13, 19; *see also* 18 U.S.C. § 3553(a)(7). Importantly, Mr. Smirnov shall pay this restitution "immediately" and such payment is subject to immediate enforcement in full by the United States. He intends to do so contemporaneously with his sentencing. Subsection (a)(7) thus further militates in favor of the low end of the bargained-for range.

## IV.    **CONCLUSION**

For the reasons set forth below and for those prescribed in 18 U.S.C. § 3553(a), a custodial sentence at the low-end of the binding, bargained-for range (48 months, with credit for time served from February 22, 2024 to the time of sentencing) is warranted for both cases. *See* U.S.S.G. § 5G1.3 (Bureau of Prisons may credit "time served" under 18 U.S.C. § 3585(b) against stipulated sentence); *see also* 18 U.S.C. § 3585(b).[1]

DATED this 24th day of December, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
Attorneys for Defendant
ALEXANDER SMIRNOV

---

[1] Under 18 U.S.C. § 3585(b), a defendant must be given credit for time spent in "official detention" before the sentence commences.  Specifically, 18 U.S.C. § 3585(b) provides in relevant part that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed."  *See also, e.g., Hughes v. Slade*, 347 F.Supp.2d 821 (C.D. Cal. 2004) (defendant was entitled to credit for time served in Mexican jail while awaiting extradition to the United States on attempted extortion charge).

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 24th day of December, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

<u>/s/ Camie Linnell</u>
Employee of Chesnoff & Schonfeld

27