DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6091
    E-mail:      LJW@usdoj.gov, DEH@usdoj.gov
    E-mail:      SFM@usdoj.gov; CMR@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>ALEXANDER SMIRNOV,<br><br>    Defendant. | No. 2:24-CR-00091-ODW<br><br>No. 2:24-CR-00702-ODW<br><br><u>PLEA AGREEMENT FOR DEFENDANT</u><br><u>ALEXANDER SMIRNOV</u> |

    1.    This constitutes the plea agreement between ALEXANDER SMIRNOV ("defendant") and the Office of Special Counsel David C. Weiss (the "SCO-W") in the above-captioned cases. This agreement is limited to the SCO-W and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>RULE 11(c)(1)(C) AGREEMENT</u>

    2.    Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, including but not limited to the sentencing agreements in paragraph 19, absent a breach of this agreement by defendant

prior to that determination and whether or not defendant elects to withdraw any guilty pleas entered pursuant to this agreement, this agreement will, with the exception of paragraph 26 below be rendered null and void and both defendant and the SCO-W will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 28 and 29 below, will control, with the result that defendant will not be able to withdraw any guilty pleas entered pursuant to this agreement, the SCO-W will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

<u>DEFENDANT'S OBLIGATIONS</u>

3.    Defendant agrees to:

a.    At the earliest opportunity requested by the SCO-W and provided by the Court, appear and plead guilty to:

i.    Count Two of the indictment in <u>United States v. Alexander Smirnov</u>, 2:24-CR-00091-ODW, which charges defendant with causing the creation of a false and fictitious record in a federal investigation, in violation of 18 U.S.C. § 1519 (hereafter the "obstruction of justice indictment").

ii.    Counts One, Five and Eight, of the indictment in <u>United States v Alexander Smirnov</u>, 2:24-CR-00702-ODW, which charges the defendant with tax evasion for tax years 2020, 2021 and 2022, in violation of 26 U.S.C. § 7201 (hereafter the "tax evasion indictment").

b.    Request that the Court sentence the defendant within 30 days of entry of the entry of his guilty pleas, but not sooner than January 8, 2025.

c.    Not contest facts agreed to in this agreement.

d.    Abide by all agreements regarding sentencing contained in this agreement.

2

e.     Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f.     Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g.     Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

h.     Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

<u>PAYMENT OF TAXES OWED</u>

4.     Defendant admits that he received unreported income in the amounts of $1,350,000 for tax year 2020, $500,000 for tax year 2021 and $300,000 for tax year 2022. Defendant agrees that:

a.     Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns.

b.     Defendant will not file any claim for refund of taxes, penalties, or interest for amounts attributable to the to the subject matter of this plea agreement.

c.     Defendant may be liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liabilities for 2020, 2021 and 2022.

d.     Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

<u>THE SCO-W'S OBLIGATIONS</u>

5.     The SCO-W agrees to:

a.     Not contest facts agreed to in this agreement.

b.     Request that the Court sentence the defendant within 30 days of the entry of his guilty pleas, but not sooner than January 8, 2025.

c.     Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 20 of this agreement.

d.     At the time of sentencing, move to dismiss the remaining counts of the obstruction of justice indictment and tax evasion indictment against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

e.     Not further prosecute defendant for defendant's conduct described in the agreed-to factual basis set forth in Exhibit B, or otherwise known to the government and arising out of defendant's false statement and creation of a false and fictitious record, evasion of assessment, or false or fraudulent tax return.

<u>NATURE OF THE OFFENSES</u>

6.     Defendant understands that for defendant to be guilty of the crime charged in Count Two in the obstruction of justice indictment, that is, causing the creation of a false and fictitious record, in violation of 18 U.S.C. § 1519, the following must be true:

a.     First, defendant knowingly caused the making of a false entry in an FBI Form 1023, a record and document; and

b.     Second, defendant acted with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of the United States Department of Justice, a department and agency of the United States.

