Contact Us   Donate   Sign In

## Message from the FBI on the FD-1023 Request from Congress



FBI colleagues,

No doubt you've seen a lot in the news in recent days about a congressional subpoena for an FBI FD-1023 form. We wanted to share directly with you what the Office of Congressional Affairs (OCA) and the Office of Public Affairs (OPA) have been doing to handle this in a responsible manner, as well as communications we have had that you might not be able to easily find publicly. Bottom line, we've approached this request the same as we would any other — working in good faith to find a resolution that satisfies Congress's legitimate oversight interests, while protecting important FBI interests like the safety of FBI sources and the integrity of our investigations.

**What are FD-1023s, and why is protecting them important?**

As many of you know, the FD-1023 is the form our special agents use to record raw, unverified reporting from confidential human sources (CHSs). FD-1023s merely document that information; they do not reflect the conclusions of investigators based on a fuller context or understanding. Recording this information does not validate it, establish its credibility, or weigh it against other information known or developed by the FBI in our investigations.

Protecting this type of information from wider disclosure is crucial to our ability to recruit sources and ensure the safety of the source or others mentioned in the reporting. CHSs are critical to cases across all FBI programs — whether it's violent crime, drug cartels, or terrorism. It would be difficult to effectively recruit

these sources if we can't assure them of their confidentiality. And without these sources, we would not be able to build the cases that are so important to keeping Americans safe.

**What has Congress asked for, and how has the Bureau responded?**

On May 3, 2023, the U.S. House of Representatives Committee on Oversight and Accountability issued a subpoena to the FBI requesting an "unclassified FD-1023 form." On May 10, OCA responded in writing to the committee, assuring them of the FBI's commitment to working with them to provide information necessary for their legitimate oversight interest while also protecting CHS information. OCA staff followed up with an in-person meeting with committee staff on May 15 to learn more about their legislative interests and specific informational needs.

Subsequently, on May 22, a deputy assistant director (DAD) of the FBI's Directorate of Intelligence briefed committee staff. That briefing:

- Included a detailed discussion of the Attorney General's Guidelines regarding the Use of FBI Confidential Human Sources policy — which strictly limits when and how CHS information can be provided outside of the FBI — as well as the reasons behind the policy.

- Emphasized the importance of the FBI protecting not only the identity of a specific CHS but also information that would tend to identify the source, such as contextual material found in many of the kinds of investigative materials requested by the committee, such as FD-1023s.

- Explained the importance of closely protecting source information to preserve sources and methods and maintain investigative integrity, to prevent a potential decline in the FBI's recruitment of sources and their candor in reporting, and to protect sources and individuals associated with them from being physically harmed or even killed. The briefing highlighted that the FBI's obligation to protect CHS information extends at least for the life of the source.

- Presented an overview of the various levels of approval that go into reviewing FD-1023s, as well as the policies that govern how FD-1023s are routed internally. The DAD outlined how the FBI analyzes the veracity of source reporting and the internal oversight mechanisms designed to weigh reporting against other information known or developed by the FBI, and cautioned that raw, unverified source reporting may lack that important context.

On May 30, OCA communicated with the committee to inform them that we had identified responsive information that we were prepared to offer the committee as an extraordinary accommodation, and that a previously scheduled call between Director Wray and the chairman would still take place the following day.

On May 31, Director Wray had separate calls with the chairman and ranking member. The Director discussed the good faith efforts the FBI has taken to accommodate the committee's request. He also

conveyed that the FBI had identified an FD-1023 that the FBI believes is responsive to the subpoena. The Director further offered to produce that document with limited redactions for review at their earliest convenience, along with an important briefing to provide context to the document.

Today, June 5, the FBI produced to the chairman, ranking member, and limited staff members an FD-1023 containing minimal redactions that was responsive to the committee's subpoena. The minimally redacted document was produced on a read-and-return basis, which means the document was not left with the committee at the conclusion of the briefing. In addition, two FBI senior executives provided a contextual briefing on the document, the importance of protecting the safety of CHSs, and the integrity and effectiveness of the FBI's CHS program. The safeguards the FBI placed on the production of this information are important, not only for the integrity of FBI investigations but also the protection and safety of our sources. Moreover, these safeguards are routinely employed in response to congressional requests and in court proceedings.

Throughout this entire process, both OCA and OPA have communicated that this is an extraordinary accommodation given the sensitivities surrounding FBI FD-1023s. Over the past three-plus weeks, OPA has released six public statements about this matter, including the following:

"Director Wray has offered to produce the requested document, with limited redactions to protect the confidentiality and safety of sources, by bringing it to a secure location in the U.S. Capitol for the chair and ranking member to review. The FBI has continually demonstrated its commitment to working with the committee to accommodate its request, from scheduling briefings and calls to now allowing the chair and ranking member to review information in person. By offering to provide access to the requested document in combination with a briefing to offer context, the FBI has agreed in good faith to give the committee all of the information it originally asked for and more. The commonsense protections the FBI has requested to maintain the confidentiality of that sensitive information are routinely employed both in response to congressional requests and in court in criminal proceedings to protect the physical safety of sources and the integrity of investigations. The FBI remains committed to cooperating with the committee in good faith."

As you've heard Director Wray say repeatedly, the FBI must always be committed to doing the right thing in the right way. We've attempted to achieve that in our handling of this subpoena, striking an appropriate balance between upholding our commitment to cooperating with congressional oversight and protecting our confidential sources. We thought it was important for you, our FBI workforce, to have the full picture of our efforts on this matter.

| | |
|---|---|
| Christopher Dunham | Cathy Milhoan |
| Acting Assistant Director | Assistant Director |
| Office of Congressional Affairs | Office of Public Affairs |

The Society of Former Special Agents of the FBI, Inc. is a private 501(c)(7) nonprofit organization and is not a part of the Federal Bureau of Investigation or acting on behalf of the FBI.

SOCIETY@SOCXFBI.ORG | (703) 445-0026 | CONTACT | PRIVACY POLICY

Copyright © 2024 Society of Former Special Agents of the FBI, Inc. All Rights Reserved.