O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case № 2:24-CR-00091-ODW |
| Plaintiffs, | 2:24-CR-00702-ODW |
| v. | **ORDER DENYING JOINT STIPULATION FOR RELEASE PENDING APPEAL** |
| ALEXANDER SMIRNOV, | |
| Defendant. | |

## I.    INTRODUCTION

Pending before the Court is a Joint Stipulation for Release Pending Appeal Under 18 U.S.C. § 3143(b)(1) filed by Defendant Alexander Smirnov and the United States.  (Stip., ECF No. 229.[1])  On April 28, 2025, the Court held a hearing on the Stipulation.  (Apr. 28, 2025 Tr. ("Bail Hr'g Tr."), ECF No. 238.)  Having considered the papers and arguments at the hearing, for the reasons set forth below, Court **DENIES** the Stipulation.

## II.    BACKGROUND

On February 14, 2024, a federal grand jury indicted Smirnov on two counts: (1) making false statements to federal law enforcement in violation of 18 U.S.C. § 1001 (Count I); and (2) causing the creation of a false record in a federal

---

[1] All ECF numbers reference Case No. 2:24-cr-00091-ODW, unless otherwise noted.

investigation in violation of 18 U.S.C. § 1519 (Count II). (Indictment ("False Statement Indictment") ¶¶ 56–58, ECF No. 1.) That same day, Magistrate Judge Michael Wilner of the United States District Court for the Central District of California issued an arrest warrant. (ECF No. 3.) The next day, on February 15, 2024, Smirnov first appeared in the United States District Court for the District of Nevada. Initial Appearance Hr'g Mins., *United States v. Smirnov*, No. 2:24-mj-00166-DJA-1 (Feb. 15, 2024), ECF No. 2. On February 20, 2024, Magistrate Judge Daniel Albregts of that court ordered that Smirnov be released on a personal recognizance bond. Feb. 20, 2024 Detention Hr'g Mins., *United States v. Smirnov*, No. 2:24-mj-00166-DJA-1 (D. Nev. Feb. 20, 2024), ECF No. 17; (*see* Opp'n Appl. Ex. 1 ("Feb. 20, 2024 Detention Hr'g Tr."), ECF No. 33.) While Judge Albregts found Smirnov to be a flight risk by a preponderance of the evidence, he also found that the government did not prove by a preponderance of the evidence that no conditions could reasonably assure his appearance. (Feb. 20, 2024 Detention Hr'g Tr. 36:15–40:18.)

## A. Pretrial Detention

On February 21, 2024, the United States filed an Application for Review of Judge Albregts's Bail Order in this Court, seeking that Smirnov be subject to pretrial detention. (Appl., ECF No. 11.) The United States proffered four reasons to support its argument that Smirnov was a flight risk and that no conditions would reasonably assure his appearance. First, Smirnov claimed to have contacts with multiple foreign intelligence agencies and, before his arrest, had plans to leave the United States for a months-long, multi-country trip in which he claimed to be meeting with foreign intelligence contacts. (*Id.* at 1.) These foreign contacts could assist Smirnov in leaving the United States if he was released. (*Id.*) Second, the United States provided evidence under seal that Smirnov has access to over $6 million in funds. (*Id.* (describing bank statements supporting that Smirnov personally had access to $2.9 million and his significant other had access to more than $3.8 million, much of

which originated with Smirnov).)   Third, Smirnov failed to disclose to pretrial services his access to these funds, stating that he had only $6,500.   (*Id.* at 1–2.) Fourth, even though Smirnov turned over his passports to pretrial services, as an Israeli citizen, he could get a new one from the Israeli consulate.  (*Id.* at 2.)

On February 22, 2024, the Court held in camera proceedings on the Application and issued an arrest warrant for Smirnov.  (In Camera Order, ECF No. 15; Arrest Warrant, ECF No. 16.)  In finding that Smirnov's detention was necessary to assure his court appearance, the Court stated:

> Now having considered the history of Defendant's relationship with his FBI handler during which he has proven himself not to be trustworthy, his admitted extensive and recent contacts with agents of foreign intelligence agencies, including Russian intelligence, and his stated intention to once again leave the country, this court has conduct[ed] its own de novo review, and as a result this court reverses the release order and requests the issuance of an arrest warrant for Defendant.