7.     Defendant understands that for defendant to be guilty of the crime charged in Counts One, Five and Eight in the tax evasion indictment, in violation of 26 U.S.C. § 7201, the following must be true:

a. First, the defendant owed more federal income tax for the tax years 2020, 2021 and 2022 than was declared due on the defendant's income tax returns for each calendar year.

b. Second, the defendant knew that more federal income tax was owed than was declared due on the defendant's income tax returns.

c. Third, the defendant made an affirmative attempt to evade or defeat such additional tax, including at least one of the affirmative acts charged in the tax evasion indictment.

d. Fourth, in attempting to evade or defeat such additional tax, the defendant acted willfully.

<u>PENALTIES AND RESTITUTION</u>

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of:

a. 18 U.S.C. § 1519 (Count Two of the obstruction of justice indictment), is: 20 years imprisonment; a 3-year period of supervised release; a fine of $250,000; and a mandatory special assessment of $100; and

b. 26 U.S.C. § 7201 (Counts One, Five and Eight of the tax evasion indictment), is 5 years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 35 years imprisonment; a 3-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $400.

10. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all

or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.     Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.     Defendant agrees to pay restitution to the Internal Revenue Service for his federal individual income taxes in an amount to be determined by the court, pursuant to 18 U.S.C. § 3663(a)(3).

13.     Defendant agrees that restitution to the IRS is due and payable immediately after the judgment is entered and is subject to immediate enforcement in full by the United States.  If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

14.     The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to challenge the amount of this restitution-based assessment.  26 U.S.C. § 6201(a)(4)(C).  Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

## IMMIGRATION CONSEQUENCES

15.    Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

16.    Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the SCO-W agree to the statement of facts attached as Exhibit "B" and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS AND AGREED-UPON SENTENCE

17.    Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only.

18.    Defendant and the SCO-W agree that the base offense level for Count Two in the obstruction indictment is 14, pursuant to U.S.S.G. § 2J1.2(a)(2) and the base offense level for Counts One, Five and Eight is 20, pursuant to U.S.S.G. § 2T4.1(H).  Defendant and the SCO-W reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

7

19.     Defendant and the SCO-W agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors, an appropriate disposition of this case is that the Court impose a sentence of: **no less than 48 months and no greater than 72 months' imprisonment; 1 year supervised release with conditions to be fixed by the Court; $400 special assessment; $675,502 restitution and no fine.** The parties also agree that the defendant is entitled to credit in both Cr. Nos. 24-91 and 24-702 for the period of his pretrial detention since the day of his arrest and that credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

## WAIVER OF CONSTITUTIONAL RIGHTS

20.     Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.     The right to persist in a plea of not guilty.

      b.     The right to a speedy and public trial by jury.

      c.     The right to be represented by counsel—and, if necessary, have the Court appoint counsel—at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel—and, if necessary, have the Court appoint counsel —- at every other stage of the proceeding.

      d.     The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.     The right to confront and cross-examine witnesses against defendant.

      f.     The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.     Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.   Defendant agrees that, provided the Court imposes the sentence specified in paragraph 19 above, including a sentence within the agreed upon range, the agreed upon restitution, the agreed upon supervised release term and the agreement for no fine, defendant gives up the right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

23.   The SCO-W agrees that, provided the Court imposes the sentence specified in paragraph 19 above, including a sentence within the agreed upon range, the agreed upon restitution, the agreed upon supervised release term and the agreement for no fine, the SCO-W gives up its right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

### WAIVER OF COLLATERAL ATTACK

24.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

25.    Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the SCO-W will be relieved of all of its obligations under this agreement; and (b) should the SCO-W choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the withdrawal of the plea; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement, or as a result of the additional time lapse after the plea is withdrawn.

## EFFECTIVE DATE OF AGREEMENT

26.    This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant Special Counsel.

## BREACH OF AGREEMENT

27.    Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant Special Counsel, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the SCO-W may declare this agreement breached.  All of defendant's obligations are material, and therefore a single breach of this agreement is sufficient for the SCO-W to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the SCO-W in writing.  If the SCO-W declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, (b) the SCO-W will be relieved of all its obligations under this agreement, and (c) the Court's failure to

follow any recommendation or request regarding the sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty pleas.