> Considering the fact Defendant has at his immediate disposal several million dollars, the ability to secure a passport at the Israeli embassy and foreign interests likely willing to assist Defendant in evading capture[,] [a]n ankle bracelet is at best an irritant and insignificant impediment to his ability to leave the country. In this court's considered opinion, the only effective measure to assure Smirnov makes his court appearances is detention.

(In Camera Order 2.)

After Smirnov was taken into custody, he filed an Opposition to the United States's Application.  (Opp'n Appl., ECF No. 33; Suppl. Opp'n Appl., ECF No. 34.) Smirnov contended that the following evidence supported his release: (1) medical issues relating to his eyes that require continuing care; (2) he lived in Las Vegas and California for eighteen years and has a long-term significant other that lives in Las Vegas; and (3) he had no criminal history or indication of drug or alcohol abuse.  (*Id.* at 16–17.)   Smirnov's cousin, who lives in Florida, and his significant other's son submitted letters on Smirnov's behalf.  (Opp'n Appl. Exs. 2–3, ECF Nos. 33-2 to

33-3.)  Smirnov's counsel reported that the counsel for consular affairs at the Israeli Consulate in Los Angeles said that they would honor any request from the Court that the Israeli consulates and embassy not reissue a passport to Smirnov.  (Suppl. Appl. 4.)  Smirnov also suggested that he disclosed that he had $6,500 because he was only asked about money in his personal accounts.  (Opp'n Appl. 7 n.3; Feb. 26, 2024 Detention Hr'g Tr. 15:7–12, ECF No. 38 (stating that the pretrial officer "simply asked him about his personal holdings, not his business holdings"); *cf.* Appl. 19 (discussing nearly $3 million in business checking account to which Smirnov is the sole signatory).)  Smirnov proposed that the Court could release him subject to conditions including a surety bond, appointment of his significant other as third-party custodian, house arrest, financial restrictions, execution of a waiver of extradition, and twenty-four-hour private security monitoring.  (Suppl. Appl. ¶ 3–4; Feb. 26, 2024 Detention Hr'g Tr. 15:18–23.)

On February 26, 2024, the Court held a hearing on the Application.  (Feb. 26, 2024 Detention Hr'g Tr.)  At the start of the hearing, the Court explained the relevant standard and that it had reviewed the papers and would hear argument.  (*Id.* at 6:9–20.)  The Court also told the parties that it is "not satisfied that there are conditions or combinations of conditions which will . . . satisfy [it's] concern as to whether or not [Smirnov] will not flee the jurisdiction."  (*Id.*)  At the end of the hearing, and after having heard arguments, the Court noted that is had not "changed [its] mind."  (*Id.* at 25:9–10.)  Thereafter, the Court issued an Order of Detention, concluding that Smirnov is a flight risk and that no condition or combination of conditions will reasonably assure his appearance.  (Am. Order Detention, ECF No. 57.)  Smirnov appealed this decision, and the Ninth Circuit affirmed.  (Notice Appeal, ECF No. 41; Order Ninth Circuit ("Ninth Circuit Order 1"), ECF No. 66); *see United States v. Smirnov*, No. 24-1133 (9th Cir.).

On May 24, 2024, Smirnov filed a Motion to Reopen Detention Hearing and to Impose Conditions of Pretrial Release.  (Mot. Reopen Detention, ECF No. 75.)