28.    Following the Court's finding of a knowing breach of this agreement by defendant, should SCO-W choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the court's finding of a breach.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement or as a result of the additional time lapse after the court's finding of a breach.

c.    Except in the event that the plea is withdrawn under Federal Rule of Criminal Procedure 11(c)(1)(C), defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the parties' agreements to facts, sentencing factors, or sentencing. Defendant understands that the Court will determine the facts, sentencing factors, and other considerations relevant to

sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

30.    Defendant understands that both defendant and the SCO-W are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, and (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence.  While this paragraph permits both the SCO-W and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, this paragraph does not affect defendant's and the SCO-W's obligations not to contest the facts agreed to in this agreement.

<u>NO ADDITIONAL AGREEMENTS</u>

31.    Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the SCO-W and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

32.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

//
//
//

AGREED AND ACCEPTED:

OFFICE OF SPECIAL COUNSEL
UNITED STATES DEPARTMENT OF JUSTICE

DAVID C. WEISS
Special Counsel

_____          _____
LEO J. WISE                                              Date
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

_____          12/16/2024
ALEXANDER SMIRNOV                              Date
Defendant

_____          12/10/24
RICHARD A. SCHONFELD                        Date
DAVID Z. CHESNOFF
Attorneys for Defendant Alexander Smirnov

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C.

§ 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        12/10/2024
ALEXANDER SMIRNOV                       Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ALEXANDER SMIRNOV's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

*counsel counsel discussed and I confirm the remainder

_____        12/10/24
RICHARD A. SCHONFELD                    Date
DAVID Z. CHESNOFF
Attorneys for Defendant Alexander Smirnov

**EXHIBIT "B"**

**STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT FOR**

**DEFENDANT ALEXANDER SMIRNOV**

Defendant ALEXANDER SMIRNOV was a resident of Los Angeles, California and a self-described "consultant."

Defendant was born in the U.S.S.R. and was naturalized as a U.S. citizen on July 21, 2015.

*United States v. Alexander Smirnov*, No. 2:24-CR-00091-ODW

Defendant was a confidential human source ("CHS") with the Federal Bureau of Investigation ("FBI"). As a CHS, Defendant was assigned a handling agent (hereafter "the Handler") who was a special agent on an FBI squad that investigated violations of federal criminal law.

As a CHS, Defendant provided information to the Handler that was then used in various criminal investigations conducted by the FBI. Defendant knew that information he provided was used in criminal investigations because, among other reasons, the Handler advised him that he might have to testify in court based on the information he provided on multiple occasions, including, but not limited to: 10/1/2010, 5/17/2011, 11/28/2012, 04/12/2013, 8/29/2013, 7/10/2015, and 3/11/2020. Defendant also knew the information he provided was used in criminal investigations because Defendant participated in a number of operations where he was authorized to engage in criminal activity as part of an ongoing criminal investigation.

Defendant was admonished by the Handler that he must provide truthful information to the FBI when he first became a CHS in 2010 and on multiple occasions thereafter, including, but not limited to: 10/1/2010, 1/20/2011, 5/17/2011, 9/14/2011, 8/29/2012, 11/28/2012, 4/12/2013, 8/29/2013, 1/22/2014, 7/9/2014, 7/10/2015, 9/29/2016, 9/26/2017, 9/26/2018, 9/27/2019, 3/11/2020, 2/19/2021, 10/28/2021, 10/17/2022, and 9/29/2023.

In addition, when Defendant was authorized to engage in illegal activity for investigative purposes, he was further admonished that: "Under no circumstances may the CHS … Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, witness intimidation, entrapment, or fabrication, alteration, or destruction of evidence, unless such illegal activity has been authorized)."  When Defendant was given this admonishment, he signed an FBI form that contained this statement, including on 10/8/2014, 1/18/2017, 10/8/2018, 1/10/2019, and 8/7/2020.

Despite repeated admonishments that he must provide truthful information to the FBI and that he must not fabricate evidence, Defendant provided false derogatory information to the FBI about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1, in 2020, after Public Official 1 became a candidate for President of the United States of America.