Smirnov once again proposed that he be released on the condition that he pay for round-the-clock monitored security. (*Id.* at 6.) The United States opposed. (Opp'n Mot. Reopen Detention, ECF No. 77.) On June 25, 2024, the Court denied Smirnov's motion, finding that his proposed modification to the conditions for release were not sufficient. (Order Den. Mot. Reopen Detention, ECF No. 90.) The Court explained that the "security company is not under the jurisdiction of this court and unlikely a bond surety, would suffer no consequence should [Smirnov] leave the country without permission." (*Id.*) For this reason and given Smirnov's international contacts, the Court held that it found "no comfort in the proposed modification of the terms of pretrial release." (*Id.*) The Court concluded that its "concerns about his leaving the jurisdiction remain." (*Id.*) Smirnov once again appealed, and the Ninth Circuit once again affirmed. (Notice Appeal, ECF No. 91; Order Ninth Circuit ("Ninth Circuit Order 2"), ECF No. 100); *see United States v. Smirnov*, No. 24-4040 (9th Cir.).

**B.    Plea Agreement and Sentencing**

On November 21, 2024, a federal grand jury returned a second indictment against Smirnov, this time on eight additional counts related to tax evasion for tax years 2020, 2021, and 2022. (Indictment ("Tax Indictment"), *United States v. Smirnov*, No. 2:24-cr-00702-ODW-1 (C.D. Cal. Nov. 21, 2024), ECF No. 1.)

Then, on December 12, 2024, Smirnov and the United States filed a Plea Agreement in which Smirnov agreed to plead guilty to (1) causing the creation of a false record in a federal investigation in violation of 18 U.S.C. § 1519, (False Statement Indictment (Count II)), and (2) tax evasion for tax years 2020, 2021, and 2022, (Tax Indictment (Counts I, V, VIII)). (Plea Agreement ¶ 3(a)(i)–(ii), ECF No. 195.) Paragraph 19 of the Plea Agreement provides,

> Defendant and the [United States] agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)–(7) and the relevant sentencing guideline factors, an appropriate disposition of this case is that the Court impose a sentence of: **no less than 48 months and no greater than 72 months' imprisonment; 1 year supervised release with conditions**

**to be fixed by the Court; $400 special assessment; $675,502 restitution and no fine.** The parties also agree that the defendant is entitled to credit in both Cr. Nos. 24- 91 and 24-702 for the period of his pretrial detention since the day of his arrest and that credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

(Plea Agreement ¶ 19.)  Smirnov entered the Plea Agreement under Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C).  (*Id.* ¶ 2.)

On December 16, 2024, Smirnov pleaded guilty to Count II of the False Statement Indictment and Counts I, V, and VIII of the Tax Indictment, and the Court accepted the plea.  (Plea Hr'g Tr. 48:5–14, 50:25–51:16, ECF No. 200.)[2]  On January 8, 2025, after considering the parties' filings and arguments at sentencing, the Court sentenced Smirnov to 72 months of imprisonment for Count II of the False Statement Indictment, 60 months for Count I of the Tax Indictment, 60 months for Count V of the Tax Indictment, and 12 months for Count VII of the Tax Indictment. (Sentencing Hr'g Tr., ECF No. 219; Am. J., ECF No. 223.)  The terms of imprisonment run concurrently such that the total term of imprisonment on both indictments, all four counts, is 72 months.  (Am. J. at 1.)

At sentencing, when Smirnov's counsel asked the Court to "state on the record that [Smirnov] gets credit for time served on both cases from February 14, 2024," the Court responded, "This will be determined by the Bureau of Prisons.  I do not get involved in that."  (Sentencing Hr'g Tr. 60:21–61:3, ECF No. 219; *see id.* at 61:9–10 ("THE COURT: Calculation or computation of credits is up to the Bureau of Prisons."), 61:15–17 ("THE COURT: I'm not saying I reject the plea.  I'm saying I'm not getting involved in the computation of his credits.").)

On January 21, 2025, Smirnov filed a notice of appeal as to the Amended Judgment.  (Notice Appeal, ECF No. 225.)  In the notice, Smirnov stated that he

---

[2] Given the parties' familiarity with the case, the Court will not recite the factual basis for the plea, which Smirnov agreed is true and relevant to his plea.  (*See* Plea Agreement Ex. B ("Statement of Facts"); Plea Hr'g Tr. 35:25–48:7.)