In March 2017, Defendant reported to the Handler that he had had a phone call with the owner of Ukrainian industrial conglomerate Burisma Holdings, Limited (hereafter "Burisma Official 1") concerning Burisma's interest in acquiring a U.S. company and making an initial public offering ("IPO") on a U.S.-based stock exchange.  In reporting that conversation to the Handler, Defendant also noted that Businessperson 1, Public Official 1's son, was a member of Burisma's Board, a fact that was publicly known. Notably, Defendant did not report in 2017 that in the preceding two years, Burisma Official 1 admitted to Defendant that he had paid Public Official 1 $5 million when Public Official 1 was still in office, as Defendant later claimed.   That information was memorialized in an official record of the FBI on a Form 1023 (hereafter the "2017 1023").

Three years later, in May 2020, Defendant sent the Handler a series of messages expressing bias against Public Official 1, who was then a candidate for President of the United States of America and the presumptive nominee of one of the two major American political parties.

One month later, in June 2020, Defendant reported, for the first time, two meetings in 2015 and/or 2016, during the Obama-Biden Administration, in which he claimed executives associated with Burisma, including Burisma Official 1, admitted to him that they hired Businessperson 1 to "protect us, through his dad, from all kinds of problems," and later that they had specifically paid $5 million each to Public Official 1 and Businessperson 1, when Public Official 1 was still in office, so that "[Businessperson 1] will take care of all those issues through his dad," referring to a criminal investigation being conducted by the then-Ukrainian Prosecutor General into Burisma and to "deal with [the then-Ukrainian Prosecutor General]." Defendant was in Los Angeles, California, at the time he made these statements to the Handler.

Defendant also reported in June 2020 two purported phone calls between himself and Burisma Official 1 wherein Burisma Official 1 stated that he had been forced to pay Public Official 1 and Businessperson 1 and that it would take investigators 10 years to find records of illicit payments to Public Official 1.

The information Defendant provided the Handler was memorialized on a Form 1023 (hereafter the "2020 1023"), an official record of the FBI, which was finalized on June 30, 2020.

The events Defendant first reported to the Handler in June 2020 were fabrications. In truth and fact, Defendant had contact with executives from Burisma in 2017, after the end of the Obama-Biden Administration and after the then-Ukrainian Prosecutor General had been fired in February 2016 — in other words, when Public Official 1 could not engage in any official act to influence U.S. policy and when the Prosecutor General was no longer in office. Defendant transformed his routine and unextraordinary business contacts with Burisma in 2017 and later into bribery allegations against Public Official 1, the presumptive nominee of one of the two major political parties for President, after expressing bias against Public Official 1 and his candidacy.

When he was interviewed by FBI agents in September 2023, Defendant repeated some of his false claims, changed his story as to other of his claims, and promoted a new

false narrative about the son of Public Official 1 after he met with Russian intelligence officials.

*United States v. Alexander Smirnov*, No. 2:24-CR-00702-ODW

Defendant received more than two million dollars in income from multiple sources in 2020, 2021 and 2022. He used these funds to pay personal expenses for himself and his Domestic Partner, a woman that he has referred to as his girlfriend and at other times his wife, although they are not married. These expenditures included a $1.4 million Las Vegas condominium, a Bentley, and hundreds of thousands of dollars of clothes, jewelry and accessories for himself and Domestic Partner purchased at high-end retailers in Los Angeles and Las Vegas. Defendant directed the payors to wire the money to:

    a. a Bank of America (hereafter "BoA") account ending in 3928 held in the name of Avalon Group Inc. (hereafter" Avalon Account"), which the defendant controlled;

    b. a Wells Fargo account ending in 1356 held in the name of Domestic Partner, ("Domestic Partner Account") which the defendant controlled and into which the defendant also transferred approximately $1.8 million from the Avalon Account; and

    c. a Wells Fargo account ending in 1299 held in the name of Goldman Investments Group, which the defendant controlled and into which he also transferred $150,000 from the Avalon Account.

Avalon Group Inc. ("Avalon") is the defendant's alter ego. Avalon was incorporated in the State of Delaware on January 22, 2020. The defendant identified himself in a State of Delaware Annual Franchise Tax Report as the CEO of Avalon and its only officer and director. According to bank account applications, the defendant identified himself as the president of Avalon. On a business credit card application dated June 18, 2022, Smirnov listed $60,000 in total annual income and $250,000 in gross business income, identified investment income as the source of his income, and listed his current position as real estate.