"limits his appeal to the Court's refusal to include in the Judgment and Commitment Order that [he] receive 'credit in both Cr. Nos. 24-91 and 24-702 for the period of his pretrial detention since the day of his arrest . . .' as provided for in paragraph 19 of the Guilty Plea Agreement." (*Id.* at 1–2 (second alteration in original).)  Smirnov asserts that "the Court accepted the stipulated terms of paragraph 19 and therefore erred in refusing to order in the Judgment and Commitment that Defendant receive said credit." (*Id.* at 2.)

On April 10, 2025, Smirnov and the United States[3] filed a Stipulation for Release Pending Appeal under 18 U.S.C. § 3134(b)(1), asking the Court to order that Smirnov be released from custody pending his appeal.[4]  (Stip., ECF No. 229.) Smirnov also filed a Supplement to the Stipulation.  (Suppl., ECF No. 235.)  On April 28, 2025, the Court held a hearing on the Stipulation and took the matter under submission.  (Bail Hr'g Tr. 31:11–12; Bail Hr'g Mins., ECF No. 237.)

### III.  LEGAL STANDARD

Under 18 U.S.C. § 3143(b), for a defendant to obtain release pending appeal, the Court must find:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

---

[3] New counsel replaced the previously assigned attorneys who entered into the Plea Agreement with Smirnov.  (Notice Appearance, ECF No. 228.)

[4] The parties first filed a joint motion at the Ninth Circuit, but the Ninth Circuit denied the motion because Smirnov did not first present the motion to the district court.  Order Ninth Circuit ("Ninth Circuit Order 3"), ECF No. 230); *see United States v. Smirnov*, Nos. 25-400, 25-408 (9th Cir.).

A "'substantial question' is one that is 'fairly debatable' or 'fairly doubtful.'" *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (citations omitted). The burden is on the defendant. *United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986) ("[Defendant] bears the burden of showing that she is not a flight risk or a danger to any other person or to the community."); *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990) (noting that "it is [the defendant's] burden" to "raise[ ] a 'fairly debatable' issue on appeal").

## IV.    DISCUSSION

In the Stipulation, the parties submit that "[c]lear and convincing evidence for [Smirnov's] non-violent offenses of conviction (involving taxes and false statements) shows that [Smirnov] is not likely to flee or pose a danger to the safety of any other person or the community if released." (Stip. ¶ 9.) They also "agree that this Court should order [Smirnov's] travel to be restricted to the State of Nevada, except that he shall, be permitted to travel to San Francisco, California, so his personal physician, Dr. George Tanaka may treat his ongoing eye conditions." (*Id.* ¶ 10 (emphasis omitted).) Lastly, they agree that the Stipulation "is filed not for the purpose of delay, but, rather, because the pending appeal raises a substantial question of law or fact." (*Id.* ¶ 11.) Smirnov contends that if he succeeds on appeal, the Plea Agreement would be void. (Suppl. 5.)

Although the parties jointly request that Smirnov be released pending his appeal, the Court analyzes whether Smirnov has met the factors set forth in § 3143(b) has been met, as that statute provides that the Court cannot release a defendant "unless" it makes certain findings.

### A.    Likelihood of Fleeing

As discussed above, the Court previously granted the United States's application for Smirnov to be detained before trial, as the United States made the required showing under 18 U.S.C. § 3142(e)(1). (Am. Order Detention.) And, on

June 25, 2024, the Court denied Smirnov's most recent motion to revisit that decision. (Order Den. Mot. Reopen Detention.)

Under 18 U.S.C. § 3142(e)(1), the court shall order the detention of a person before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required." "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Therefore, the Court has already determined that the United States proved, by a preponderance of the evidence, that Smirnov poses a flight risk and that no condition or combination of conditions will reasonably assure the appearance of the person as required. (Am. Order Detention; *see also* In Camera Order 2 ("In this court's considered opinion, the only effective measure to assure Smirnov makes his court appearances is detention."); Feb. 26, 2024 Detention Hr'g Tr. 7:9–13 ("THE COURT: I am concerned about what appears to me to be a habit or practice of making false statements and I take no comfort in assurances that you may offer that you will not attempt to flee the jurisdiction . . . ."); Ninth Circuit Order 1; Ninth Circuit Order 2.)