Despite having an IRS tax filing requirement, Avalon never filed a U.S. Corporation Income Tax Return on Form 1120.

I. Sources of Income

A. *Company 1*

In 2020, 2021 and 2022, Defendant received into the Avalon Account, $1,534,000 from Company 1.

| DATE | PAYOR | AMOUNT |
|------|-------|--------|
| 9/22/2020 | Wire – Company 1 | $600,000 |
| 12/14/2020 | Wire – Company 1 | $750,000 |
| 8/31/2021 | Wire – Company 1 | $60,000 |
| 9/29/2021 | Wire – Company 1 | $60,000 |
| 10/27/2021 | Wire – Company 1 | $64,000 |
| **TOTAL** | | **$1,534,000** |

B. *BCG, LLC and Payor 1*

In 2021 and 2022, Defendant received into the Avalon Account, $800,000 from Payor 1 and BCG, LLC ("BCG"), an entity owned and controlled by Payor 1, including the payments listed below.

| DATE | PAYOR | AMOUNT |
|------|-------|--------|
| 12/1/2021 | Wire – BCG | $500,000 |
| 3/30/2022 | Wire – Payor 1 | $250,000 |
| 8/29/2022 | Wire – BCG | $50,000 |
| **TOTAL** | | **$800,000** |

II. Transfers to the Domestic Partner Wells Fargo Account

In 2020, 2021 and 2022, the defendant transferred more than $1.8 million from the Avalon Account to the Domestic Partner Account.

The defendant co-mingled these funds with other funds in the Domestic Partner Account.

III. Defendant Used His Unreported Income to Pay His and Domestic Partner's Personal Expenses

The defendant used unreported income he received in the Avalon Account and the Domestic Partner Account to pay various personal expenses for the defendant and for Domestic Partner.

The largest personal expense was the purchase of a million-dollar condominium where he and Domestic Partner lived in Las Vegas in 2022.

The second largest single expense occurred on October 11, 2022, when the defendant leased a Bentley using $122,360 in funds from the Domestic Partner Account. The defendant signed the check made out to Bentley Financial Services for the lease.

From 2021 to 2024, more than $400,000 in personal credit card debt on the defendant's Citi credit card was paid off from funds from the Domestic Partner Account.

IV. False and Fictitious Tax Returns

In order to conceal the millions of dollars he received in income in 2020, 2021 and 2022, the defendant created and filed false Forms 1040, U.S. Individual Income Tax Returns, for himself and in Domestic Partner's name that included false and fictitious income and expenses. The defendant used a professional tax return preparer to create these returns. The professional tax return preparer, who worked in Los Angeles, used a tax preparation software to create returns for the defendant. The defendant provided the professional tax return preparer with the income and expense figures included in the returns filed on his own behalf and the ones filed in Domestic Partner's name. The defendant did not provide any documents that substantiated any of these figures. As a result, the professional tax return preparer refused to sign the returns. The defendant told the professional tax return preparer that he would not disclose how he earned any income and that the professional tax return preparer should not inquire about how he earned his income. The defendant also instructed the tax return preparer to delete any emails or messages with the defendant, which the professional tax return preparer did. The professional tax return preparer advised the defendant that the Schedule C to an U.S.

Individual Income Tax Return was the most audited part of a tax return because it was often used to cheat on taxes and that, as a result, the defendant should collect and maintain records that supported all the income and expenses he instructed the professional tax return preparer to include on Schedule C.  The defendant provided income and expense numbers to the professional tax return preparer both for his Form 1040 and the Form 1040 that he submitted in Domestic Partner's name.  The professional tax return preparer never spoke to or interacted with Domestic Partner in 2020, 2021 or 2022.

In addition, on or about March 19, 2021, the defendant prepared and filed a false Form 1120-S, U.S. Income Tax Return for an S Corporation, for Goldman Investments Group in 2020.  This return included false and fictious income and expenses for Goldman Investments Group.  The Defendant did not use the services of the professional tax return preparer in the creation of this return.