Now, the United States and Smirnov ask that Smirnov be released pending appeal. (Stip.) Unlike with pretrial detention, the burden is not on the government to prove that Smirnov should be detained. *See Wheeler*, 795 F.2d at 840; *Montoya*, 908 F.2d at 451; *see also Handy*, 761 F.2d at 1283 (explaining that, through the Bail Reform Act of 1984, "Congress shifted the burden of proof from the government to the defendant . . . , mak[ing] it considerably more difficult for a defendant to be released on bail pending appeal"). Rather, the Court may only release Smirnov if he shows, among other things, by "clear and convincing evidence" that he "is not likely to flee." 18 U.S.C. § 3143(b)(1)(A) (requiring the court to order detention pending appeal "unless" it makes certain findings). Because the Court has previously found, by a preponderance of evidence, that Smirnov poses a flight risk, Smirnov must offer

facts that have since changed to support a finding that he is not likely to flea by clear and convincing evidence. He has failed to do so.

In the papers, Smirnov offers only one fact that has changed: the parties now agree that "[c]lear and convincing evidence for Defendant's non-violent offenses of conviction (involving taxes and false statements) shows that Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released." (Stip. ¶ 9.) This is simply a restatement of the statute, except the parties add that Smirnov was convicted for non-violent offenses. When the Court found that Smirnov posed a flight risk by a preponderance of evidence, Smirnov had only been charged with offenses related to false statements. The only identified new facts since then are that Smirnov was convicted of an offense related to his false statements and that he was charged and later convicted of tax offenses. These facts are worse for Smirnov— he went from being charged for one type of offense to convicted of two types of offenses. In any event, the Court did not order Smirnov's pretrial detention because of any alleged violent nature of his offenses. (*See* Am. Order Detention; In Camera Order; Feb. 26, 2024 Detention Hr'g Tr.) Therefore, the parties present no new facts in their papers that would alter the Court's conclusion that Smirnov is a flight risk, let alone provide "clear and convincing evidence" that he is not one.

At the hearing on the Stipulation, Smirnov's counsel tried to address the Court's concerns with Smirnov's undisclosed access to millions of dollars. (Bail Hr'g Tr. 11:3–8.) Counsel repeated the same arguments he made at the original detention hearing, that pretrial services only asked Smirnov, "What money do you have that's yours," so he did not necessarily mislead them when he omitted mention of other funds to which he had access. (*Id.* at 11:10–13:7; *compare* Feb. 26, 2024 Detention Hr'g Tr. 15:7–12 (stating that the pretrial officer "simply asked him about his personal holdings, not his business holdings").) Smirnov's counsel then stated that Smirnov paid the United States nearly $700,000 in restitution and that the United States did not initiate a forfeiture action against him to recover any other funds. (Bail Hr'g

Tr. 12:12–13–7.)[5]  Notwithstanding these statements, neither Smirnov nor his counsel have stated that he does not have access to the millions of dollars in funds identified by the United States at the beginning of the case, and the Court still views Smirnov's statements to pretrial services to have been misleading.  (*See, e.g.*, *id.*; Sentencing Hr'g Tr. 32:13–33:11 (addressing "context" of Smirnov's statement that he only had $6,000, without addressing amount of funds held by companies to which he had access).)

Finally, the United States offered that Smirnov is at "the lowest incentive that he would ever have to flee the country . . . , when he has a receptive ear to people who are willing to look anew" at his case, seemingly referencing the United States's decision to review Smirnov's case.  (Bail Hr'g Tr. 28:12–29:10.)  However, the United States has not yet decided the outcome of this review, (*id.* at 16:22–17:3), and the fact remains that Smirnov has been convicted and sentenced to seventy-two months in prison, providing ample incentive to flee.