*A. Alexander Smirnov Forms 1040*

Defendant filed false Forms 1040, U.S. Individual Income Tax Returns, for himself where he falsely claimed on the Schedules C attached to each return that he received:

    a. $40,000, in gross receipts for "consulting" in 2020,

    b. $40,000 in gross receipts for "consulting" in 2021, and

    c. $50,000 in gross receipts for "consulting" in 2022.

The Defendant did not pay taxes on this fictitious income.  Instead, on those Schedules C, he claimed fictitious expenses in the following amounts in the following tax years:

    a. In 2020, $31,980;

    b. In 2021, $39,878; and

    c. In 2022, $26,768.

As a result, the defendant falsely self-assessed owing the U.S. Treasury:

    a. In 2020, only $1,133 in taxes; defendant further reduced his tax obligations by falsely claimed a $600 COVID-19 pandemic rebate for persons who

earned $75,000 or less, and $538 in earned income credit (EIC) which he

falsely claimed entitled him to a refund of $5;

b. In 2021, $0 in taxes; defendant again further reduced his tax obligations by

falsely claiming a $1,400 COVID-19 pandemic rebate for persons who

earned less than $80,000, and $19 in EIC, which he then claimed entitled him

to a refund in the amount of $1,419; and

c. In 2022, only $4,136 in taxes.

B. *Domestic Partner Forms 1040*

To further conceal the millions of dollars in income he received and used to pay his

and Domestic Partner's personal expenses, including income deposited into the Domestic

Partner Account from which his personal expenses were paid, defendant also prepared and

filed false Forms 1040 in the name of Domestic Partner in 2020, 2021 and 2022 where he

falsely claimed on the Schedules C attached to each return that Domestic Partner received:

a. $40,000, in gross receipts for "consulting" in 2020;

b. $40,000 in gross receipts for "consulting" in 2021; and

c. $60,000 in gross receipts for "consulting" in 2022.

Like his own Form 1040, defendant claimed on those Schedules C similar fictitious

expenses in the following amounts in the following tax years:

a. In 2020, $31,314;

b. In 2021, $36,689; and

c. In 2022, $31,553.

As a result, the defendant falsely assessed that Domestic Partner owed the U.S.

Treasury:

a. In 2020, $1,228 in taxes; the defendant further reduced any tax obligations

by falsely claiming that Domestic Partner was entitled to a $538 EIC which

he claimed resulted in Domestic Partner owing the U.S. Treasury only $690;

b. In 2021, $468 in taxes; the defendant again further reduced any tax obligations by falsely claiming that Domestic Partner was entitled to $470 EIC, which he then claimed entitled her to a refund in the amount of $2; and

c. In 2022, $5,933 in taxes.

## C. Goldman Investments Group Forms 1120

To further conceal the millions of dollars in income he received into a bank account held in the name of Goldman Investments Group, the defendant filed a Form 1120-S, U.S. Income Tax Return for an S Corporation, in the name of Goldman Investments Group in 2021. The defendant falsely reported that Goldman had $89,282 in gross sales and $92,300 in total deductions.

## D. Defendant Signed the False Returns

In 2021, the defendant signed his own false return and the false returns he prepared in the name of Domestic Partner and Goldman Investments Group for tax year 2020.

In 2022, the defendant signed his own false Form 1040 and signed the false Form 1040 that he prepared for Domestic Partner for tax year 2021

In 2023, the defendant prepared a false and fictious Form 1040 for Domestic Partner and while he signed his own false and fictitious Form 1040, his signature did not appear on Domestic Partner's return for tax year 2022.

## CERTIFICATION OF DEFENDANT

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement of facts") in its entirety. I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this statement of facts is accurate and correct, and is sufficient to support a plea of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors forth in paragraph 19 of the plea agreement.

_____    12 / 10 / 2024
ALEXANDER SMIRNOV                          Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEYS

We are ALEXANDER SMIRNOV's attorneys. We have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support a plea of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 of the plea agreement.

_____    12/10/24
RICHARD A. SCHONFELD                        Date
DAVID Z. CHESNOFF
Attorneys   for   Defendant   ALEXANDER
SMIRNOV