For these reasons and those that the Court has previously stated,[6] Smirnov has not presented facts to support a finding "by clear and convincing evidence" that he "is not likely to flee" if released under § 3142(b) or (c).  18 U.S.C. § 3143(b)(1)(A).  Accordingly, on that basis, the Court **DENIES** the Stipulation.

## B.    Substantial Question

Even if Smirnov could show that he is not likely to flee by clear and convincing evidence, he has not shown that his appeal "raises a substantial question of law or fact" 18 U.S.C. § 3143(b)(1)(B), that is 'fairly debatable' or 'fairly doubtful,'" *Handy*, 761 F.2d at 1283 (citations omitted).

---

[5] Smirnov's counsel also stated that the "most important reason" to get Smirnov out is so he can get eye surgery.  (Bail Hr'g Tr. 13:8–9.)  However, § 3143 does not provide for release pending appeal based on a medical issue.  To the extent Smirnov contends that his condition supports a finding of a likelihood he will not flee because he needs medical treatment, he fails to address why he could not seek medical treatment in another country if he were to flee.

[6] (*See, e.g.*, Am. Order Detention; In Camera Order; Feb. 26, 2024 Detention Hr'g Tr; Bail Hr'g Tr.)

In the Stipulation, the parties submit that "the pending appeal raises a substantial question of law or fact," but do not describe the question for appeal or provide any basis for this conclusion.  (Stip. ¶ 11.)  In his Supplemental Brief, Smirnov defines that question as "whether relief (in the form of a stipulated withdrawal or a guilty plea upon remand) is warranted where a District Court purports to accept a binding plea agreement under Rule 11(c)(1)(C), but then refuses, at sentencing, to adhere to one of those plea agreement's critical, express conditions." (Suppl. 5.)  To even get to that question, however, Smirnov must show that the Court "refused at sentencing[] to adhere to one of th[e] plea agreement's critical, express conditions." (*Id.*)  Neither Smirnov, nor the United States has made such a showing.

Smirnov asserts that the "Court did not follow all of the stipulations in paragraph 19 of the Plea Agreement." (*Id.*)  This is factually and legally incorrect, and far from raising a "fairly debatable" or "fairly doubtful" question.  Tellingly, the parties do not actually quote from paragraph 19 in either of their filings.  (*See generally* Stip.; Suppl.)  Paragraph 19 of the Plea Agreement provides,

> Defendant and the [United States] agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)–(7) and the relevant sentencing guideline factors, an appropriate disposition of this case is that the Court impose a sentence of: **no less than 48 months and no greater than 72 months' imprisonment; 1 year supervised release with conditions to be fixed by the Court; $400 special assessment; $675,502 restitution and no fine.** The parties also agree that the defendant is entitled to credit in both Cr. Nos. 24-91 and 24-702 for the period of his pretrial detention since the day of his arrest and that credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3.

(Plea Agreement ¶ 19.)

At the hearing, Smirnov's counsel stated that the "plea agreement expressly provided that one of the conditional aspects of the plea agreement was that the Court would order that [Smirnov] receive credit from the date of his initial arrest, and the Court refused to grant that request."  (Bail Hr'g Tr. 7:10–14.)  This misstates the Plea

Agreement.  The Plea Agreement does not provide that the Court would order that Smirnov receive credit for time served, but rather that "the parties agree[d] that [he] is entitled to credit in both" cases and "that credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b) may be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3."  This provision regarding credit requires nothing of *the Court*.  Section 3585 provides for the calculation of time served.  But, as the Supreme Court has stated and the Ninth Circuit recently confirmed, this section "does not authorize a district court to compute the credit at sentencing."  *United States v. Jay*, No. 24-3875, 2025 WL 560695, at *1 (9th Cir. Feb. 20, 2025) (quoting *United States v. Wilson*, 503 U.S. 329, 334 (1992)).  "Rather, the Bureau of Prisons makes that determination *after* the sentence is imposed."  *Id.* (emphasis added) (citing *Wilson*, 503 U.S. at 334–36).

The Plea Agreement shows that the parties understood this; after all, the Plea Agreement does not require the Court to compute credits, and specifically references that Smirnov is entitled to credits "that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)."  (Plea Agreement ¶ 19.)  Smirnov's counsel said as much at the plea hearing.  There, Smirnov's counsel stated, "The agreement notes that he gets credit for time served on both cases from the date of his arrest, your Honor.  And we believe that the *Bureau of Prisons* would acknowledge and honor that, your Honor."  (Plea Hr'g Tr. 32:21–24 (emphasis added).)  The Court responded, "Absolutely . . . . *They* are going to take care of that.  Okay."  (*Id.* at 32:25–33:1 (emphasis added).)  Making no mention of the Court ordering anything with respect to crediting time served, Smirnov's counsel responded, "Thank you."  (*Id.* at 33:2.)

The Plea Agreement also references Sentencing Guideline § 5G1.3.  (*Id.*)  This sentencing guideline provides that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . , the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment."  U.S.S.G. § 5G1.3(b).  Crucially, a court only makes this

adjustment "if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."  U.S.S.G. § 5G1.3(b)(1).  The Court has not determined that the Bureau of Prisons will not credit Smirnov's time served from the day of his arrest to his conviction for both sentences.[7]  (*See* Sentencing Tr. 61:9–10 ("THE COURT: Calculation or computation of credits is up to the Bureau of Prisons."), 61:15–17 ("THE COURT: I'm not saying I reject the plea.  I'm saying I'm not getting involved in the computation of his credits."); *see also* Plea Hr'g Tr. 32:25–33:1 ("THE COURT: [The Bureau of Prisons is] going to take care of that.").)  The parties cannot point to anywhere in the Plea Agreement where they agreed that the Court would credit Smirnov with time served under Sentencing Guideline § 5G1.3.  The Plea Agreement only states that "he is entitled to credit and that credits that the *Bureau of Prisons may* allow under 18 U.S.C. § 3585(b) *may* be credited against this stipulated sentence, including credit under Sentencing Guideline § 5G1.3."  (Plea Settlement ¶ 19 (emphases added).)  Therefore, by accepting the Plea Agreement, the Court was not required to find Smirnov was entitled to credit under Sentencing Guideline § 5G1.3.

In accordance with the Plea Agreement, the Court sentenced Smirnov to "no less than 48 months and no greater than 72 months' imprisonment; 1 year supervised release with conditions to be fixed by the Court; $400 special assessment; $675,502 restitution and no fine."  (Plea Agreement ¶ 19; *accord* Am. J. at 1.)  The parties have not raised a "fairly debatable" or "fairly doubtful" question as to whether the Court was required to "state on the record that [Smirnov] gets credit for time served on both cases from February 14, 2024.  (Sentencing Tr. 60:22–24.)  The Plea Agreement is clear as to this point: it did not require the Court to make this statement.

---

[7] In fact, Smirnov does not assert that the Bureau of Prisons has declined to credit him with the time served it "may allow under 18 U.S.C. § 3585(b)."  (Plea Agreement ¶ 19.)  At the very least, this would require a showing that the Bureau of Prisons has not credited him "for the period of his pretrial detention since the day of his arrest."  (*Id.*)  Smirnov has made no such showing.

Because the Court adhered to the terms of the Plea Agreement, Smirnov's question as to "whether relief . . . is warranted where a District Court purports to accept a binding plea agreement under Rule 11(c)(1)(C), but then refuses, at sentencing, to adhere to one of those plea agreement's critical, express conditions," (Suppl. 5), is irrelevant to this case.  Smirnov has not raised a "substantial," "fairly debatable," or "fairly doubtful" question.  18 U.S.C. § 3143(b)(1).  Accordingly, on this independent basis, the Court **DENIES** the Stipulation.

## V.    CONCLUSION

For the reasons above, the Court **DENIES** the Stipulation.  (ECF No. 229; Stipulation, *United States v. Smirnov*, No. 2:24-cr-00702-ODW-1 (C.D. Cal. Apr. 10, 2025), ECF No. 50.)

**IT IS SO ORDERED.**

April 30, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**